# Case No. 24-10543

## IN THE UNITED STATES COURT OF APPEALS

## FOR THE FIFTH CIRCUIT

Conghua Yan,

*Plaintiff - Appellant*

v.

The State Bar of Texas, a private company; The Barrows Firm, a private company; Leslie Starr Barrows, in Individual Capacity, as Member of the State Bar of Texas; William Albert Pigg, in Individual Capacity, as Member of the State of Texas; Samantha Ybarra, in Individual Capacity, as Member of the State Bar of Texas; Luis Jesus Marin, in Individual Capacity, as Member of the State Bar of Texas, and Official Capacity as Assistant Disciplinary Counsel for the Office of the CDC; Daniel Eulalio Martinez, in Individual Capacity, as Member of the State Bar of Texas, and Official Capacity as Assistant Disciplinary Counsel for the Office of the CDC; Rachel Ann Craig, in Individual Capacity, as Member of the State Bar of Texas, and Official Capacity as Assistant Disciplinary Counsel for the Office of the CDC; Lori L. Deangelis, in Individual Capacity, as member of the State Bar of Texas, and Official Capacity as Associated Judge; U.S. Bank,

*Defendants - Appellees*

On Appeal from the United States District Court for the
Northern District of Texas, Fort Worth Division
Civil Action No. 4:23-CV-00758-P, The Hon. Mark T Pittman, Presiding

# OPENING BRIEF OF APPELLANT

Respectfully submitted:

Conghua Yan
2140 E Southlake Blvd, Suite L-439
Southlake, Texas 76092
214-228-1886
arnold200@gmail.com
Pro Se Litigant

# CERTIFICATE OF INTERESTED PERSONS

Appellant certifies that the following listed persons and entities as described in the fourth sentence of *Rule 28.2.1* have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal:

1)    **Plaintiff-Appellant:** Conghua Yan

2)    **Defendants-Appellees:** State Bar of Texas; Barrows Firm; Leslie Starr Barrows; William Albert Pigg; Samantha Ybarra; Luis Jesus Marin; Daniel Eulalio Martinez; Rachel Ann Craig; Lori L. Deangelis; U.S. Bank.

3)    **Counsel for Defendants-Appellees:** Amanda Marie Kates; Michael G. Graham; Royce A. Lemoine; Melvin Keith Ogle; Caroline Cyrier; Jon-William Nathaniel James; Roland K. Johnson; Melissa Hill; Tyler James Hill.

/s/ Conghua Yan

Conghua Yan, Pro Se Plaintiff

## STATEMENT REGARDING ORAL ARGUMENT

Plaintiff-Appellant Conghua Yan respectfully requests that oral argument be heard on this appeal. As demonstrated by the arguments below, this case involves several matters of federal law that are of first impression, and some of those issues are complex.

# Table of Contents

CERTIFICATE OF INTERESTED PERSONS ................................................................. 3

STATEMENT REGARDING ORAL ARGUMENT ......................................................... 4

JURISDICTIONAL STATEMENT ............................................................................... 12

INTRODUCTION ........................................................................................................... 13

ISSUES PRESENTED .................................................................................................... 14

STATEMENT OF THE CASE ........................................................................................ 19

    I.    Main Proceedings: ............................................................................................. 19

    II.   Ancillary Proceedings: ....................................................................................... 23

STATEMENT OF THE FACTS ...................................................................................... 23

    I.    Tangible facts (ROA.1046-1061[¶¶28-126]) alleged and presented with evidence: ...................... 23

    II.   Alleged facts must assumed to be true, including but not limited to (ROA.1037-1180): .............. 28

    III.  Enough facts to state a claim to relief that is *plausible* on its face: ............................. 30

SUMMARY OF THE ARGUMENT ............................................................................... 31

ARGUMENT AND AUTHORITIES ............................................................................... 34

    I.    Standard of Review ........................................................................................... 34

    II.   Motion to Dismiss Standard ............................................................................. 34

    III.  Requiring Liberal Construction for Pro Se's pleadings ............................................. 36

        A.   Liberal construction standard applies to all pro se filings as to do substantial justice. ............... 36

        B.   All materials subsequently filed are required to be considered as amendments to original complaint in pro se's favor .......................... 37

        C.   The FRCP does not require pro se "to plead the legal theory, facts, or elements underlying his claim ................................... 37

        D.   This Court has discretion to consider any noncompliant brief ...................................... 38

    IV.  Authorities: ....................................................................................................... 38

        A.   Federal statutes ................................................................................................ 38

        B.   SCOTUS precedent ......................................................................................... 38

        C.   State statutes .................................................................................................... 39

    V.   Rule *12* dismissal does not pass the threshold unless all sets of facts and all possible legal theories are considered. ..................................... 39

A.    The Decisions circumvented ERISA preemption, which supersedes the Eleventh Amendment and all state laws, resulting in a manifest miscarriage of justice. ....................................................... 39

B.    The Decisions erred in ignoring alleged ERISA prospective relief. ............................................ 41

C.    The Decisions failed to identify and conclude other key alleged provisions. ............................. 42

D.    The FCR failed to find the fact of the *multiple* alleged unlawful temporary QDROs. ............... 45

E.    The Decisions ignored the breadth of ERISA, *§ 1962* and *§ 664* provisions. ........................... 46

F.    The Decisions failed to apply the *Nesses* reasoning and to distinguish alleged capacity. ........... 47

VI.   Issuing temporary QDRO to award attorney fees or altering QDRO under the guise of spousal support to circumvent ERISA anti-alienation provision, with the true intention of obtaining attorney fees, is unlawful and constitutes a *§ 664* predicate act. All money must be returned. ............................ 49

A.    Associate judge's court has no jurisdiction to render a trial remedy QDRO. ............................ 49

B.    Altering order act is usurpation of judicial authority, displacing the court as decision maker. .. 50

C.    The altered QDRO was under a forged cause of action that was never pleaded into the case. .... 51

D.    All the fees that Texas attorney unlawfully obtained from ERISA funds must be returned to restore the status quo ante. .................................................................................................................. 52

VII.  The court erred in granting Deangelis' *12(b)(1)* motion regarding RICO, antitrust and *§ 1983* claims. 55

A.    A state statutory judge should not be granted blanket federal common-law judicial immunity without examining federal and state statutes. .................................................................................... 55

B.    Federal judicial immunity applies only to Article III judges, state law cannot modify federal common law. .................................................................................................................................. 57

C.    Article III does not permit non-Article III court to try cases involving deprivations or transfers of a citizen's liberty or property. ......................................................................................................... 60

VIII. Core civil cause of action is substituted with another claim that neither party briefed, this guarantees a reversal. ................................................................................................................................... 61

A.    The Decisions failed to identify and conclude factual cause of action. ....................................... 61

B.    The Decisions correctly acknowledged Antitrust Defendants are active participants and not immune from antitrust claim, but failed to distinguish relevant precedents. ....................................... 62

C.    The Order erred in granting a Rule 12(b)(6) dismissal over *§ 1* claim after Antitrust Defendants waived any defense over *§ 1* claim during briefing stage. ................................................................. 64

IX.   The court erred in granting MarinMartinezCraig *12(b)(1)* dismissal without prejudice regarding *§ 1983* claims. ....................................................................................................................................... 65

A.    The strongest federal defense available to any state actor, other than a public prosecutor, against *§ 1983* claim under *individual capacity* is qualified immunity. The Decisions ruled beyond the boundaries of this federal defense. .......................................................................................................... 65

B.    The FCR failed to identify and conclude key facts under *§ 1983* claims. ................................. 66

C.    The Decisions erred in failing to apply *Nesses* reasoning to distinguish the premise of Yan's suit. 68

D. *Young* permits prospective relief, ERISA supersede sovereign immunity. ................................ 69

X. The court erred in granting BarrowsYbarra, and BarrowsFirm 12(b)(1) motion with prejudice regarding antitrust and *§ 1983* claims. ................................................................................................ 70

A. The courts cannot omit Minnesota common-law attorney immunity factor in an interstate case. 71

B. Federal common-law immunity is not absolute for private attorneys. ......................................... 71

C. "[Texas court] is without the authority to divest that power or delegate it to others" to alter a rendition. *See Meshell v. State*, 739 S.W.2d 246 (Tex. Crim. App. 1987), .......................................... 74

XI. The court erred in granting RICO Defendants' *12(b)(6)* motion with prejudice. ...................... 77

A. Allegations are premised on the legal theory that the victim suffers ERISA fund injury, a predicate act under *§ 1961(1)*, incorporating *§ 664*. ...................................................................... 78

B. The facts are well-pleaded with evidence attached. ................................................................. 80

C. Defendants waived arguments concerning Yan's legal theory. .................................................. 81

XII. The court erred in granting USBank's *12(b)(6)* motion. ....................................................... 82

A. The Order erred in relying on USBank's responsive motion to determine Yan's factual allegations instead of reviewing Yan's complaint. ................................................................. 82

B. Proving pattern is not required under *§ 1962(d)*. ................................................................... 84

D. USBank is alleged breaching fiduciary duty by blatantly determining a Due Process-violating unlawful order as a legitimate QDRO and failing to object to the court as the Department of Labor's opinion instructed. ........................................................................................................................ 87

E. The final report concluded factual allegations from inexplicable paragraphs. .......................... 89

XIII. 21-Day Safe Harbor, the *28 U.S.C. § 636* right to appeal to preserve issue, and Pre-filing Injunction: ....................................................................................................................................... 90

A. Initial Rule *11* motion complied with waiver doctrine. ........................................................... 90

B. Re-filing Rule *11* motion after 21 days is not frivolous. ......................................................... 91

C. Zealous advocacy requires objection to preserve the issue. ..................................................... 92

D. Filing objection under *28 U.S.C. § 636(b)(1)(C)* is a constitutional right. .............................. 94

E. The district court sua sponte imposed pre-filing injunctions, in violation of due process. ......... 95

XIV. Finality: .................................................................................................................................. 95

A. The final judgment neither adjudicates all claims of all parties nor cites Rule *54(b)*. ............... 95

B. Pigg filed the answer, not a Rule 12 motion. .......................................................................... 96

C. The Order expressly did not rule on three claims against Pigg; therefore, the final judgment erred in disposing of all claims. ..................................................................................................... 97

I. Ending Statement: ..................................................................................................................... 97

CONCLUSION ................................................................................................................................ 98

CERTIFICATE OF SERVICE ............................................................................................ 101

CERTIFICATE OF COMPLIANCE................................................................................... 102

RELATOR'S APPENDIX.................................................................................................. 103

## Cases

*ACS Recovery Services, Inc. v. Griffin*, 723 F.3d 518 (5th Cir. 2013) ................................. 40

*Aetna Health Inc. v. Davila*, 542 U.S. 200 (2004) ............................................................... 40

*Agostini v. Felton*, 521 U.S. 203 (1997).............................................................................. 38

*Akin v. Louisiana National Bank of Baton Rouge*, 322 F.2d 749 (5th Cir. 1963) ............... 58

*Alwazzan v. Alwazzan*, NO. 01-16-00589-CV (Tex. App. Dec. 6, 2018)............................ 79

*Americans United, Inc. v. Walters*, 155 U.S.App.D.C. 284, 477 F.2d 1169 (1973) ............ 67

*Anders v. California*, 386 U.S. 738 (1967) .......................................................................... 92

*Aoude v. Mobil Oil Corp.*, 892 F.2d 1115 (1st Cir. 1989) .................................................. 51

*Arana v. Ochsner Health Plan*, 338 F.3d 433 (5th Cir. 2003) ............................................ 40

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)............................................................................... 67

*Axon Enter. v. Fed. Trade Comm'n*, 143 S. Ct. 890 (2023) ........................................... 33, 60

*Bader v. Atlantic International, Ltd.*, 986 F.2d 912 (5th Cir. 1993) ..................................... 96

*Baisch v. Gallina*, 346 F.3d 366 (2d Cir. 2003)................................................................... 86

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ............................................................... 35

*Black v. North Panola School Dist*, 461 F.3d 584 (5th Cir. 2006) ....................................... 36

*Blankenship v. Buenger*, No. 15-50974 (5th Cir. Jun. 28, 2016)......................................... 34

*Boggs v. Boggs*, 520 U.S. 833 (1997) ............................................................................ 52, 89

*Brewer v. Lennox Hearth Prods.*, LLC, 601 S.W.3d 704 (Tex. 2020) ................................. 76

*Brooke Group Ltd. v. Brown Williamson Tobacco Corp.*, 509 U.S. 209 (1993) .................. 63

*Burrell v. Staff*, 60 F.4th 25 (3d Cir. 2023).......................................................................... 99

*Bye v. MGM Resorts Int'l*, 49 F.4th 918 (5th Cir. 2022)...................................................... 37

*Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477 (Tex. 2015)................................................. 74

*Cf. Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206 (1998)........................................................ 46

*Christopher v. Mobil Oil Corp.*, 950 F.2d 1209 (5th Cir. 1992).......................................... 41

*City of N.Y. v. Bello*, No. 13-2931-cv (2d Cir. 2014)........................................................... 86

*Cledera v. United States*, No. 20-10914 (5th Cir. Feb. 5, 2021)........................................... 61

*Colonial Life Accident Insurance Company v. Medley*, 584 F. Supp. 2d 368 (D. Mass. 2008) ................. 59

*Dalton v. Dalton*, 551 S.W.3d 126 (Tex. 2018)................................................................ 50, 56, 88

*Doe v. McKesson*, 935 F.3d 253 (5th Cir. 2019) ................................................................. 90

*Dye v. Cowan*, 472 F.2d 1206 (6th Cir. 1972) .................................................................... 56

*Egelhoff v. Egelhoff*, 532 U.S. 141 (2001) .......................................................................... 53

*Erickson v. Pardus*, 551 U.S. 89 (2007).............................................................................. 36

*Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938) ...................................................................... 57

*Estate of Altobelli v. Int'l Business Machines*, 77 F.3d 78 (4th Cir. 1996) .......................... 88

*E-Systems, Inc. v. Pogue*, 929 F.2d 1100 (5th Cir. 1991) ............................................ 40, 41, 53, 69

*Ettinger v. Miller (In re Miller)*, 730 F.3d 198 (3d Cir. 2013)............................................. 92

*Evans v. Safeco Life Ins. Co.*, 916 F.2d 1437 (9th Cir. 1990)................................................................39

*Ex parte Young*, 209 U.S. 123 (1908)..........................................................................................................69

*Farguson v. Mbank Houston, N.A.*, 808 F.2d 358 (5th Cir. 1986).........................................................93

*Ferri v. Ackerman*, 444 U.S. 193 (1979)..............................................................................................33, 71

*Finley Res. v. Headington Royalty, Inc.*, 672 S.W.3d 332 (Tex. 2023)................................................46

*FMC Corp. v. Holliday*, 498 U.S. 52 (1990)...............................................................................................39

*Ford v. British Petroleum*, CIVIL ACTION NO. 12-965 (E.D. La. Mar. 17, 2014)..........................36

*Franchise Tax Bd. v Laborers Vacation Trust*, 463 U.S. 1 (1983)......................................................39

*Geier v. Am. Honda Motor Co.*, 529 U.S. 861 (2000)..............................................................................58

*Goff v. Taylor*, 706 F.2d 574 (5th Cir. 1983) ...........................................................................................40

*Goins v. City of Sansom Park*, Civil Action No. 4:14-cv-365-O (N.D. Tex. Jun. 29, 2015).............36

*Gonzalez v. Blue Cross Blue Shield Ass'n*, 62 F.4th 891 (5th Cir. 2023)............................................40

*Grant v. Cuellar*, 59 F.3d 523 (5th Cir. 1995).........................................................................................38

*Great Plains Tr. v. Morgan Stanley Dean Witter*, 313 F.3d 305 (5th Cir. 2002) ..............................39

*Green v. Mansour*, 474 U.S. 64 (1985) .....................................................................................................42

*Greenlaw v. United States*, 554 U.S. 237 (2008) .....................................................................................61

*Heckert v. Heckert*, No. 02-19-00298-CV (Tex. App. May. 21, 2020) ..................................................52

*Housing v. Queen*, No. 14-30512 (5th Cir. Mar. 12, 2015)....................................................................47

*Howard v. King*, 707 F.2d 215 (5th Cir. 1983) ........................................................................................37

*In Interest of J.V.G.*, No. 09-06-015 CV (Tex. App. Jul. 12, 2007).................................................50, 75

*In re Coastal Land Development Corporation*, Case No. 07-51267-NPO (Bankr. S.D. Miss. May. 29, 2009)........................................................................................................................................................91

*In re D.L.M.*, 982 S.W.3d 146 (Tex. App. 1998)......................................................................................56

*In re Ginsberg*, 630 S.W.3d 1 (Tex. 2018) ...............................................................................................79

*In re Insurance Brokerage Antitrust Litigation*, 618 F.3d 300 (3d Cir. 2010) .................................86

*In re K.A.R*, 171 S.W.3d 705 (Tex. App. 2005)..................................................................................50, 75

*In re Lausch*, 177 S.W.3d 144 (Tex. App. 2005).....................................................................................79

*Ins. Corp. of Ir. v. Compagnie Des Bauxites De Guinee*, 456 U.S. 694 (1982) .................................52

*Janssen v. Lommen*, No. A14-0452 (Minn. Ct. App. Dec. 22, 2014) ...................................................71

*Jones v. Johnson*, 134 F.3d 309 (5th Cir. 1998) .....................................................................................56

*Lance v. Dennis*, 546 U.S. 459, 463 (2006) .............................................................................................59

*Larson v. Domestic Foreign Corporation*, 337 U.S. 682 (1949)..........................................................67

*Linn v. Saitin*, No. 14-30094 (5th Cir. 2014)...........................................................................................73

*Mclaughlin v. Mississippi Power Co.*, 376 F.3d 344 (5th Cir. 2004) ..................................................97

*McQueen v. City of Cincinnati*, Case No. 1:20-cv-00864 (S.D. Ohio May. 12, 2021) ......................36

*Mendoza v. Strickler*, 51 F.4th 346 (9th Cir. 2022) ..............................................................................52

*Meshell v. State*, 739 S.W.2d 246 (Tex. Crim. App. 1987).....................................................................74

