# Case No. 24-10543

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

Conghua Yan,

*Plaintiff - Appellant*

v.

The State Bar of Texas, a private company; The Barrows Firm, a private company; Leslie Starr Barrows, in Individual Capacity, as Member of the State Bar of Texas; William Albert Pigg, in Individual Capacity, as Member of the State of Texas; Samantha Ybarra, in Individual Capacity, as Member of the State Bar of Texas; Luis Jesus Marin, in Individual Capacity, as Member of the State Bar of Texas, and Official Capacity as Assistant Disciplinary Counsel for the Office of the CDC; Daniel Eulalio Martinez, in Individual Capacity, as Member of the State Bar of Texas, and Official Capacity as Assistant Disciplinary Counsel for the Office of the CDC; Rachel Ann Craig, in Individual Capacity, as Member of the State Bar of Texas, and Official Capacity as Assistant Disciplinary Counsel for the Office of the CDC; Lori L. Deangelis, in Individual Capacity, as member of the State Bar of Texas, and Official Capacity as Associated Judge; U.S. Bank,

*Defendants - Appellees*

On Appeal from the United States District Court for the
Northern District of Texas, Fort Worth Division
Civil Action No. 4:23-CV-00758-P, The Hon. Mark T Pittman, Presiding

# Appendix A

1.  U.S. Const. Art. I, § 8, cl. 3 ........................................................................................................ 2

2.  15 U.S. Code § 1 - Trusts, etc., in restraint of trade illegal; penalty ..................................... 3

3.  15 U.S. Code § 2 - Monopolizing trade a felony; penalty .................................................... 4

4.  18 U.S. Code § 664 - Theft or embezzlement from employee benefit plan .......................... 5

5.  18 U.S. Code § 1341 - Frauds and swindles ......................................................................... 6

6.  18 U.S. Code § 1343 - Fraud by wire, radio, or television .................................................... 7

7.  18 U.S. Code § 1956 - Laundering of monetary instruments ................................................ 8

8.  18 U.S. Code § 1961 - Definitions....................................................................................... 19

9.  18 U.S. Code § 1962 - Prohibited activities ....................................................................... 22

10. 18 U.S. Code § 1963 - Criminal penalties ........................................................................... 23

11. 18 U.S. Code § 1964 - Civil remedies.................................................................................. 30

12. 28 U.S. Code § 636 - Jurisdiction, powers, and temporary assignment.............................. 31

13. 29 U.S. Code § 1056 - Form and payment of benefits ....................................................... 37

14. 29 U.S. Code § 1132 - Civil enforcement............................................................................ 57

15. 29 U.S. Code § 1144 - Other laws....................................................................................... 68

16. 42 U.S. Code § 1983 - Civil action for deprivation of rights .............................................. 73

**1.    U.S. Const. Art. I, § 8, cl. 3**

[The Congress shall have Power . . . ] To regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes; . . .

## 2.     15 U.S. Code § 1 - Trusts, etc., in restraint of trade illegal; penalty

Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal. Every person who shall make any contract or engage in any combination or conspiracy hereby declared to be illegal shall be deemed guilty of a felony, and, on conviction thereof, shall be punished by fine not exceeding $100,000,000 if a corporation, or, if any other person, $1,000,000, or by imprisonment not exceeding 10 years, or by both said punishments, in the discretion of the court.

### 3.   15 U.S. Code § 2 - Monopolizing trade a felony; penalty

Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a felony, and, on conviction thereof, shall be punished by fine not exceeding $100,000,000 if a corporation, or, if any other person, $1,000,000, or by imprisonment not exceeding 10 years, or by both said punishments, in the discretion of the court.

### 4.    18 U.S. Code § 664 - Theft or embezzlement from employee benefit plan

Any person who embezzles, steals, or unlawfully and willfully abstracts or converts to his own use or to the use of another, any of the moneys, funds, securities, premiums, credits, property, or other assets of any employee welfare benefit plan or employee pension benefit plan, or of any fund connected therewith, shall be fined under this title, or imprisoned not more than five years, or both.

As used in this section, the term "any employee welfare benefit plan or employee pension benefit plan" means any employee benefit plan subject to any provision of title I of the Employee Retirement Income Security Act of 1974.

## 5.    18 U.S. Code § 1341 - Frauds and swindles

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined under this title or imprisoned not more than 20 years, or both. If the violation occurs in relation to, or involving any benefit authorized, transported, transmitted, transferred, disbursed, or paid in connection with, a presidentially declared major disaster or emergency (as those terms are defined in section 102 of the Robert T. Stafford Disaster Relief and Emergency Assistance Act (42 U.S.C. 5122)), or affects a financial institution, such person shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

### 6.　18 U.S. Code § 1343 - Fraud by wire, radio, or television

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both. If the violation occurs in relation to, or involving any benefit authorized, transported, transmitted, transferred, disbursed, or paid in connection with, a presidentially declared major disaster or emergency (as those terms are defined in section 102 of the Robert T. Stafford Disaster Relief and Emergency Assistance Act (42 U.S.C. 5122)), or affects a financial institution, such person shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

## 7.    18 U.S. Code § 1956 - Laundering of monetary instruments

(a)

(1) Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity—

    (A)

        (i) with the intent to promote the carrying on of specified unlawful activity; or

        (ii) with intent to engage in conduct constituting a violation of section 7201 or 7206 of the Internal Revenue Code of 1986; or

    (B) knowing that the transaction is designed in whole or in part—

        (i) to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity; or

        (ii) to avoid a transaction reporting requirement under State or Federal law,

    shall be sentenced to a fine of not more than $500,000 or twice the value of the property involved in the transaction, whichever is greater, or imprisonment for not more than twenty years, or both. For purposes of this paragraph, a financial transaction shall be considered to be one involving the proceeds of specified unlawful activity if it is part of a set of parallel or dependent transactions, any one of which involves the proceeds of specified unlawful activity, and all of which are part of a single plan or arrangement.

(2) Whoever transports, transmits, or transfers, or attempts to transport, transmit, or transfer a monetary instrument or funds from a place in the United States to or through a place outside the United States or to a place in the United States from or through a place outside the United States—

(A) with the intent to promote the carrying on of specified unlawful activity; or

(B) knowing that the monetary instrument or funds involved in the transportation, transmission, or transfer represent the proceeds of some form of unlawful activity and knowing that such transportation, transmission, or transfer is designed in whole or in part—

  (i) to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity; or

  (ii) to avoid a transaction reporting requirement under State or Federal law,

shall be sentenced to a fine of not more than $500,000 or twice the value of the monetary instrument or funds involved in the transportation, transmission, or transfer, whichever is greater, or imprisonment for not more than twenty years, or both. For the purpose of the offense described in subparagraph (B), the defendant's knowledge may be established by proof that a law enforcement officer represented the matter specified in subparagraph (B) as true, and the defendant's subsequent statements or actions indicate that the defendant believed such representations to be true.

(3) Whoever, with the intent—

(A) to promote the carrying on of specified unlawful activity;

(B) to conceal or disguise the nature, location, source, ownership, or control of property believed to be the proceeds of specified unlawful activity; or

(C) to avoid a transaction reporting requirement under State or Federal law,

conducts or attempts to conduct a financial transaction involving property represented to be the proceeds of specified unlawful activity, or property used to conduct or facilitate specified unlawful activity, shall be fined under this title or imprisoned for not more than 20 years, or both. For purposes of this paragraph and paragraph (2), the term "represented" means any representation made by a law enforcement officer or by another person at the direction of, or with the approval of, a Federal official authorized to investigate or prosecute violations of this section.

(b) Penalties.—

(1) In general.—Whoever conducts or attempts to conduct a transaction described in subsection (a)(1) or (a)(3), or section 1957, or a transportation, transmission, or transfer described in subsection (a)(2), is liable to the United States for a civil penalty of not more than the greater of—

(A) the value of the property, funds, or monetary instruments involved in the transaction; or

(B) $10,000.

(2) Jurisdiction over foreign persons.—For purposes of adjudicating an action filed or enforcing a penalty ordered under this section, the district courts shall have jurisdiction over any foreign person, including any financial institution authorized under the laws of a foreign country, against whom the action is brought, if service of process upon the foreign person is made under the Federal Rules of Civil Procedure or the laws of the country in which the foreign person is found, and—

(A) the foreign person commits an offense under subsection (a) involving a financial transaction that occurs in whole or in part in the United States;

(B) the foreign person converts, to his or her own use, property in which the United States has an ownership interest by virtue of the entry of an order of forfeiture by a court of the United States; or

(C) the foreign person is a financial institution that maintains a bank account at a financial institution in the United States.

(3) Court authority over assets.—

A court may issue a pretrial restraining order or take any other action necessary to ensure that any bank account or other property held by the defendant in the United States is available to satisfy a judgment under this section.

(4) Federal receiver.—

(A) In general.—

A court may appoint a Federal Receiver, in accordance with subparagraph (B) of this paragraph, to collect, marshal, and take custody, control, and

possession of all assets of the defendant, wherever located, to satisfy a civil judgment under this subsection, a forfeiture judgment under section 981 or 982, or a criminal sentence under section 1957 or subsection (a) of this section, including an order of restitution to any victim of a specified unlawful activity.

(B) Appointment and authority.—A Federal Receiver described in subparagraph (A)—

(i) may be appointed upon application of a Federal prosecutor or a Federal or State regulator, by the court having jurisdiction over the defendant in the case;

(ii) shall be an officer of the court, and the powers of the Federal Receiver shall include the powers set out in section 754 of title 28, United States Code; and

(iii) shall have standing equivalent to that of a Federal prosecutor for the purpose of submitting requests to obtain information regarding the assets of the defendant—

(I) from the Financial Crimes Enforcement Network of the Department of the Treasury; or

(II) from a foreign country pursuant to a mutual legal assistance treaty, multilateral agreement, or other arrangement for international law enforcement assistance, provided that such requests are in accordance with the policies and procedures of the Attorney General.

(c) As used in this section—

(1) the term "knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity" means that the person knew the property involved in the transaction represented proceeds from some form, though not necessarily which form, of activity that constitutes a felony under State, Federal, or foreign law, regardless of whether or not such activity is specified in paragraph (7);

(2) the term "conducts" includes initiating, concluding, or participating in initiating, or concluding a transaction;

(3) the term "transaction" includes a purchase, sale, loan, pledge, gift, transfer, delivery, or other disposition, and with respect to a financial institution includes a deposit, withdrawal, transfer between accounts, exchange of currency, loan, extension of credit, purchase or sale of any stock, bond, certificate of deposit, or other monetary instrument, use of a safe deposit box, or any other payment, transfer, or delivery by, through, or to a financial institution, by whatever means effected;

(4) the term "financial transaction" means (A) a transaction which in any way or degree affects interstate or foreign commerce (i) involving the movement of funds by wire or other means or (ii) involving one or more monetary instruments, or (iii) involving the transfer of title to any real property, vehicle, vessel, or aircraft, or (B) a transaction involving the use of a financial institution which is engaged in, or the activities of which affect, interstate or foreign commerce in any way or degree;

(5) the term "monetary instruments" means (i) coin or currency of the United States or of any other country, travelers' checks, personal checks, bank checks, and money orders, or (ii) investment securities or negotiable instruments, in bearer form or otherwise in such form that title thereto passes upon delivery;

(6) the term "financial institution" includes—

(A) any financial institution, as defined in section 5312(a)(2) of title 31, United States Code, or the regulations promulgated thereunder; and

(B) any foreign bank, as defined in section 1 of the International Banking Act of 1978 (12 U.S.C. 3101);

(7) the term "specified unlawful activity" means—

(A) any act or activity constituting an offense listed in section 1961(1) of this title except an act which is indictable under subchapter II of chapter 53 of title 31;

(B) with respect to a financial transaction occurring in whole or in part in the United States, an offense against a foreign nation involving—

(i) the manufacture, importation, sale, or distribution of a controlled substance (as such term is defined for the purposes of the Controlled Substances Act);

(ii) murder, kidnapping, robbery, extortion, destruction of property by means of explosive or fire, or a crime of violence (as defined in section 16);

(iii) fraud, or any scheme or attempt to defraud, by or against a foreign bank (as defined in paragraph 7 of section 1(b) of the International Banking Act of 1978)); [1]

(iv) bribery of a public official, or the misappropriation, theft, or embezzlement of public funds by or for the benefit of a public official;

(v) smuggling or export control violations involving—

(I) an item controlled on the United States Munitions List established under section 38 of the Arms Export Control Act (22 U.S.C. 2778); or

(II) an item controlled under regulations under the Export Administration Regulations (15 C.F.R. Parts 730–774);

(vi) an offense with respect to which the United States would be obligated by a multilateral treaty, either to extradite the alleged offender or to submit the case for prosecution, if the offender were found within the territory of the United States; or

(vii) trafficking in persons, selling or buying of children, sexual exploitation of children, or transporting, recruiting or harboring a person, including a child, for commercial sex acts;

(C) any act or acts constituting a continuing criminal enterprise, as that term is defined in section 408 of the Controlled Substances Act (21 U.S.C. 848);

(D) an offense under section 32 (relating to the destruction of aircraft), section 37 (relating to violence at international airports), section 115 (relating to influencing, impeding, or retaliating against a Federal official by threatening or injuring a family member), section 152 (relating to concealment of assets; false oaths and claims; bribery), section 175c (relating to the variola virus), section 215 (relating to commissions or gifts for procuring loans), section 351 (relating to congressional or Cabinet officer assassination), any of sections 500 through 503 (relating to certain counterfeiting offenses), section 513 (relating to securities of States and

private entities), section 541 (relating to goods falsely classified), section 542 (relating to entry of goods by means of false statements), section 545 (relating to smuggling goods into the United States), section 549 (relating to removing goods from Customs custody), section 554 (relating to smuggling goods from the United States), section 555 (relating to border tunnels), section 641 (relating to public money, property, or records), section 656 (relating to theft, embezzlement, or misapplication by bank officer or employee), section 657 (relating to lending, credit, and insurance institutions), section 658 (relating to property mortgaged or pledged to farm credit agencies), section 666 (relating to theft or bribery concerning programs receiving Federal funds), section 793, 794, or 798 (relating to espionage), section 831 (relating to prohibited transactions involving nuclear materials), section 844(f) or (i) (relating to destruction by explosives or fire of Government property or property affecting interstate or foreign commerce), section 875 (relating to interstate communications), section 922(l) (relating to the unlawful importation of firearms), section 924(n), 932, or 933 (relating to firearms trafficking), section 956 (relating to conspiracy to kill, kidnap, maim, or injure certain property in a foreign country), section 1005 (relating to fraudulent bank entries), 1006 [2] (relating to fraudulent Federal credit institution entries), 1007 [2] (relating to Federal Deposit Insurance transactions), 1014 [2] (relating to fraudulent loan or credit applications), section 1030 (relating to computer fraud and abuse), 1032 [2] (relating to concealment of assets from conservator, receiver, or liquidating agent of financial institution), section 1111 (relating to murder), section 1114 (relating to murder of United States law enforcement officials), section 1116 (relating to murder of foreign officials, official guests, or internationally protected persons), section 1201 (relating to kidnaping), section 1203 (relating to hostage taking), section 1361 (relating to willful injury of Government property), section 1363 (relating to destruction of property within the special maritime and territorial jurisdiction), section 1708 (theft from the mail), section 1751 (relating to Presidential assassination), section 2113 or 2114 (relating to bank and postal robbery and theft), section 2252A (relating to child pornography) where the child pornography contains a visual depiction of an actual minor engaging in sexually explicit conduct, section 2260 (production of certain child pornography for importation into the United States), section 2280 (relating to violence against maritime navigation), section 2281 (relating to violence against maritime fixed platforms), section 2319 (relating to copyright infringement), section 2320 (relating to trafficking in counterfeit goods and services), section 2332 (relating to terrorist acts abroad against