*Moran v. Simpson (In re Life Partners Holdings, Inc.)*, No. 21-11231 (5th Cir. Jul. 6, 2022) .................36

*Muhammad v. State of Louisiana*, Civil Action No: 99-3742, C/W 99-2694 SECTION: 'J'(5) (E.D. La. Dec. 21, 2000)*........................................................................................................................................92

*Neitzke v. Williams*, 490 U.S. 319 (1989).................................................................................................91

*Nesses v. Shepard*, 68 F.3d 1003 (7th Cir. 1995).............................................................................passim

*Newby v. Enron Corp.*, 302 F.3d 295 (5th Cir. 2002).............................................................................34

*Newpark Shipbuilding Repair, v. Roundtree*, 723 F.2d 399 (5th Cir. 1984)......................................95

*Priester v. Lowndes County*, 354 F.3d 414 (5th Cir. 2004) ....................................................................... 35

*Quern v. Jordan*, 440 U.S. 332 (1979) ................................................................................................... 42

*Qureshi v. U.S.*, 600 F.3d 523 (5th Cir. 2010) ....................................................................................... 95

*R.W.T. v. Dalton*, 712 F.2d 1225 (8th Cir. 1983) .................................................................................. 58

*Rankin v. Bateman*, 686 S.W.2d 707 (Tex. App. 1985) .......................................................................... 51

*Rey v. State*, 897 S.W.2d 333 (Tex. Crim. App. 1995) ........................................................................... 77

*Robinson v. Volkswagenwerk AG*, 940 F.2d 1369 (10th Cir. 1991) ......................................................... 71

*Salinas v. United States*, 522 U.S. 52 (1997) .................................................................................. 85, 86

*Saltz v. Tennessee Department of Employment Security*, 976 F.2d 966 (5th Cir. 1992) ............................ 69

*Salve Regina College v. Russell*, 499 U.S. 225 (1991) ........................................................................... 58

*Seago v. O'Malley*, 91 F.4th 386 (5th Cir. 2024) ................................................................................... 12

*Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479 (1985) ......................................................................... 46, 78

*Seminole Tribe of Fla. v. Florida*, 517 U.S. 44 (1996) ....................................................................... 62, 67

*Shaikh v. Tex. A&M Univ. Coll. of Med.*, No. 16-20793 (5th Cir. Jun. 20, 2018) ..................................... 35

*Sparks v. Duval County Ranch Co., Inc.*, 604 F.2d 976 (5th Cir. 1979)............................................... 72, 87

*Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69 (2013) ............................................................................ 59

*Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998)................................................................... 52

*Stein v. Stein*, 868 S.W.2d 902 (Tex.App.-Houston [14th Dist.] 1994, no pet.) ...................................... 79

*Stewart v. Thorpe Holding Co. Profit Sharing*, 207 F.3d 1143 (9th Cir. 2000) ....................................... 88

*Tax Analysts and Advocates v. Shultz*, 376 F. Supp. 889 (D.D.C. 1974).................................................. 66

*Taylor v. Tolbert*, 644 S.W.3d 637 (Tex. 2022) ............................................................................. passim

*Tex. Dep't of Pub. Safety v. Sunuc*, No. 13-19-00443-CV (Tex. App. Feb. 3, 2022).................................. 52

*Thomas v. Arn*, 474 U.S. 140 (1985)............................................................................................... 93, 94

*Thomas v. Thompson*, CAUSE NO.: 1:10CV10-SA-JAD (N.D. Miss. Jun. 8, 2011) ................................. 84

*Tower v. Glover*, 467 U.S. 914 (1984) .............................................................................................. 33, 71

*Troice v. Proskauer Rose, LLP*, 816 F.3d 341 (5th Cir. 2016) ................................................................ 74

*Truong v. Bank of Am., N.A.*, 717 F.3d 377 (5th Cir. 2013) ................................................................... 47

*Tyler v. Hennepin County*, 598 U.S. 631 (2023) .................................................................................... 98

*U.S. v. Dean*, 100 F.3d 19 (5th Cir. 1996) ............................................................................................ 34

*United States v. Applins*, 637 F.3d 59 (2d Cir. 2011) ............................................................................ 86

*United States v. Beechum*, 582 F.2d 898 (5th Cir. 1978)........................................................................ 98

United States v. Dees, 125 F.3d 261 (5th Cir. 1997)................................................................................ 94

*United States v. Gurry*, Criminal Action No. 16-cr-10343-ADB (D. Mass. Jan. 17, 2019) ...................... 85

*United States v. Monsanto*, 491 U.S. 600 (1989)................................................................................... 46

*United States v. Sineneng-Smith*, 140 S. Ct. 1575 (2020) ...................................................................... 64

*United States v. Sweet*, No. 8:01-CV-331-T-23TGW, 2001 U.S. Dist. LEXIS 17131 (M.D. Fla. Sept. 17, 2001) ................................................................................................................................................... 92

*Walker v. City of Birmingham*, 388 U.S. 307 (1967)............................................................................. 98

*Westchester Fire Ins. v. Nuckols*, 666 S.W.2d 372 (Tex. App. 1984)...................................................... 52

*WIWA v. ROYAL DUTCH PETROLEUM COMPANY*, 96 Civ. 8386 (KMW) (S.D.N.Y. Feb. 22, 2002).84

*Wright v. El Paso County Jail*, 642 F.2d 134 (5th Cir. 1981).................................................................. 37

*Ying Jing Gan v. City of New York*, 996 F.2d 522 (2d Cir. 1993) ........................................................... 48

*Younger v. Harris*, 401 U.S. 37 (1971)................................................................................................. 59

*Youngkin v. Hines*, 546 S.W.3d 675 (Tex. 2018) .............................................................................. 74, 75

## Statutes

*15 U.S.C. § 1* .................................................................................................................passim
*15 U.S.C. § 2* .................................................................................................................passim
*18 U.S.C. § 1341* ...................................................................................................13, 81, 82
*18 U.S.C. § 1343* ...................................................................................................13, 81, 82
*18 U.S.C. § 1956* .........................................................................................................17, 43
*18 U.S.C. § 1962* ..........................................................................................................passim
*18 U.S.C. § 664* ............................................................................................................passim
*28 U. S. C. § 1257* ................................................................................................................59
*28 U.S.C. § 636* .............................................................................................................passim
*29 U.S.C. § 1056* ..................................................................................................................14
*29 U.S.C. § 1056(d)(3)(B)(i)* ...............................................................................................49
*29 U.S.C. § 1056(d)(3)(G)(i)* ...............................................................................................88
*29 U.S.C. § 1056(d)(3)(H)(i)* ..........................................................................82, 88, 89, 90
*29 U.S.C. § 1144(a)* ..............................................................................................................40
*42 U.S.C. § 1983* ...........................................................................................................passim
ERISA *§ 502(a)* ....................................................................................................................40
ERISA *§ 502(a)(1)(B)* .........................................................................................................40
ERISA *§ 514(b)(2)(A)* ..........................................................................................................40
Tex. Const. Art. V, § 1 ...........................................................................................................56
*Tex. Fam. Code § 109.001(c)* ...............................................................................................50
*Tex. Fam. Code § 201.007* ...................................................................................................56
*Tex. Fam. Code § 201.017* .............................................................................57, 58, 59, 60
*Tex. Fam. Code § 9.102* ........................................................................................................56
*Tex. Gov't Code § 81.054* .....................................................................................................47
*Tex. Gov't Code § 81.072* .....................................................................................................46
*Tex. Gov't Code § 81.072(g)* .........................................................................................65, 69
*Tex. Gov't Code § 81.106* .....................................................................................................46
*U.S. Const. Art. I, § 8, cl. 3* ...........................................................................................62, 67

## Rules

*Fed. R. Bankr. P. 9011* ..........................................................................................................92
*Fed. R. Civ. P. 11* ...........................................................................................34, 90, 91, 92
*Fed. R. Civ. P. 12 (b)* ...................................................................................17, 34, 39, 64
*Fed. R. Civ. P. 12 (b)(1)* ...................................................................................................passim
*Fed. R. Civ. P. 12 (b)(6)* ...................................................................................................passim
*Fed. R. Civ. P. 12(g)* ..............................................................................................................64
*Fed. R. Civ. P. 12(h)* ..............................................................................................................64
*Fed. R. Civ. P. 54* .............................................................................................17, 34, 95, 96

# JURISDICTIONAL STATEMENT

This Court has jurisdiction over the district court's final judgment pursuant to *28 U.S.C. § 1291*.[1]

---

[1] *Seago v. O'Malley*, 91 F.4th 386, 389 (5th Cir. 2024).

# INTRODUCTION

Yan brings this action under the Racketeer Influenced and Corrupt Organizations (RICO) Act, specifically *18 U.S.C. § 1962* (hereinafter "*§ 1962*"), concerning violations of *18 U.S.C. §§ 1341*, *1343*, and *664* ("*§ 1341*," "*§ 1343*," and "*§ 664*"), as well as antitrust violations under *15 U.S.C. § 2* ("*§ 2*") and claims under *42 U.S.C. § 1983* ("*§ 1983*"). The case involves injuries to ERISA-protected funds. Yan asserts these claims against the State Bar of Texas ("SBTX") and other parties, accusing them of conspiracy and shielding attorneys from accountability.

Family courts, once trusted as neutral arbiters, have transformed into fee-collection agencies, with attorneys exploiting vulnerable clients. Texas attorneys, fully aware of their clients' defenselessness, manipulate legal mechanisms to unlawfully siphon retirement savings under the guise of temporary order, non-appealable per state statue. ERISA was designed to protect retirement savings, recognizing their importance to national financial security. Yet, attorneys routinely evade ERISA's anti-alienation protections, draining ERISA-protected funds for illegal revenues.

Yan's case exemplifies this abuse. His attorneys embezzled his Minnesota 401(k) through an *altered* Qualified Domestic Relations Order (hereinafter "QDRO"), blatantly circumventing ERISA anti-alienation provision. Despite his

efforts to seek justice, Yan has been blocked at every turn by the Texas judiciary, where bar members engage in damage control to protect each other. His grievances have consistently been dismissed, leaving him without remedy.

The central question before this Court is whether it will uphold ERISA's anti-alienation protection or allow attorneys to continue exploiting defenseless clients. Yan's case reveals a statewide pattern of attorneys exploiting their legal expertise for personal gain at their clients' expense. He urges this Court to end this *§ 664* racketeering scheme and to safeguard public retirement savings.

## ISSUES PRESENTED

This appeal involves five motions to dismiss, one answer, from ten parties under nine claims, and one injunction, creating the following legal issues:

1.    Whether *ERISA preemption* supersedes *Eleventh Amendment* and *all* state law immunity defenses?

2.    Whether, under *ERISA preemption and anti-alienation*, all *attorney's fees unlawfully obtained* from ERISA plans *must* be *returned* to restore the *status quo ante*?

3.    Under *29 U.S.C. § 1056*, whether ERISA requires administrators to exercise fiduciary duty in *determining* whether court documents *qualify* as Qualified Domestic Relations Orders, which are enforceable?

4.     After _Taylor v. Tolbert_, 644 S.W.3d 637 (Tex. 2022) (hereinafter "_Taylor_"), whether federal courts should continue applying _blanket_ Texas statutory or common-law _immunity_, or reaffirm federal common-law immunity and analyze specific federal statutes for Texas _attorney_ accused of <u>federal offense</u>?

5.     <u>Federal judicial immunity</u> applies to <u>Article III judges</u> who possess <u>constitutional jurisdiction</u>. State statutory judges operate under state law and possess statutory jurisdiction. Can state law <u>expand</u> federal common-law <u>immunity</u> to grant judicial immunity to these non-Article III <u>statutory</u> judges?

6.     Neither the U.S. nor Texas Constitutions _delegate judicial discretion_ to _attorneys_. Does <u>lawyers'</u> collusion to <u>alter</u> a court order after open court rendition, by <u>exploiting</u> ministerial <u>underwriting</u> loopholes, <u>usurp judicial authority</u> and render the order <u>unconstitutional</u>?

7.     No petition for spousal support was filed, and no corresponding hearing was held. The QDRO was altered by attorneys and substituted with a distinct _civil cause of action_ that was _neither filed nor heard_, resulting in a deprivation of out-of-state ERISA funds. Does this garnishment action with no _cause of action_ pleaded constitute a _due process_ violation?

8.     The Texas Constitution only grants <u>trial authority</u> to <u>Article III judges</u>. When a <u>non-Article III</u> statutory <u>court</u>, acting <u>beyond</u> its statutory jurisdiction, renders a trial remedy involving the deprivation of liberty or property—powers <u>reserved for trial</u>

courts—does this <u>usurp constitutional jurisdiction</u>, rendering the acts unconstitutional?

9.   Texas statute explicitly states that a QDRO is an appealable, post-divorce remedy after trial, and final judgment, upon petition, and the Texas Constitution *prohibits* an *associate judge's court* from exercising constitutional jurisdiction or presiding over trials. Is an *unappealable temporary QDRO* remedy rendered in the *associate judge's court unlawful*?

10.   Whether a state *non-Article III* statutory judge, facing federal claims can be granted *blanket* federal common-law *judicial immunity without determining* whether the alleged conduct falls within the court's limited *statutory jurisdiction*?

11.   Under the *21-day safe harbor provision* and waiver doctrine in Rule *11*, whether *refiling* after 21 days is considered *frivolous*?

12.   The *right to appeal* a magistrate's FCR under *28 U.S.C. § 636* ensures the First Amendment right to petition and reinforces the constitutional Article III right to have a case heard by an Article III judge. Whether Plaintiff is *prejudiced* by a chilling effect when filing *an objection* to preserve legitimate issues, *resulting in a sua sponte injunction*?

13.   Whether the imposition of a *sua sponte prefiling injunction without notice or a hearing* violates constitutional *due process rights*?

14.   In a _multi-claims_ and _multi-parties_ lawsuit, whether a _Rule 54 final judgmen_t truly exist if one party's responsive answer, containing _separate claims_, was _never addressed_ in any pre-trial order?

15.   Under the _Rule 12_, whether dismissals meet the threshold if crucial _factual elements_ or the allegations are _materially omitted_ or _substituted_?

16.   The FCR erred in recommending a _12(b)(1)_ motion based on immunity _without_ conducting a _12(b)(6)_ analysis, the Order _accepted the findings_ but revoked the immunity recommendation, subsequently dismissing the case under _12(b)(6)_ without accomplishing sufficient findings. Furthermore, the Order erroneously substituted the antitrust _§ 2_ claim with a _§ 1_ claim and replaced the RICO _§ 664_ claim with _§ 1956_, which was not briefed. Should this dismissal be reversed?

17.   Whether the plaintiff's ERISA fund injuries, caused by the defendants' _§ 664_ predicate act under a RICO conspiracy, through a fraudulent, altered court order based on a fabricated civil cause of action that was never filed in state court, should apply the _Nesses v. Shepard_, 68 F.3d 1003 (7th Cir. 1995) (hereinafter "Nesses reasoning") to prevent the RICO, antitrust, and _§ 1983_ defendants from shielding their federal offenses under the _state-proceeding-exemption_ theory, given that the plaintiff has not sought to overturn any state court or disciplinary proceeding.

18.  Under a *§ 1962(d)* claim, whether multiple involved in *§§ 1962(a), (c), (d)* offenses, whether *each* "person" must to have *individually* conspired to commit at least *two predicate acts*?

<u>STATEMENT OF THE CASE</u>

I. <u>Main Proceedings:</u>

On July 21, 2023, Plaintiff-Appellant Conghua Yan ("Yan") filed an original complaint (ROA.18) in person, asserting RICO *§ 1962* claims based on a pattern of violations under *§§ 664*, *1341*, and *1343*, along with antitrust *§ 2* and *§ 1983* claims against Defendants-Appellees: the State Bar of Texas("SBTX"); the Barrows Firm("BarrowsFirm"); Leslie Starr Barrows("Barrows"); William Albert Pigg ("Pigg"); Samantha Ybarra("Ybarra"); Luis Jesus Marin( "Marin"); Daniel Eulalio Martinez("Martinez"); Rachel Ann Craig("Craig"); Lori L. DeAngelis("Deangelis"); U.S. Bank( "USBank"); and Defendant Tarrant County("TarrantCounty"), seeking *prospective relief* to prevent future violations and *monetary relief*.

In this brief, as needed, Yan will collectively refer to all parties sued under the first RICO claim as "RICO Defendants" (SBTX, BarrowsFirm, Barrows, Pigg, Ybarra, Marin, Martinez, Craig, Deangelis) and all parties sued under the second antitrust claim as "Antitrust Defendants." (SBTX, Barrows, Pigg, Ybarra, Marin, Martinez, Craig, Deangelis)

On August 25, Yan discovered that district court clerk erroneously accepted paper-form original complaint (ROA.18) and the civil cover sheet (ROA.165) using the name of "Barrow Firm" in the caption of cover letter but issued a summons under

the name of "Barrows Firm" (ROA.176). Neither the clerk nor Yan detected the discrepancy at filing, resulting in one party being mistakenly recorded as "Barrow Firm" instead of "Barrows Firm." Yan filed a motion to amend (ROA.277-278[¶¶1-8]), explained the cause, and informed that Defendant "Barrows Firm" had not yet been served.

On August 28, upon the grant (ROA.6), First time ECF user Yan filed the first amended complaint (ROA.358) but filed attached exhibits (ROA.7) through ECF four days later. The Magistrate struck his whole filing (ROA.536) and ordered Yan to seek leave to file an amended complaint with the complaint and exhibits attached together in the ECF. Therefore, Yan had to file a motion to amend (ROA.540-541[¶¶8-10]), upon the grant (ROA.7-8), he filed the second amended complaint (ROA.692).

On September 14, Yan filed a motion to amend (ROA.868[¶¶8-10]), seeking to join USBank as a party under Rule 21. Yan informed that he sought to "add a new claim for USBank only, without changing any word in prior claims[.]" On September 18, upon the grant (ROA.9), Yan filed the third amended complaint (ROA.1029) on the same day.

On September 19, Deangelis filed a motion to dismiss (ROA.1197). Yan responded (ROA.1291) on September 26. Deangelis replied (ROA.1383) on October 6.