United States nationals), section 2332a (relating to use of weapons of mass destruction), section 2332b (relating to international terrorist acts transcending national boundaries), section 2332g (relating to missile systems designed to destroy aircraft), section 2332h (relating to radiological dispersal devices), section 2339A or 2339B (relating to providing material support to terrorists), section 2339C (relating to financing of terrorism), or section 2339D (relating to receiving military-type training from a foreign terrorist organization) of this title, section 46502 of title 49, United States Code, a felony violation of the Chemical Diversion and Trafficking Act of 1988 (relating to precursor and essential chemicals), section 590 of the Tariff Act of 1930 (19 U.S.C. 1590) (relating to aviation smuggling), section 422 of the Controlled Substances Act (relating to transportation of drug paraphernalia), section 38(c) (relating to criminal violations) of the Arms Export Control Act, section 11 [3] (relating to violations) of the Export Administration Act of 1979, section 206 (relating to penalties) of the International Emergency Economic Powers Act, section 16 (relating to offenses and punishment) of the Trading with the Enemy Act, any felony violation of section 15 of the Food and Nutrition Act of 2008 (relating to supplemental nutrition assistance program benefits fraud) involving a quantity of benefits having a value of not less than $5,000, any violation of section 543(a)(1) of the Housing Act of 1949 (relating to equity skimming), any felony violation of the Foreign Agents Registration Act of 1938, any felony violation of the Foreign Corrupt Practices Act, section 92 of the Atomic Energy Act of 1954 (42 U.S.C. 2122) (relating to prohibitions governing atomic weapons), or section 104(a) of the North Korea Sanctions Enforcement Act of 2016 [3] (relating to prohibited activities with respect to North Korea);

environmental crimes

(E) a felony violation of the Federal Water Pollution Control Act (33 U.S.C. 1251 et seq.), the Ocean Dumping Act (33 U.S.C. 1401 et seq.), the Act to Prevent Pollution from Ships (33 U.S.C. 1901 et seq.), the Safe Drinking Water Act (42 U.S.C. 300f et seq.), or the Resources Conservation and Recovery Act (42 U.S.C. 6901 et seq.);

(F) any act or activity constituting an offense involving a Federal health care offense; or

(G) any act that is a criminal violation of subparagraph (A), (B), (C), (D), (E), or (F) of paragraph (1) of section 9(a) of the Endangered Species Act

of 1973 (16 U.S.C. 1538(a)(1)), section 2203 of the African Elephant Conservation Act (16 U.S.C. 4223), or section 7(a) of the Rhinoceros and Tiger Conservation Act of 1994 (16 U.S.C. 5305a(a)), if the endangered or threatened species of fish or wildlife, products, items, or substances involved in the violation and relevant conduct, as applicable, have a total value of more than $10,000;

(8) the term "State" includes a State of the United States, the District of Columbia, and any commonwealth, territory, or possession of the United States; and

(9) the term "proceeds" means any property derived from or obtained or retained, directly or indirectly, through some form of unlawful activity, including the gross receipts of such activity.

(d) Nothing in this section shall supersede any provision of Federal, State, or other law imposing criminal penalties or affording civil remedies in addition to those provided for in this section.

(e) Violations of this section may be investigated by such components of the Department of Justice as the Attorney General may direct, and by such components of the Department of the Treasury as the Secretary of the Treasury may direct, as appropriate, and, with respect to offenses over which the Department of Homeland Security has jurisdiction, by such components of the Department of Homeland Security as the Secretary of Homeland Security may direct, and, with respect to offenses over which the United States Postal Service has jurisdiction, by the Postal Service. Such authority of the Secretary of the Treasury, the Secretary of Homeland Security, and the Postal Service shall be exercised in accordance with an agreement which shall be entered into by the Secretary of the Treasury, the Secretary of Homeland Security, the Postal Service, and the Attorney General. Violations of this section involving offenses described in paragraph (c)(7)(E) may be investigated by such components of the Department of Justice as the Attorney General may direct, and the National Enforcement Investigations Center of the Environmental Protection Agency.

(f) There is extraterritorial jurisdiction over the conduct prohibited by this section if—

(1) the conduct is by a United States citizen or, in the case of a non-United States citizen, the conduct occurs in part in the United States; and

(2) the transaction or series of related transactions involves funds or monetary instruments of a value exceeding $10,000.

(g) Notice of Conviction of Financial Institutions.—

If any financial institution or any officer, director, or employee of any financial institution has been found guilty of an offense under this section, section 1957 or 1960 of this title, or section 5322 or 5324 of title 31, the Attorney General shall provide written notice of such fact to the appropriate regulatory agency for the financial institution.

(h) Any person who conspires to commit any offense defined in this section or section 1957 shall be subject to the same penalties as those prescribed for the offense the commission of which was the object of the conspiracy.

(i) Venue.—

(1) Except as provided in paragraph (2), a prosecution for an offense under this section or section 1957 may be brought in—

(A) any district in which the financial or monetary transaction is conducted; or

(B) any district where a prosecution for the underlying specified unlawful activity could be brought, if the defendant participated in the transfer of the proceeds of the specified unlawful activity from that district to the district where the financial or monetary transaction is conducted.

(2) A prosecution for an attempt or conspiracy offense under this section or section 1957 may be brought in the district where venue would lie for the completed offense under paragraph (1), or in any other district where an act in furtherance of the attempt or conspiracy took place.

(3) For purposes of this section, a transfer of funds from 1 place to another, by wire or any other means, shall constitute a single, continuing transaction. Any person who conducts (as that term is defined in subsection (c)(2)) any portion of the transaction may be charged in any district in which the transaction takes place.

(j) Seven-year Limitation.—

Notwithstanding section 3282, no person shall be prosecuted, tried, or punished for a violation of this section or section 1957 if the specified unlawful activity

constituting the violation is the activity defined in subsection (c)(7)(B) of this section, unless the indictment is found or the information is instituted not later than 7 years after the date on which the offense was committed.

# 8.    18 U.S. Code § 1961 - Definitions

As used in this chapter—

(1) "racketeering activity" means (A) any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical (as defined in section 102 of the Controlled Substances Act), which is chargeable under State law and punishable by imprisonment for more than one year; (B) any act which is indictable under any of the following provisions of title 18, United States Code: Section 201 (relating to bribery), section 224 (relating to sports bribery), sections 471, 472, and 473 (relating to counterfeiting), section 659 (relating to theft from interstate shipment) if the act indictable under section 659 is felonious, section 664 (relating to embezzlement from pension and welfare funds), sections 891–894 (relating to extortionate credit transactions), section 932 (relating to straw purchasing), section 933 (relating to trafficking in firearms), section 1028 (relating to fraud and related activity in connection with identification documents), section 1029 (relating to fraud and related activity in connection with access devices), section 1084 (relating to the transmission of gambling information), section 1341 (relating to mail fraud), section 1343 (relating to wire fraud), section 1344 (relating to financial institution fraud), section 1351 (relating to fraud in foreign labor contracting), section 1425 (relating to the procurement of citizenship or nationalization unlawfully), section 1426 (relating to the reproduction of naturalization or citizenship papers), section 1427 (relating to the sale of naturalization or citizenship papers), sections 1461–1465 (relating to obscene matter), section 1503 (relating to obstruction of justice), section 1510 (relating to obstruction of criminal investigations), section 1511 (relating to the obstruction of State or local law enforcement), section 1512 (relating to tampering with a witness, victim, or an informant), section 1513 (relating to retaliating against a witness, victim, or an informant), section 1542 (relating to false statement in application and use of passport), section 1543 (relating to forgery or false use of passport), section 1544 (relating to misuse of passport), section 1546 (relating to fraud and misuse of visas, permits, and other documents), sections 1581–1592 (relating to peonage, slavery, and trafficking in persons).,[1] sections 1831 and 1832 (relating to economic espionage and theft of trade secrets), section 1951 (relating to interference with commerce, robbery, or extortion), section 1952 (relating to racketeering), section 1953 (relating to interstate transportation of wagering paraphernalia), section 1954 (relating to unlawful welfare fund payments), section 1955 (relating to the prohibition of illegal gambling businesses), section 1956 (relating to the laundering of monetary instruments), section 1957 (relating to engaging in monetary transactions in property derived from specified unlawful

activity), section 1958 (relating to use of interstate commerce facilities in the commission of murder-for-hire), section 1960 (relating to illegal money transmitters), sections 2251, 2251A, 2252, and 2260 (relating to sexual exploitation of children), sections 2312 and 2313 (relating to interstate transportation of stolen motor vehicles), sections 2314 and 2315 (relating to interstate transportation of stolen property), section 2318 (relating to trafficking in counterfeit labels for phonorecords, computer programs or computer program documentation or packaging and copies of motion pictures or other audiovisual works), section 2319 (relating to criminal infringement of a copyright), section 2319A (relating to unauthorized fixation of and trafficking in sound recordings and music videos of live musical performances), section 2320 (relating to trafficking in goods or services bearing counterfeit marks), section 2321 (relating to trafficking in certain motor vehicles or motor vehicle parts), sections 2341–2346 (relating to trafficking in contraband cigarettes), sections 2421–24 (relating to white slave traffic),[2] sections 175–178 (relating to biological weapons), sections 229–229F (relating to chemical weapons), section 831 (relating to nuclear materials), (C) any act which is indictable under title 29, United States Code, section 186 (dealing with restrictions on payments and loans to labor organizations) or section 501(c) (relating to embezzlement from union funds), (D) any offense involving fraud connected with a case under title 11 (except a case under section 157 of this title), fraud in the sale of securities, or the felonious manufacture, importation, receiving, concealment, buying, selling, or otherwise dealing in a controlled substance or listed chemical (as defined in section 102 of the Controlled Substances Act), punishable under any law of the United States, (E) any act which is indictable under the Currency and Foreign Transactions Reporting Act, (F) any act which is indictable under the Immigration and Nationality Act, section 274 (relating to bringing in and harboring certain aliens), section 277 (relating to aiding or assisting certain aliens to enter the United States), or section 278 (relating to importation of alien for immoral purpose) if the act indictable under such section of such Act was committed for the purpose of financial gain, or (G) any act that is indictable under any provision listed in section 2332b(g)(5)(B);

(2) "State" means any State of the United States, the District of Columbia, the Commonwealth of Puerto Rico, any territory or possession of the United States, any political subdivision, or any department, agency, or instrumentality thereof;

(3) "person" includes any individual or entity capable of holding a legal or beneficial interest in property;

(4) "enterprise" includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity;

(5) "pattern of racketeering activity" requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity;

(6) "unlawful debt" means a debt (A) incurred or contracted in gambling activity which was in violation of the law of the United States, a State or political subdivision thereof, or which is unenforceable under State or Federal law in whole or in part as to principal or interest because of the laws relating to usury, and (B) which was incurred in connection with the business of gambling in violation of the law of the United States, a State or political subdivision thereof, or the business of lending money or a thing of value at a rate usurious under State or Federal law, where the usurious rate is at least twice the enforceable rate;

(7) "racketeering investigator" means any attorney or investigator so designated by the Attorney General and charged with the duty of enforcing or carrying into effect this chapter;

(8) "racketeering investigation" means any inquiry conducted by any racketeering investigator for the purpose of ascertaining whether any person has been involved in any violation of this chapter or of any final order, judgment, or decree of any court of the United States, duly entered in any case or proceeding arising under this chapter;

(9) "documentary material" includes any book, paper, document, record, recording, or other material; and

(10) "Attorney General" includes the Attorney General of the United States, the Deputy Attorney General of the United States, the Associate Attorney General of the United States, any Assistant Attorney General of the United States, or any employee of the Department of Justice or any employee of any department or agency of the United States so designated by the Attorney General to carry out the powers conferred on the Attorney General by this chapter. Any department or agency so designated may use in investigations authorized by this chapter either the investigative provisions of this chapter or the investigative power of such department or agency otherwise conferred by law.

# 9.    18 U.S. Code § 1962 - Prohibited activities

(a) It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce. A purchase of securities on the open market for purposes of investment, and without the intention of controlling or participating in the control of the issuer, or of assisting another to do so, shall not be unlawful under this subsection if the securities of the issuer held by the purchaser, the members of his immediate family, and his or their accomplices in any pattern or racketeering activity or the collection of an unlawful debt after such purchase do not amount in the aggregate to one percent of the outstanding securities of any one class, and do not confer, either in law or in fact, the power to elect one or more directors of the issuer.

(b) It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

(c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

(d) It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

## 10.    18 U.S. Code § 1963 - Criminal penalties

(a) Whoever violates any provision of section 1962 of this chapter shall be fined under this title or imprisoned not more than 20 years (or for life if the violation is based on a racketeering activity for which the maximum penalty includes life imprisonment), or both, and shall forfeit to the United States, irrespective of any provision of State law—

(1) any interest the person has acquired or maintained in violation of section 1962;

(2) any—

(A) interest in;

(B) security of;

(C) claim against; or

(D) property or contractual right of any kind affording a source of influence over;

any enterprise which the person has established, operated, controlled, conducted, or participated in the conduct of, in violation of section 1962; and

(3) any property constituting, or derived from, any proceeds which the person obtained, directly or indirectly, from racketeering activity or unlawful debt collection in violation of section 1962.

The court, in imposing sentence on such person shall order, in addition to any other sentence imposed pursuant to this section, that the person forfeit to the United States all property described in this subsection. In lieu of a fine otherwise authorized by this section, a defendant who derives profits or other proceeds from an offense may be fined not more than twice the gross profits or other proceeds.

(b) Property subject to criminal forfeiture under this section includes—

(1) real property, including things growing on, affixed to, and found in land; and

(2) tangible and intangible personal property, including rights, privileges, interests, claims, and securities.

(c) All right, title, and interest in property described in subsection (a) vests in the United States upon the commission of the act giving rise to forfeiture under this section. Any such property that is subsequently transferred to a person other than the defendant may be the subject of a special verdict of forfeiture and thereafter shall be ordered forfeited to the United States, unless the transferee establishes in a hearing pursuant to subsection (l) that he is a bona fide purchaser for value of such property who at the time of purchase was reasonably without cause to believe that the property was subject to forfeiture under this section.

(d)

(1) Upon application of the United States, the court may enter a restraining order or injunction, require the execution of a satisfactory performance bond, or take any other action to preserve the availability of property described in subsection (a) for forfeiture under this section—

(A) upon the filing of an indictment or information charging a violation of section 1962 of this chapter and alleging that the property with respect to which the order is sought would, in the event of conviction, be subject to forfeiture under this section; or

(B) prior to the filing of such an indictment or information, if, after notice to persons appearing to have an interest in the property and opportunity for a hearing, the court determines that—

(i) there is a substantial probability that the United States will prevail on the issue of forfeiture and that failure to enter the order will result in the property being destroyed, removed from the jurisdiction of the court, or otherwise made unavailable for forfeiture; and

(ii) the need to preserve the availability of the property through the entry of the requested order outweighs the hardship on any party against whom the order is to be entered:

Provided, however, That an order entered pursuant to subparagraph (B) shall be effective for not more than ninety days, unless extended by the court for good cause shown or unless an indictment or information described in subparagraph (A) has been filed.