On September 19, TarrantCounty filed a motion to dismiss (ROA.1217). Yan responded (ROA.1375) on October 6. TarrantCounty replied (ROA.1450) on October 17.

On September 21, Pigg filed an answer to complaint (ROA.1230).

On September 21, Ybarra filed a motion to dismiss (ROA.1249). Yan responded (ROA.1386) on October 7. Ybarra replied (ROA.1554) on October 23.

On October 2, SBTX, Marin, Martinez and Craig (hereafter, collectively Craig with Marin, Martinez, the "MarinMartinezCraig") filed a motion to dismiss (ROA.1325). Yan responded (ROA.1460) on October 17. they replied (ROA.1565) on October 23.

On October 9, Barrows and BarrowsFirm filed a motion to dismiss (ROA.1414). Yan responded (ROA.1590) on November 13. They replied (ROA.1623) on November 27.

On December 28, the Magistrate issued FCR (ROA.1680)[2] granting five motions to dismiss filed by DeAngelis; TarrantCounty; Ybarra; SBTX and MarinMartinezCraig; Barrows and BarrowsFirm. Yan objected (ROA.1698) on January 2, 2024. Ybarra, Barrows and BarrowsFirm responded (ROA.1721). DeAngelis and Tarrant County responded (ROA.1729) as well. Yan supplementally objected (ROA.1731) on January 10.

On January 11, USBank filed a motion to dismiss (ROA.1744). Yan responded (ROA.1997) on February 11. USBank replied (ROA.2061) on April 15.

On April 23, the district court's final order("Order") accepted FCR and independently ruled on specific USBank's motion to dismiss (ROA.2076), rendered the final judgment on the same day (ROA.2094).

The Order "*adopts* the FCR's *findings* as the *findings* of the Court, *endorses* the FCR's *conclusions*, and *accepts* the FCR's *recommendation* in *part*." (ROA.2076).

On May 20, Yan filed a *59(e)* motion (ROA.2095), expressly mentioned the final judgement ignored Pigg, it was denied.

On June 12, Yan filed notice of appeal (ROA.2153).

---

[2] Note: USBank had not respond yet and the FCR's order explicitly did not include Pigg.

Yan will collectively refer to the FCR and the Order as the "Decisions".

## II.  Ancillary Proceedings:

Yan filed two Rule *11* motions, against TarrantCounty's counsel (ROA.464) and SBTX's counsels (ROA.261). TarrantCounty's counsel responded, asserting the 21-day safe harbor provision (ROA.483), but SBTX's counsel did not raise this argument (ROA.476). The magistrate issued one FCR to strike both Rule *11* motions without specifying reasons (ROA.534).

After 21 days, Yan made re-filing against SBTX's counsels (ROA.1184) and TarrantCounty's counsel (ROA.1238). This time, the magistrate issued two FCR (ROA.1284,ROA.1641). Yan objected to both (ROA.1286,ROA.1643). The district court denied first objection (ROA.1520) and imposed a sua sponte pre-filing injunction on Yan in the latter ruling (ROA.1665). Yan's request for reconsideration (ROA.1673) was denied.

## STATEMENT OF THE FACTS

## I.  Tangible facts (ROA.1046-1061[¶¶28-126]) alleged and presented with evidence:

1.  On March 13, 2022, Barrows filed a motion (ROA.1133) for *interim attorney's fee* as a civil cause of action, attached sworn in affidavit (ROA.1139-1140) with bills and invoices (ROA.1143-1166), stating *$19,300* fees (ROA.1046) all

incurred in a divorce suit, but fraudulently claimed fees from a *separate* criminal case (ROA.1168-1169). Her actual unpaid fees were less than *$19,300* (ROA.1046).

2.    Pigg was Yan's counsel in the hearing, but he did not file pleading claiming his fees (ROA.1234[¶28]), neither did he testified with evidence (ROA.1046).

3.    On April 13, Deangelis rendered a temporary QDRO (ROA.1174), ordering that Yan is the payee or recipient of a *pre-divorce* QDRO distribution, Yan was ordered to withdraw *$50,000* from 401(k), with *$25,000* paying Barrows' attorney fees and another *$25,000* paying Pigg's attorney fees. The *$25,000* that Yan was ordered by DeAngelis to pay Barrows includes *excessive $15,000* of *prepayment* that Barrows has not yet earned, as well as fees incurred from the *criminal case* in which Yan was not a party. Pigg never pleaded fees but he got a Buy-One-Get-One free reward. Neither counsel had filed statutory required QDRD *petition* as of that day (ROA.1046,ROA.1050).

4.    On April 26 and May 26, Barrows, Ybarra (hereafter, collectively with Barrows, the "BarrowsYbarra"), and Pigg signed two temporary QDROs (ROA.1176-1178), submitted for the district judge's signature. The orders were **altered** (ROA.1047) to state that Yan had an April 13 hearing for the *civil cause of action* of *spousal support*, designating $25,000 for spousal support to Fuyan Wang, Yan's wife, with the disbursement supervised by Barrows (ROA.1069).

BarrowsYbarra conducted multiple mails fraud with USBank and the court afterwards (ROA.1047, ROA.1052-1053).

5.    Two months after signing the May 26, 2022 order, learned that USBank contacted Yan for that fraudulent QDRO, Pigg emailed (ROA.1114) Yan on July 21, misleading Yan that he was ordered to withdraw $50,000 from the April hearing, with $25,000 to be paid to Barrows and $25,000 to Pigg. Pigg told Yan that he never signed BarrowsYbarra's altered QDRO (ROA.1054-1055).

6.    On July 21, Yan signed an objection letter (ROA.2028) to USBank, asserting he did *not* have a spousal support hearing and that his funds are protected under *procedural due process*. Knowing that attorneys *mailed* USBank with the fraudulent May 26 order, Yan attached a copy of the actual April 13 order as proof.

7.    On August 1, in response to Yan's objection, USBank admitted the *issue of fact* that the May 26 order was "*in direct conflict*" (ROA.2032) with the April 13 order. However, they determined an *issue of law* based on a manufactured legal theory that the May 26 order (*spousal support*) was "in *addition* to, and *separate* from" the April 13 order (ROA.2018, ROA.2032), despite Yan's objection that no spousal support hearing occurred on April 13, rendering the additional order a violation of Due Process. USBank disregarded Yan's objection and diverted the funds without questioning the court in September 2022.

8.    After learning that Yan objected to the altered QDRO, on August 5, BarrowsYbarra emailed (ROA.1115) Pigg, asking him to coordinate, stating, "*In order for us to obtain our attorney's fees*, the order *must* say the fees are for *spousal support*. There is *no way around* it."

9.    On August 7, Piggs emailed (ROA.1115) Yan, "at the hearing in April, you were ordered to get 50K from your 401(k)…Leslie tried to get her $25k via a QDRO, claiming it was for *spousal support – not attorney's fees as ordered*. I *did not sign off* on that [May 26] QDRO because it *would not be true* and I *am not going to sign a* [May 26] court document that *is not true*." (Pigg lied; he still wanted his $25,000, so he told Yan that he did not sign the May 26 order, even though he actually signed it twice).

10.   On August 8, Piggs emailed (ROA.1117) Yan, "the legal issue is that we either *have to lie* and *accept* the QDRO…" (Pigg indeed lied on August 29 and accepted the QDRO).

11.   On August 29, despite the fact that the Texas law do not authorize an associate court to re-clarify its temporary order 135 days after rendition, Barrows colluded DeAngelis to put pressure on Pigg in an email (ROA.1118), stating, "we need to clarify... *a ruling for attorney's fees* in her AJ's report." Pigg coordinated with Barrows to approve releasing the ERISA funds.

12.   Marin and Martinez (ROA.1126-1129) dismissed Yan's grievances against Barrows and Pigg. Yan appealed both decisions to the Board of Disciplinary Appeals (hereinafter "BODA")—the highest tribunal for lawyer discipline.

13.   BODA reversed only 6.1% of classification appeals in 2022-2023[3], with Yan succeeding both (ROA.1122-1123). However, Craig dismissed both cases (ROA.1124-1125), playing a key role in sealing the cover-up. Despite the BODA reversals, Craig and SBTX (ROA.1061[¶¶123-124]) conspired to conceal the RICO scheme.

14.   The Tarrant DA office and Sheriff's office refused (ROA.1060[¶121]) to prosecute (ROA.1137).

15.   The Texas associate judge courts have a decade-long pattern (ROA.1067[¶155]) of ordering temporary QDROs (ROA.1180,ROA.1490-1519) (citing 360-549246-13, 360th Dist. Ct., Tarrant Cnty, Tex. (2014); 360-479099-10, 360th Dist. Ct., Tarrant Cnty, Tex. (2012); 322-547540-13, 322nd Dist. Ct., Tarrant Cnty, Tex. (2014);360-479099-10, 360th Dist. Ct., Tarrant Cnty, Tex. (2011); D1-FM-08-005770, 53rd Dist. Ct., Travis Cnty, Tex. (2009)) to pay attorney's fees to both counsels, a breach of law (ROA.1061[¶¶125-126]) unknown to the public due to their inadequate legal knowledge.

---

[3] Bd. of Disciplinary Appeals, 2023 Annual Report 1 (2023), https://www.txboda.org/sites/default/files/PDFs/2023%20Annual%20Report%20Final.pdf

16. The Fort Worth federal judges dismissed Yan's civil suit with prejudice (ROA.2094), blocking him from pursuing further civil remedies, while other victims remain unaware.

17. While Missouri prosecutes *§ 664* crimes (ROA.1534, ROA.1980), Texas, particularly Tarrant County, does not. In Tarrant County, family court attorneys engaged in pension embezzlement, benefiting an associate judge through political contributions (ROA.1548-1549, ROA.1994-1995) (Barrows far right, DeAngelis second from the right).

18. SBTX disciplines some Texas attorneys for moral turpitude (ROA.1537, ROA.1543, ROA.1983, ROA.1989), but not others who obtain racketeering income for the corporation (ROA.1072). For them, a family's tragedy becomes a predatory opportunity, with Fort Worth judges and attorneys even personally boasting these misconduct[4].

II. <u>Alleged facts must assumed to be true, including but not limited to (ROA.1037-1180):</u>

1. Part of the funds for Deangelis' judicial election campaign came from attorneys' *§ 664* racketeering income (ROA.1049[¶80], ROA.1050[¶85],

---

[4] TEXAS JUDGE & KOONS AND FULLER ATTORNEYS: Shocking Performance Exposed!, *YouTube* ( O'Keefe Media Group, August 15, 2023), https://www.youtube.com/watch?v=HK2aDDwCckk

ROA.1052[¶91], ROA.1053[¶97], ROA.1067[¶154], ROA.1296[¶6], ROA.1314[¶83], ROA.1315[¶90], ROA.1974[¶3], ROA.1976[¶12]).

2.   SBTX collects fees from attorneys, using funds that came from part of the racketeering and monopolization income to operate, including its disciplinary counsel, which functioned to provide ongoing RICO and monopoly scheme cover-ups as a benefit to well-connected attorneys. (ROA.1066-1068[¶¶149-152,155-157], ROA.1062-1063[¶¶127-133]).

3.   BarrowsYbarra, Pigg and USBank engaged RICO fraud acts through emails and mailsl (ROA.1046-1047[¶¶69-74], ROA.1051-1057[¶¶87-108]).

4.   BarrowsFirm operates using part of the racketeering income under the control of Barrows. (ROA.1068[¶¶157-159], ROA.1072-1073[¶¶168-170]).

5.   BarrowsYbarra and Pigg colluded forcing Yan to sign a divorce settlement, tried to seal the conspiracy. Yan refused. (ROA.1057[¶108]).

6.   Within 48 hours, Pigg withdrew (ROA.1047[¶74], ROA.1057[¶108], ROA.1095[¶323]) and abandoned Yan's case in attempt to cover up the RICO scheme, and sabotaged Yan's attempt to expose. (ROA.1075[¶179], ROA.1095[¶323]).

7.   MarinMartinzeCraig "read" Barrows' email and accepted the solicitation, decided to cover up. (ROA.1060[¶120], ROA.1072[¶166], ROA.1073[¶171]).

8. USBank conspired with state actors, deprived Yan of his 401(k) without procedural due process, and altered Yan's marriage status to covered up. (ROA.1106-1107[¶¶407-411])

9. SBTX holds a monopoly over the legal services market, particularly in family courts, where both lawyers and judges are bar associates. SBTX associates committed predatory acts to obtain unjustified excessive fees, exploiting their advantage over legally inexperienced clients. (ROA.1080-1086[¶¶217-243])

10. SBTX associates acting as judges unjustly awarded attorney's fees to their peers serving as counsel, using court proceedings as a tool to exploit the legal service monopoly. (ROA.1063[¶¶127-128])

11. Yan, with limited legal knowledge, couldn't advocate for his rights because his counsel betrayed him by waiving arguments on attorney fees, thereby awarding those fees to themselves. (ROA.1399[¶41], ROA.1603[¶34], ROA.2113[¶37])

12. SBTX associates' conspiracy actions in obtaining excessive legal service fees from Yan through prepayment, sometimes without jurisdictions, constitute unjustified predatory acts in a monopoly. (ROA.1046[¶¶68,70], ROA.1062-1063[¶¶129-133])

III. <u>Enough facts to state a claim to relief that is *plausible* on its face:</u>

1. Fact: As a matter of fact, this QDRO was altered on the face; All attorney Defendants are SBTX associates; Pigg stated, we "*have to lie* and *accept* the QDRO,"

and Barrows stated, "*In order for us to obtain our attorney's fees*, the order *must* say the fees are for *spousal support*. There is *no way around* it." Pigg later colluded with Barrows to consent to the unlawful disbursement of QDRO funds.

2.    Plausible fact: Premised on the allegation that Pigg lied and accepted the QDRO to allow BarrowsYbarra to obtain "*our attorney's fees*", MarinMartinzeCraig and any former/current SBTX associates may have also lied and accepted the <u>altered</u> QDRO to cover up, conspiring to conceal ongoing RICO scheme. Since 2022, every Texas judiciary actor lied, accepted this non-truthful QDRO, and circumvented remedying this ERISA funds injury (ROA.1057-1061). In the light most favorable, the provision "our attorney's fees" shall be liberally construed as "SBTX associates' racketeering income," as alleged by Yan.

## SUMMARY OF THE ARGUMENT

Yan claimed Minnesota ERISA fund injuries in all 9 claims, the issue of ERISA preemption is facially conclusive. ERISA preemption supersedes the Eleventh Amendment and all state laws. Yan pleaded supplemental prospective relief to prevent future ERISA violations, as the Supremacy Clause outweighs the Eleventh Amendment. The Decisions ignored the preemptive breadth of ERISA, RICO, *§ 664*, and the alleged racketeering income flow connecting the defendants.

Attorney fees obtained through *§ 664* racketeering activity must be returned to restore the status quo ante. This illegal embezzlement of ERISA funds cannot be justified under any interpretation of state or federal law. The decisions failed to apply *Nesses* reasoning, which distinguishes between claiming injuries caused by federal offense and disputes over state judgments. The guise of state proceedings does not exempt a federal offense claim. The Eleventh Amendment does not apply to federal suits against state actors in their individual capacities. The Texas constitution prohibits associate judges from exercising trial powers sua sponte. QDROs are statutory post-trial, final, and appealable remedies, associate judge lacks jurisdiction to issue QDRO. The altered QDRO was issued without notice, hearing, or rendition, violating due process, and it forged a cause of action was unsupported by pleadings.

Associate judges are not Article III judges and cannot receive blanket judicial immunity. The Decisions erred in citing state statutes to expand judicial immunity for state statutory judges. State law cannot expand federal common-law immunity. A magistrate's order may be ultra vires and void if it exceeds the scope of the Federal Magistrates Act, as could a state statutory judge's action.

Federal law declared by state courts is supreme over state law declared by federal courts. SCOTTX's 2022 *Taylor* ruled that federal causes of action cannot be barred by state law or policy. SCOTUS's 2023 *Axon Enter.* precedent emphasized

that only Article III courts can adjudicate cases involving property deprivation; state statutory courts cannot circumvent this barrier through unappealable temporary orders. *Ultra vires* is not exempt from sovereign or judicial immunity.

There is no federal absolute immunity for SBTX counsels in individual capacity, and state statutes granting such absolute immunity do not apply. The Interstate Commerce Clause bars sovereign immunity in RICO and antitrust matters. *Nesses* reasoning applies to SBTX counsels, who saw and accepted Barrows' conspiracy solicitation. SCOTUS's precedent *Ferri* and *Tower* ruled that private attorneys do not have federal immunity. *Taylor* held same. Both counsels colluded to alter/forge the court orders to obtain fees for themselves. This conduct is extrinsic fraud, structural error, infiltrating the legal framework.

The Decisions substituted Plaintiff's civil claims and underlying issues, ensuring reversal. The RICO dismissal was incorrect because it assumed Yan's claim involved money laundering, ignoring the embezzlement of pension funds and the second QDRO. The antitrust dismissal was incorrect because it focused on market competition, disregarding the unjustified predatory conduct in monopoly. The USBank RICO *12(b)(6)* ruling was flawed as the district court based its decision on USBank's motion, without citing Yan's complaint.

Yan's Rule *11* refiling was not frivolous; Imposing a sua sponte prefiling injunction without notice or hearing violated due process, prejudicing his constitutional right to object magistrate's FCR under *28 U.S.C. § 636* and to preserve issues and arguments.

The Order failed to dismiss Pigg's claims pursuant to Rule *54*, and the final judgment does not meet the finality.

## ARGUMENT AND AUTHORITIES

I. Standard of Review

This Court "review the district court's grant of an injunction for an abuse of discretion, and underlying questions of law de novo,"[5] "review a district court's interpretation of Rule [11 or 54 or 58] de novo,"[6] and "review de novo a district court's dismissal under"[7] Rule *12*.

II. Motion to Dismiss Standard

""Rule 12(b)(6) does **not** countenance ... dismissals based on a judge's **disbelief** of a complaint's factual allegations,") … (a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely.") … "[A] plaintiff

---

[5] *Newby v. Enron Corp.*, 302 F.3d 295, 301 (5th Cir. 2002).
[6] *U.S. v. Dean*, 100 F.3d 19, 20 (5th Cir. 1996).
[7] *Blankenship v. Buenger*, No. 15-50974, 5 (5th Cir. Jun. 28, 2016).