(2) A temporary restraining order under this subsection may be entered upon application of the United States without notice or opportunity for a hearing when an information or indictment has not yet been filed with respect to the property, if the United States demonstrates that there is probable cause to believe that the property with respect to which the order is sought would, in the event of conviction, be subject to forfeiture under this section and that provision of notice will jeopardize the availability of the property for forfeiture. Such a temporary order shall expire not more than fourteen days after the date on which it is entered, unless extended for good cause shown or unless the party against whom it is entered consents to an extension for a longer period. A hearing requested concerning an order entered under this paragraph shall be held at the earliest possible time, and prior to the expiration of the temporary order.

(3) The court may receive and consider, at a hearing held pursuant to this subsection, evidence and information that would be inadmissible under the Federal Rules of Evidence.

(e) Upon conviction of a person under this section, the court shall enter a judgment of forfeiture of the property to the United States and shall also authorize the Attorney General to seize all property ordered forfeited upon such terms and conditions as the court shall deem proper. Following the entry of an order declaring the property forfeited, the court may, upon application of the United States, enter such appropriate restraining orders or injunctions, require the execution of satisfactory performance bonds, appoint receivers, conservators, appraisers, accountants, or trustees, or take any other action to protect the interest of the United States in the property ordered forfeited. Any income accruing to, or derived from, an enterprise or an interest in an enterprise which has been ordered forfeited under this section may be used to offset ordinary and necessary expenses to the enterprise which are required by law, or which are necessary to protect the interests of the United States or third parties.

(f) Following the seizure of property ordered forfeited under this section, the Attorney General shall direct the disposition of the property by sale or any other commercially feasible means, making due provision for the rights of any innocent persons. Any property right or interest not exercisable by, or transferable for value to, the United States shall expire and shall not revert to the defendant, nor shall the defendant or any person acting in concert with or on behalf of the defendant be eligible to purchase forfeited property at any sale held by the United States. Upon application of a person, other than the defendant or a person acting in concert with or on behalf of the defendant, the court may restrain or stay the sale

or disposition of the property pending the conclusion of any appeal of the criminal case giving rise to the forfeiture, if the applicant demonstrates that proceeding with the sale or disposition of the property will result in irreparable injury, harm or loss to him. Notwithstanding 31 U.S.C. 3302(b), the proceeds of any sale or other disposition of property forfeited under this section and any moneys forfeited shall be used to pay all proper expenses for the forfeiture and the sale, including expenses of seizure, maintenance and custody of the property pending its disposition, advertising and court costs. The Attorney General shall deposit in the Treasury any amounts of such proceeds or moneys remaining after the payment of such expenses.

(g) With respect to property ordered forfeited under this section, the Attorney General is authorized to—

(1) grant petitions for mitigation or remission of forfeiture, restore forfeited property to victims of a violation of this chapter, or take any other action to protect the rights of innocent persons which is in the interest of justice and which is not inconsistent with the provisions of this chapter;

(2) compromise claims arising under this section;

(3) award compensation to persons providing information resulting in a forfeiture under this section;

(4) direct the disposition by the United States of all property ordered forfeited under this section by public sale or any other commercially feasible means, making due provision for the rights of innocent persons; and

(5) take appropriate measures necessary to safeguard and maintain property ordered forfeited under this section pending its disposition.

(h) The Attorney General may promulgate regulations with respect to—

(1) making reasonable efforts to provide notice to persons who may have an interest in property ordered forfeited under this section;

(2) granting petitions for remission or mitigation of forfeiture;

(3) the restitution of property to victims of an offense petitioning for remission or mitigation of forfeiture under this chapter;

(4) the disposition by the United States of forfeited property by public sale or other commercially feasible means;

(5) the maintenance and safekeeping of any property forfeited under this section pending its disposition; and

(6) the compromise of claims arising under this chapter.

Pending the promulgation of such regulations, all provisions of law relating to the disposition of property, or the proceeds from the sale thereof, or the remission or mitigation of forfeitures for violation of the customs laws, and the compromise of claims and the award of compensation to informers in respect of such forfeitures shall apply to forfeitures incurred, or alleged to have been incurred, under the provisions of this section, insofar as applicable and not inconsistent with the provisions hereof. Such duties as are imposed upon the Customs Service or any person with respect to the disposition of property under the customs law shall be performed under this chapter by the Attorney General.

(i) Except as provided in subsection (l), no party claiming an interest in property subject to forfeiture under this section may—

(1) intervene in a trial or appeal of a criminal case involving the forfeiture of such property under this section; or

(2) commence an action at law or equity against the United States concerning the validity of his alleged interest in the property subsequent to the filing of an indictment or information alleging that the property is subject to forfeiture under this section.

(j) The district courts of the United States shall have jurisdiction to enter orders as provided in this section without regard to the location of any property which may be subject to forfeiture under this section or which has been ordered forfeited under this section.

(k) In order to facilitate the identification or location of property declared forfeited and to facilitate the disposition of petitions for remission or mitigation of forfeiture, after the entry of an order declaring property forfeited to the United States the court may, upon application of the United States, order that the testimony of any witness relating to the property forfeited be taken by deposition and that any designated book, paper, document, record, recording, or other material not privileged be produced at the same time and place, in the same manner as provided for the taking of depositions under Rule 15 of the Federal Rules of Criminal Procedure.

(l)

(1) Following the entry of an order of forfeiture under this section, the United States shall publish notice of the order and of its intent to dispose of the property in such manner as the Attorney General may direct. The Government may also, to the extent practicable, provide direct written notice to any person known to have alleged an interest in the property that is the subject of the order of forfeiture as a substitute for published notice as to those persons so notified.

(2) Any person, other than the defendant, asserting a legal interest in property which has been ordered forfeited to the United States pursuant to this section may, within thirty days of the final publication of notice or his receipt of notice under paragraph (1), whichever is earlier, petition the court for a hearing to adjudicate the validity of his alleged interest in the property. The hearing shall be held before the court alone, without a jury.

(3) The petition shall be signed by the petitioner under penalty of perjury and shall set forth the nature and extent of the petitioner's right, title, or interest in the property, the time and circumstances of the petitioner's acquisition of the right, title, or interest in the property, any additional facts supporting the petitioner's claim, and the relief sought.

(4) The hearing on the petition shall, to the extent practicable and consistent with the interests of justice, be held within thirty days of the filing of the petition. The court may consolidate the hearing on the petition with a hearing on any other petition filed by a person other than the defendant under this subsection.

(5) At the hearing, the petitioner may testify and present evidence and witnesses on his own behalf, and cross-examine witnesses who appear at the hearing. The United States may present evidence and witnesses in rebuttal and in defense of its claim to the property and cross-examine witnesses who appear at the hearing. In addition to testimony and evidence presented at the hearing, the court shall consider the relevant portions of the record of the criminal case which resulted in the order of forfeiture.

(6) If, after the hearing, the court determines that the petitioner has established by a preponderance of the evidence that—

(A) the petitioner has a legal right, title, or interest in the property, and such right, title, or interest renders the order of forfeiture invalid in whole or in

part because the right, title, or interest was vested in the petitioner rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property under this section; or

(B) the petitioner is a bona fide purchaser for value of the right, title, or interest in the property and was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture under this section;

the court shall amend the order of forfeiture in accordance with its determination.

(7) Following the court's disposition of all petitions filed under this subsection, or if no such petitions are filed following the expiration of the period provided in paragraph (2) for the filing of such petitions, the United States shall have clear title to property that is the subject of the order of forfeiture and may warrant good title to any subsequent purchaser or transferee.

(m) If any of the property described in subsection (a), as a result of any act or omission of the defendant—

(1) cannot be located upon the exercise of due diligence;

(2) has been transferred or sold to, or deposited with, a third party;

(3) has been placed beyond the jurisdiction of the court;

(4) has been substantially diminished in value; or

(5) has been commingled with other property which cannot be divided without difficulty;

the court shall order the forfeiture of any other property of the defendant up to the value of any property described in paragraphs (1) through (5).

# 11.    18 U.S. Code § 1964 - Civil remedies

(a) The district courts of the United States shall have jurisdiction to prevent and restrain violations of section 1962 of this chapter by issuing appropriate orders, including, but not limited to: ordering any person to divest himself of any interest, direct or indirect, in any enterprise; imposing reasonable restrictions on the future activities or investments of any person, including, but not limited to, prohibiting any person from engaging in the same type of endeavor as the enterprise engaged in, the activities of which affect interstate or foreign commerce; or ordering dissolution or reorganization of any enterprise, making due provision for the rights of innocent persons.

(b) The Attorney General may institute proceedings under this section. Pending final determination thereof, the court may at any time enter such restraining orders or prohibitions, or take such other actions, including the acceptance of satisfactory performance bonds, as it shall deem proper.

(c) Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee, except that no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of section 1962. The exception contained in the preceding sentence does not apply to an action against any person that is criminally convicted in connection with the fraud, in which case the statute of limitations shall start to run on the date on which the conviction becomes final.

(d) A final judgment or decree rendered in favor of the United States in any criminal proceeding brought by the United States under this chapter shall estop the defendant from denying the essential allegations of the criminal offense in any subsequent civil proceeding brought by the United States.

## 12.    28 U.S. Code § 636 - Jurisdiction, powers, and temporary assignment

(a) Each United States magistrate judge serving under this chapter shall have within the district in which sessions are held by the court that appointed the magistrate judge, at other places where that court may function, and elsewhere as authorized by law—

   (1) all powers and duties conferred or imposed upon United States commissioners by law or by the Rules of Criminal Procedure for the United States District Courts;

   (2) the power to administer oaths and affirmations, issue orders pursuant to section 3142 of title 18 concerning release or detention of persons pending trial, and take acknowledgements, affidavits, and depositions;

   (3) the power to conduct trials under section 3401, title 18, United States Code, in conformity with and subject to the limitations of that section;

   (4) the power to enter a sentence for a petty offense; and

   (5) the power to enter a sentence for a class A misdemeanor in a case in which the parties have consented.

(b)

   (1) Notwithstanding any provision of law to the contrary—

      (A) a judge may designate a magistrate judge to hear and determine any pretrial matter pending before the court, except a motion for injunctive relief, for judgment on the pleadings, for summary judgment, to dismiss or quash an indictment or information made by the defendant, to suppress evidence in a criminal case, to dismiss or to permit maintenance of a class action, to dismiss for failure to state a claim upon which relief can be granted, and to involuntarily dismiss an action. A judge of the court may reconsider any pretrial matter under this subparagraph (A) where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law.

      (B) a judge may also designate a magistrate judge to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for the disposition, by a judge of the court, of any motion excepted in subparagraph (A), of

applications for posttrial [1] relief made by individuals convicted of criminal offenses and of prisoner petitions challenging conditions of confinement.

(C) the magistrate judge shall file his proposed findings and recommendations under subparagraph (B) with the court and a copy shall forthwith be mailed to all parties.

Within fourteen days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

(2) A judge may designate a magistrate judge to serve as a special master pursuant to the applicable provisions of this title and the Federal Rules of Civil Procedure for the United States district courts. A judge may designate a magistrate judge to serve as a special master in any civil case, upon consent of the parties, without regard to the provisions of rule 53(b) of the Federal Rules of Civil Procedure for the United States district courts.

(3) A magistrate judge may be assigned such additional duties as are not inconsistent with the Constitution and laws of the United States.

(4) Each district court shall establish rules pursuant to which the magistrate judges shall discharge their duties.

(c) Notwithstanding any provision of law to the contrary—

(1) Upon the consent of the parties, a full-time United States magistrate judge or a part-time United States magistrate judge who serves as a full-time judicial officer may conduct any or all proceedings in a jury or nonjury civil matter and order the entry of judgment in the case, when specially designated to exercise such jurisdiction by the district court or courts he serves. Upon the consent of the parties, pursuant to their specific written request, any other part-time magistrate judge may exercise such jurisdiction, if such magistrate judge meets the bar membership requirements set forth in section 631(b)(1) and the chief judge of the district court certifies that a full-time magistrate judge is not

reasonably available in accordance with guidelines established by the judicial council of the circuit. When there is more than one judge of a district court, designation under this paragraph shall be by the concurrence of a majority of all the judges of such district court, and when there is no such concurrence, then by the chief judge.

(2) If a magistrate judge is designated to exercise civil jurisdiction under paragraph (1) of this subsection, the clerk of court shall, at the time the action is filed, notify the parties of the availability of a magistrate judge to exercise such jurisdiction. The decision of the parties shall be communicated to the clerk of court. Thereafter, either the district court judge or the magistrate judge may again advise the parties of the availability of the magistrate judge, but in so doing, shall also advise the parties that they are free to withhold consent without adverse substantive consequences. Rules of court for the reference of civil matters to magistrate judges shall include procedures to protect the voluntariness of the parties' consent.

(3) Upon entry of judgment in any case referred under paragraph (1) of this subsection, an aggrieved party may appeal directly to the appropriate United States court of appeals from the judgment of the magistrate judge in the same manner as an appeal from any other judgment of a district court. The consent of the parties allows a magistrate judge designated to exercise civil jurisdiction under paragraph (1) of this subsection to direct the entry of a judgment of the district court in accordance with the Federal Rules of Civil Procedure. Nothing in this paragraph shall be construed as a limitation of any party's right to seek review by the Supreme Court of the United States.

(4) The court may, for good cause shown on its own motion, or under extraordinary circumstances shown by any party, vacate a reference of a civil matter to a magistrate judge under this subsection.

(5) The magistrate judge shall, subject to guidelines of the Judicial Conference, determine whether the record taken pursuant to this section shall be taken by electronic sound recording, by a court reporter, or by other means.

(d) The practice and procedure for the trial of cases before officers serving under this chapter shall conform to rules promulgated by the Supreme Court pursuant to section 2072 of this title.

(e) Contempt Authority.—

(1) In general.—

A United States magistrate judge serving under this chapter shall have within the territorial jurisdiction prescribed by the appointment of such magistrate judge the power to exercise contempt authority as set forth in this subsection.

(2) Summary criminal contempt authority.—

A magistrate judge shall have the power to punish summarily by fine or imprisonment, or both, such contempt of the authority of such magistrate judge constituting misbehavior of any person in the magistrate judge's presence so as to obstruct the administration of justice. The order of contempt shall be issued under the Federal Rules of Criminal Procedure.

(3) Additional criminal contempt authority in civil consent and misdemeanor cases.—

In any case in which a United States magistrate judge presides with the consent of the parties under subsection (c) of this section, and in any misdemeanor case proceeding before a magistrate judge under section 3401 of title 18, the magistrate judge shall have the power to punish, by fine or imprisonment, or both, criminal contempt constituting disobedience or resistance to the magistrate judge's lawful writ, process, order, rule, decree, or command. Disposition of such contempt shall be conducted upon notice and hearing under the Federal Rules of Criminal Procedure.