"receives the **benefit** of **imagination**, so long as the hypotheses are consistent with the complaint."" _Bell Atl. Corp. v. Twombly_, 550 U.S. 544, 556, 563 (2007).

"A motion to dismiss under Rule 12(b)(6) is "viewed with **disfavor** and is **rarely granted**." ... The complaint is liberally construed in the plaintiff's favor, and **all** well-pleaded facts in the complaint are taken as **true**. … The determining issue is not whether the plaintiff will ultimately prevail on the merits, but whether he is entitled to offer evidence to support his claim. … Therefore, this court will not dismiss **a** plaintiff's claim, "**unless** the plaintiff will not be entitled to relief **under any set of facts** or **any possible theory** that he could prove consistent with the allegations in his complaint."" _Priester v. Lowndes County_, 354 F.3d 414, 418-19 (5th Cir. 2004).

"[A] court "must examine the complaint to determine if the allegations provide for relief on _any_ possible theory." ... "So long as a pleading alleges facts upon which relief can be granted, it states a claim even if it fails to categorize correctly the legal theory giving rise to the claim."" _Shaikh v. Tex. A&M Univ. Coll. of Med._, No. 16-20793, 13 n.7 (5th Cir. Jun. 20, 2018).

This Court will "consider an issue that a party fails to raise in the district court," if "extraordinary circumstances exist when the issue involved is **purely a legal one**

and failure to address it would result in a **manifest miscarriage of justice**." _Black v. North Panola School Dist_, 461 F.3d 584, 593 (5th Cir. 2006).

III.  Requiring Liberal Construction for Pro Se's pleadings

Stare decisis requires this Court to adhere to all precedents most favorable manner to pro se.

A.  Liberal construction standard applies to all pro se filings as to do substantial justice.

All filings of pro se should be liberal construed, per _Erickson v. Pardus_, 551 U.S. 89, 94 (2007).

"_Erickson_ ... see also Fed. Rule Civ. P. 8(f) ("**All** pleadings **shall** be so construed as to **do substantial justice**.")" [8]

"[A]**mbiguity must be viewed in the pro se plaintiff's favor**. _Erickson_..."[9]

"_Rutila v. Dep't of Transp_., … (quoting _Erickson_ ... ("**A document** filed **pro se** is to be **liberally construed**."))."[10]

"_Erickson_ ... (holding that the **objections** of a petitioner **appearing pro se** will be **construed liberally**)."[11]

---

[8] _Ford v. British Petroleum_, CIVIL ACTION NO. 12-965, 10 n.62 (E.D. La. Mar. 17, 2014).
[9] _Goins v. City of Sansom Park_, Civil Action No. 4:14-cv-365-O, 3 (N.D. Tex. Jun. 29, 2015).
[10] _Moran v. Simpson (In re Life Partners Holdings, Inc.)_, No. 21-11231, 5 n.11 (5th Cir. Jul. 6, 2022).
[11] _McQueen v. City of Cincinnati_, Case No. 1:20-cv-00864, 2 (S.D. Ohio May. 12, 2021).

B.    <u>All materials subsequently filed are required to be considered as amendments to original complaint in pro se's favor</u>

"Due to the liberal consideration accorded pro se pleadings, … we consider this "**Motion**" an **amendment** to … original complaint."[12] And "under the less stringent standards applicable to **pro se litigants**. … Most importantly, however, the court was **required** to look **beyond** the … **formal complaint** and to **consider as amendments** to the complaint **those materials subsequently filed**. … to consider the … **motion**, **memorandum** in support, and **affidavit**, as **amendments** to the complaint. These documents embellished the original complaint's averments, and **each should** have been considered."[13]

C.    <u>The FRCP does not require pro se "to plead the legal theory, facts, or elements underlying his claim</u>

"[P]laintiffs need only plead facts—not legal theories," [14] and ""it is **unnecessary** to set out a legal theory for the plaintiff's claim for relief." [15] ""[C]omplaints plead **grievances**, not legal theories." … So it didn't matter that a complaint "**initially** relied **only** on [**some** cause of action]"—the plaintiff could still invoke [**other** cause of action] "at **later** stages of the suit." … What's more, the plaintiff "**did not** [even] **need** to **amend** the complaint to do so.""[16]

---

[12] *Wright v. El Paso County Jail*, 642 F.2d 134, 135 n.1 (5th Cir. 1981).

[13] *Howard v. King*, 707 F.2d 215, 220 (5th Cir. 1983).

[14] *Bye v. MGM Resorts Int'l*, 49 F.4th 918, 929 (5th Cir. 2022).

[15] *Id.*

[16] *Id.*

D.  <u>This Court has discretion to consider any noncompliant brief.</u>

"a *pro se* appellant's brief despite its technical noncompliance with the Rules of Civil Procedure when it **at least** argued ***some* error** on the **part** of the district court. … (considering issue even after criticizing brief for failing to cite to the record for argument…); … (addressing issue even though the "only reference appellant makes to the district court's dismissal of his lawsuit is to assert that `this action is not time barred'"); … (considering brief because it "contains an assertion of trial court error"). This Court has discretion to consider a noncompliant brief, and it has allowed *pro se* plaintiffs to proceed when the plaintiff's noncompliance did not prejudice the opposing party."[17]

IV.  <u>Authorities:</u>

A.  Federal statutes

*U.S. Const. Art. I, § 8, cl. 3;*

*15 U.S.C. §§ 1, 2;*

*18 U.S.C. §§ 664, 1341, 1343, 1956, 1961, 1962, 1963, 1964;*

*28 U.S.C. § 636;*

*29 U.S.C. §§ 1056, 1132, 1144;*

*42 U.S.C. § 1983;*

B.  SCOTUS precedent

"[L]ower courts should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions." <u>*Agostini v. Felton*</u>, 521 U.S. 203, 207 (1997).

---

[17] *Grant v. Cuellar*, 59 F.3d 523, 524-25 (5th Cir. 1995).

C. State statutes

*Tex. Fam. Code* §§ 9.102, 109.001, 201.007, 201.017;

*Tex. Gov't Code* §§ 81.054, 81.072, 81.106.

V.　　<u>Rule *12* dismissal does not pass the threshold unless all sets of facts and all possible legal theories are considered.</u>

Federal courts must thoroughly determine whether Yan "would be entitled to relief under *any set of facts* or *legal theories* consistent with the allegations in the complaint." <u>*Great Plains Tr. v. Morgan Stanley Dean Witter*</u>, 313 F.3d 305, 326-327 (5th Cir. 2002). Even if Yan is not entitled to relief under certain facts or theories, it does not preclude relief under others. The Decisions erred in considering partial facts and legal theories, omitting key provisions.

A. The Decisions circumvented ERISA preemption, which supersedes the Eleventh Amendment and all state laws, resulting in a manifest miscarriage of justice.

All nine claims (ROA.1063-1110) sought relief premised on ERISA fund injuries, but the Decisions circumvented the ERISA preemption. "ERISA preemption clause is conspicuous for its breadth." <u>*FMC Corp. v. Holliday*</u>, 498 U.S. 52, 58 (1990). It is "virtually unique" <u>*Franchise Tax Bd. v Laborers Vacation Trust*</u>, 463 U.S. 1, 25 n.26 (1983), "one of the broadest pre-emption clauses ever enacted by Congress." <u>*Evans v. Safeco Life Ins. Co.*</u>, 916 F.2d 1437, 1439 (9th Cir. 1990).

"[I]f Congress "so completely pre-empt[s] a particular area that **any** civil **complaint raising** this select group of claims is **necessarily federal in**

**character**. … claims seeking relief within the scope of **ERISA** *§ 502(a)(1)(B)* are **completely preempted**" *Arana v. Ochsner Health Plan*, 338 F.3d 433, 437 (5th Cir. 2003).

"ERISA grants federal courts exclusive jurisdiction **separate** and **apart** from its articulation of causes of action." *ACS Recovery Services, Inc. v. Griffin*, 723 F.3d 518, 523 (5th Cir. 2013). "ERISA *§ 514(b)(2)(A)* must be interpreted in light of the congressional intent to create an **exclusive** federal remedy in ERISA *§ 502(a)*." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 217 (2004).

"ERISA preempts state law, *29 U.S.C. § 1144(a)."* *Goff v. Taylor*, 706 F.2d 574, 587 (5th Cir. 1983). Although the State of Texas pleaded Eleventh Amendment, this Court's precedent disregarded sovereign immunity defense, *E-Systems, Inc. v. Pogue*, 929 F.2d 1100 (5th Cir. 1991). "The preemptive scope of ERISA is "intended to apply in the broadest sense **in all actions** of **State** or local governments which have the force of law." …. "The pre-emption clause … establishes as an area of **exclusive** federal concern the subject of **every state law** that `**relate**[s] to' an employee benefit plan governed by ERISA."" *Id.* at 1103.

The phrase "relate to" ""express[es] a broad pre-emptive purpose." "[A] state law may 'relate to' a benefit plan, and thereby be pre-empted, even if the law is not specifically designed to affect such plans, or the effect is only indirect."" *Gonzalez*

*v. Blue Cross Blue Shield Ass'n*, 62 F.4th 891, 904 (5th Cir. 2023). The Court further explained that "[t]he [Supreme] Court has squarely rejected the notion that "laws of general applicability" escape the broad "sweep of the 'relating to' [ERISA] language." …**the high Court's interpretation compels ours**." *Id.*

This Court "noted that preempted state law includes any state law cause of action as it relates to an employee benefit plan, **even if it arises under a general law** which in and of itself has no connection to employee benefit plans" *Christopher v. Mobil Oil Corp.*, 950 F.2d 1209, 1218-1219 (5th Cir. 1992).

ERISA preemption supersedes any state law providing immunity related to an ERISA violation, and it fundamentally places this case's legal analysis on a distinct footing. The Decisions never applied ERISA preemption, failing to address ERISA result in a manifest miscarriage of justice. which is an error.

B.   The Decisions erred in ignoring alleged ERISA prospective relief.

ERISA violation, on its own, is a **separate** and **distinct** civil action. "[B]ecause of the preemption factor…. [Yan can] bring a civil action "to **enjoin any act or practice** which violates **any provision** of [ERISA] or the terms of the plan,"" *E-Systems, Inc. v. Pogue*, 929 F.2d at 1102. Yan pleaded for prospective injunctive and declaratory relief (ROA.1076-1077[¶¶186-198],ROA.1087-1089[¶¶255-269]) to enjoin ongoing ERISA and constitutional violations, prevent state conspirator-actors

from issuing unconstitutional interlocutory QDROs, and stop the prepayment of attorneys' fees. Most importantly, Yan pleaded "identify all the victims … to inform every one of them" (ROA.1077[¶¶196,198],ROA.1089[¶¶267,269]), which is a "mere explanatory notice"—a permissible prospective relief. *Quern v. Jordan*, 440 U.S. 332, 333 (1979). "If [prospective] relief is sought against continuing federal violations, … the Supremacy Clause outweighs the Eleventh Amendment." *Green v. Mansour*, 474 U.S. 64, 77 (1985).

Yan and other victims are entitled to ERISA prospective relief. Without such relief, this statewide racketeering scheme and ERISA injuries will continue in future state proceedings.

The Decisions erred by omitting Yan's claims for ERISA *prospective relief*, focusing only on monetary relief, and mistakenly applying judicial, attorney, and sovereign immunity.

C.    The Decisions failed to identify and conclude other key alleged provisions.

Yan alleged an unlawful *altered* QDRO, not "arguing certain order was wrong, even *really* wrong" (ROA.2084,ROA.2109[¶21]), alleged injury from ERISA funds, not "certain funds under his control" (ROA.1681), alleged racketeering ERISA fund embezzlement, not racketeering "launder money" (ROA.2089,ROA.2091) and alleged predatory conduct in a monopoly, not "market competition" (ROA.2080,

ROA.2090). The Decisions substituted allegations (ROA.1701-1703[¶¶1-6]). Such wordplay hides the legal theory and undermines trust in the court's integrity (ROA.2120-2123[¶¶69-83]).

The FCR concealed the nature of claims alleging pension fund embezzlement— a *§ 664* predicate act—by framing Yan's complaint as merely a disagreement over "an ongoing state court divorce proceeding," (ROA.1681) despite of the fact his wife is not even a party. Instead of plainly referring to the "***pension fund***" or "***employee pension benefit plan***," the FCR employs vague language such as "attorneys' fees and spousal support from ***certain funds under his control***" (ROA.1681). This misrepresentation (ROA.1701[¶1]) creates the false impression that this is merely a routine family court dispute, concealing Yan's critical allegations of ERISA violations. The Decisions entirely circumvented referring to any key provision, such as <u>interlocutory</u>/<u>temporary</u> QDRO, <u>pension fund</u> and relevant statutes: *"§ 664," "§ 1962," "§ 1343,"* and "ERISA." (ROA.1701[¶1]) The Decisions erred by substituting Yan's alleged cause of action with "<u>market competition</u>" and "<u>launder money</u>," (ROA.2080) which Yan *never* alleged in the complaint.

Below is a table demonstrating the obvious manipulation of key provisions.

| Provision | Meaningful occurrences in Yan's complaint | Meaningful occurrences in court's FCR (exclude quotation) | Meaningful occurrences in Yan's objection (exclude quotation) | Meaningful occurrences in court's final Order (exclude quotation) | Meaningful occurrences in Yan's 59(e) motion (exclude quotation) |
|---|---|---|---|---|---|
| ERISA | 22 | 0 | 14 | 0 | 23 |
| temporary QDRO or interlocutory QDRO | 13 | 0 | 0 | 0 | 13 |
| altered | 1 | 0 | 1 | 0 | 0 |
| fraud or fraudulent | 64 | 1 | 1 | 0 | 28 |
| § 664 | 19 | 0 | 5 | 0 | 10 |
| §§ 1961, 1962, 1964 and 1965 | 101 | 0 | 3 | 0 | 0 |
| §§ 1341, 1343 | 33 | 0 | 0 | 0 | 2 |
| Yan did not allege § 1956 or "launder money" | 0 | 0 | 0 | 3 | 0 |
| Yan did not allege "Market competition" | 0 | 0 | 0 | 2 | 0 |
| Yan alleged Monopoly or similar | 22 | 0 | 2 | 0 | 11 |

D.   The FCR failed to find the fact of the *multiple* alleged unlawful temporary QDROs.

The FCR erred in omitting a critical factual element of RICO pattern—the *second* temporary QDRO (ROA.1180). Yan pleaded *two* predicate acts to establish a RICO pattern: *one* temporary QDRO from his case and *another* temporary QDRO from a different case (360-549246) *nine years* ago. Yan alleged a pattern of *§ 664* racketeering scheme, premised on a ground of *two predicate acts* and a *continuity*.

Thus, this lawsuit highlights a broader issue, involving a decade-long practice of family court attorneys and judges for utilizing *unappealable temporary* QDROs to siphon ERISA-protected funds using for attorney fees. Moreover, Yan alleged a racketeering that affects victims statewide, elevating the issue to a matter of public financial security concern (ROA.1031-32[¶¶5-6]).

Yan's RICO claims alleged a clear pattern of racketeering, not mere impropriety. Yan presented concrete facts, including *two* QDROs that were pleaded as specific examples, not just narrative. Additionally, Yan cited *five* unappealable temporary QDROs (ROA.1490-1519) rendered in the last ten years.

The FCR erred in omitting the *second* temporary QDRO and other *five* QDROs in its findings.

E.   The Decisions ignored the breadth of ERISA, *§ 1962* and *§ 664* provisions.

With "any" used 14 times and "indirectly" 4 times, the express phrases "any part of income," "directly or indirectly," and "any part of such income, or the proceeds of such income" in *§ 1962* convey the breadth.

The plain language of *§ 664* ["his own use or to the use of another, any of the moneys, funds…"] shows that the *§ 1962* provision "reaches assets that could be used to pay [STBX] attorney's fees," demonstrating breadth not ambiguity. <u>*See United States v. Monsanto*</u>, 491 U.S. 600, 609 (1989) (citing <u>*Sedima, S.P.R.L. v. Imrex Co.*</u>, 473 U.S. 479, 499 (1985). "([A] statute's application in situations not expressly anticipated demonstrates breadth, not ambiguity)." <u>*Finley Res. v. Headington Royalty, Inc.*</u>, 672 S.W.3d 332, 340 n.25 (Tex. 2023) (citing <u>*Cf. Pa. Dep't of Corr. v. Yeskey*</u>, 524 U.S. 206, 212 (1998)).

This case is fundamentally premised on the preemption and breadth of ERISA, RICO and *§ 664*. <u>Any portion</u> of <u>racketeering income</u>, unlawfully <u>obtained from ERISA funds</u> by upstream conspirators, and used <u>directly</u> or <u>indirectly</u>, for downstream conspirators' activities, forms the racketeering enterprise. State laws, including *Tex. Gov't Code §§ 81.072, 81.106*, cannot bar an ERISA and RICO suit. The Decisions erred in disregarding this breadth. Yan alleged that, for decades, SBTX member-conspirators has been embezzling clients' ERISA funds for personal or SBTX's use, with <u>part</u> of <u>such income</u> used to pay SBTX fees under *Tex. Gov't*

*Code § 81.054* (ROA.1066[¶149]). Yan made similar allegations against BarrowsFirm (ROA.1068[¶¶157-59]). Yan alleged that a portion of the racketeering income flows to SBTX in the form of annual license fee, which continually aids RICO and Antitrust Defendants acting as officers of the court in obtaining the privilege of underwriting court documents (ROA.1032[¶8], ROA.1056[¶103], ROA.1062[¶128], ROA.1066[¶149], ROA.1067[¶156], ROA.1073-1074[¶¶172-173], ROA.1080[¶217]). The Decisions erred in disregarding all allegations.