(4) Civil contempt authority in civil consent and misdemeanor cases.—

In any case in which a United States magistrate judge presides with the consent of the parties under subsection (c) of this section, and in any misdemeanor case proceeding before a magistrate judge under section 3401 of title 18, the magistrate judge may exercise the civil contempt authority of the district court. This paragraph shall not be construed to limit the authority of a magistrate judge to order sanctions under any other statute, the Federal Rules of Civil Procedure, or the Federal Rules of Criminal Procedure.

(5) Criminal contempt penalties.—

The sentence imposed by a magistrate judge for any criminal contempt provided for in paragraphs (2) and (3) shall not exceed the penalties for a Class C misdemeanor as set forth in sections 3581(b)(8) and 3571(b)(6) of title 18.

(6) Certification of other contempts to the district court.—Upon the commission of any such act—

(A) in any case in which a United States magistrate judge presides with the consent of the parties under subsection (c) of this section, or in any misdemeanor case proceeding before a magistrate judge under section 3401 of title 18, that may, in the opinion of the magistrate judge, constitute a serious criminal contempt punishable by penalties exceeding those set forth in paragraph (5) of this subsection, or

(B) in any other case or proceeding under subsection (a) or (b) of this section, or any other statute, where—

  (i) the act committed in the magistrate judge's presence may, in the opinion of the magistrate judge, constitute a serious criminal contempt punishable by penalties exceeding those set forth in paragraph (5) of this subsection,

  (ii) the act that constitutes a criminal contempt occurs outside the presence of the magistrate judge, or

  (iii) the act constitutes a civil contempt,

  the magistrate judge shall forthwith certify the facts to a district judge and may serve or cause to be served, upon any person whose behavior is brought into question under this paragraph, an order requiring such person to appear before a district judge upon a day certain to show cause why that person should not be adjudged in contempt by reason of the facts so certified. The district judge shall thereupon hear the evidence as to the act or conduct complained of and, if it is such as to warrant punishment, punish such person in the same manner and to the same extent as for a contempt committed before a district judge.

(7) Appeals of magistrate judge contempt orders.—

The appeal of an order of contempt under this subsection shall be made to the court of appeals in cases proceeding under subsection (c) of this section. The appeal of any other order of contempt issued under this section shall be made to the district court.

(f) In an emergency and upon the concurrence of the chief judges of the districts involved, a United States magistrate judge may be temporarily assigned to perform any of the duties specified in subsection (a), (b), or (c) of this section in a judicial district other than the judicial district for which he has been appointed. No magistrate judge shall perform any of such duties in a district to which he has

been temporarily assigned until an order has been issued by the chief judge of such district specifying (1) the emergency by reason of which he has been transferred, (2) the duration of his assignment, and (3) the duties which he is authorized to perform. A magistrate judge so assigned shall not be entitled to additional compensation but shall be reimbursed for actual and necessary expenses incurred in the performance of his duties in accordance with section 635.

(g) A United States magistrate judge may perform the verification function required by section 4107 of title 18, United States Code. A magistrate judge may be assigned by a judge of any United States district court to perform the verification required by section 4108 and the appointment of counsel authorized by section 4109 of title 18, United States Code, and may perform such functions beyond the territorial limits of the United States. A magistrate judge assigned such functions shall have no authority to perform any other function within the territory of a foreign country.

(h) A United States magistrate judge who has retired may, upon the consent of the chief judge of the district involved, be recalled to serve as a magistrate judge in any judicial district by the judicial council of the circuit within which such district is located. Upon recall, a magistrate judge may receive a salary for such service in accordance with regulations promulgated by the Judicial Conference, subject to the restrictions on the payment of an annuity set forth in section 377 of this title or in subchapter III of chapter 83, and chapter 84, of title 5 which are applicable to such magistrate judge. The requirements set forth in subsections (a), (b)(3), and (d) of section 631, and paragraph (1) of subsection (b) of such section to the extent such paragraph requires membership of the bar of the location in which an individual is to serve as a magistrate judge, shall not apply to the recall of a retired magistrate judge under this subsection or section 375 of this title. Any other requirement set forth in section 631(b) shall apply to the recall of a retired magistrate judge under this subsection or section 375 of this title unless such retired magistrate judge met such requirement upon appointment or reappointment as a magistrate judge under section 631.

### 13. 29 U.S. Code § 1056 - Form and payment of benefits

(a) Commencement date for payment of benefits

Each pension plan shall provide that unless the participant otherwise elects, the payment of benefits under the plan to the participant shall begin not later than the 60th day after the latest of the close of the plan year in which—

(1) occurs the date on which the participant attains the earlier of age 65 or the normal retirement age specified under the plan,

(2) occurs the 10th anniversary of the year in which the participant commenced participation in the plan, or

(3) the participant terminates his service with the employer.

In the case of a plan which provides for the payment of an early retirement benefit, such plan shall provide that a participant who satisfied the service requirements for such early retirement benefit, but separated from the service (with any nonforfeitable right to an accrued benefit) before satisfying the age requirement for such early retirement benefit, is entitled upon satisfaction of such age requirement to receive a benefit not less than the benefit to which he would be entitled at the normal retirement age, actuarially reduced under regulations prescribed by the Secretary of the Treasury.

(b) Decrease in plan benefits by reason of increases in benefit levels under Social Security Act or Railroad Retirement Act of 1937If—

(1) a participant or beneficiary is receiving benefits under a pension plan, or

(2) a participant is separated from the service and has non-forfeitable rights to benefits,

a plan may not decrease benefits of such a participant by reason of any increase in the benefit levels payable under title II of the Social Security Act [42 U.S.C. 401 et seq.] or the Railroad Retirement Act of 1937 [45 U.S.C. 231 et seq.] or any increase in the wage base under such title II, if such increase takes place after September 2, 1974, or (if later) the earlier of the date of first entitlement of such benefits or the date of such separation.

(c) Forfeiture of accrued benefits derived from employer contributions

No pension plan may provide that any part of a participant's accrued benefit derived from employer contributions (whether or not otherwise nonforfeitable) is forfeitable solely because of withdrawal by such participant of any amount attributable to the benefit derived from contributions made by such participant. The preceding sentence shall not apply (1) to the accrued benefit of any participant unless, at the time of such withdrawal, such participant has a nonforfeitable right to at least 50 percent of such accrued benefit, or (2) to the extent that an accrued benefit is permitted to be forfeited in accordance with section 1053(a)(3)(D)(iii) of this title.

(d) Assignment or alienation of plan benefits

(1) Each pension plan shall provide that benefits provided under the plan may not be assigned or alienated.

(2) For the purposes of paragraph (1) of this subsection, there shall not be taken into account any voluntary and revocable assignment of not to exceed 10 percent of any benefit payment, or of any irrevocable assignment or alienation of benefits executed before September 2, 1974. The preceding sentence shall not apply to any assignment or alienation made for the purposes of defraying plan administration costs. For purposes of this paragraph a loan made to a participant or beneficiary shall not be treated as an assignment or alienation if such loan is secured by the participant's accrued non-forfeitable benefit and is exempt from the tax imposed by section 4975 of title 26 (relating to tax on prohibited transactions) by reason of section 4975(d)(1) of title 26.

(3)

(A) Paragraph (1) shall apply to the creation, assignment, or recognition of a right to any benefit payable with respect to a participant pursuant to a domestic relations order, except that paragraph (1) shall not apply if the order is determined to be a qualified domestic relations order. Each pension plan shall provide for the payment of benefits in accordance with the applicable requirements of any qualified domestic relations order.

(B) For purposes of this paragraph—

(i) the term "qualified domestic relations order" means a domestic relations order—

(I) which creates or recognizes the existence of an alternate payee's right to, or assigns to an alternate payee the right to, receive all or a portion of the benefits payable with respect to a participant under a plan, and

(II) with respect to which the requirements of subparagraphs (C) and (D) are met, and

(ii) the term "domestic relations order" means any judgment, decree, or order (including approval of a property settlement agreement) which—

(I) relates to the provision of child support, alimony payments, or marital property rights to a spouse, former spouse, child, or other dependent of a participant, and

(II) is made pursuant to a State or Tribal domestic relations law (including a community property law).

For purposes of clause (ii)(II), the term "Tribal" with respect to a domestic relations law means such a law which is issued by or under the laws of an Indian tribal government (as defined in section 7701(a)(40) of title 26), a subdivision of such an Indian tribal government, or an agency or instrumentality of either.

(C) A domestic relations order meets the requirements of this subparagraph only if such order clearly specifies—

(i) the name and the last known mailing address (if any) of the participant and the name and mailing address of each alternate payee covered by the order,

(ii) the amount or percentage of the participant's benefits to be paid by the plan to each such alternate payee, or the manner in which such amount or percentage is to be determined,

(iii) the number of payments or period to which such order applies, and

(iv) each plan to which such order applies.

(D) A domestic relations order meets the requirements of this subparagraph only if such order—

(i) does not require a plan to provide any type or form of benefit, or any option, not otherwise provided under the plan,

(ii) does not require the plan to provide increased benefits (determined on the basis of actuarial value), and

(iii) does not require the payment of benefits to an alternate payee which are required to be paid to another alternate payee under another order previously determined to be a qualified domestic relations order.

(E)

(i) A domestic relations order shall not be treated as failing to meet the requirements of clause (i) of subparagraph (D) solely because such order requires that payment of benefits be made to an alternate payee—

(I) in the case of any payment before a participant has separated from service, on or after the date on which the participant attains (or would have attained) the earliest retirement age,

(II) as if the participant had retired on the date on which such payment is to begin under such order (but taking into account only the present value of benefits actually accrued and not taking into account the present value of any employer subsidy for early retirement), and

(III) in any form in which such benefits may be paid under the plan to the participant (other than in the form of a joint and survivor annuity with respect to the alternate payee and his or her subsequent spouse).

For purposes of subclause (II), the interest rate assumption used in determining the present value shall be the interest rate specified in the plan or, if no rate is specified, 5 percent.

(ii) For purposes of this subparagraph, the term "earliest retirement age" means the earlier of—

(I) the date on which the participant is entitled to a distribution under the plan, or

(II) the later of the date of [1] the participant attains age 50 or the earliest date on which the participant could begin receiving benefits under the plan if the participant separated from service.

(F) To the extent provided in any qualified domestic relations order—

(i) the former spouse of a participant shall be treated as a surviving spouse of such participant for purposes of section 1055 of this title (and any spouse of the participant shall not be treated as a spouse of the participant for such purposes), and

(ii) if married for at least 1 year, the surviving former spouse shall be treated as meeting the requirements of section 1055(f) of this title.

(G)

(i) In the case of any domestic relations order received by a plan—

(I) the plan administrator shall promptly notify the participant and each alternate payee of the receipt of such order and the plan's procedures for determining the qualified status of domestic relations orders, and

(II) within a reasonable period after receipt of such order, the plan administrator shall determine whether such order is a qualified domestic relations order and notify the participant and each alternate payee of such determination.

(ii) Each plan shall establish reasonable procedures to determine the qualified status of domestic relations orders and to administer distributions under such qualified orders. Such procedures—

(I) shall be in writing,

(II) shall provide for the notification of each person specified in a domestic relations order as entitled to payment of benefits under the plan (at the address included in the domestic relations order) of such procedures promptly upon receipt by the plan of the domestic relations order, and

(III) shall permit an alternate payee to designate a representative for receipt of copies of notices that are sent to the alternate payee with respect to a domestic relations order.

(H)

(i) During any period in which the issue of whether a domestic relations order is a qualified domestic relations order is being determined (by the plan administrator, by a court of competent jurisdiction, or otherwise), the plan administrator shall separately account for the amounts (hereinafter in this subparagraph referred to as the "segregated amounts") which would have been payable to the alternate payee during such period if the order had been determined to be a qualified domestic relations order.

(ii) If within the 18-month period described in clause (v) the order (or modification thereof) is determined to be a qualified domestic relations order, the plan administrator shall pay the segregated amounts (including any interest thereon) to the person or persons entitled thereto.

(iii) If within the 18-month period described in clause (v)—

(I) it is determined that the order is not a qualified domestic relations order, or

(II) the issue as to whether such order is a qualified domestic relations order is not resolved,

then the plan administrator shall pay the segregated amounts (including any interest thereon) to the person or persons who would have been entitled to such amounts if there had been no order.

(iv) Any determination that an order is a qualified domestic relations order which is made after the close of the 18-month period described in clause (v) shall be applied prospectively only.

(v) For purposes of this subparagraph, the 18-month period described in this clause is the 18-month period beginning with the date on which the first payment would be required to be made under the domestic relations order.

(I) If a plan fiduciary acts in accordance with part 4 of this subtitle in—

(i) treating a domestic relations order as being (or not being) a qualified domestic relations order, or

(ii) taking action under subparagraph (H),

then the plan's obligation to the participant and each alternate payee shall be discharged to the extent of any payment made pursuant to such Act.

(J) A person who is an alternate payee under a qualified domestic relations order shall be considered for purposes of any provision of this chapter a beneficiary under the plan. Nothing in the preceding sentence shall permit a requirement under section 1301 of this title of the payment of more than 1 premium with respect to a participant for any period.

(K) The term "alternate payee" means any spouse, former spouse, child, or other dependent of a participant who is recognized by a domestic relations order as having a right to receive all, or a portion of, the benefits payable under a plan with respect to such participant.

(L) This paragraph shall not apply to any plan to which paragraph (1) does not apply.

(M) Payment of benefits by a pension plan in accordance with the applicable requirements of a qualified domestic relations order shall not be treated as garnishment for purposes of section 1673(a) of title 15.

(N) In prescribing regulations under this paragraph, the Secretary shall consult with the Secretary of the Treasury.

(4) Paragraph (1) shall not apply to any offset of a participant's benefits provided under an employee pension benefit plan against an amount that the participant is ordered or required to pay to the plan if—

(A) the order or requirement to pay arises—

(i) under a judgment of conviction for a crime involving such plan,

(ii) under a civil judgment (including a consent order or decree) entered by a court in an action brought in connection with a violation (or alleged violation) of part 4 of this subtitle, or

(iii) pursuant to a settlement agreement between the Secretary and the participant, or a settlement agreement between the Pension Benefit Guaranty Corporation and the participant, in connection with a violation (or alleged violation) of part 4 of this subtitle by a fiduciary or any other person,

(B) the judgment, order, decree, or settlement agreement expressly provides for the offset of all or part of the amount ordered or required to be paid to the plan against the participant's benefits provided under the plan, and

(C) in a case in which the survivor annuity requirements of section 1055 of this title apply with respect to distributions from the plan to the participant, if the participant has a spouse at the time at which the offset is to be made—

(i) either—

(I) such spouse has consented in writing to such offset and such consent is witnessed by a notary public or representative of the plan (or it is established to the satisfaction of a plan representative that such consent may not be obtained by reason of circumstances described in section 1055(c)(2)(B) of this title), or

(II) an election to waive the right of the spouse to a qualified joint and survivor annuity or a qualified preretirement survivor annuity is in effect in accordance with the requirements of section 1055(c) of this title,

(ii) such spouse is ordered or required in such judgment, order, decree, or settlement to pay an amount to the plan in connection with a violation of part 4 of this subtitle, or

(iii) in such judgment, order, decree, or settlement, such spouse retains the right to receive the survivor annuity under a qualified joint and survivor annuity provided pursuant to section 1055(a)(1) of this title and under a qualified preretirement survivor annuity provided pursuant to section 1055(a)(2) of this title, determined in accordance with paragraph (5).