F.   The Decisions failed to apply the *Nesses* reasoning and to distinguish alleged capacity.

Family court proceedings are not a paradise for federal white-collar crime. This Court adopted *Nesses* reasoning from *Nesses v. Shepard*, 68 F.3d 1003 (7th Cir. 1995) in *Truong v. Bank of Am., N.A.*, 717 F.3d 377 (5th Cir. 2013). *Truong* (ROA.1702[¶5]) reaffirms a federal remedy where state proceedings are corrupted to facilitate a federal offense. It has been cited hundreds of times, reinforcing the principle that claims under federal civil causes of action and those disputing a state judgment are distinct. See also *Housing v. Queen*, No. 14-30512 (5th Cir. Mar. 12, 2015). To ensure justice, the Decisions should have applied *Nesses* reasoning to distinguish the premise of Yan's suit but failed to do so.

Yan objected to mischaracterization of his claims (ROA.1701-1703). He expressly invoking *Nesses* reasoning (ROA.1702[¶¶4,5],ROA.1705[¶12]) to

distinguish between disputing state rulings for constitutional rights violations and federal claims based on independent statutes. Yan emphasized that his case is independent of disciplinary grievance, custody, or asset division (ROA.1702[¶5]). This case's allegations are unrelated to the state proceedings and concern federal violations involving collusion among state actors. A favorable outcome in state proceeding would not impact this case.

The decisions mischaracterized Yan's claims as an attempt to relitigate state divorce and disciplinary proceedings, ignored *Nesses* reasoning, and cited irrelevant precedents that wrongly conflated his case with efforts to modify or reverse state rulings.

Additionally, the Decisions erred in applying the Eleventh Amendment over individual capacity. "As to a claim brought against him in his individual capacity, however, the state official has no Eleventh Amendment immunity. …Eleventh Amendment does not bar award of damages to be paid not from the state treasury but from the official's personal funds)." *Ying Jing Gan v. City of New York*, 996 F.2d 522, 529 (2d Cir. 1993). Yan did not allege RICO and Antitrust Defendants' acts under official capacity, except in some *§ 1983* claims. The Decisions improperly substituted DeAngelis's and MarinMartinezCraig's alleged individual capacity roles (ROA.1036) in the RICO and antitrust claims with their official capacities as judge

and SBTX counsel, violating the principle that ambiguity must be resolved in favor of a pro se plaintiff, with pleadings construed to ensure substantial justice.

## VI. Issuing temporary QDRO to award attorney fees or altering QDRO under the guise of spousal support to circumvent ERISA anti-alienation provision, with the true intention of obtaining attorney fees, is unlawful and constitutes a *§ 664* predicate act. All money must be returned.

A. Associate judge's court has no jurisdiction to render a trial remedy QDRO.

A QDRO is an exclusive final, appealable order, and a post-divorce or final trial remedy (ROA.2124[¶87]) under the district court's constitutional jurisdiction over a *petition,* pursuant to Texas law and SCOTTX's precedents (ROA.1041-1042[¶¶45-49]).

In Texas, all trials are conducted before judges, associate judges are creatures of statute and are not vested with the authority to render a final order under the Texas constitution (ROA.2127[¶107]).

*29 U.S.C. § 1056(d)(3)(B)(i)* expressly excludes attorneys from the scope of diverting ERISA funds to alternate payees (ROA.1043-1045[¶¶57-64]); **"**any power the trial court had to enter the *post-divorce order* **must** come from state law. … If **no state law** authorizes the order, ERISA does not apply, and the trial court still **lacked authority** to enter the order at issue. … ERISA's **anti-alienation** and **preemption** clauses **do not**, however, **grant** a state court **authority** to issue an order that the

state's law **does not authorize**" _See_ _Dalton v. Dalton_, 551 S.W.3d 126, 139 (Tex. 2018).

RICO Defendants knowingly exploit the temporary order's *unappealable* nature barrier created under _Tex. Fam. Code § 109.001(c)_. They use this statutory loophole to obtain attorney's fees by issuing *unappealable* temporary QDROs, constituting _§ 664_ crime, knowing that laypeople are impossible to uncover truth through appellate review.

B. Altering order act is usurpation of judicial authority, displacing the court as decision maker.

BarrowsYbarra and Pigg colluded _altering_ the QDRO to circumvent _29 U.S.C. § 1056(d)(3)(B)(i)_ barrier (ROA.1047[¶¶71-72]). The judiciary integrity should not tolerant this conduct. "Lawyers and litigants do not have the authority to issue orders, nor do they have the authority to vacate, rescind, or modify court orders." _In re K.A.R_, 171 S.W.3d 705, 715 (Tex. App. 2005). "[C]ounsel "effectively usurped the court's role and displaced the court as decision maker. … [counsel] interfered with a core function of the court."" _In Interest of J.V.G._, No. 09-06-015 CV (Tex. App. Jul. 12, 2007).

"Allowing any attorney to usurp constitutional judicial power to have the authority to render court orders at their own discretion is an extrinsic fraud, a structural error that affects the infrastructure of Texas legal framework"

(ROA.2109[¶22]),ROA.2112-2113), this is "simultaneously throwing a large monkey wrench into the judicial simultaneously throwing a large monkey wrench into the judicial machinery" *Aoude v. Mobil Oil Corp.*, 892 F.2d 1115, 1118 (1st Cir. 1989) (ROA.2110). The Decisions erred by finding that alleged "wrongful actions [altering order] **occurred during** the **scope** of his ongoing divorce **proceeding**," and therefore are immune (ROA.1695).

C. The altered QDRO was under a forged cause of action that was never pleaded into the case.

Changing the civil cause of action to spousal support breached fundamental legal principle. Yan's ERISA fund was deprived in a state proceeding without any Due Process elements: no notice, hearing, or fair trial regarding the claim of spousal support. (ROA.2020[¶85],ROA.2126[¶100]).

Texas court "cannot grant relief *without pleadings to support it*, and a [order] which is not supported by pleadings is *void*. ...A party *must* recover in the right in which he sues and upon proof of the facts stated in his pleadings; he cannot recover through a right not asserted." *Rankin v. Bateman*, 686 S.W.2d 707, 711 (Tex. App. 1985). Texas court's order "*must* conform to the pleadings." *Kazmi v. Kazmi*, No. 03-22-00330-CV, 14 (Tex. App. Nov. 17, 2023). "The inclusion of a request for general relief cannot enlarge a pleading to include a *different cause of action* for

which fair notice *does not exist*." *Westchester Fire Ins. v. Nuckols*, 666 S.W.2d 372, 375 (Tex. App. 1984).

The court acquires subject-matter jurisdiction through a claim, which "is an Art. III as well as a statutory requirement." *Ins. Corp. of Ir. v. Compagnie Des Bauxites De Guinee*, 456 U.S. 694, 702 (1982). Texas courts "*cannot exercise* jurisdiction where *none exists*," *Tex. Dep't of Pub. Safety v. Sunuc*, No. 13-19-00443-CV, 17 (Tex. App. Feb. 3, 2022) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998)) "*Steel Co*. …holding that a court "act[s] ultra vires" when it assumes "hypothetical jurisdiction" in order to rule on the merits)." *Mendoza v. Strickler*, 51 F.4th 346, 352 (9th Cir. 2022). The decisions failed to recognize that without a valid claim, the QDRO proceeded without jurisdiction. While most *§ 1983* claims do not override immunity, the lack of subject-matter jurisdiction and deprivation of ERISA funds under color of law in this case preempts any immunity.

D. All the fees that Texas attorney unlawfully obtained from ERISA funds must be returned to restore the status quo ante.

"[T]he United States Supreme Court [had] made it **abundantly clear** that 'ERISA's pension plan anti-alienation provision is mandatory and contains only two explicit exceptions, . . . which are **not subject to judicial expansion**.'"" *Heckert v. Heckert*, No. 02-19-00298-CV, 11 (Tex. App. May. 21, 2020). (quoting *Boggs v. Boggs*, 520 U.S. 833, 851 (1997)).

"In creating the QDRO mechanism Congress was careful to provide that…[t]hese provisions are essential to … give enhanced protection to the spouse and dependent children in the event of divorce or separation." _Boggs_ at 847.

"Congress has made clear its desire for pre-emption. Accordingly, we have not hesitated to find state family law pre-empted when it conflicts with ERISA or relates to ERISA plans" _Egelhoff v. Egelhoff_, 532 U.S. 141, 151 (2001).

Neither ERISA's anti-alienation provision allows Deangelis to issue a QDRO for attorney fees under a jurisdiction her court does not possess, nor does ERISA's preemption provision allow BarrowsYbarra and Pigg to alter the order to circumvent the anti-alienation provision for the purpose of obtaining "our fees" and being subsequently shielded under "our" SBTX associates' conspiracy.

The State of Texas was not granted sovereign immunity in _E-Systems, Inc._, nor should SBTX receive sovereign immunity for being indirectly funded through racketeering income. "The State received monies from the ERISA plans to which it was not entitled. The funds must be returned. **The parties are to be restored to the status quo ante.**" _E-Systems, Inc.,_ at 1104. The State of Texas returned tax income in 1991.

Texas family attorneys have unlawfully acquired legal service revenues from ERISA funds, with part of the racketeering income paid to SBTX for operations,

including the Chief Disciplinary Counsel, which functioned to control damage and continue maintaining future racketeering income inflow (ROA.1066-1068[¶¶149-159]). SBTX attorneys must return unentitled fees to restore the status quo ante as well. There is no justification for allowing SBTX to continue receiving any racketeering income derived, directly or indirectly, from *§ 664* acts, in contradiction to the ruling in *E-Systems, Inc.*. Yan sought to prevent further injuries, and prior unlawful diversions should be refunded, as should those affecting everyone else (ROA.1077[¶¶196-198]),ROA.1089[¶¶267-269]). Yan pleaded dissolving RICO enterprises (ROA.1076[¶¶192-194]). The Decisions maintained the status quo ante for the perpetrators and RICO crimes, leaving the victims' ERISA funds unrestored.

The Decisions wrongly applied state law immunity exemptions, disregarding ERISA preemption, which governs and protects retirement Funds while preempting conflicting state laws.

VII.  **The court erred in granting Deangelis' *12(b)(1)* motion regarding RICO, antitrust and *§ 1983* claims.**

A. A state statutory judge should not be granted blanket federal common-law judicial immunity without examining federal and state statutes.

The FCR erred in concluding that Yan lacked "standing to sue in federal court for unfavorable outcomes in a state court proceeding," citing one binding and one merely persuasive case (ROA.1686). Both cases cited in the FCR were based on the *Nesses* reasoning's type one: a constitutional claim attempting to reverse an unfavorable child custody ruling in state court. Yan alleged that Deangelis' *ultra vires* acts (ROA.1037-1045) lacked constitutional jurisdiction or statutory authority to render monetary relief arising from a criminal case in family court, or to compel a consumer to prepay legal service providers through ERISA funds (ROA.1041, ROA.1051, ROA.1052, ROA.1311-1315).

The Decisions also erred in failing to distinguish between a state-elected judge and a state statutory judge (ROA.2127[¶104]). All cited precedents (ROA.2081) apply judicial immunity to Article III judges. The Decisions are erred because "doctrines like judicial immunity can be difficult for laypersons to understand (and sometimes for legal professionals)" (ROA.2083).

A federal offense does not become automatically immutable simply because the crime occurs in a court setting. A federal magistrate's order could be *ultra vires* and *void* because a magistrate is not an Article III judge, *Jones v. Johnson*, 134 F.3d 309,

310 (5th Cir. 1998) (citing *Dye v. Cowan*, 472 F.2d 1206, 1207 n. 1 (6th Cir. 1972)). If a magistrate issues orders exceeding the scope of functions delineated by the Federal Magistrates Act, those actions are beyond their scope of authority. Judicial decisions involving duties inconsistent with the Constitution and laws of the United States are not within the prerogative of a federal magistrate, nor can they be delegated to him by a federal district judge.

Deangelis' standing is similar, DeAngelis is not a judge (ROA.2127[¶107]). The Texas Constitution does not vest associate judges with the authority to act as judges, *In re D.L.M.*, 982 S.W.2d 146, 149 (Tex. App. 1998)) (citing Tex. Const. Art. V, § 1). *Tex. Fam. Code § 201.007* explicitly limits the scope of "Powers of Associate Judge." The Decisions erred in granting blanket judicial immunity to DeAngelis, omitting an analysis of whether alleged acts are *ultra vires* (ROA.2125).

Not every remedy is outlined in *Tex. Fam. Code § 201.007*, and an appealable QDRO is not an option for an unappealable temporary order. A QDRO remedy is only available post-trial or during the final trial. Issuing a temporary/interlocutory QDRO in an associate judge's court is ultra vires, as *Dalton v. Dalton*, 551 S.W.3d 126, 138 (Tex. 2018), held that *Tex. Fam. Code § 9.102* expressly defines a QDRO as a final, appealable order and a post-divorce remedy under the trial judge's

exclusive jurisdiction over a *petition*. (ROA.1042[¶¶45-49], ROA.1044[¶58], ROA.2026[¶22], ROA.2124[¶88]).

The Decisions erred in concluding that DeAngelis' actions as being within her authority, consistently describing her judicial decision as an "interim order" while omitting the crucial "sua sponte" and "QDRO" elements.

The Decisions failed to determine the scope of jurisdiction or authority explicitly granted to an associate judge under *§ 201.007* (ROA.1042[¶49], ROA.1045[¶¶62-63]) and subsequently erred in finding that "Yan does not actually allege that Judge DeAngelis lacked jurisdiction or authority to hear the case or to issue the orders" (ROA.2082), despite Yan repeatedly alleged such claims.

B.   Federal judicial immunity applies only to Article III judges, state law cannot modify federal common law.

The Order erred in citing *Tex. Fam. Code § 201.017* as legitimate authority to apply judicial immunity. State law cannot expand federal common-law immunity. "The judicial immunity expanded to Texas family court associate judges is not the same as the original federal common law judicial immunity" (ROA.2129[¶115]).

"There is no federal general common law." *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938). Either state legislature or "Congress has no power to declare substantive rules of federal common law applicable in a state." *Id.*

"When a state statute, … or common-law cause of action conflicts with a federal statute, it is axiomatic that the state law is without effect." *Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 894 (2000); "Federal jurisdiction cannot be defeated by a state statute prescribing the court in which the action is to be brought." *Akin v. Louisiana National Bank of Baton Rouge*, 322 F.2d 749, 754 (5th Cir. 1963). SCOTTX recognized that "a federal cause of action that cannot be barred by *any state law or policy*." *Taylor v. Tolbert*, 644 S.W.3d 637, 656 (Tex. 2022).

The immunity expanded in *§ 201.017* is merely state immunity. The Decisions erred in assuming it is federal immunity. "**Federal courts (except for the Supreme Court) are not superior to state courts, or higher in any theoretical order of precedence**. Federal law is supreme and [] supersedes state law no matter what court declares it. **Federal law declared by a state court [] is *supreme* over state law declared by a federal court**. It is not the forum that counts, but the law-making authority." *R.W.T. v. Dalton*, 712 F.2d 1225, 1233 (8th Cir. 1983).

Although "[c]ourts of appeals must review *de novo* district courts' state law determinations" *Salve Regina College v. Russell*, 499 U.S. 225 (1991). However, after SCOTTX ruled that a federal claim cannot be barred by Texas law, the *Taylor* decision remains the controlling authority today. No federal district court, or even

this Court, can declare that *§ 201.017*, or any other state law, can be used to defeat a federal claim.

Only SCOTUS can overrule SCOTTX's *Taylor* decision on this matter. Under *28 U. S. C. § 1257*, lower federal courts are precluded from exercising appellate jurisdiction over final state-court judgments. "[T]his grant of jurisdiction is exclusive: review of such judgments may be had only in [SCOTUS]." *Lance v. Dennis*, 546 U.S. 459, 463 (2006).

The Decisions erred in concluding that even if judicial immunity does not apply, federal court would still abstain under the *Younger* doctrine (*Younger v. Harris*, 401 U.S. 37 (1971)) (ROA.2083[n.3]) concerning the *§ 1983* claim. The Supreme Court has made clear, abstention is appropriate only in certain enumerated circumstances. *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69 (2013) (holding that *Younger* abstention does not extend to state civil proceedings merely because they implicate "important state interests" and provide an "adequate opportunity to raise [federal] challenges").

Yan brings a 401(k)-injury claim, "the issue of ERISA preemption is **"facially conclusive**," *Younger* abstention does not apply." *Colonial Life Accident Insurance Company v. Medley*, 584 F. Supp. 2d 368, 375 (D. Mass. 2008) (ROA.2123-2124[¶86]). "The rationale behind this exception is that there is no significant state

interest at issue "when it is clear that the state tribunal is acting **beyond** the lawful limits of its authority.""

Therefore, the Order erred in citing *§ 201.017* to assert federal immunity defense, failing to distinguish between federal and state immunity, and ignoring ERISA preemption.

C.   Article III does not permit non-Article III court to try cases involving deprivations or transfers of a citizen's liberty or property.

The latest SCOTUS precedent reaffirmed that only Article III court has jurisdiction over deprivations or transfers of life, liberty, or property. Deangelis' statutory court is not an Article III court. "Cases involving ... **deprivations** or transfers of life, **liberty**, or **property** constitute a 'core' of cases that ... *must* be resolved by Article III courts[.]" *Axon Enter. v. Fed. Trade Comm'n*, 143 S. Ct. 890, 908 (2023) (ROA.1395,ROA.1616).

An unconstitutional deprivation of property or liberty does not escape federal court review simply because it is orchestrated during the state statutory court proceedings, and ERISA supersedes all state laws and procedures.

DeAngelis is alleged to have acted *ultra vires* by ordering Yan to transfer his ERISA funds to Barrows and Pigg without constitutional jurisdiction or statutory authority. She also ordered the transfer of ERISA funds for the prepayment of

attorney's fees to Barrows and Pigg without any petition. The compelled prepayment, despite Yan's legal service contract with Pigg, is also beyond the state court's authority, depriving Yan of his liberty to contract, yet she sua sponte advocated for fellow bar members (ROA.1046,ROA.1050,ROA.1174). The decisions failed to conclude that federal relief is available against DeAngelis for usurping constitutional judicial authority and acting ultra vires. See Section: Statement of Facts.

VIII.    <u>Core civil cause of action is substituted with another claim that neither party briefed, this guarantees a reversal.</u>

The FCR initially granted the SBTX and other Antitrust Defendants blanket sovereign immunity, dismissed with prejudice, on the alleged *§ 2* claim (ROA.1078) without further examining the alleged predatory conduct (ROA.1689-1692). It stopped at the finding of facts, based on the premise that there was no need to proceed further due to a *12(b)(1)* dismissal for lack of jurisdiction. Yan objected (ROA.1709-1715).