A plan shall not be treated as failing to meet the requirements of section 1055 of this title solely by reason of an offset under this paragraph.

(5)

(A) The survivor annuity described in paragraph (4)(C)(iii) shall be determined as if—

(i) the participant terminated employment on the date of the offset,

(ii) there was no offset,

(iii) the plan permitted commencement of benefits only on or after normal retirement age,

(iv) the plan provided only the minimum-required qualified joint and survivor annuity, and

(v) the amount of the qualified preretirement survivor annuity under the plan is equal to the amount of the survivor annuity payable under the minimum-required qualified joint and survivor annuity.

(B) For purposes of this paragraph, the term "minimum-required qualified joint and survivor annuity" means the qualified joint and survivor annuity which is the actuarial equivalent of the participant's accrued benefit (within the meaning of section 1002(23) of this title) and under which the survivor annuity is 50 percent of the amount of the annuity which is payable during the joint lives of the participant and the spouse.

(e) Limitation on distributions other than life annuities paid by plan

(1) In general

Notwithstanding any other provision of this part, the fiduciary of a pension plan that is subject to the additional funding requirements of section 1083(j)(4) of this title shall not permit a prohibited payment to be made from a plan during a period in

which such plan has a liquidity shortfall (as defined in section 1083(j)(4)(E)(i) of this title).

(2) Prohibited paymentFor purposes of paragraph (1), the term "prohibited payment" means—

(A) any payment, in excess of the monthly amount paid under a single life annuity (plus any social security supplements described in the last sentence of section 1054(b)(1)(G) of this title), to a participant or beneficiary whose annuity starting date (as defined in section 1055(h)(2) of this title), that occurs during the period referred to in paragraph (1),

(B) any payment for the purchase of an irrevocable commitment from an insurer to pay benefits, and

(C) any other payment specified by the Secretary of the Treasury by regulations.

(3) Period of shortfall

For purposes of this subsection, a plan has a liquidity shortfall during the period that there is an underpayment of an installment under section 1083(j)(3) of this title by reason of section 1083(j)(4)(A) of this title.

(4) Coordination with other provisions

Compliance with this subsection shall not constitute a violation of any other provision of this chapter.

(f) Missing participants in terminated plans

In the case of a plan covered by section 1350 of this title, upon termination of the plan, benefits of missing participants shall be treated in accordance with section 1350 of this title.

(g) Funding-based limits on benefits and benefit accruals under single-employer plans

(1) Funding-based limitation on shutdown benefits and other unpredictable contingent event benefits under single-employer plans

(A) In generalIf a participant of a defined benefit plan which is a single-employer plan is entitled to an unpredictable contingent event benefit payable with respect to any event occurring during any plan year, the plan shall provide that such benefit

may not be provided if the adjusted funding target attainment percentage for such plan year—

(i) is less than 60 percent, or

(ii) would be less than 60 percent taking into account such occurrence.

(B) ExemptionSubparagraph (A) shall cease to apply with respect to any plan year, effective as of the first day of the plan year, upon payment by the plan sponsor of a contribution (in addition to any minimum required contribution under section 1083 of this title) equal to—

(i) in the case of subparagraph (A)(i), the amount of the increase in the funding target of the plan (under section 1083 of this title) for the plan year attributable to the occurrence referred to in subparagraph (A), and

(ii) in the case of subparagraph (A)(ii), the amount sufficient to result in an adjusted funding target attainment percentage of 60 percent.

(C) Unpredictable contingent event benefitFor purposes of this paragraph, the term "unpredictable contingent event benefit" means any benefit payable solely by reason of—

(i) a plant shutdown (or similar event, as determined by the Secretary of the Treasury), or

(ii) an event other than the attainment of any age, performance of any service, receipt or derivation of any compensation, or occurrence of death or disability.

(2) Limitations on plan amendments increasing liability for benefits

(A) In generalNo amendment to a defined benefit plan which is a single-employer plan which has the effect of increasing liabilities of the plan by reason of increases in benefits, establishment of new benefits, changing the rate of benefit accrual, or changing the rate at which benefits become nonforfeitable may take effect during any plan year if the adjusted funding target attainment percentage for such plan year is—

(i) less than 80 percent, or

(ii) would be less than 80 percent taking into account such amendment.

(B) ExemptionSubparagraph (A) shall cease to apply with respect to any plan year, effective as of the first day of the plan year (or if later, the effective date of the amendment), upon payment by the plan sponsor of a contribution (in addition to any minimum required contribution under section 1083 of this title) equal to—

(i) in the case of subparagraph (A)(i), the amount of the increase in the funding target of the plan (under section 1083 of this title) for the plan year attributable to the amendment, and

(ii) in the case of subparagraph (A)(ii), the amount sufficient to result in an adjusted funding target attainment percentage of 80 percent.

(C) Exception for certain benefit increases

Subparagraph (A) shall not apply to any amendment which provides for an increase in benefits under a formula which is not based on a participant's compensation, but only if the rate of such increase is not in excess of the contemporaneous rate of increase in average wages of participants covered by the amendment.

(3) Limitations on accelerated benefit distributions

(A) Funding percentage less than 60 percent

A defined benefit plan which is a single-employer plan shall provide that, in any case in which the plan's adjusted funding target attainment percentage for a plan year is less than 60 percent, the plan may not pay any prohibited payment after the valuation date for the plan year.

(B) Bankruptcy

A defined benefit plan which is a single-employer plan shall provide that, during any period in which the plan sponsor is a debtor in a case under title 11 or similar Federal or State law, the plan may not pay any prohibited payment. The preceding sentence shall not apply on or after the date on which the enrolled actuary of the plan certifies that the adjusted funding target attainment percentage of such plan (determined by not taking into account any adjustment of segment rates under section 1083(h)(2)(C)(iv) of this title) is not less than 100 percent.

(C) Limited payment if percentage at least 60 percent but less than 80 percent

(i) In generalA defined benefit plan which is a single-employer plan shall provide that, in any case in which the plan's adjusted funding target attainment percentage

for a plan year is 60 percent or greater but less than 80 percent, the plan may not pay any prohibited payment after the valuation date for the plan year to the extent the amount of the payment exceeds the lesser of—

(I) 50 percent of the amount of the payment which could be made without regard to this subsection, or

(II) the present value (determined under guidance prescribed by the Pension Benefit Guaranty Corporation, using the interest and mortality assumptions under section 1055(g) of this title) of the maximum guarantee with respect to the participant under section 1322 of this title.

(ii) One-time application

(I) In general

The plan shall also provide that only 1 prohibited payment meeting the requirements of clause (i) may be made with respect to any participant during any period of consecutive plan years to which the limitations under either subparagraph (A) or (B) or this subparagraph applies.

(II) Treatment of beneficiaries

For purposes of this clause, a participant and any beneficiary on his behalf (including an alternate payee, as defined in subsection (d)(3)(K)) shall be treated as 1 participant. If the accrued benefit of a participant is allocated to such an alternate payee and 1 or more other persons, the amount under clause (i) shall be allocated among such persons in the same manner as the accrued benefit is allocated unless the qualified domestic relations order (as defined in subsection (d)(3)(B)(i)) provides otherwise.

(D) Exception

This paragraph shall not apply to any plan for any plan year if the terms of such plan (as in effect for the period beginning on September 1, 2005, and ending with such plan year) provide for no benefit accruals with respect to any participant during such period.

(E) Prohibited paymentFor purpose [2] of this paragraph, the term "prohibited payment" means—

(i) any payment, in excess of the monthly amount paid under a single life annuity (plus any social security supplements described in the last sentence of section

1054(b)(1)(G) of this title), to a participant or beneficiary whose annuity starting date (as defined in section 1055(h)(2) of this title) occurs during any period a limitation under subparagraph (A) or (B) is in effect,

(ii) any payment for the purchase of an irrevocable commitment from an insurer to pay benefits, and

(iii) any other payment specified by the Secretary of the Treasury by regulations.

Such term shall not include the payment of a benefit which under section 1053(e) of this title may be immediately distributed without the consent of the participant.

(4) Limitation on benefit accruals for plans with severe funding shortfalls

(A) In general

A defined benefit plan which is a single-employer plan shall provide that, in any case in which the plan's adjusted funding target attainment percentage for a plan year is less than 60 percent, benefit accruals under the plan shall cease as of the valuation date for the plan year.

(B) Exemption

Subparagraph (A) shall cease to apply with respect to any plan year, effective as of the first day of the plan year, upon payment by the plan sponsor of a contribution (in addition to any minimum required contribution under section 1083 of this title) equal to the amount sufficient to result in an adjusted funding target attainment percentage of 60 percent.

(5) Rules relating to contributions required to avoid benefit limitations

(A) Security may be provided

(i) In general

For purposes of this subsection, the adjusted funding target attainment percentage shall be determined by treating as an asset of the plan any security provided by a plan sponsor in a form meeting the requirements of clause (ii).

(ii) Form of securityThe security required under clause (i) shall consist of—

(I) a bond issued by a corporate surety company that is an acceptable surety for purposes of section 1112 of this title,

(II) cash, or United States obligations which mature in 3 years or less, held in escrow by a bank or similar financial institution, or

(III) such other form of security as is satisfactory to the Secretary of the Treasury and the parties involved.

(iii) EnforcementAny security provided under clause (i) may be perfected and enforced at any time after the earlier of—

(I) the date on which the plan terminates,

(II) if there is a failure to make a payment of the minimum required contribution for any plan year beginning after the security is provided, the due date for the payment under section 1083(j) of this title, or

(III) if the adjusted funding target attainment percentage is less than 60 percent for a consecutive period of 7 years, the valuation date for the last year in the period.

(iv) Release of security

The security shall be released (and any amounts thereunder shall be refunded together with any interest accrued thereon) at such time as the Secretary of the Treasury may prescribe in regulations, including regulations for partial releases of the security by reason of increases in the adjusted funding target attainment percentage.

(B) Prefunding balance or funding standard carryover balance may not be used

No prefunding balance or funding standard carryover balance under section 1083(f) of this title may be used under paragraph (1), (2), or (4) to satisfy any payment an employer may make under any such paragraph to avoid or terminate the application of any limitation under such paragraph.

(C) Deemed reduction of funding balances

(i) In general

Subject to clause (iii), in any case in which a benefit limitation under paragraph (1), (2), (3), or (4) would (but for this subparagraph and determined without regard to paragraph (1)(B), (2)(B), or (4)(B)) apply to such plan for the plan year, the plan sponsor of such plan shall be treated for purposes of this chapter as having made an election under section 1083(f) of this title to reduce the prefunding balance or

funding standard carryover balance by such amount as is necessary for such benefit limitation to not apply to the plan for such plan year.

(ii) Exception for insufficient funding balances

Clause (i) shall not apply with respect to a benefit limitation for any plan year if the application of clause (i) would not result in the benefit limitation not applying for such plan year.

(iii) Restrictions of certain rules to collectively bargained plans

With respect to any benefit limitation under paragraph (1), (2), or (4), clause (i) shall only apply in the case of a plan maintained pursuant to 1 or more collective bargaining agreements between employee representatives and 1 or more employers.

(6) New plans

Paragraphs (1), (2), and (4) shall not apply to a plan for the first 5 plan years of the plan. For purposes of this paragraph, the reference in this paragraph to a plan shall include a reference to any predecessor plan.

(7) Presumed underfunding for purposes of benefit limitations

(A) Presumption of continued underfunding

In any case in which a benefit limitation under paragraph (1), (2), (3), or (4) has been applied to a plan with respect to the plan year preceding the current plan year, the adjusted funding target attainment percentage of the plan for the current plan year shall be presumed to be equal to the adjusted funding target attainment percentage of the plan for the preceding plan year until the enrolled actuary of the plan certifies the actual adjusted funding target attainment percentage of the plan for the current plan year.

(B) Presumption of underfunding after 10th month

In any case in which no certification of the adjusted funding target attainment percentage for the current plan year is made with respect to the plan before the first day of the 10th month of such year, for purposes of paragraphs (1), (2), (3), and (4), such first day shall be deemed, for purposes of such paragraph, to be the valuation date of the plan for the current plan year and the plan's adjusted funding target attainment percentage shall be conclusively presumed to be less than 60 percent as of such first day.

(C) Presumption of underfunding after 4th month for nearly underfunded plansIn any case in which—

(i) a benefit limitation under paragraph (1), (2), (3), or (4) did not apply to a plan with respect to the plan year preceding the current plan year, but the adjusted funding target attainment percentage of the plan for such preceding plan year was not more than 10 percentage points greater than the percentage which would have caused such paragraph to apply to the plan with respect to such preceding plan year, and

(ii) as of the first day of the 4th month of the current plan year, the enrolled actuary of the plan has not certified the actual adjusted funding target attainment percentage of the plan for the current plan year,

until the enrolled actuary so certifies, such first day shall be deemed, for purposes of such paragraph, to be the valuation date of the plan for the current plan year and the adjusted funding target attainment percentage of the plan as of such first day shall, for purposes of such paragraph, be presumed to be equal to 10 percentage points less than the adjusted funding target attainment percentage of the plan for such preceding plan year.

(8) Treatment of plan as of close of prohibited or cessation periodFor purposes of applying this part—

(A) Operation of plan after period

Unless the plan provides otherwise, payments and accruals will resume effective as of the day following the close of the period for which any limitation of payment or accrual of benefits under paragraph (3) or (4) applies.

(B) Treatment of affected benefits

Nothing in this paragraph shall be construed as affecting the plan's treatment of benefits which would have been paid or accrued but for this subsection.

(9) Terms relating to funding target attainment percentageFor purposes of this subsection—

(A) In general

The term "funding target attainment percentage" has the same meaning given such term by section 1083(d)(2) of this title.

(B) Adjusted funding target attainment percentage

The term "adjusted funding target attainment percentage" means the funding target attainment percentage which is determined under subparagraph (A) by increasing each of the amounts under subparagraphs (A) and (B) of section 1083(d)(2) of this title by the aggregate amount of purchases of annuities for employees other than highly compensated employees (as defined in section 414(q) of title 26) which were made by the plan during the preceding 2 plan years.

(C) Application to plans which are fully funded without regard to reductions for funding balances

In the case of a plan for any plan year, if the funding target attainment percentage is 100 percent or more (determined without regard to the reduction in the value of assets under section 1083(f)(4) of this title), the funding target attainment percentage for purposes of subparagraphs (A) and (B) shall be determined without regard to such reduction.

(10) Secretarial authority for plans with alternate valuation date

In the case of a plan which has designated a valuation date other than the first day of the plan year, the Secretary of the Treasury may prescribe rules for the application of this subsection which are necessary to reflect the alternate valuation date.

[(11) Repealed. Pub. L. 113–295, div. A, title II, § 221(a)(57)(G)(ii), Dec. 19, 2014, 128 Stat. 4047]

(12) CSEC plans

This subsection shall not apply to a CSEC plan (as defined in section 1060(f) of this title).