A.    The Decisions failed to identify and conclude factual cause of action.

The party presentation principle, <u>*Greenlaw v. United States*</u>, 554 U.S. 237, 243 (2008) (ROA.2106[¶1]) requires the parties to frame the issues for courts' decision and the courts are *neutral arbiter*. "[Courts] are, however, not at liberty to **create a cause of action** where there is **none**." <u>*Cledera v. United States*</u>, No. 20-10914, 4 (5th Cir. Feb. 5, 2021). The Order created a *§ 1* cause of action, ruled upon it.

The Sherman Act *§§ 1-3* address different civil causes of action with specific legal elements. Yan never alleged *§ 1* (market competition), knowing that Antitrust Defendants form a natural monopoly in the legal services market, facing no competition. Instead, he alleged violations of *§ 2*—unjustified predatory conduct in a monopoly (ROA.1614-1615).

Yan's complaint made no mention of "competition." The Order concluded on the premise of *§ 1* issues and failed to address *§ 2*, "monopoly," or "predatory" acts. The complaint and the Order were premised on two distinguishable causes of actions, therefore, the *12(b)(6)* dismissal (ROA.2089-2091) is erred.

B.    The Decisions correctly acknowledged Antitrust Defendants are active participants and not immune from antitrust claim, but failed to distinguish relevant precedents.

"[T]he Interstate Commerce Clause, *Art. I, § 8, cl. 3*, granted Congress the power to abrogate state sovereign immunity" *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 59 (1996). Antitrust Acts include Interstate Commerce Clause. (ROA.1710-11[¶28-29],ROA.1717[¶51]). The Decisions failed to concluded Interstate Commerce Clause.

Despite acknowledging **SCOTUS** antitrust precedents (ROA.1709[¶26]), the Order erred by reaching a particularly confusing conclusion:

"Ordinarily, Yan's claim would survive dismissal under Rule 12(b)(1)… But that's not the case here. Indeed, Yan's survival under Rule 12(b)(1) is a Pyrrhic

victory. … as explained below, Yan's racketeering/**antitrust** allegations do not survive the Rule 12(b)(6) analysis. Consequently, rather than living to fight another day, those claims must be dismissed with prejudice." (ROA.2088)

It stated that Yan's case would survive dismissal under *12(b)(1)*, but stated that Yan's *§ 1* claim would not survive a *12(b)(6)* analysis and must be dismissed *with* prejudice. However, it then inconsistently ruled a dismissal *without* prejudice.

The fundamental <u>flaw</u> in the Decision was the FCR had stopped at *12(b)(1)* due to immunity, and the Order subsequently stated that it "**adopts** the FCR's findings as the findings of the Court, **endorses** the FCR's conclusions, and accepts the FCR's recommendation in **part**," (ROA.2076). This made it impossible for the Order to inherit sufficient findings to determine a *12(b)(6)* insufficiency. Because an incomplete *§ 2* claim findings from the FCR cannot fulfill the requirements for further *12(b)(6)* evaluation over *§ 1* claim by the Order.

Alternatively, and additionally, the district court could not have accomplished a proper *12(b)(6)* analysis premised on *§ 2* claim because its conclusion had already erred in framing Yan's antitrust claim under *§ 1*, which requires distinct elements. ("The statutes do differ significantly with respect to one element of the violation, the competitive consequences of predatory conduct.") *Brooke Group Ltd. v. Brown Williamson Tobacco Corp.*, 509 U.S. 209, 251 (1993).

C.  The Order erred in granting a Rule 12(b)(6) dismissal over *§ 1* claim after Antitrust Defendants waived any defense over *§ 1* claim during briefing stage.

The Antitrust Defendants had waived *12(b)(6)* defense concerning predatory acts, practices, or conducts (ROA.2107-2108[¶¶8-12]), under the *§ 2* claim. It (ROA.1325-1348) only asserted *12(b)(6)* under *§ 1983* and RICO claim, omitted therefore preserved *§ 2* claim (ROA.1326). *See Fed. R. Civ. P. 12 (b)* (*Every* defense to *a claim* for relief in any pleading *must* be asserted; A motion asserting any of these defenses *must* be made before pleading). The party presentation principle and the "[e]very" and "must" provisions of *Fed. R. Civ. P. 12(b)* do not grant the court *sua sponte* authority to render a *12(b)(6)* dismissal when the Antitrust Defendants may preserve their defense under *Fed. R. Civ. P. 12(h)* for future motions. See *Fed. R. Civ. P. 12(g)*.

"In our adversarial system … [courts] rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present." <u>*United States v. Sineneng-Smith*</u>, 140 S. Ct. 1575, 1579 (2020). The Antitrust Defendants "didn't pursue a dismissal [of *§ 2 claim*] under *12(b)(6)*. [The district court] shouldn't offer a leniency." (ROA.2089)

IX. <u>The court erred in granting MarinMartinezCraig *12(b)(1)* dismissal without prejudice regarding *§ 1983* claims.</u>

A.   The strongest federal defense available to any state actor, other than a public prosecutor, against *§ 1983* claim under *individual capacity* is qualified immunity. The Decisions ruled beyond the boundaries of this federal defense.

Federal common-law immunity only granted absolute immunity to public prosecutors under *§ 1983* claim during prosecution stage. The Decisions erred by granting state actors with absolute immunity against *§ 1983* claim under <u>individual capacity</u>.

MarinMartinezCraig should not be granted absolute immunity merely because these state actors are SBTX fellows. Prior precedents from this Court are erred in referring state statue *Tex. Gov't Code Ann. § 81.072(g)* to grant absolute immunity under *§ 1983* claim. State statute only defines state immunity defense. "[A] state's common-law defense does not apply to federal statutes" <u>*Taylor*</u>, at 653. A state law cannot expand scope of federal immunity application and being used to bar federal offense, <u>*Taylor*</u>, at 656. See also <u>*Section VII.B*</u> ("state law cannot modify federal common law"). Additionally, RICO and ERISA preempt any state defense. None of the precedents that the Decisions cited are premised on RICO or ERISA. Therefore, the Decisions are erred by citing non-relevant precedents to conclude.

B.    The FCR failed to identify and conclude key facts under *§ 1983* claims.

MarinMartinezCraig should have known that **altering** QDRO to embezzle ERISA funds is a usurpation of the core function of judicial authority, an unconstitutional deprivation of property, Due Process, Article III power and Separations of Power, under *§ 1983* claim. When a construction worker helps the mafia bury a body during work hours, his actions aren't part of his job but a criminal conspiracy. The same legal theory applies to MarinMartinezCraig. Yan alleges they *reviewed emails evidence* which were submitted during the grievance process, *accepted* Barrows' solicitation of "in order for us to obtain our fees…we must say", and *followed* Pigg's solicitation of "have to lie to accept QDRO." (ROA.1060[¶120],ROA.1072[¶166],ROA.1073[¶171]). They knew BarrowsYbarra usurped judicial authority by altering the QDRO. MarinMartinezCraig's actions were not state-approved professional conduct but a deliberate cover-up to assist SBTX fellows in securing illicit fees. They favored to concealment, disregarded BODA's conclusion twice. What MarinMartinezCraig did in a state agency office is *ultra vires* (ROA.1036).

Eleventh Amendment immunity does not automatically apply simply because the acts occurred during state actors' working hours. "[T]he Courts have uniformly held [*ultra vires*] to be exempt from sovereign immunity defenses." <u>Tax Analysts and Advocates v. Shultz</u>, 376 F. Supp. 889, 895-896 (D.D.C. 1974) (citing <u>Larson v.</u>

*Domestic Foreign Corporation*, 337 U.S. 682, 689 (1949) and *Americans United,*

*Inc. v. Walters*, 155 U.S.App.D.C. 284, 477 F.2d 1169, 1180 (1973)).

SCOTUS "found that the Interstate Commerce Clause, *Art. I, § 8, cl. 3*, granted

Congress the power to abrogate state sovereign immunity" *Seminole Tribe of Fla. v.*

*Florida*, 517 U.S. 44, 59 (1996). RICO enterprise's activities affect *interstate*

*commerce,* ERISA funds injury is *interstate commerce*, and antitrust is *interstate*

*commerce* as well. (ROA.1710-1711[¶¶28-29]).

A legitimate grievance process can operate under two permissible views:

performing duties as required by state statute; or conspiring to cover up SBTX

fellows' unlawful deprivation of constitutional guarantees. Yan alleged the latter,

while the Decisions erred by substituting with the former.

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) held that "[a] court must take the

allegations as true, no matter how skeptical the court may be." Pigg accepted

Barrows' solicitation, lied, and furthered Yan's ERISA fund injury. Pigg suggested

that Yan lie, but Yan refused. It is plausible premise that other SBTX fellows—

MarinMartinezCraig—also chose to lie after reading the same emails. Conspiring to

control damage is not a state actor's duty. The actions of MarinMartinezCraig in

concealing BarrowsYbarra and Pigg's racketeering conduct perpetuate ongoing

predicate acts, targeting future consumers.

A judge's skepticism does not override the plausibility of these allegations. Rule *12* prohibits judges from assuming that any SBTX counsel would not conspire to cover up a <u>white-collar crime</u> during the office hours. Therefore, the Decisions erred in denying Yan's allegations.

C.    The Decisions erred in failing to apply *Nesses* reasoning to distinguish the premise of Yan's suit.

The Decisions failed to apply *Nesses* reasoning as well.

Yan's did not seek to modify or reverse any grievance decision (ROA.1471[¶27]). The Decisions wrongly framed Yan's claim as one tied to a state grievance ruling denying constitutional rights. *Nesses* reasoning supports a federal remedy for violations of property rights.

Yan's *§ 1983* claim alleged SBTX counsels to have conspired with other members to deprive Yan of his pension fund through a RICO scheme through unconstitutional practice, benefiting bar associates and using the disciplinary process for damage control and concealment, not on the grievance decision. This case remains valid even if SBTX counsels changed their minds and restarted grievance proceedings, their acts of concealment had already been committed. Therefore, this claim stands independently regardless of whether the violators corrupted the state bar grievance process through a favorable or unfavorable ruling.

The Order disregarded *Nesses* reasoning argument and departed from the principle that ambiguity must be viewed in the pro se plaintiff's favor and all pleadings shall be so construed as to do substantial justice.

D.    *Young* permits prospective relief, ERISA supersede sovereign immunity.

*Ex parte Young*, 209 U.S. 123 (1908), established that the Eleventh Amendment does not shield a state official from claims of depriving a federal right under color of state law (ROA.1307). "The essential ingredients of the Ex parte Young doctrine are that a suit must be brought against individual persons in their official capacities as agents of the state and the relief sought must be declaratory or injunctive in nature and prospective in effect." *Saltz v. Tennessee Department of Employment Security*, 976 F.2d 966, 968 (5th Cir. 1992).

Yan pleaded (ROA.1099[¶347],ROA.1101[¶367],ROA.1104[¶387]) prospective relief, the Decisions ignored.

*E-Systems, Inc. v. Pogue, 929 F.2d 1100 (5th Cir. 1991)* ruled that ERISA supersedes sovereign immunity and any state law. Yan has pleaded that the unlawful legal service revenue obtained from *§ 664* predicate acts are directly or indirectly used to hire MarinMartinezCraig to conceal federal crime. MarinMartinezCraig are not immune from conspiring to aid in ERISA offenses under the guise of *Tex. Gov't Code ANN. § 81.072(g)*.

X.   <u>The court erred in granting BarrowsYbarra, and BarrowsFirm 12(b)(1)</u> <u>motion with prejudice regarding antitrust and *§ 1983* claims.</u>

Historically, this Court has applied Texas common-law immunity to attorneys, despite conflicting rulings from SCOTUS and other Circuits. However, <u>*Taylor v.*</u> <u>*Tolbert*</u>, 644 S.W.3d 637, clarified that Texas common-law immunity does not extend to federal offenses. A shift in the Court's approach may now be necessary, and any pre-2022 precedents concerning attorney immunity should be revisited. Notably, this Court has not cited <u>*Taylor*</u> since 2022.

A.   The courts cannot omit Minnesota common-law attorney immunity factor in an interstate case.

Yan incurred injuries related to a Minnesota 401(k), BarrowsYbarra and Pigg altered the QDRO to circumvent ERISA barrier, "general principles of attorney immunity are not appropriate when an attorney is accused of fraud." *Janssen v. Lommen*, No. A14-0452, 10-11 (Minn. Ct. App. Dec. 22, 2014).

The Decisions failed to consider the Minnesota factor (ROA.1738[¶23]), and subsequently erred in applying Texas common-law immunity to Minnesota ERISA injuries under claims of antitrust and *§ 1983*. Yan reserves the right to add a Minnesota common-law fraud claim at a later stage.

B.   Federal common-law immunity is not absolute for private attorneys.

Other circuits and SCOTTX have concluded that no federal common-law immunity exists for private attorneys, citing the controlling SCOTUS precedents *Ferri v. Ackerman*, 444 U.S. 193 (1979) and *Tower v. Glover*, 467 U.S. 914 (1984). "Concerning suits by litigants other than an attorney's own client, the general rule is that: [i]f an attorney is actuated by malicious motives or shares the illegal motives of his client, he may be personally liable with the client for **damage suffered by a third person** as a result of the attorney's actions." *Robinson v. Volkswagenwerk AG*, 940 F.2d 1369, 1371 (10th Cir. 1991).

"[T]hat **only** in a narrow class of cases involving **defamation** claims has the **Supreme Court acknowledged** a common law tradition of absolute **immunity** for private lawyer." *Id.* at 1371, and "while absolute immunity **might** be afforded **government lawyers** on these claims, such immunity is **not** available for a **private law firm**." *Id.* at 1371-1372.

After seeing that "the Supreme Court **will not** extend absolute immunity without such a tradition. … private lawyer, does not enjoy absolute immunity from a malpractice action by his former client," the Ninth Circuit "**overruled** its **precedent** … and the Supreme Court **affirmed**." *Id.* at 1372-1373.

"In *Tower,* … the [Supreme] Court stated: "[T]his immunity would not have covered a conspiracy…" Although the case before us is of the "nonclient versus counsel" variety, *Ferri* and *Tower* suggest that the scope of absolute immunity accorded a private lawyer **can be no broader** than that originating from common law." *Id.* at 1373.

"No sound policy supports conferring any such immunity on private persons who persuade a judge to exercise his jurisdiction corruptly. Indeed, the thrust of wisdom is to the contrary." *Sparks v. Duval County Ranch Co., Inc.*, 604 F.2d 976, 980 (5th Cir. 1979). "[] attorneys may be liable under § 1983 "for intentional misconduct, 'under color of state law, by virtue of alleged conspiratorial action with

state officials that deprives their clients of federal rights."" _Linn v. Saitin_, No. 14-30094, 2 (5th Cir. 2014).

The Decisions erred in ignoring the controlling Texas precedent _Taylor v. Tolbert_, 644 S.W.3d 637 (Tex. 2022).

SCOTTX noticed that "we **have not found** another statutory civil action to which a federal court has applied any form of common-law attorney immunity." _Id._ at 654, "[F]ederal courts are **nearly uniform in declining** to adopt extra-statutory exceptions and refusing to apply state common-law defenses." _Id._ at 655.

_Taylor_, which defines the scope of Texas common-law immunity, concluding that Texas common-law immunity is not a defense under federal statutes (ROA.1708[¶¶20-21]). "[C]ourts have explained that state law cannot modify federal law. ... The short answer to the [state common-law] immunity defense is that [federal statute] creates a federal cause of action that cannot be barred by any state law or policy." _Id._ at 656. Additionally, "the attorney-immunity defense is **neither categorically inapplicable nor automatically available**," _Id._ at 637, without analyzing "the particular statute in question," _Id._ (ROA.1708[¶21]).

"[A] state's common-law defense does not apply to federal statutes." "When interpreting a federal statute, including whether it has abrogated certain affirmative defenses, we endeavor to "anticipate … U.S. Supreme Court … and the precedents

of other federal courts ... to determine the appropriate answer." … we also "look to the common law, not of Texas or any particular jurisdiction, but in general."" *Id*. at 653-654.

However, the Decisions cited three outdated and irrelevant common law of particular Texas jurisdiction—*Troice*[18], *Cantey Hanger, LLP*[19], and *Youngkin*[20]—erroneously assuming the broad scope of immunity (ROA.2087) pursuant to *Youngkin*, while disregarding *Taylor*.

There is no federal common-law immunity for private lawyer under antitrust and *§ 1983* claims. The Decisions were erred.

C.    "[Texas court] is without the authority to divest that power or delegate it to others" to alter a rendition. *See Meshell v. State*, 739 S.W.2d 246 (Tex. Crim. App. 1987),

Yan alleged and characterized (ROA.1626, n.2.) that BarrowsYbarra and Pigg's misconducts are "theft of goods or services on a client's behalf" (ROA.1602[¶32]), "**altering** the context of a consented rendition" (ROA.1190[¶16],ROA.1601[¶30]), and "unlawfully abstracting money from Plaintiff's pension account to collect attorney fees and diverting it to the lawyer's own pocket' are not immune" (ROA.1399[¶41], ROA.1401[¶45], ROA.1602[¶34]). The FCR omitted these findings.

---

[18] *Troice v. Proskauer Rose, LLP*, 816 F.3d 341 (5th Cir. 2016).
[19] *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477 (Tex. 2015).
[20] *Youngkin v. Hines*, 546 S.W.3d 675 (Tex. 2018).

The FCR stated that the district court decides the "legal question of whether said conduct was within the scope of representation" (ROA.1693) (citing *Youngkin*, 546 S.W.3d at 683), but it improperly avoided addressing the legal questions regarding the three alleged conducts, none of which were covered in the FCR. As a result, the FCR failed to address all legal questions raised in the proceeding and did not meet the requirements for a Rule *12* dismissal.

Texas attorney immunity defense only applies to ""the kind of conduct" attorneys undertake while discharging their professional duties to a client." *Taylor*, 644 S.W.3d at 646. "Stated inversely, if an attorney engages in [*white-collar crime*] that is not "lawyerly work" or is "entirely foreign to the duties of a lawyer" or falls outside the scope of client representation, the attorney-immunity defense is inapplicable." *Id*.