(h) Special rules applicable to benefit overpayments

(1) General ruleIn the case of an inadvertent benefit overpayment by any pension plan, the responsible plan fiduciary shall not be considered to have failed to comply with the requirements of this subchapter merely because such fiduciary determines, in the exercise of its discretion, not to seek recovery of all or part of such overpayment from—

(A) any participant or beneficiary,

(B) any plan sponsor of, or contributing employer to—

(i) an individual account plan, provided that the amount needed to prevent or restore any impermissible forfeiture from any participant's or beneficiary's account arising in connection with the overpayment is, separately from and independently of the overpayment, allocated to such account pursuant to the nonforfeitability requirements of section 1053 of this title (for example, out of the plan's forfeiture account, additional employer contributions, or recoveries from those responsible for the overpayment), or

(ii) a defined benefit pension plan subject to the funding rules in part 3 of this subtitle B, unless the responsible plan fiduciary determines, in the exercise of its fiduciary discretion, that failure to recover all or part of the overpayment faster than required under such funding rules would materially affect the plan's ability to pay benefits due to other participants and beneficiaries, or

(C) any fiduciary of the plan, other than a fiduciary (including a plan sponsor or contributing employer acting in a fiduciary capacity) whose breach of its fiduciary duties resulted in such overpayment, provided that if the plan has established prudent procedures to prevent and minimize overpayment of benefits and the relevant plan fiduciaries have followed such procedures, an inadvertent benefit overpayment will not give rise to a breach of fiduciary duty.

(2) Reduction in future benefit payments and recovery from responsible partyParagraph (1) shall not fail to apply with respect to any inadvertent benefit overpayment merely because, after discovering such overpayment, the responsible plan fiduciary—

(A) reduces future benefit payments to the correct amount provided for under the terms of the plan, or

(B) seeks recovery from the person or persons responsible for the overpayment.

(3) Employer funding obligations

Nothing in this subsection shall relieve an employer of any obligation imposed on it to make contributions to a plan to meet the minimum funding standards under part 3 of this subtitle B or to prevent or restore an impermissible forfeiture in accordance with section 1053 off this title.

(4) Recoupment from participants and beneficiariesIf the responsible plan fiduciary, in the exercise of its fiduciary discretion, decides to seek recoupment from a participant or beneficiary of all or part of an inadvertent benefit overpayment made

by the plan to such participant or beneficiary, it may do so, subject to the following conditions:

(A) No interest or other additional amounts (such as collection costs or fees) are sought on overpaid amounts for any period.

(B) If the plan seeks to recoup past overpayments of a non-decreasing annuity by reducing future benefit payments—

(i) the reduction ceases after the plan has recovered the full dollar amount of the overpayment,

(ii) the amount recouped each calendar year does not exceed 10 percent of the full dollar amount of the overpayment, and

(iii) future benefit payments are not reduced to below 90 percent of the periodic amount otherwise payable under the terms of the plan.

Alternatively, if the plan seeks to recoup past overpayments of a non-decreasing annuity through one or more installment payments, the sum of such installment payments in any calendar year does not exceed the sum of the reductions that would be permitted in such year under the preceding sentence.

(C) If the plan seeks to recoup past overpayments of a benefit other than a non-decreasing annuity, the plan satisfies requirements developed by the Secretary of Labor for purposes of this subparagraph.

(D) Efforts to recoup overpayments are—

(i) not accompanied by threats of litigation, unless the responsible plan fiduciary makes a determination that there is a reasonable likelihood of success to recover an amount greater than the cost of recovery, and

(ii) not made through a collection agency or similar third party, unless the participant or beneficiary ignores or rejects efforts to recoup the overpayment following either a final judgment in Federal or State court or a settlement between the participant or beneficiary and the plan, in either case authorizing such recoupment.

(E) Recoupment of past overpayments to a participant is not sought from any beneficiary of the participant, including a spouse, surviving spouse, former spouse, or other beneficiary.

(F) Recoupment may not be sought if the first overpayment occurred more than 3 years before the participant or beneficiary is first notified in writing of the error, except in the case of fraud or misrepresentation by the participant.

(G) A participant or beneficiary from whom recoupment is sought is entitled to contest all or part of the recoupment pursuant to the claims procedures of the plan that made the overpayment to the extent such procedures are consistent with section 1133 of this title and in the case of an inadvertent benefit overpayment from a plan to which paragraph (1) applies that is transferred to an eligible retirement plan (as defined in section 402(c)(8)(B) of title 26) by or on behalf of a participant or beneficiary—

(i) such plan shall notify the plan receiving the rollover of such dispute,

(ii) the plan receiving the rollover shall retain such overpayment on behalf of the participant or beneficiary (and shall be entitled to treat such overpayment as plan assets) pending the outcome of such procedures, and

(iii) the portion of such overpayment with respect to which recoupment is sought on behalf of the plan shall be permitted to be returned to such plan if it is determined to be an overpayment (and the plans making and receiving such transfer shall be treated as permitting such transfer).

(H) In determining the amount of recoupment to seek, the responsible plan fiduciary may take into account the hardship that recoupment likely would impose on the participant or beneficiary.

(5) Effect of culpability

Subparagraphs (A) through (F) of paragraph (4) shall not apply to protect a participant or beneficiary who is culpable. For purposes of this paragraph, a participant or beneficiary is culpable if the individual bears responsibility for the overpayment (such as through misrepresentations or omissions that led to the overpayment), or if the individual knew that the benefit payment or payments were materially in excess of the correct amount. Notwithstanding the preceding sentence, an individual is not culpable merely because the individual believed the benefit payment or payments were or might be in excess of the correct amount, if the individual raised that question with an authorized plan representative and was told the payment or payments were not in excess of the correct amount.

# 14. 29 U.S. Code § 1132 - Civil enforcement

(a) Persons empowered to bring a civil action
    A civil action may be brought—

(1) by a participant or beneficiary—

(A) for the relief provided for in subsection (c) of this section, or

(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;

(2) by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title;

(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan;

(4) by the Secretary, or by a participant, or beneficiary for appropriate relief in the case of a violation of section 1025(c) or 1032(a) of this title;

(5) except as otherwise provided in subsection (b), by the Secretary (A) to enjoin any act or practice which violates any provision of this subchapter, or (B) to obtain other appropriate equitable relief (i) to redress such violation or (ii) to enforce any provision of this subchapter;

(6) by the Secretary to collect any civil penalty under paragraph (2), (4), (5), (6), (7), (8), or (9) of subsection (c) or under subsection (i) or (l);

(7) by a State to enforce compliance with a qualified medical child support order (as defined in section 1169(a)(2)(A) of this title);

(8) by the Secretary, or by an employer or other person referred to in section 1021(f)(1) of this title, (A) to enjoin any act or practice which violates subsection (f) of section 1021 of this title, or (B) to obtain appropriate equitable relief (i) to redress such violation or (ii) to enforce such subsection;

(9) in the event that the purchase of an insurance contract or insurance annuity in connection with termination of an individual's status as a participant covered under a pension plan with respect to all or any portion of the participant's pension benefit

under such plan constitutes a violation of part 4 of this title [1] or the terms of the plan, by the Secretary, by any individual who was a participant or beneficiary at the time of the alleged violation, or by a fiduciary, to obtain appropriate relief, including the posting of security if necessary, to assure receipt by the participant or beneficiary of the amounts provided or to be provided by such insurance contract or annuity, plus reasonable prejudgment interest on such amounts;

(10) in the case of a multiemployer plan that has been certified by the actuary to be in endangered or critical status under section 1085 of this title, if the plan sponsor—

(A) has not adopted a funding improvement or rehabilitation plan under that section by the deadline established in such section, or

(B) fails to update or comply with the terms of the funding improvement or rehabilitation plan in accordance with the requirements of such section,

by an employer that has an obligation to contribute with respect to the multiemployer plan or an employee organization that represents active participants in the multiemployer plan, for an order compelling the plan sponsor to adopt a funding improvement or rehabilitation plan or to update or comply with the terms of the funding improvement or rehabilitation plan in accordance with the requirements of such section and the funding improvement or rehabilitation plan; or

(11) in the case of a multiemployer plan, by an employee representative, or any employer that has an obligation to contribute to the plan, (A) to enjoin any act or practice which violates subsection (k) of section 1021 of this title (or, in the case of an employer, subsection (l) of such section), or (B) to obtain appropriate equitable relief (i) to redress such violation or (ii) to enforce such subsection.

(b) Plans qualified under Internal Revenue Code; maintenance of actions involving delinquent contributions

(1) In the case of a plan which is qualified under section 401(a), 403(a), or 405(a) [2] of title 26 (or with respect to which an application to so qualify has been filed and has not been finally determined) the Secretary may exercise his authority under subsection (a)(5) with respect to a violation of, or the enforcement of, parts 2 and 3 of this subtitle (relating to participation, vesting, and funding), only if—

(A) requested by the Secretary of the Treasury, or

(B) one or more participants, beneficiaries, or fiduciaries, of such plan request in writing (in such manner as the Secretary shall prescribe by regulation) that he exercise such authority on their behalf. In the case of such a request under this paragraph he may exercise such authority only if he determines that such violation affects, or such enforcement is necessary to protect, claims of participants or beneficiaries to benefits under the plan.

(2) The Secretary shall not initiate an action to enforce section 1145 of this title.

(3) Except as provided in subsections (c)(9) and (a)(6) (with respect to collecting civil penalties under subsection (c)(9)), the Secretary is not authorized to enforce under this part any requirement of part 7 against a health insurance issuer offering health insurance coverage in connection with a group health plan (as defined in section 1191b(a)(1) of this title). Nothing in this paragraph shall affect the authority of the Secretary to issue regulations to carry out such part.

(c) Administrator's refusal to supply requested information; penalty for failure to provide annual report in complete form

(1) Any administrator (A) who fails to meet the requirements of paragraph (1) or (4) of section 1166 2 of this title, section 1021(e)(1) of this title, section 1021(f) of this title,, [3] section 1025(a), or section 1032(a) of this title with respect to a participant or beneficiary, or (B) who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper. For purposes of this paragraph, each violation described in subparagraph (A) with respect to any single participant, and each violation described in subparagraph (B) with respect to any single participant or beneficiary, shall be treated as a separate violation.

(2) The Secretary may assess a civil penalty against any plan administrator of up to $1,000 a day from the date of such plan administrator's failure or refusal to file the annual report required to be filed with the Secretary under section 1021(b)(1) of this title. For purposes of this paragraph, an annual report that has been rejected under section 1024(a)(4) of this title for failure to provide material information shall not be treated as having been filed with the Secretary.

(3) Any employer maintaining a plan who fails to meet the notice requirement of section 1021(d) of this title with respect to any participant or beneficiary or who fails to meet the requirements of section 1021(e)(2) of this title with respect to any person or who fails to meet the requirements of section 1082(d)(12)(E) 2 of this title with respect to any person may in the court's discretion be liable to such participant or beneficiary or to such person in the amount of up to $100 a day from the date of such failure, and the court may in its discretion order such other relief as it deems proper.

(4) The Secretary may assess a civil penalty of not more than $1,000 a day for each violation by any person of subsection (j), (k), or (l) of section 1021 of this title or section 1144(e)(3) of this title.

(5) The Secretary may assess a civil penalty against any person of up to $1,000 a day from the date of the person's failure or refusal to file the information required to be filed by such person with the Secretary under regulations prescribed pursuant to section 1021(g) of this title.

(6) If, within 30 days of a request by the Secretary to a plan administrator for documents under section 1024(a)(6) of this title, the plan administrator fails to furnish the material requested to the Secretary, the Secretary may assess a civil penalty against the plan administrator of up to $100 a day from the date of such failure (but in no event in excess of $1,000 per request). No penalty shall be imposed under this paragraph for any failure resulting from matters reasonably beyond the control of the plan administrator.

(7) The Secretary may assess a civil penalty against a plan administrator of up to $100 a day from the date of the plan administrator's failure or refusal to provide notice to participants and beneficiaries in accordance with subsection (i) or (m) of section 1021 of this title. For purposes of this paragraph, each violation with respect to any single participant or beneficiary shall be treated as a separate violation.

(8) The Secretary may assess against any plan sponsor of a multiemployer plan a civil penalty of not more than $1,100 per day—

(A) for each violation by such sponsor of the requirement under section 1085 of this title to adopt by the deadline established in that section a funding improvement plan or rehabilitation plan with respect to a multiemployer plan which is in endangered or critical status, or

(B) in the case of a plan in endangered status which is not in seriously endangered status, for failure by the plan to meet the applicable benchmarks under section 1085 of this title by the end of the funding improvement period with respect to the plan.

(9)

(A) The Secretary may assess a civil penalty against any employer of up to $100 a day from the date of the employer's failure to meet the notice requirement of section 1181(f)(3)(B)(i)(I) of this title. For purposes of this subparagraph, each violation with respect to any single employee shall be treated as a separate violation.

(B) The Secretary may assess a civil penalty against any plan administrator of up to $100 a day from the date of the plan administrator's failure to timely provide to any State the information required to be disclosed under section 1181(f)(3)(B)(ii) of this title. For purposes of this subparagraph, each violation with respect to any single participant or beneficiary shall be treated as a separate violation.

(10) Secretarial enforcement authority relating to use of genetic information.—

(A) General rule.—

The Secretary may impose a penalty against any plan sponsor of a group health plan, or any health insurance issuer offering health insurance coverage in connection with the plan, for any failure by such sponsor or issuer to meet the requirements of subsection (a)(1)(F), (b)(3), (c), or (d) of section 1182 of this title or section 1181 or 1182(b)(1) of this title with respect to genetic information, in connection with the plan.

(B) Amount.—

(i) In general.—

The amount of the penalty imposed by subparagraph (A) shall be $100 for each day in the noncompliance period with respect to each participant or beneficiary to whom such failure relates.

(ii) Noncompliance period.—For purposes of this paragraph, the term "noncompliance period" means, with respect to any failure, the period—

(I) beginning on the date such failure first occurs; and

(II) ending on the date the failure is corrected.

(C) Minimum penalties where failure discovered.—Notwithstanding clauses (i) and (ii) of subparagraph (D):

(i) In general.—In the case of 1 or more failures with respect to a participant or beneficiary—

(I) which are not corrected before the date on which the plan receives a notice from the Secretary of such violation; and

(II) which occurred or continued during the period involved;

the amount of penalty imposed by subparagraph (A) by reason of such failures with respect to such participant or beneficiary shall not be less than $2,500.

(ii) Higher minimum penalty where violations are more than de minimis.—

To the extent violations for which any person is liable under this paragraph for any year are more than de minimis, clause (i) shall be applied by substituting "$15,000" for "$2,500" with respect to such person.

(D) Limitations.—

(i) Penalty not to apply where failure not discovered exercising reasonable diligence.—

No penalty shall be imposed by subparagraph (A) on any failure during any period for which it is established to the satisfaction of the Secretary that the person otherwise liable for such penalty did not know, and exercising reasonable diligence would not have known, that such failure existed.

(ii) Penalty not to apply to failures corrected within certain periods.—No penalty shall be imposed by subparagraph (A) on any failure if—

(I) such failure was due to reasonable cause and not to willful neglect; and

(II) such failure is corrected during the 30-day period beginning on the first date the person otherwise liable for such penalty knew, or exercising reasonable diligence would have known, that such failure existed.