"Lawyers and litigants do not have the authority to issue orders, nor do they have the authority to vacate, rescind, or modify court orders." *In re K.A.R*, 171 S.W.3d 705, 715 (Tex. App. 2005). If they did, "trial counsel "effectively **usurped the court's role** and **displaced the court** as **decision maker**. … [trial counsel] interfered with a core function of the court."" *In Interest of J.V.G.*, No. 09-06-015 CV (Tex. App. Jul. 12, 2007).

"Lawyers are under a professional obligation to act with commitment and dedication to their clients' interests, but they are **neither** duty-bound **nor** permitted to press for **every possible** advantage **under the imprimatur of zealous advocacy**. The discretion to determine the trial tactics and litigation strategies … is **cabined** by **ethical standards** memorialized in sundry rules and statutes and is subject to the inherent authority of courts to **preserve the integrity of our judicial system**. …courts have inherent authority to sanction attorneys for an "abuse of the judicial process" and for conduct that "**breeds disrespect for and threatens the integrity of our judicial system**." […] And they have "not only the power but the duty to **insure** that judicial proceedings remain **truly adversary in nature**."" *Brewer v. Lennox Hearth Prods.*, LLC, 601 S.W.3d 704, 740 (Tex. 2020).

The decisions demonstrated a contrary attitude (ROA.2087), stating, '[t]his [attorney altering order] case typifies why the attorney-immunity doctrine exists, which protects the zealous advocacy of clients by legal professionals,' following an unethical logic (ROA.1695, n.5.). "[T]he Court finds that it is hard to imagine a more adversarial context than a highly contentious divorce." The decisions imply that in a highly contentious case, any action automatically falls within an adversarial context, and fraudulent actions, such as altering documents, are considered part of discharging a lawyer's duties. Therefore, the immunity doctrine exists to protect such zealousness.

However, "In an adversarial system, due process requires at least a reasonably level playing field." _Rey v. State_, 897 S.W.2d 333, 343 (Tex. Crim. App. 1995). When the judiciary allows attorneys to alter an order obtaining fees from laypeople's funds in family court, it creates a predator-versus-prey scenario—a lopsided massacre. The district court seems to have forgotten what a truly adversarial process should look like. The district judge denied the existence of any "large-scale schemes or acts of institutional impropriety" (ROA 2091), but Yan experienced otherwise.

The Texas judiciary's failure to intervene allows attorneys to exploit the most vulnerable under the guise of legal representation. The Decisions mistakenly concluded that looting families' ERISA funds during divorce is permissible within the Article III judicial framework and that Texas legal service providers are exempt from antitrust accountability, profiting from contentious divorce cases. Meanwhile, the Texas judiciary (SBTX members in robes) delegates judicial power (_§ 1983_) to lawyers (SBTX members in suits), enabling them to modify court orders for financial gain under the pretense of serving the court.

XI.  <u>The court erred in granting RICO Defendants' _12(b)(6)_ motion with prejudice.</u>

SCOTUS never granted immunity over RICO claim. RICO act is a tool against "respected and legitimate" enterprises and no immunity "demonstrates breadth."

Congress wanted to reach legitimate enterprises which "enjoy neither an inherent incapacity for criminal activity nor immunity from its consequences." See *Sedima*.

A. Allegations are premised on the legal theory that the victim suffers ERISA fund injury, a predicate act under § *1961(1)*, incorporating § *664*.

*Unlawful* embezzlement of ERISA funds constitutes a § *664* predicate act. Any attempt to shield such actions under state law must fail in the face of clear federal statutes.

Yan alleged fact (ROA.1056[¶103], ROA.1107[¶411], ROA.2009[¶31], ROA.2016[¶¶62-63], ROA.2124[¶¶87-88]) and the legal theory that issuing temporary QDROs in associate judge court is "unlawful" pursuant to federal and state constitutions and statutes (ROA.1042[¶45]):

1) The Texas statutes limits QDROs as a "post-divorce" (ROA.1042[¶¶46-49]) "trial" (ROA.1044[¶58]) remedy; a temporary QDRO is pre-divorce and pretrial (Lack of authority (ROA.1044[¶58])).

2) The Texas statute limits the court's authority to acquire subject matter jurisdiction over a QDRO claim (ROA.1042[¶45]). (Lack of authority and subject matter jurisdiction and procedural due process violation)

3) A QDRO is an "appealable" "final order" (ROA.1042[¶¶46,48]); However, "the associate judge's oral pronouncements from the bench and his handwritten Associate Judge's Report do not constitute a final order of enforcement.

[(ROA.1187[¶11])] *See Stein v. Stein*, 868 S.W.2d 902, 904 (Tex.App.-Houston [14th Dist.] 1994, no pet.) (holding that under … *Texas Family Code section 201.007*, … an associate judge does not have the power to render judgment [(ROA.2128[¶109])]). The Texas Family Code contemplates only *two very limited circumstances* in which an associate judge may render and sign a final judgment: "one agreed to in writing as to both form and substance by all parties or a final default order."" *In re Lausch*, 177 S.W.3d 144, 151 (Tex. App. 2005). "*Lausch (*holding that associate judge's report was not final because it required approval of trial court and "contemplate[d] an order to follow")" *Alwazzan v. Alwazzan*, NO. 01-16-00589-CV, 28 (Tex. App. Dec. 6, 2018).

4) The handwritten April 13 Associate Judge's Report is "interlocutory" and "non-appealable" standing order. "[A] standing order is, by definition, a "forward-looking order that applies to all cases pending before a court." *Order*, *standing order*, BLACK'S LAW DICTIONARY (9th ed. 2009)" *In re Ginsberg*, 630 S.W.3d 1, 15 (Tex. 2018). (*See* (ROA.1174) Footnote). (Lack of authority and violation of procedural due process).

5) The associate judge's court does not have jurisdiction to render a trial remedy, which is reserved for a judge with constitutional jurisdiction to act as the trier of a trial (ROA.2128[¶112]) (Lack of jurisdiction and violation of procedural due process).

6) ERISA prohibits diverting funds to pay attorney fees, and ERISA supersedes state statutes (Lack of authority) (ROA.1044[¶59]).

7) BarrowsYbarra and Pigg do not have judicial authority to render a final QDRO as well.

Yan alleged that altering to render temporary QDROs by RICO Defendants is "unlawful" pursuant to federal and state constitutions and statutes. See Section: Statement of Facts.

B. The facts are well-pleaded with evidence attached.

Yan alleged that he suffered ERISA funds injury. He further alleged an ongoing racketeering scheme, evidenced by multiple temporary QDROs issued by Texas associate judges' courts.

Yan alleged racketeering conspiracies under collusion, evidenced by Leslie and Pigg's emails. He also alleged racketeering conspiracies involving cover-up and damage control, evidenced by decisions from SBTX and the DA's office.

All these pieces of evidence—multiple QDROs, multiple emails, and multiple denials from state agencies, all acts undertaken by bar associates—also support predatory acts under *§ 2* and *§ 1983* claims. See Section: Statement of Facts.

C.   Defendants waived arguments concerning Yan's legal theory.

All defendants have omitted or circumvented the legal argument concerning the alleged RICO predicate acts (ROA.1047, ROA.1054, ROA.1055, ROA.1056, ROA.1057, ROA.1071, ROA.1072, ROA.1073, ROA.1106[¶¶73,99,102,104,107,166,167,171,406]), including the original QDRO rendition, the first altered and second altered order underwrote on April 26th and May 26th, or the subsequent collusion, covering up, damage controlling conspiracy the second constitute RICO predicate acts and conspiracy. The Decisions also ignored this issue and did not mention any application related to the *§ § 664*, *1341*, *1343*, *1962* provisions.

*18 U.S.C. § 1341* "prohibits using the mail to further "any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises." [T]hat provision as setting forth just one offense—using the mails to advance a scheme to defraud." Using internet instead of mailing for same criminal intention constituting *§ 1343*. Yan alleged multiple *§ 1341* and *§ 1343* acts in furtherance of *§ 664* offense, which The Decisions omitted.

According to this Court's *Priester* and *Shaikh* precedents, Yan's case should survive a Rule *12(b)(6)* motion unless the district court has examined his complaint under all possible legal theories. It is clear that the Defendants waived the argument concerning the legal theory of whether a temporary QDRO is unlawful.

Dogs eating poop is wrong, breaking the law is illegal, and the judiciary should know the difference between wrong actions and illegal actions. The Decisions erred by reframing Yan's complaint as "[s]imply arguing a certain order was wrong, even really wrong, won't cut it." The court should have distinguished between a "wrong order" and an "unlawful QDRO."

XII.    The court erred in granting USBank's *12(b)(6)* motion.

USBank was sued in the ninth claim (ROA.1105-1109) under *§§ 1962(c)(d)*, *1983* and *29 U.S.C. § 1056(d)(3)(H)(i)*.

A.    The Order erred in relying on USBank's responsive motion to determine Yan's factual allegations instead of reviewing Yan's complaint.

The Order erred in stating:

> Yan's claims against U.S. Bank fare no better. The Court **independently** assessed U.S. Bank's Motion to Dismiss…**Yan's claims** against U.S. Bank **vary widely** and appeal to an **astonishing** array of federal statutes. See **ECF No. 127 at 7–9**. As explained below, **none** come **close** to presenting a plausible claim that entitles Yan to relief. First, Yan **attempts to sue** U.S. Bank under 18 U.S.C. §§ 664, 1027, 1341, 1343, and 1349. See **ECF Nos. 127 at 7; 60 at 27–38**. *Those are criminal statutes and do not create civil causes of action*. Thus, those claims are *DISMISSED with prejudice*. (ROA.2091)

The Order failed to thoroughly review Yan's complaint (ROA.1029); instead, it erred in referring to USBank's Brief/Memorandum in Support (ROA.1746) as fact to determine what Yan's claims were. Yan alleged *§§ 1341*, *1343* and *664* as RICO predicate acts (ROA.1105-1108[¶¶399,406,408,411]). The RICO Act *§ 1964* is one

of the few federal statutes that authorize civil remedies for criminal conduct, including *§ 1961* defined predicate act. Yan pleaded for a civil remedy based on conspiracy to commit racketeering predicate acts. Yan did not seek separate civil cause of action for Title 18 criminal offense as USBank argued (ROA.1760).

Referring "ECF Nos. 127 at 7" is the first evident error, because entire page 7 (ROA.1758) does not contain a single word mentioning *§§ 664*, *1027*, *1341*, *1343*, or *1349*. Referred Yan's complaint **"60 at 27–38"** is the second evident error, because page 27-38 (ROA.1055-1066) does not contain a single word alleging USBank or any Title 18 offense. Yan's claims against USBank are located on pages **77-80** (ROA.1105-1108), a mere four pages, yet the Order appeared <u>unable</u> to locate them. Pages 77-80 are far from pages 27-38. Anyone who read the correctly located pages will see that Yan alleged civil cause of actions under *§ 1964* (ROA.1108-1109[¶¶417-423]). But the word *§ 1964* never appeared on the Order.

The Order's conclusion that "Yan attempts to sue … §§ 664, 1027, 1341, 1343, and 1349... Those are criminal statutes and do not create civil causes of action. Thus, those claims are DISMISSED with prejudice" leaves Yan puzzled. The only plausible explanation is that the Order *unquestioningly* copied USBank's falsified arguments (ROA.1760-1761), accepting them as true without reading Yan's actual claims.

Rule *12* dismissal requires the court to review the complaint thoroughly under any set of facts or any possible legal theory to do justice. When the Order erred in referring pages where the claims are not located, it does not meet the threshold for dismissal.

B.    Proving pattern is not required under *§ 1962(d).*

The Order erred in dismissing the RICO claim against USBank, as it is filled with legal and factual errors:

> "Yan discusses isolated instances of nebulous alleged impropriety, but he **fails** to **show** the **required** "**pattern** of racketeering activity," let alone that his allegations are "**connected to the acquisition, establishment, conduct, or control of an enterprise**." … Accordingly, Yan's RICO claims against U.S. Bank are **DISMISSED with prejudice**." (ROA.2091-2092).

USBank was alleged as person (ROA.1105[¶398]) engaging in *§§ 1962(c)(d)* (ROA.1106[¶401]), not as an enterprise. The Order conclusively stated that alleging a person requires "a pattern of racketeering activity" (ROA.2092) without citing any authority.

*Thomas v. Thompson*, CAUSE NO.: 1:10CV10-SA-JAD, 9 (N.D. Miss. Jun. 8, 2011) ("holding conspirators liable for actions not made or taken individually but by another conspirator"). *WIWA v. ROYAL DUTCH PETROLEUM COMPANY*, 96 Civ. 8386 (KMW) (S.D.N.Y. Feb. 22, 2002) ("holding that there is no "overt act" requirement for a RICO conspiracy").

SCOTUS controlling precedent *Salinas v. United States*, 522 U.S. 52, 66 (1997) ("holding that to prove a RICO conspiracy claim, it is sufficient to prove that the defendant "knew about and agreed to facilitate the scheme")" *United States v. Gurry*, Criminal Action No. 16-cr-10343-ADB, 5 (D. Mass. Jan. 17, 2019)).

Two predicate acts requirement has met (ROA.1180) within the First Claim, alleging SBTX as an enterprise. Nineth claim is supplemental to the First.

The second error occurred when it concluded that Yan's allegations are "connected to the acquisition, establishment, conduct, or control of an enterprise," without citing any source from Yan's complaint.

""[T]he requirements for RICO's conspiracy charges under § 1962(d) are less demanding" than those for substantive violations. … "A 'conspirator must intend to further an endeavor which, if completed, would satisfy all of the elements of a substantive criminal offense, but it suffices that he adopt[s] the goal of furthering or facilitating the criminal endeavor.' In the civil context, a plaintiff must allege that the defendant 'knew about and agreed to facilitate the scheme.'" … However, a party "may be liable for [RICO] conspiracy even though he was incapable of committing the substantive offense." … Finally, the existence of a RICO enterprise is not a required element of a RICO conspiracy claim." *City of N.Y. v. Bello*, No. 13-2931-

cv, 3-4 (2d Cir. 2014) (citing *Baisch v. Gallina*, 346 F.3d 366 (2d Cir. 2003); *United States v. Applins*, 637 F.3d 59 (2d Cir. 2011); *Salinas*).

First, Yan alleged USBank for *§§ 1962(c)(d) offense*, the *acquisition*, *establishment* or *control* of are the elements of *§§ 1962(a)(b)* which Yan never alleged. *See Salinas*, "a defendant "who opts into or participates in a conspiracy" to violate § 1962(c) may be liable "even if the defendant did not personally agree to do . . . *any* particular element" of the § 1962(c) violation); … (holding that the RICO statute "does not permit us to excuse from the reach of [§ 1962(d)'s] conspiracy provision an actor who does not himself commit or agree to commit the two or more predicate acts requisite to the underlying [§ 1962(c)] offense")." *In re Insurance Brokerage Antitrust Litigation*, 618 F.3d 300, 372-73 (3d Cir. 2010).

The Order appears to have *unquestioningly* copied from USBank's responsive motion (ROA.1753), including entire sentences and citations. By adopting USBank's baseless arguments as factual findings without reviewing Yan's four-page claim, the Order erred in shifting the burden of proper fact-finding to the appellate court. This practice raises concerns about professional ethics. Yan asks this Court to determine whether this work product reflects the standards of the federal judiciary or constitutes an abusive waste of appellate judicial resources.

C.   USBank is alleged as a co-conspirator under *§ 1983*, a private party involved in such a conspiracy, even though not an official of the State, can be liable under *§ 1983*.

Yan alleged "that judgment order lacked due process and that the Plaintiff's property is protected under the Fourteenth Amendment." (ROA.1107[¶409]) under *§ 1983* claim. The Order erred in concluding that Yan was "alleging the Bank violated what he calls "the 'Liberty' clause of the Fourteenth Amendment," (ROA.2092) inexplicably citing "ECF No. 60 at 67" (ROA.2092) where the word "U.S. Bank" does not appear on that page 67.

USBank is alleged as a co-conspirator. Disregarding this Court's precedent said that, "[t]he Court declared that a private party involved in such a conspiracy, even though not an official of the State, can be liable under § 1983," *Sparks v. Duval County Ranch Co., Inc.*, 604 F.2d 976, 982-83 (5th Cir. 1979)). The Order erred in concluding that "[Yan] does not make this required showing" (ROA.2092) that the Bank acted under color of law, and therefore, the *§ 1983* claim was erroneously dismissed with prejudice**.** It seems the district court either overlooked Yan's argument (ROA.2013[¶51]) or disregarded precedent.

D.   USBank is alleged breaching fiduciary duty by blatantly determining a Due Process-violating unlawful order as a legitimate QDRO and failing to object to the court as the Department of Labor's opinion instructed.

The Order erred in concluding that Yan "**never** articulates any facts that would suggest U.S. Bank violated its fiduciary duty," by inexplicably citing "ECF No. 60

at 25" (ROA.2092), repeating the same pattern of referencing random pages for conclusions.

The Order erred by accepting USBank's Rule *12* motion as true (citing "as U.S. Bank's Motion notes, Yan *was not* identified as an *alternate payee* under the family court's orders") (ROA.2093) without referencing the complaint. It disregarded Yan's objection that the order should be determined as void (ROA.2014-2016[¶¶52-61]), because it is not in accordance with state law (ROA.2016-2017[¶¶62-68]), and that he alleged USBank breaching *29 U.S.C. § 1056(d)(3)(G)(i)(II)* fiduciary duty of "shall **determine** *whether* such an order *is* a qualified domestic relations order and notify the participant" (ROA.1044[¶58]), not the "alternate payee" clause as USBank erroneously defended (ROA.2018-2019[¶¶73-82]). See also *Dalton* at 138 (Tex. 2018) (ROA.2016[¶62],ROA.2124[¶88]).