(iii) Overall limitation for unintentional failures.—In the case of failures which are due to reasonable cause and not to willful neglect, the penalty imposed by subparagraph (A) for failures shall not exceed the amount equal to the lesser of—

(I) 10 percent of the aggregate amount paid or incurred by the plan sponsor (or predecessor plan sponsor) during the preceding taxable year for group health plans; or

(II) $500,000.

(E) Waiver by secretary.—

In the case of a failure which is due to reasonable cause and not to willful neglect, the Secretary may waive part or all of the penalty imposed by subparagraph (A) to the extent that the payment of such penalty would be excessive relative to the failure involved.

(F) Definitions.—

Terms used in this paragraph which are defined in section 1191b of this title shall have the meanings provided such terms in such section.

(11) The Secretary and the Secretary of Health and Human Services shall maintain such ongoing consultation as may be necessary and appropriate to coordinate enforcement under this subsection with enforcement under section 1320b–14(c)(8) 2 of title 42.

(12) The Secretary may assess a civil penalty against any sponsor of a CSEC plan of up to $100 a day from the date of the plan sponsor's failure to comply with the requirements of section 1085a(j)(3) of this title to establish or update a funding restoration plan.

(d) Status of employee benefit plan as entity

(1) An employee benefit plan may sue or be sued under this subchapter as an entity. Service of summons, subpena, or other legal process of a court upon a trustee or an administrator of an employee benefit plan in his capacity as such shall constitute service upon the employee benefit plan. In a case where a plan has not designated in the summary plan description of the plan an individual as agent for the service of legal process, service upon the Secretary shall constitute such service. The Secretary, not later than 15 days after receipt of service under the preceding sentence, shall notify the administrator or any trustee of the plan of receipt of such service.

(2) Any money judgment under this subchapter against an employee benefit plan shall be enforceable only against the plan as an entity and shall not be enforceable against any other person unless liability against such person is established in his individual capacity under this subchapter.

(e) Jurisdiction

(1) Except for actions under subsection (a)(1)(B) of this section, the district courts of the United States shall have exclusive jurisdiction of civil actions under this subchapter brought by the Secretary or by a participant, beneficiary, fiduciary, or any person referred to in section 1021(f)(1) of this title. State courts of competent jurisdiction and district courts of the United States shall have concurrent jurisdiction of actions under paragraphs (1)(B) and (7) of subsection (a) of this section.

(2) Where an action under this subchapter is brought in a district court of the United States, it may be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found, and process may be served in any other district where a defendant resides or may be found.

(f) Amount in controversy; citizenship of parties

The district courts of the United States shall have jurisdiction, without respect to the amount in controversy or the citizenship of the parties, to grant the relief provided for in subsection (a) of this section in any action.

(g) Attorney's fees and costs; awards in actions involving delinquent contributions

(1) In any action under this subchapter (other than an action described in paragraph (2)) by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party.

(2) In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan—

(A) the unpaid contributions,

(B) interest on the unpaid contributions,

(C) an amount equal to the greater of—

(i) interest on the unpaid contributions, or

(ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),

(D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and

(E) such other legal or equitable relief as the court deems appropriate.

For purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of title 26.

(h) Service upon Secretary of Labor and Secretary of the Treasury

A copy of the complaint in any action under this subchapter by a participant, beneficiary, or fiduciary (other than an action brought by one or more participants or beneficiaries under subsection (a)(1)(B) which is solely for the purpose of recovering benefits due such participants under the terms of the plan) shall be served upon the Secretary and the Secretary of the Treasury by certified mail. Either Secretary shall have the right in his discretion to intervene in any action, except that the Secretary of the Treasury may not intervene in any action under part 4 of this subtitle. If the Secretary brings an action under subsection (a) on behalf of a participant or beneficiary, he shall notify the Secretary of the Treasury.

(i) Administrative assessment of civil penalty

In the case of a transaction prohibited by section 1106 of this title by a party in interest with respect to a plan to which this part applies, the Secretary may assess a civil penalty against such party in interest. The amount of such penalty may not exceed 5 percent of the amount involved in each such transaction (as defined in section 4975(f)(4) of title 26) for each year or part thereof during which the prohibited transaction continues, except that, if the transaction is not corrected (in such manner as the Secretary shall prescribe in regulations which shall be consistent with section 4975(f)(5) of title 26) within 90 days after notice from the Secretary (or such longer period as the Secretary may permit), such penalty may be in an amount not more than 100 percent of the amount involved. This subsection shall not apply to a transaction with respect to a plan described in section 4975(e)(1) of title 26.

(j) Direction and control of litigation by Attorney General

In all civil actions under this subchapter, attorneys appointed by the Secretary may represent the Secretary (except as provided in section 518(a) of title 28), but all such litigation shall be subject to the direction and control of the Attorney General.

(k) Jurisdiction of actions against the Secretary of Labor

Suits by an administrator, fiduciary, participant, or beneficiary of an employee benefit plan to review a final order of the Secretary, to restrain the Secretary from taking any action contrary to the provisions of this chapter, or to compel him to take action required under this subchapter, may be brought in the district court of the United States for the district where the plan has its principal office, or in the United States District Court for the District of Columbia.

(l) Civil penalties on violations by fiduciaries

(1) In the case of—

(A) any breach of fiduciary responsibility under (or other violation of) part 4 of this subtitle by a fiduciary, or

(B) any knowing participation in such a breach or violation by any other person,

the Secretary shall assess a civil penalty against such fiduciary or other person in an amount equal to 20 percent of the applicable recovery amount.

(2) For purposes of paragraph (1), the term "applicable recovery amount" means any amount which is recovered from a fiduciary or other person with respect to a breach or violation described in paragraph (1)—

(A) pursuant to any settlement agreement with the Secretary, or

(B) ordered by a court to be paid by such fiduciary or other person to a plan or its participants and beneficiaries in a judicial proceeding instituted by the Secretary under subsection (a)(2) or (a)(5).

(3) The Secretary may, in the Secretary's sole discretion, waive or reduce the penalty under paragraph (1) if the Secretary determines in writing that—

(A) the fiduciary or other person acted reasonably and in good faith, or

(B) it is reasonable to expect that the fiduciary or other person will not be able to restore all losses to the plan (or to provide the relief ordered pursuant to subsection (a)(9)) without severe financial hardship unless such waiver or reduction is granted.

(4) The penalty imposed on a fiduciary or other person under this subsection with respect to any transaction shall be reduced by the amount of any penalty or tax imposed on such fiduciary or other person with respect to such transaction under subsection (i) of this section and section 4975 of title 26.

(m) Penalty for improper distribution

In the case of a distribution to a pension plan participant or beneficiary in violation of section 1056(e) of this title by a plan fiduciary, the Secretary shall assess a penalty against such fiduciary in an amount equal to the value of the distribution. Such penalty shall not exceed $10,000 for each such distribution.

## 15.    29 U.S. Code § 1144 - Other laws

(a) Supersedure; effective date

Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title. This section shall take effect on January 1, 1975.

(b) Construction and application

(1) This section shall not apply with respect to any cause of action which arose, or any act or omission which occurred, before January 1, 1975.

(2)

(A) Except as provided in subparagraph (B), nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities.

(B) Neither an employee benefit plan described in section 1003(a) of this title, which is not exempt under section 1003(b) of this title (other than a plan established primarily for the purpose of providing death benefits), nor any trust established under such a plan, shall be deemed to be an insurance company or other insurer, bank, trust company, or investment company or to be engaged in the business of insurance or banking for purposes of any law of any State purporting to regulate insurance companies, insurance contracts, banks, trust companies, or investment companies.

(3) Nothing in this section shall be construed to prohibit use by the Secretary of services or facilities of a State agency as permitted under section 1136 of this title.

(4) Subsection (a) shall not apply to any generally applicable criminal law of a State.

(5)

(A) Except as provided in subparagraph (B), subsection (a) shall not apply to the Hawaii Prepaid Health Care Act (Haw. Rev. Stat. §§ 393–1 through 393–51).

(B) Nothing in subparagraph (A) shall be construed to exempt from subsection (a)—

(i) any State tax law relating to employee benefit plans, or

(ii) any amendment of the Hawaii Prepaid Health Care Act enacted after September 2, 1974, to the extent it provides for more than the effective administration of such Act as in effect on such date.

(C) Notwithstanding subparagraph (A), parts 1 and 4 of this subtitle, and the preceding sections of this part to the extent they govern matters which are governed by the provisions of such parts 1 and 4, shall supersede the Hawaii Prepaid Health Care Act (as in effect on or after January 14, 1983), but the Secretary may enter into cooperative arrangements under this paragraph and section 1136 of this title with officials of the State of Hawaii to assist them in effectuating the policies of provisions of such Act which are superseded by such parts 1 and 4 and the preceding sections of this part.

(6)

(A) Notwithstanding any other provision of this section—

(i) in the case of an employee welfare benefit plan which is a multiple employer welfare arrangement and is fully insured (or which is a multiple employer welfare arrangement subject to an exemption under subparagraph (B)), any law of any State which regulates insurance may apply to such arrangement to the extent that such law provides—

(I) standards, requiring the maintenance of specified levels of reserves and specified levels of contributions, which any such plan, or any trust established under such a plan, must meet in order to be considered under such law able to pay benefits in full when due, and

(II) provisions to enforce such standards, and

(ii) in the case of any other employee welfare benefit plan which is a multiple employer welfare arrangement, in addition to this subchapter, any law of any State which regulates insurance may apply to the extent not inconsistent with the preceding sections of this subchapter.

(B) The Secretary may, under regulations which may be prescribed by the Secretary, exempt from subparagraph (A)(ii), individually or by class,

multiple employer welfare arrangements which are not fully insured. Any such exemption may be granted with respect to any arrangement or class of arrangements only if such arrangement or each arrangement which is a member of such class meets the requirements of section 1002(1) and section 1003 of this title necessary to be considered an employee welfare benefit plan to which this subchapter applies.

(C) Nothing in subparagraph (A) shall affect the manner or extent to which the provisions of this subchapter apply to an employee welfare benefit plan which is not a multiple employer welfare arrangement and which is a plan, fund, or program participating in, subscribing to, or otherwise using a multiple employer welfare arrangement to fund or administer benefits to such plan's participants and beneficiaries.

(D) For purposes of this paragraph, a multiple employer welfare arrangement shall be considered fully insured only if the terms of the arrangement provide for benefits the amount of all of which the Secretary determines are guaranteed under a contract, or policy of insurance, issued by an insurance company, insurance service, or insurance organization, qualified to conduct business in a State.

(7) Subsection (a) shall not apply to qualified domestic relations orders (within the meaning of section 1056(d)(3)(B)(i) of this title), qualified medical child support orders (within the meaning of section 1169(a)(2)(A) of this title), and the provisions of law referred to in section 1169(a)(2)(B)(ii) of this title to the extent they apply to qualified medical child support orders.

(8) Subsection (a) of this section shall not be construed to preclude any State cause of action—

(A) with respect to which the State exercises its acquired rights under section 1169(b)(3) of this title with respect to a group health plan (as defined in section 1167(1) of this title), or

(B) for recoupment of payment with respect to items or services pursuant to a State plan for medical assistance approved under title XIX of the Social Security Act [42 U.S.C. 1396 et seq.] which would not have been payable if such acquired rights had been executed before payment with respect to such items or services by the group health plan.

(9) For additional provisions relating to group health plans, see section 1191 of this title.

(c) Definitions For purposes of this section:

(1) The term "State law" includes all laws, decisions, rules, regulations, or other State action having the effect of law, of any State. A law of the United States applicable only to the District of Columbia shall be treated as a State law rather than a law of the United States.

(2) The term "State" includes a State, any political subdivisions thereof, or any agency or instrumentality of either, which purports to regulate, directly or indirectly, the terms and conditions of employee benefit plans covered by this subchapter.

(d) Alteration, amendment, modification, invalidation, impairment, or supersedure of any law of the United States prohibited

Nothing in this subchapter shall be construed to alter, amend, modify, invalidate, impair, or supersede any law of the United States (except as provided in sections 1031 and 1137(b) of this title) or any rule or regulation issued under any such law.

(e) Automatic contribution arrangements

(1) Notwithstanding any other provision of this section, this subchapter shall supersede any law of a State which would directly or indirectly prohibit or restrict the inclusion in any plan of an automatic contribution arrangement. The Secretary may prescribe regulations which would establish minimum standards that such an arrangement would be required to satisfy in order for this subsection to apply in the case of such arrangement.

(2) For purposes of this subsection, the term "automatic contribution arrangement" means an arrangement—

(A) under which a participant may elect to have the plan sponsor make payments as contributions under the plan on behalf of the participant, or to the participant directly in cash,

(B) under which a participant is treated as having elected to have the plan sponsor make such contributions in an amount equal to a uniform percentage of compensation provided under the plan until the participant specifically elects not to have such contributions made (or specifically elects to have such contributions made at a different percentage), and

(C) under which such contributions are invested in accordance with regulations prescribed by the Secretary under section 1104(c)(5) of this title.

(3)

(A) The plan administrator of an automatic contribution arrangement shall, within a reasonable period before such plan year, provide to each participant to whom the arrangement applies for such plan year notice of the participant's rights and obligations under the arrangement which—

(i) is sufficiently accurate and comprehensive to apprise the participant of such rights and obligations, and

(ii) is written in a manner calculated to be understood by the average participant to whom the arrangement applies.

(B) A notice shall not be treated as meeting the requirements of subparagraph (A) with respect to a participant unless—

(i) the notice includes an explanation of the participant's right under the arrangement not to have elective contributions made on the participant's behalf (or to elect to have such contributions made at a different percentage),

(ii) the participant has a reasonable period of time, after receipt of the notice described in clause (i) and before the first elective contribution is made, to make such election, and

(iii) the notice explains how contributions made under the arrangement will be invested in the absence of any investment election by the participant.

## 16.    42 U.S. Code § 1983 - Civil action for deprivation of rights

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

# Appendix B

1. Tex. Fam. Code § 9.102 - Procedure ................................................................................. 2

2. Tex. Fam. Code § 109.001 - Temporary Orders During Pendency of Appeal ....................................... 3

3. Tex. Fam. Code § 201.007 - Powers of Associate Judge ...................................................... 5

4. Tex. Fam. Code § 201.017 - Immunity ........................................................................ 7

5. Tex. Gov't Code § 81.054 - Membership Fees and Additional Fees ........................................ 8

6. Tex. Gov't Code § 81.072 - General Disciplinary and Disability Procedures ................................... 11

7. Tex. Gov't Code § 81.106 - Immunity ......................................................................... 16

# 1. Tex. Fam. Code § 9.102 - Procedure

(a) A party to a decree of divorce or annulment may petition the court for a qualified domestic relations order or similar order.

(b) Except as otherwise provided by this code, a petition under this subchapter is governed by the Texas Rules of Civil Procedure that apply to the filing of an original lawsuit.

(c) Each party whose rights may be affected by the petition is entitled to receive notice by citation and shall be commanded to appear by filing a written answer.

(d) The proceedings shall be conducted in the same manner as civil cases generally.