*29 U.S.C. § 1056(d)(3)(G)(i)* "**requires** administrators to consider divorce decrees to **determine** whether they are Qualified Domestic Relations Orders, which are enforceable. *Estate of Altobelli v. Int'l Business Machines*, 77 F.3d 78, 81 (4th Cir. 1996)). "Should the plan administrator **determine** that an order does not qualify as a QDRO, the beneficiary or alternate payee may **appeal** the plan administrator's decision to a "c**ourt** of competent jurisdiction" **under** *29 U.S.C. § 1056(d)(3)(H)(i)*." *Stewart v. Thorpe Holding Co. Profit Sharing*, 207 F.3d 1143, 1156 (9th Cir. 2000).

USBank received "a court document that is not true" (ROA.1116). USBank shall not divert money "in a non-truthful way" (ROA.1117). "A plan fiduciary's responsibilities run **only** to participants and beneficiaries," _Boggs_ at 850 (1997), not to the state court.

Yan objected and attached truthful court document. U.S. Department of Labor("DOL")'s opinion letter stated that not every court order is enforceable and USBank is not obligated to comply with an unlawful order (ROA.2019-2020[¶¶83-86]). Therefore, ERISA's fiduciary duty required USBank to question the order per this DOL's opinion letter, but they failed to do (ROA.2020-2022[¶¶87-94]). Yan also pointed out additional errors (ROA.2017-2018[¶¶69-72], ROA.2022-2024[¶¶95-112]).

The Order erroneously concluded that US Bank did not breach its fiduciary duty by accepting USBank's statement instead of assuming Yan's allegations as true, contrary to the Rule _12_ dismissal requirement, leading to the improper dismissal with prejudice of the _29 U.S.C. § 1056(d)(3)(H)(i)_ claim.

E.   The final report concluded factual allegations from inexplicable paragraphs.

Yan's claim against USBank is based on four key pages (ROA.1105-1108[¶¶ 394-413]). The Order ignored these pages (ROA.2092) and instead cited irrelevant sections: ECF No. 60 at 24 (ROA.1052) for the RICO claim, at 67 (ROA.1095) for

the § 1983 claim, and at 26 (ROA.1054) for the *29 U.S.C. § 1056(d)(3)(H)(i)* claim, with "*29 U.S.C. § 1056(d)(3)(H)(i)*" never appearing on page 26.

The referenced pages (24 (ROA.1052), 67 (ROA.1095), and 26 (ROA.1054)) do not address the factual allegations against USBank. There is no indication the district court fully reviewed Yan's claims, showing a lack of adversarial fairness by overlooking the layperson's filings. The Order also failed to interpret "the facts in the light most favorable to the plaintiff" (*Doe v. McKesson*, 935 F.3d 253, 259 (5th Cir. 2019)). The RICO claim was dismissed for lack of pattern, though a pattern is required for the enterprise, not the individual. The *§ 1983* claim was dismissed despite precedent that a co-conspirator need not be a state actor. Additionally, the *29 U.S.C. § 1056(d)(3)(H)(i)* claim was dismissed, disregarding the DOL opinion letter and the absence of relevant state statute provisions.

## XIII. 21-Day Safe Harbor, the *28 U.S.C. § 636* right to appeal to preserve issue, and Pre-filing Injunction:

### A. Initial Rule *11* motion complied with waiver doctrine.

Yan served and filed a motion (ROA.261-265) against Ms. Kates, alleging a violation of Rule *11(b)(3)* (ROA.263[¶8]). Ms. Kates responded (ROA.476), denying a violation of Rule *11(b)(2)* and waiving the argument regarding the safe harbor provision and Rule *11(b)(3)*. "[S]ome courts have held that the failure to raise the safe harbor provision may operate as a waiver or forfeiture. … ("21 day safe

harbor provision may be waived or forfeited"); <u>...</u> (**N.D. Tex. 2006**) (recognizing that a party may waive the safe harbor provision)." <u>*In re Coastal Land Development Corporation*</u>, Case No. 07-51267-NPO, 17 (Bankr. S.D. Miss. May. 29, 2009). But this time, the same district court sua sponte defended SBTX counsel.

In a parallel Rule *11* motion against Mr. Ogle (ROA.464), he raised a 21-day safe harbor objection (ROA.483). The magistrate issued a single FCR (ROA.534) denying both motions. Yan's actions were not frivolous; he properly served the Rule *11* motion but filed it prematurely. Following the FCR, which lacked specific reasoning, Yan believed he needed to wait an additional 21 days.

B.   Re-filing Rule *11* motion after 21 days is not frivolous.

Yan refiled same two Rule 11 motions (ROA.1184,ROA.1238) after 21 days. Upset by being challenged, the magistrate issued two FCRs (ROA.1284,ROA.1641), erred in concluding that the refiling constitutes "the **repeated**, **unwarranted filing** of motions for sanctions against an attorney is a serious matter [] which the Court will not continue to tolerate," and warned that Yan would be sanctioned if he "files new Rule 11 motion" (ROA.1284,ROA.1641,ROA.1669).

Refiling is permissible practices. The district court's view is contrary to other federal courts. "[A] matter of law is frivolous where "[**none**] of the legal points [are] arguable on their merits."" <u>*Neitzke v. Williams*</u>, 490 U.S. 319, 325 (1989).

Upon believing that he has legal point arguable (ROA.1649[¶25]) (quoting *Anders v. California*, 386 U.S. 738 (1967)), Yan appealed (ROA.1643-1650) the latter FCR, under *28 U.S.C. § 636(b)(1)*, expressly asserting that *re-filing* should not constitute "repetitive," "unwarranted," or "frivolous," and it has been permitted (ROA.1648[¶22]) (citing *United States v. Sweet*, No. 8:01-CV-331-T-23TGW, 2001 U.S. Dist. LEXIS 17131 (M.D. Fla. Sept. 17, 2001)) by other federal courts.

The Third Circuit held,

> "We note, as did the District Court, that there is a *split of authority* regarding whether *re-filing* an initially noncompliant Rule 9011 motion after 21 days provides fair notice for such sanctions. (6th Cir.2003) (suggesting *re-filing* may cure previous safe harbor noncompliance), … (M.D.Tenn. Oct. 24, 2008) (same), and *Muhammad v. Louisiana*, Nos. … (**E.D.La. Dec. 21, 2000**) (same), … (rejecting reliance on premature filing to satisfy safe harbor), … (D.Kan. Mar. 1, 2007) (same)…" *Ettinger v. Miller (In re Miller)*, 730 F.3d 198, 204-5(3d Cir. 2013).

Because safe harbor equally applies to both rules ("Bankruptcy Rule 9011 is the *equivalent* sanctions rule to Rule 11 of the Federal Rules of Civil Procedure, … cases decided pursuant to [Rule 11 also] apply to Rule 9011." *Id*.), *Ettinger* concluded *Fed. R. Bankr. P. 9011* motion, citing *Muhammad*), a case addressing Rule *11* safe harbor noncompliance. The FCR was erred.

C.   Zealous advocacy requires objection to preserve the issue.

Upon de novo review, the district court ignored Yan's argument ROA.1648[¶22], accepted FCR recommendation, responded with a sua sponte pre-filing injunction:

"(noting "the *repeated*, *unwarranted* filing of motions for sanctions against an attorney is a serious matter [] which the Court will not continue to tolerate"). **Accordingly**, **though** the FCR **suggested** sanctions may be **recommended** "**if** Plaintiff files **any future frivolous** motions for sanctions," see ECF No.114 at 1, the Court **finds** that **threshold** has already been **crossed**" (ROA.1669).

This injunction is contradictory to this Court's view that:

"This Court has **no desire** to deter any litigant from advancing any claim or defense which is **arguably** supported by existing law, or *any* reasonably based suggestion for its extension, modification, or reversal. Positions thus taken *cannot* be considered as frivolous, although they *may* be unsuccessful and indeed *may* be given short shrift." *Farguson v. Mbank Houston, N.A.*, 808 F.2d 358, 359 (5th Cir. 1986).

Yan had to appeal under *28 U.S.C. § 636* to preserve the re-filing issue under raise-or-waive rule. "[T]he failure to file objections to the magistrate's report waives the right to appeal the district court's judgment [in the appellate court]." *Thomas v. Arn*, 474 U.S. 140, 142 (1985) . Any sanction followed *§ 636* appeal would have a chilling effect prejudicing the efforts to preserve issues.

Yan filed motion for reconsideration (ROA.1673-1678), asserting that *28 U.S.C. § 636(b)(1)(C)* grants an appeal right (ROA.1675[¶¶9-10]). He also stated that he had not crossed the threshold of "files any future frivolous motions for sanctions" after the FCR, quoting, "Plaintiff has not filed a single motion for sanctions in the past three months" (ROA.1677[¶19]). The district court ignored Yan again.

Since that day, Yan has faced a dilemma: zealously advocate all valid legal points, risking further injunctions due to the court's bias against laypeople's

arguments, or waive key issues under the chilling effect. In this unprecedented case, threatening a pro se litigant facing "a small army of" (ROA.2077) attorneys for preserving issues is not justice.

D.  Filing objection under *28 U.S.C. § 636(b)(1)(C)* is a constitutional right.

"[A] magistrate is not an Article III judge …the district court … must exercise supervision over the magistrate" *Thomas* at 141 .

The Supreme Court *"*has stressed that the reviewability of a magistrate judge's actions is a critical factor in considering the propriety of an Article III judge's delegation of authority to a magistrate judge." … [S]o long as the district court has the power to review the magistrate judge's actions, there is no "`threat to the judicial power or the independence of judicial decisionmaking that underlies Article III.'"" *United States v. Dees*, 125 F.3d 261, 268 (5th Cir. 1997).

If an objection filed under *28 U.S.C. § 636(b)(1)(C)* leads to a sua sponte injunction, it undermines the litigants' constitutional right to have their case heard by an Article III judge. Any threat to a litigant seeking judicial review under an Article III court abridges the guarantee of the First Amendment and the separation of powers. Therefore, this injunction was erred.

E.    The district court sua sponte imposed pre-filing injunctions, in violation of due process.

The Court held that "our precedent governing the imposition of pre-filing injunctions … states unequivocally that "[n]otice and a hearing are required if the district court sua sponte imposes a pre-filing injunction." … **Those prerequisites are mandatory and constitutionally derived**; failure to provide notice and conduct a hearing is an abuse of discretion." *Qureshi v. U.S.*, 600 F.3d 523, 525-526 (5th Cir. 2010).

""[A] preliminary injunction granted without adequate notice and a fair opportunity to oppose it should be vacated and remanded to the district court,"… **Regardless of the merits of the injunction** … [This Court] **must** therefore vacate the pre-filing injunction." *Id*.

## XIV.    <u>Finality:</u>

A.    The final judgment neither adjudicates all claims of all parties nor cites Rule *54(b)*.

The Supreme Court stated that "the general test for finality as being a decision "that ends the litigation on the merits and leaves nothing for the court to do but execute the judgment."" *Newpark Shipbuilding Repair, v. Roundtree*, 723 F.2d 399, 401 (5th Cir. 1984). *See* also (ROA.2130).

This lawsuit "contains [nine] claims and/or [twelve] parties, a final judgment exists **only if** it meets one of two conditions: The judgment **must either** adjudicate **all** claims, rights, and liabilities of **all** parties **or** the district court **must expressly** conclude that no just reason exists for delaying the entry of final judgment **and must expressly** order the entry of that judgment pursuant to **Rule 54(b)**" *Bader v. Atlantic International, Ltd.*, 986 F.2d 912, 914-915 (5th Cir. 1993).

Neither of the exceptions is met here. There are twelve parties, nine claims and single judgment. The judgement "**neither** expressly determined that no just reason for the delay of final judgment existed **nor** directed that the judgment[] be deemed final as to any party. Absent those express statements, which are required by Rule *54(b)*, the judgment[] herein **must** adjudicate **all** of the claims and all of the rights and liabilities of **all** of the parties for this Court to have appellate jurisdiction." *Id.* at 915. The Decisions did not.

B.   Pigg filed the answer, not a Rule 12 motion.

Pigg is sued under *§ 1962(d)* (ROA.1064), *§ 2* (ROA.1078), and *§ 1983* (ROA.1094) which were not briefed at any stage. Pigg responded (ROA.1230-1237), denying most and admitting some allegations. Under party presentation principle, the district court shall not dismiss.

C.   The Order expressly did not rule on three claims against Pigg; therefore, the final judgment erred in disposing of all claims.

The Order (ROA.2076-2093) expressly stated,

> "The Court *independently* assessed *U.S. Bank's Motion* to Dismiss, which was filed after the Magistrate Judge entered his FCR on the above motions" (ROA.2091), and "the Court GRANTS *all* remaining *motions to dismiss* in this case. See ECF Nos. **69, 70, 75, 83, 90, 126**. Because all other Defendants have been terminated ***at this juncture***, the Court ORDERS that this civil action is DISMISSED" (ROA.2093).

This Court has "cautioned that "[t]he intention of the judge is crucial in determining finality." …First, a decision is final if the only claims not disposed of by the district court were abandoned" *Mclaughlin v. Mississippi Power Co.*, 376 F.3d 344, 350-351 (5th Cir. 2004). Yan and Pigg had not abandoned their claims, this exception does not apply.

"Second, a decision that does not specifically refer to all pending claims will be deemed final if it is **clear** that the district court intended, by the decision, to dispose of all claims." *Id*. The language in the Order explicitly addresses every party except Pigg. Pigg has not "been terminated *at this juncture,*" the district court erred in ordering "that this civil action is DISMISSED."

I.   Ending Statement:

A forged QDRO led to the embezzlement of $25,000 in ERISA funds by Barrows-Ybarra and Pigg, highlighting the need for corrective action. The security of American families' ERISA funds should not be compromised for the gain of a few

greedy family court actors. Altering a banking instrument would result in professional disqualification in USBank. Yet, two years later, BarrowsYbarra and Pigg who forged court instrument <u>remain</u> Texas attorneys. Yan's disciplinary complaint was <u>dismissed</u>, the criminal complaint <u>barred</u>, and the federal suit <u>dismissed</u> with <u>prejudice</u>. Contradictorily, the judiciary swiftly imposed a due process-violating injunction on Yan with lighting speed, simply because he objected. In this country, <u>does the judiciary permit forgery but prohibit disobedience</u>?

The public's fundamental expectation of the judiciary is that "[t]ruth is the essential objective of our adversary system of justice." *United States v. Beechum*, 582 F.2d 898, 908 (5th Cir. 1978). There is no truth in a forged QDRO. The integrity of the legal principles has yet to penetrate the Texas legal community's racketeering fellowship. Does this Court still "believe in a system of law based on justice and morality," *Walker v. City of Birmingham*, 388 U.S. 307, 324 (1967), or is it merely "smoke and mirrors?"

## CONCLUSION

"At this initial stage of the case, [Yan] need not definitively prove [his] injury or disprove the [Defendants]'s defenses. [he] has plausibly pleaded on the face of [ERISA] complaint that [he] suffered financial harm from the [Defendants]'s action, and that is enough for now." *Tyler v. Hennepin County*, 598 U.S. 631, 570 (2023).

The lower court failed to follow the law to such a degree that even a scam—an altered, forged QDRO—was allowed in the legal framework, as judges, acting as a government of men, subordinated the rule of law to their personal views. The more barriers the SBTX associates impose on Yan's pursuit of justice, the more it demonstrates its predatory monopoly. Sherman Act Section 2 prohibits predatory conduct without justification in a monopoly. After all, a legal interpretation monopoly is still a monopoly, which Supreme Court justices have also clearly noticed (Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 45 (2012)).

In <u>*Burrell v. Staff*</u>, 60 F.4th 25 (3d Cir. **2023**), Plaintiffs pleaded unjust enrichment, Pennsylvania Wage Payment and Collection Law, Trafficking Victims Protection Act, Fair Labor Standards Act and RICO claims against **the County**, **the Authority** and the **Corporation**—a small army of defendants—similar to what Yan did (ROA.2077).

The Third Circuit reversed the district court's dismissal. *Id.* at 31, and emphasized, "**[c]hoices usually come with consequences**. We can honor our obligations, pursue opportunity, make good on our debts. Or we can **walk the other way** and **decline to play by the rules**. Ordinarily, **law fences these two paths**,

rewarding industry and honesty, penalizing irresponsibility. The majority's decision moves that line." *Id.* at 50.

Yan fights this battle for integrity and honor. The Defendants in this case, declined to follow ERISA rules, and the Decisions failed to move that line. However, **this Court shall follow the law**, as the Third Circuit did.

For the reasons set forth above, this Court should reverse the interim injunctive order, the final order, judgement and remand this case to the district court so that Yan can seek redress for his damages.

Respectfully submitted,

/s/ Conghua Yan
Conghua Yan, Pro Se Plaintiff
[Conghua Yan] [2140 E Southlake Blvd, Suite L-439] [Southlake, Texas 76092]
[214-228-1886] [arnold200@gmail.com]

## CERTIFICATE OF SERVICE

This is to certify that the foregoing document has been served in a manner in compliance with Rule 25(b) and (c) of the Fed. R. App. P., on October 7, 2024, on all registered counsel of record, and has been transmitted to the Clerk of the Court.

/s/ Conghua Yan

Conghua Yan, Pro Se Plaintiff

[Conghua Yan] [2140 E Southlake Blvd, Suite L-439] [Southlake, Texas 76092]

[214-228-1886] [arnold200@gmail.com]

# CERTIFICATE OF COMPLIANCE

I certify that the foregoing Brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

- this brief contains 18,000 words and 1746 lines, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type requirements of Fed. R. App. P. 32(a)(6) because:

- this brief has been prepared in a proportionally spaced typeface using Microsoft Office 2016 Word with a 14-point font named Times New Roman.

/s/ Conghua Yan
Conghua Yan, Pro Se Plaintiff
[Conghua Yan] [2140 E Southlake Blvd, Suite L-439] [Southlake, Texas 76092]
[214-228-1886] [arnold200@gmail.com]
October 7, 2024

# APPELLANT'S APPENDIX

Tab Document

A. Federal Statutes (1-73)

B. State Statutes (74-89)

C. Third Amended Complaint filed by Plaintiff in district court (90-242)

D. FCR in district court (243-261)

E. Objection to FCR filed by Plaintiff in district court (262-285)

F. Order in district court (286-304)

G. Judgement in district court (305-306)

H. Rule 58 motion and memorandum filed by Plaintiff in district court (307-344)