## 2.	Tex. Fam. Code § 109.001 - Temporary Orders During Pendency of Appeal

(a) In a suit affecting the parent-child relationship, on the motion of any party or on the court's own motion and after notice and hearing, the court may make any order necessary to preserve and protect the safety and welfare of the child during the pendency of an appeal as the court may deem necessary and equitable. In addition to other matters, an order may:

(1) appoint temporary conservators for the child and provide for possession of the child;

(2) require the temporary support of the child by a party;

(3) enjoin a party from molesting or disturbing the peace of the child or another party;

(4) prohibit a person from removing the child beyond a geographical area identified by the court;

(5) require payment of reasonable and necessary attorney's fees and expenses; or

(6) suspend the operation of the order or judgment that is being appealed.

(b) A temporary order under this section enjoining a party from molesting or disturbing the peace of the child or another party:

(1) may be rendered without:

(A) the issuance of a bond between the parties; or

(B) an affidavit or a verified pleading stating specific facts showing that immediate and irreparable injury, loss, or damage will result; and

(2) is not required to:

(A) define the injury or state why the injury is irreparable; or

(B) include an order setting the suit for trial on the merits with respect to the ultimate relief sought.

(b-1) A motion seeking an original temporary order under this section:

(1) may be filed before trial; and

(2) may not be filed by a party after the date by which that party is required to file the party's notice of appeal under the Texas Rules of Appellate Procedure.

(b-2) The trial court retains jurisdiction to conduct a hearing and sign a temporary order under this section until the 60th day after the date any eligible party has filed a notice of appeal from final judgment under the Texas Rules of Appellate Procedure.

(b-3) The trial court retains jurisdiction to modify and enforce a temporary order under this section unless the appellate court, on a proper showing, supersedes the court's order.

(b-4) On the motion of a party or on the court's own motion, after notice and hearing, the trial court may modify a previous temporary order rendered under this section if:

(1) the circumstances of a party have materially and substantially changed since the rendition of the previous order; and

(2) modification is equitable and necessary for the safety and welfare of the child.

(b-5) A party may seek review of the trial court's temporary order under this section by:

(1) petition for writ of mandamus; or

(2) proper assignment in the party's brief.

(c) A temporary order rendered under this section is not subject to interlocutory appeal.

(d) The court may not suspend under Subsection (a)(6) the operation of an order or judgment terminating the parent-child relationship in a suit brought by the state or a political subdivision of the state permitted by law to bring the suit.

(e) The remedies provided in this section are cumulative of all other remedies allowed by law.

### 3. Tex. Fam. Code § 201.007 - Powers of Associate Judge

(a) Except as limited by an order of referral, an associate judge may:

(1) conduct a hearing;

(2) hear evidence;

(3) compel production of relevant evidence;

(4) rule on the admissibility of evidence;

(5) issue a summons for:

(A) the appearance of witnesses; and

(B) the appearance of a parent who has failed to appear before an agency authorized to conduct an investigation of an allegation of abuse or neglect of a child after receiving proper notice;

(6) examine a witness;

(7) swear a witness for a hearing;

(8) make findings of fact on evidence;

(9) formulate conclusions of law;

(10) recommend an order to be rendered in a case;

(11) regulate all proceedings in a hearing before the associate judge;

(12) order the attachment of a witness or party who fails to obey a subpoena;

(13) order the detention of a witness or party found guilty of contempt, pending approval by the referring court as provided by Section 201.013;

(14) without prejudice to the right to a de novo hearing before the referring court under Section 201.015 and subject to Subsection (c), render and sign:

(A) a final order agreed to in writing as to both form and substance by all parties;

(B) a final default order;

(C) a temporary order; or

(D) a final order in a case in which a party files an unrevoked waiver made in accordance with Rule 119, Texas Rules of Civil Procedure, that waives notice to the party of the final hearing or waives the party's appearance at the final hearing;

(15) take action as necessary and proper for the efficient performance of the associate judge's duties; and

(16) render and sign a final order if the parties waive the right to a de novo hearing before the referring court under Section 201.015 in writing before the start of a hearing conducted by the associate judge.

(b) An associate judge may, in the interest of justice, refer a case back to the referring court regardless of whether a timely objection to the associate judge hearing the trial on the merits or presiding at a jury trial has been made by any party.

(c) A final order described by Subsection (a)(14) becomes final after the expiration of the period described by Section 201.015(a) if a party does not request a de novo hearing in accordance with that section. An order described by Subsection (a)(14) or (16) that is rendered and signed by an associate judge constitutes an order of the referring court.

(d) An answer filed by or on behalf of a party who previously filed a waiver described in Subsection (a)(14)(D) shall revoke that waiver.

(e) An order signed before May 1, 2017, by an associate judge under Subsection (a)(16) is a final order rendered as of the date the order was signed.

### 4.    Tex. Fam. Code § 201.017 - Immunity

An associate judge appointed under this subchapter has the judicial immunity of a district judge. All existing immunity granted an associate judge by law, express or implied, continues in full force and effect.

## 5.     Tex. Gov't Code § 81.054 - Membership Fees and Additional Fees

(a) The supreme court shall set membership fees and other fees for members of the state bar during the court's annual budget process under Section 81.022. The fees, except as provided by Subsection (j) and those set for associate members, must be set in accordance with this section and Section 81.022.

(b) An emeritus member is not required to pay a membership fee for the year in which the member reaches the age of 70 or any year following that year.

(c) Fees shall be paid to the clerk of the supreme court. The clerk shall retain the fees, other than fees collected under Subsection (j), until distributed to the state bar for expenditure under the direction of the supreme court to administer this chapter. The clerk shall retain the fees collected under Subsection (j) until distribution is approved by an order of the supreme court. In ordering that distribution, the supreme court shall order that the fees collected under Subsection (j) be remitted to the comptroller at least as frequently as quarterly. The comptroller shall credit 50 percent of the remitted fees to the credit of the judicial fund for programs approved by the supreme court that provide basic civil legal services to the indigent and shall credit the remaining 50 percent of the remitted fees to the fair defense account in the general revenue fund which is established under Section 79.031, to be used, subject to all requirements of Section 79.037, for demonstration or pilot projects that develop and promote best practices for the efficient delivery of quality representation to indigent defendants in criminal cases at trial, on appeal, and in postconviction proceedings.

(d) Fees collected under Subsection (j) may be used only to provide basic civil legal services to the indigent and legal representation and other defense services to indigent defendants in criminal cases as provided by Subsection (c). Other fees collected under this chapter may be used only for administering the public purposes provided by this chapter.

(e) The state bar by rule may adopt a system under which membership fees are due on various dates during the year. For the year in which a due date is changed, the annual fee shall be prorated on a monthly basis so that the member pays only that portion of the fee that is allocable to the number of months remaining before the new expiration date. An increase in fees applies only to fees that are payable on or after the effective date of the increase.

(f) A person who is otherwise eligible to renew the person's membership may renew the membership by paying the required membership fees to the state bar on or before the due date.

(g) A person whose membership has been expired for 90 days or less may renew the membership by paying to the state bar membership fees equal to 1-1/2 times the normally required membership fees.

(h) A person whose membership has been expired for more than 90 days but less than one year may renew the membership by paying to the state bar membership fees equal to two times the normally required membership fees.

(i) Not later than the 30th day before the date a person's membership is scheduled to expire, the state bar shall send written notice of the impending expiration to the person at the person's last known address according to the records of the state bar.

(j) The supreme court shall set an additional legal services fee in an amount of $65 to be paid annually by each active member of the state bar except as provided by Subsection (k). Section 81.024 does not apply to a fee set under this subsection.

(k) The legal services fee shall not be assessed on any Texas attorney who:

(1) is 70 years of age or older;

(2) has assumed inactive status under the rules governing the State Bar of Texas;

(3) is a sitting judge;

(4) is an employee of the state or federal government;

(5) is employed by a city, county, or district attorney's office and who does not have a private practice that accounts for more than 50 percent of the attorney's time;

(6) is employed by a 501(c)(3) nonprofit corporation and is prohibited from the outside practice of law;

(7) is exempt from MCLE requirements because of nonpracticing status; or

(8) resides out of state and does not practice law in Texas.

(l) In this section, "indigent" has the meaning assigned by Section 51.941.

### 6. Tex. Gov't Code § 81.072 - General Disciplinary and Disability Procedures

(a) In furtherance of the supreme court's powers to supervise the conduct of attorneys, the court shall establish disciplinary and disability procedures in addition to the procedures provided by this subchapter.

(b) The supreme court shall establish minimum standards and procedures for the attorney disciplinary and disability system. The standards and procedures for processing grievances against attorneys must provide for:

(1) classification of all grievances and investigation of all complaints;

(2) a full explanation to each complainant on dismissal of an inquiry or a complaint;

(3) periodic preparation of abstracts of inquiries and complaints filed that, even if true, do or do not constitute misconduct;

(4) an information file for each grievance filed;

(5) a grievance tracking system to monitor processing of grievances by category, method of resolution, and length of time required for resolution;

(6) notice by the state bar to the parties of a written grievance filed with the state bar that the state bar has the authority to resolve of the status of the grievance, at least quarterly and until final disposition, unless the notice would jeopardize an undercover investigation;

(7) an option for a trial in a district court on a complaint and an administrative system for attorney disciplinary and disability findings in lieu of trials in district court, including an appeal procedure to the Board of Disciplinary Appeals and the supreme court under the substantial evidence rule;

(8) an administrative system for reciprocal and compulsory discipline;

(9) interim suspension of an attorney posing a threat of immediate irreparable harm to a client;

(10) authorizing all parties to an attorney disciplinary hearing, including the complainant, to be present at all hearings at which testimony is taken and

requiring notice of those hearings to be given to the complainant not later than the seventh day before the date of the hearing;

(11) the commission adopting rules that govern the use of private reprimands by grievance committees and that prohibit a committee:

(A) giving an attorney more than one private reprimand within a five-year period for a violation of the same disciplinary rule; or

(B) giving a private reprimand for a violation:

(i) that involves a failure to return an unearned fee, a theft, or a misapplication of fiduciary property; or

(ii) of a disciplinary rule that requires a prosecutor to disclose to the defense all evidence or information known to the prosecutor that tends to negate the guilt of the accused or mitigates the offense, including Rule 3.09(d), Texas Disciplinary Rules of Professional Conduct; and

(12) distribution of a voluntary survey to all complainants urging views on grievance system experiences.

(b-1) In establishing minimum standards and procedures for the attorney disciplinary and disability system under Subsection (b), the supreme court must ensure that the statute of limitations applicable to a grievance filed against a prosecutor that alleges a violation of the disclosure rule does not begin to run until the date on which a wrongfully imprisoned person is released from a penal institution.

(b-2) For purposes of Subsection (b-1):

(1) "Disclosure rule" means the disciplinary rule that requires a prosecutor to disclose to the defense all evidence or information known to the prosecutor that tends to negate the guilt of the accused or mitigates the offense, including Rule 3.09(d), Texas Disciplinary Rules of Professional Conduct.

(2) "Penal institution" has the meaning assigned by Article 62.001, Code of Criminal Procedure.

(3) "Wrongfully imprisoned person" has the meaning assigned by Section 501.101.

(b-3) In establishing minimum standards and procedures for the attorney disciplinary and disability system under Subsection (b), the supreme court must ensure that an attorney has an opportunity to respond to all allegations of alleged misconduct.

(c) In addition to the minimum standards and procedures provided by this chapter, the supreme court, under Section 81.024 shall prepare, propose, and adopt rules it considers necessary for disciplining, suspending, disbarring, and accepting resignations of attorneys.

(d) Each attorney is subject to the Texas Rules of Disciplinary Procedure and the Texas Disciplinary Rules of Professional Conduct.

(e) The state bar shall establish a voluntary mediation and dispute resolution procedure to:

(1) attempt to resolve each minor grievance referred to the voluntary mediation and dispute resolution procedure by the chief disciplinary counsel; and

(2) facilitate coordination with other programs administered by the state bar to address and attempt to resolve inquiries and complaints referred to the voluntary mediation and dispute resolution procedure.

(e-1) All types of information, proceedings, hearing transcripts, and statements presented during the voluntary mediation and dispute resolution procedure established under Subsection (e) are confidential to the same extent the information, proceedings, transcripts, or statements would be confidential if presented to a panel of a district grievance committee.

(f) Responses to the survey provided for in Subsection (b)(12) may not identify either the complainant or attorney and shall be open to the public. The topics must include:

(1) treatment by the grievance system staff and volunteers;

(2) the fairness of grievance procedures;

(3) the length of time for grievance processing;

(4) disposition of the grievance; and

(5) suggestions for improvement of the grievance system.

(g) A person may not maintain an action against a complainant or witness in a disciplinary proceeding based on a communication made by the complainant or witness to the commission, a grievance committee, or the chief disciplinary counsel. The immunity granted by this subsection is absolute and unqualified.

(h) The state bar or a court may not require an attorney against whom a disciplinary action has been brought to disclose information protected by the attorney-client privilege if the client did not initiate the grievance that is the subject of the action.

(i) A panel of a district grievance committee of the state bar that votes on a grievance matter shall disclose to the complainant and the respondent in the matter the number of members of the panel:

(1) voting for a finding of just cause;

(2) voting against a finding of just cause; and

(3) abstaining from voting on the matter.

(j) A quorum of a panel of a district grievance committee of the state bar must include one public member for each two attorney members.

(k) A member of a panel of a district grievance committee of the state bar may vote on a grievance matter to which the panel was assigned only if the member is present at the hearing at which the vote takes place.

(l) A person may be appointed to serve on a panel of a district grievance committee of the state bar only if the person is a member of the district grievance committee from which the panel was assigned and the person was appointed to serve on the committee in strict accordance with the Texas Rules of Disciplinary Procedure.

(m) A panel of a district grievance committee of the state bar may not be changed in size for the purpose of obtaining a quorum on the panel without the approval of the complainant and the respondent in the grievance matter to which the panel was assigned.

(n) A member of a panel of a district grievance committee of the state bar may not be substituted with another member of the district grievance committee on the day of the hearing for which the panel was assigned without the approval of the complainant and the respondent in the grievance matter.

(o) Whenever a grievance is either dismissed as an inquiry or dismissed as a complaint in accordance with the Texas Rules of Disciplinary Procedure and that dismissal has become final, the respondent attorney may thereafter deny that a grievance was pursued and may file a motion with the tribunal seeking expunction of all records on the matter, other than statistical or identifying information maintained by the chief disciplinary counsel pertaining to the grievance.

## 7. Tex. Gov't Code § 81.106 - Immunity

(a) The unauthorized practice of law committee, any member of the committee, or any person to whom the committee has delegated authority and who is assisting the committee is not liable for any damages for an act or omission in the course of the official duties of the committee.

(b) A complainant or a witness in a proceeding before the committee or before a person to whom the committee has delegated authority and who is assisting the committee has the same immunity that a complainant or witness has in a judicial proceeding.

## 1.    <u>**CERTIFICATE OF SERVICE**</u>

This is to certify that the forgoing addendum("appendix") document has been served in a manner in compliance with Rule 25(b) and (c) of the Fed. R. App. P., on October 17, 2024, on all registered counsel of record, and has been transmitted to the Clerk of the Court.

/s/ Conghua Yan

Conghua Yan, Pro Se Plaintiff

[Conghua Yan] [2140 E Southlake Blvd, Suite L-439] [Southlake, Texas 76092]

[214-228-1886] [arnold200@gmail.com]
