# Case No. 24-10543

## *IN THE UNITED STATES COURT OF APPEALS*
## *FOR THE FIFTH CIRCUIT*

Conghua Yan,

*Plaintiff - Appellant*

v.

The State Bar of Texas, a private company; The Barrows Firm, a private company; Leslie Starr Barrows, in Individual Capacity, as Member of the State Bar of Texas; William Albert Pigg, in Individual Capacity, as Member of the State of Texas; Samantha Ybarra, in Individual Capacity, as Member of the State Bar of Texas; Luis Jesus Marin, in Individual Capacity, as Member of the State Bar of Texas, and Official Capacity as Assistant Disciplinary Counsel for the Office of the CDC; Daniel Eulalio Martinez, in Individual Capacity, as Member of the State Bar of Texas, and Official Capacity as Assistant Disciplinary Counsel for the Office of the CDC; Rachel Ann Craig, in Individual Capacity, as Member of the State Bar of Texas, and Official Capacity as Assistant Disciplinary Counsel for the Office of the CDC; Lori L. Deangelis, in Individual Capacity, as member of the State Bar of Texas, and Official Capacity as Associated Judge; U.S. Bank,

*Defendants - Appellees*

On Appeal from the United States District Court for the

Northern District of Texas, Fort Worth Division

Civil Action No. 4:23-CV-00758-P, The Hon. Mark T Pittman, Presiding

# **REPLY BRIEF OF APPELLANT**

Respectfully submitted:

Conghua Yan
2140 E Southlake Blvd, Suite L-439
Southlake, Texas 76092
214-228-1886
arnold200@gmail.com
Pro Se Litigant

# Table of Contents

SUMMARY OF THE APPELLATE CASE ................................................................................. 8

I.    Appellate Proceedings: ................................................................................................................8

II.    Summary of Issues Both Parties Presented: ...........................................................................9

    A.    The Defendants-Appellees' briefs collectively raised 16 issues. ......................................9

    B.    The Defendants-Appellees waived arguments on the 13 issues raised by the Appellant. ..................... 10

    C.    The Appellees collectively argued 5 issues. .................................................................... 12

    D.    The structure of arguments in this Reply Brief. .............................................................. 13

SUMMARY OF THE ARGUMENT ................................................................................. 13

ARGUMENTS AND AUTHORITIES .................................................................................. 17

I.    Standard of Review Concerning Appellee's Brief. .................................................................. 17

    A.    Not every issue is reviewable by this Court. .................................................................. 17

    B.    A counseled brief is not entitled to liberal construction. Yan-Brief fixes the scope of the issues to be reviewed. ................................................................................................................................. 18

    C.    The district court failed to address two pivotal factual allegations fundamentally impaired appellate review. ................................................................................................................................. 19

    D.    In the absence of a cross-appeal, FRAP prohibits Appellees briefs from reversing, or modifying the Judgment or raising new issues not previously determined by Judgment. ................................... 20

II.    Supreme Court's Controlling Standards Must Be Upheld to Prevent Manifest Injustice. ...................... 23

    A.    The liberal construction standard must be uniformly applied. ......................................... 23

III.    *Younger* doctrine (Issues 1, 17) .......................................................................................... 26

    A.    The Supreme Court clarified that *Younger* only applies to certain "exceptional" classes of cases after *Sprint* .................................................................................................................................... 27

    B.    Appellee failed to rebut the legal theory that ERISA preemption is facially conclusive and that *Younger* does not apply. .......................................................................................................................... 29

IV.    Core ERISA (Issues 1-3) ...................................................................................................... 32

    A.    ERISA preemption vs. immunity defenses (Issue 1) ........................................................ 32

    B.    ERISA fund recovery and restoration (Issue 2) .............................................................. 35

    C.    Administrator fiduciary duties for QDROs (Issue 3) ......................................................... 35

V.    State vs. Federal Immunity (Issues 4-5, 10) .......................................................................... 43

    A.    Texas statutory/common-law immunity post-*Taylor* (Issue 4) .................................... 43

    B.    Federal common-law immunity limits (Issue 4-5) ........................................................... 54

   C.     Scope of non-Article III state statutory judge (Issue 5, 10)........................................................ 56

   D.     Applying blanket judicial immunity without conducting a through judicial act and jurisdiction analysis, contrary to rulings by other Circuit Courts. ................................................................................... 58

VI.     Jurisdictional Authority (Issues 8-10)................................................................................. 66

   A.     Non-Article III court jurisdiction limits (Issue 10) ............................................................. 66

   B.     Texas constitutional trial authority (Issue 8)..................................................................... 67

   C.     QDRO appealability requirements (Issue 9) ....................................................................... 69

   D.     Yan has standing to sue DeAngelis because she adjudicated without statutory authority and the statutorily required petition. ...................................................................................................... 72

VII.    Due Process Violations (Issues 6-7, 13) ............................................................................. 72

   A.     Attorney alteration of court orders (Issue 6) ..................................................................... 72

   B.     Garnishment without proper cause (Issue 7) ..................................................................... 75

   C.     Prefiling injunction procedural requirements (Issue 13) ................................................... 75

VIII.   Federal Civil Procedure (Issues 11-12, 14 ......................................................................... 75

   A.     Rule 11 safe harbor provisions (Issue 11) .......................................................................... 75

   B.     Magistrate FCR appeal rights (Issue 12) ............................................................................ 75

   C.     Rule 54 final judgment requirements (Issue 14) ............................................................... 75

IX.     Motion to Dismiss Standards (Issues 15-16) ...................................................................... 76

   A.     Factual omission implications (Issue 15) ............................................................................ 76

   B.     Proper 12(b)(1) vs 12(b)(6) analysis and claim substitution effects (Issues 16) ................ 76

   C.     *SBTX-Brief* raised new 12(b)(1) and 12(b)(6) issues, which are either abandoned in the district court or seeking to reverse/modify the judgment without a cross-appeal. ................................................ 77

   D.     USBank consistently frames Yan's allegations in a manner contradictory to the principle of liberal construction............................................................................................................................... 79

X.      Complex Federal Claims (Issues 17-18) ............................................................................. 79

   A.     State proceeding exemption applicability with *Nesses* reasoning (Issue 17)......................... 79

   B.     Multiple predicate acts requirements (Issue 18)............................................................... 80

XI.     State Actor/Action issue under *§1983* claim .................................................................... 82

   A.     Barrows has abandoned this state actor issue. .................................................................. 82

   B.     USBank is a responsible co-conspirator. ............................................................................ 83

XII.    This Appeal Is Not Frivolous ............................................................................................. 85

   A.     *SBTX-Brief* erred by making false allegation against Yan. ................................................. 85

XIII.   Reassignment................................................................................................................... 86

XIV.   The Founders established a republic—if the judicial community can keep it........................ 88

CONCLUSION ..................................................................................................... 94

CERTIFICATE OF SERVICE ........................................................................... 96

CERTIFICATE OF COMPLIANCE .................................................................. 97

APPELLANT'S APPENDIX ............................................................................... 98

## Cases

*Arnesen v. Raimondo*, 115 F.4th 410 (5th Cir. 2024) ........................................ 18

*Ayers v. Bd. of Regents Univ. of Tex. Sys.*, No. 12-51166 (5th Cir. 2014) ............ 13

*Bacon v. Tex. Historical Comm'n*, 411 S.W.3d 161 (Tex. App. 2013) ..........34, 44, 50

*Baldwin County Welcome Center v. Brown*, 466 U.S. 147 (1984) ........................ 24

*Berry v. CIGNA/RSI-CIGNA*, 975 F.2d 1188 (5th Cir. 1992) ............................ 89

*Borowski v. Kean Univ.*, 68 F.4th 844 (3d Cir. 2023) ........................................ 27

*Bradley v. Fisher*, 80 U.S. 335 (1871) ............................................................. 57

*Braidwood Mgmt. v. Becerra*, 104 F.4th 930 (5th Cir. 2024) .............................. 20

*Browning v. Navarro*, 826 F.2d 335, 344 (5th Cir. 1987) .................................. 88

*Canady v. City of Dallas*, No. 05-21-00250-CV (Tex. App. Jul. 26, 2022) ............ 25

*Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868 (2009) ................................... 87

*Chalmers v. Lane*, Civil Action No. 3:03-CV-1268-BH (N.D. Tex. Dec. 22, 2003) ........ 24

*Chaulk Serv., Inc. v. Massachusetts Comm'n*, 70 F.3d 1361 (1st Cir. 1995) ......... 29

*City of Austin v. Paxton*, 943 F.3d 993 (5th Cir. 2019) .................................... 33

*Coggin v. Longview Independent School Dist.*, 337 F.3d 459, (5th Cir. 2003) ........... 84

*Coghlan v. Wellcraft Marine Corporation*, 240 F.3d 449 (5th Cir. 2001) ............. 18

*Colonial Life & Acc. Ins. Co. v. Medley*, 572 F.3d 22 (1st Cir. 2009) ................. 30

*Colonial Life Accident Insurance Company v. Medley*, 584 F. Supp. 2d 368 (D. Mass. 2008) ............ 30

*CPS Energy v. Elec. Reliability Council of Tex.*, 671 S.W.3d 605 (Tex. 2023) ...........50, 51

*Culumber v. Morris Network of Miss.*, CIVIL 1:23cv219-HSO-BWR (S.D. Miss. Jul. 23, 2024) ........ 26

*Dalton v. Dalton*, 551 S.W.3d 126 (Tex. 2018) ..........................................39, 67, 72

*Daves v. Dall. Cnty.*, 64 F.4th 616 (5th Cir. 2023) .......................................... 28

*Diduck v. Kaszycki Sons Contractors*, 774 F. Supp. 802 (S.D.N.Y. 1991) .............. 40

*Doe v. McKesson*, 922 F.3d 604 (5th Cir. 2019) .............................................. 87

*Donalson v. McLeaish*, No. 22-40758 (5th Cir. Dec. 18, 2023) ........................... 19

*E.E.O.C. v. Bailey Ford, Inc.*, 26 F.3d 570 (5th Cir. 1994) ................................ 19

*Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ................................................... 24

*Estelle v. Gamble* 429 U.S. 97 (1976) ............................................................ 24

*E-Systems, Inc. v. Pogue*, 929 F.2d 1100 (5th Cir. 1991) ................................. 32

*Ex parte Young*, 209 U.S. 123 (1908) ............................................................ 33

*Faretta v. California*, 422 U.S. 806 (1975) ..................................................... 92

*Farguson v. Mbank Houston, N.A.*, 808 F.2d 358 (5th Cir. 1986) ....................... 86

*Forrester v. White*, 484 U.S. 219 (1988) ........................................................ 64

*Gainous v. Gainous*, 219 S.W.3d 97 (Tex. App. 2006) ...................................... 69

*Gamble v. United States*, 139 S. Ct. 1960 (2019) .............................................................................. 26

*Gibson v. Goldston*, No. 22-1757 (4th Cir. Oct. 30, 2023) ...........................................................59, 67

*Goldfarb v. Va. State Bar*, 421 U.S. 773 (1975) ........................................................................44, 48

*Grooms v. Privette*, 6:23-cv-03287-MDH (W.D. Mo. May. 2, 2024) ....................................... 63

*Guffey v. Duff*, 330 F. Supp. 3d 66 (D.D.C. 2018) ...................................................................... 90

*Guy v. Travenol Labs., Inc.*, 812 F.2d 911 (4th Cir. 1987)........................................................... 93

*Haines v. Kerner*, 404 U.S. 519 (1972) ....................................................................................... 24

*Harris v. Mills*, 572 F.3d 66 (2d Cir. 2009) ................................................................................ 25

*Hazel-Atlas Co. v. Hartford Co.*, 322 U.S. 238 (1944)...........................................................35, 88

*Hensley v. State Comm'n on Judicial Conduct*, 692 S.W.3d 184, 189 n.6 (Tex. 2024). ............. 88

*Hughes v. Rowe* 449 U.S. 5 (1980)............................................................................................... 24

*In re Arteaga*, No. 13-24-00578-CV (Tex. App. Nov. 27, 2024) ................................................ 70

*In re D.L.M.*, 982 S.W.2d 146 (Tex. App. 1998) ......................................................................... 56

*In re Murchison*, 349 U.S. 133 (1955) ........................................................................................ 64

*In re State ex rel. Wice*, 668 S.W.3d 662 (Tex. Crim. App. 2023) ............................................. 67

*Mark v. Spears*, 722 F. App'x 362 (5th Cir. 2018) ..................................................................... 21

*Middlesex County Ethics Committee v. Garden State Bar Association*, 457 U.S. 423 (1982)................................. 27

*Miguel v. McLane*, No. 22-10517 (5th Cir. Feb. 23, 2024) ......................................................... 26

*Mireles v. Waco*, 502 U.S. 9 (1991) ............................................................................................. 57

*Moody, Attorney Gen.*, No. 22-277 (U.S. Jul. 1, 2024) ............................................................... 17

*N.C. State Bd. of Dental Examiners v. F.T.C.*, 574 U.S. 494 (2015) ......................................... 44

*Neitzke v. Williams* 490 U.S. 319 (1989) ..................................................................................... 24

*Newman v. Plains All Am. Pipeline, L.P.*, 23 F.4th 393 (5th Cir. 2022).................................17, 21

*Northern Pipeline v. Marathon Pipeline*, 458 U.S. 50 (1982)..................................................... 69

*Rockett v. Eighmy*, 71 F.4th 665 (8th Cir. 2023)......................................................................... 59

*Rosales-Mireles v. United States*, 138 S. Ct. 1897 (2018) .......................................................... 91

*Santos-Zacaria v. Garland*, 143 S. Ct. 1103 (2023).................................................................... 70

*Sellers v. Adams*, W-16-CV-064 -RP (W.D. Tex. Apr. 10, 2017) ............................................. 25

*Seminole Tribe of Fla. v. Florida*, 517 U.S. 44 (1996) ............................................................... 33

*Smith v. Arizona*, No. 22-899 (U.S. Jun. 21, 2024) .................................................................... 17

*Smith v. Dart*, 803 F.3d 304 (7th Cir. 2015) .............................................................................. 25

*Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69 (2013)....................................................... 26

*Stein v. Stein*, 868 S.W.2d 902 (Tex. App. 1994) ....................................................................... 56

*Stump v. Sparkman*, 435 U.S. 349 (1978) ................................................................................... 57

*Taylor v. Tolbert*, 644 S.W.3d 637 (Tex. 2022) .......................................................................... 57

*Texas Workers' Compensation Commission v. Garcia*, 862 S.W.2d 61 (Tex. App. 1993) ........ 71

*Travelers Cas. Ins. Co. of Am. v. A-Quality Auto Sales, Inc.*, 98 F.4th 1307 (10th Cir. 2024) ............. 27

*Tumey v. Ohio*, 273 U.S. 510 (1927) ........................................................................................... 86

*U.S. v. Carter*, 421 F.3d 909 (9th Cir. 2005)............................................................................... 73

*U.S. v. Casilla*, 20 F.3d 600 (5th Cir. 1994)................................................................................ 87

*U.S. v. Freeman*, 6 F.3d 586 (9th Cir. 1993) .............................................................................. 93

*U.S. v. Orellana*, 405 F.3d 360 (5th Cir. 2005) .......................................................................... 81

*U.S. v. Walker*, 348 F. App'x 910 (5th Cir. 2009)...................................................................... 93

*United States Fidelity & Guaranty Co. v. Concrete Holding Co.*, 168 F.3d 340 (8th Cir. 1999) ................. 19

*United States v. Bethea*, No. 17-2788-cr (2d Cir. Sep. 6, 2018) ............................................................. 93

*United States v. Dees*, 125 F.3d 261 (5th Cir. 1997) ....................................................................... 69

*United States v. Havens*, 446 U.S. 620 (1980) .......................................................................... 76

*United States v. Jones*, 648 F.2d 215 (5th Cir. 1981) ...................................................................... 74

*United States v. Pryor*, No. 13-60529 (5th Cir. 2014) ...................................................................... 19

*Univ. of Tex. Med. Branch at Galveston v. York*, 871 S.W.2d 175 (Tex. 1994) .................................................45, 50

*Varity Corp. v. Howe*, 516 U.S. 489 (1996) ........................................................................... 40

*Walker v. City of Calhoun*, 901 F.3d 1245 (11th Cir. 2018) ................................................................ 28

*Williams-Yulee v. Fla. Bar*, 575 U.S. 433 (2015) ........................................................................ 90

*Woody v. Nance, Warden*, 108 F.4th 232 (4th Cir. 2024) ................................................................... 35

*Yohey v. Collins*, 985 F.2d 222 (5th Cir. 1993) ......................................................................... 21

## Statutes

*18 U.S.C. § 1962* ................................................................................................ 19

*18 U.S.C. § 664* .............................................................................................19, 80, 81

*29 U.S.C. § 1056(d)(3)(B)(ii)* ..................................................................................38, 68

*29 U.S.C. § 1056(d)(3)(G)(i)(II)* ...............................................................................37, 38

*29 U.S.C. § 1144(a)* ............................................................................................. 30

*Fed. R. App. P. 28(a)(8)* .....................................................................................75, 77, 82

*Fed. R. App. P. 28(e)* .......................................................................................75, 77, 82

*Fed. R. App. P. 4* ............................................................................................... 20

*Fed. R. Civ. P. 8(b)* ............................................................................................. 77

*Fed. R. Civ. P. 8(f)* ............................................................................................. 24

*Tex. Fam. Code § 201.005(a)* ...................................................................................... 66

*Tex. Fam. Code § 201.007* ....................................................................................56, 62, 67

*Tex. Fam. Code § 201.017* ......................................................................................53, 54

*Tex. Fam. Code § 9.101* .......................................................................................68, 72, 81

*Tex. Fam. Code § 9.102* .......................................................................................68, 72, 81

*Tex. Gov't Code § 24.601* ......................................................................................... 66

*Tex. Gov't Code § 311.034* ........................................................................................ 45

*Tex. Gov't Code Ann. § 81.011(a)* ..............................................................................43, 45

*Tex. R. Disciplinary P. 17.09* .................................................................................48, 53, 54

## Other Authorities

Black's Law Dictionary 141 (11th ed. 2019) ............................................................... 70

*Brutus No. 15* (Mar. 20, 1788) ......................................................................... 90

*The Federalist No. 78* (Alexander Hamilton) ............................................................. 90

# SUMMARY OF THE APPELLATE CASE

I.  Appellate Proceedings:

On October 7, 2024, Plaintiff-Appellant Conghua Yan (hereinafter, "Yan") filed Appellant's Opening Brief ("*Yan-Brief*"), raising 18 issues.

On October 23, Defendant-Appellee Lori L. DeAngelis ("DeAngelis") filed Appellee's Brief ("*DeAngelis-Brief*"), raising 4 issues.

On October 30, Defendants-Appellees the State Bar of Texas ("SBTX"), Luis Jesus Marin ("Marin"), Daniel Eulalio Martinez ("Martinez"), and Rachel Ann Craig ("Craig"), (hereafter, collectively Craig with Marin, Martinez, the "MarinMartinezCraig"), filed Appellee's Brief ("*SBTX-Brief*"), raising 4 issues.

On November 20, Defendants-Appellees Leslie Starr Barrows ("Barrows"), the Barrows Firm ("BarrowsFirm"), and Samantha Ybarra ("Ybarra") filed Appellee's Brief ("*Barrows-Brief*"), raising 7 issues.

On November 26, Defendant-Appellee U.S. Bank ("USBank") filed Appellee's Brief ("*USBank-Brief*"), raising 4 issues.

Defendant-Appellee William Albert Pigg ("Pigg") waived his argument.

II.  Summary of Issues Both Parties Presented:

A.  The Defendants-Appellees' briefs collectively raised 16 issues.

The Appellant's Opening Brief ("*Yan-Brief*") raised 18 issues, while the Defendants-Appellees' briefs collectively raised 19. Some of the Appellees' issues overlap, and a few are new.

*DeAngelis-Brief*'s 4 issues:

1.  Lacked standing to sue DeAngelis. (Replied at Section VI.D)

2.  Judicial immunity (Replied at Section IV.A, V.A-D, VI.A-B)

3.  *Younger* abstention. (Replied at Section III.A-B)

4.  Additional ground. (Replied at Section I.D, IV.A)

*SBTX-Brief*'s 4 issues:

1.  Sovereign Immunity. (Replied at Section IV.A)

2.  Absolute and Unqualified Immunity. (Replied at Section V.A)

3.  *Rule 12(b)(6)* dismissal of RICO and antitrust. (Replied at Section IX.C)

4.  This appeal is frivolous (new issue, replied at Section V.A, Section X.A).

*Barrows-Brief*'s 7 issues:

1.  Affirm the *12(b)(1)* immunity Judgment. (Replied at Section V.A)

2.  *Rule 12(b)(6)* dismissal of RICO (Replied at Section I.D).

3.  Private actor under *§ 1983* (new issue, Replied at Section XI.A).

4.  *Rule 12(b)(6)* dismissal of antitrust (Replied at Section I.D).

5.      Attorney Immunity. (Replied at Section V.A)

6.      *Younger* abstention (Replied at Section III.A-B).

7.      Reassignment (Replied at Section XIII).

*USBank-Brief*'s 4 issues:

1.      Civil cause of action for criminal statute offense. (Replied in Section IX.D)

2.      *Rule 12(b)(6)* dismissal of RICO (Replied at Section IX.B)

3.      Private actor under *§ 1983* (Replied at 71, Section XI.B).

4.      Fiduciary breach under ERISA. (Replied in Section IV.C)

B.      The Defendants-Appellees waived arguments on the 13 issues raised by the Appellant.

Referring to the issues in *Yan-Brief* at 14-18, Defendants-Appellees make no argument against the following:

2.      Whether attorney's fees unlawfully obtained from ERISA plans must be returned (primarily briefed in *Yan-Brief* at 52-54).

4.      The application of state common law and statutory immunity to federal offenses following 2022 *Taylor v. Tolbert* decision (primarily briefed in *Yan-Brief* at 55-57, 57-60).

6.      Whether attorneys' alteration of court orders constitutes usurpation of judicial authority (primarily briefed in *Yan-Brief* at 51-52, 74-77).

7.    Whether garnishment without a pleaded cause of action violates due process (primarily briefed in *Yan-Brief* at 51-52).

8.    Whether non-Article III state statutory courts can adjudicate cases involving property deprivation reserved for Article III courts (primarily briefed in *Yan-Brief* at 60-61).

11.    Whether refiling after 21 days under *Rule 11* safe harbor is frivolous (primarily briefed in *Yan-Brief* at 91-92).

12.    Whether objection rights under *28 U.S.C. § 636* are constitutional and necessary to preserve the issue (primarily briefed in *Yan-Brief* at 92-94).

13.    Whether sua sponte injunctions without notice violate due process (primarily briefed in *Yan-Brief* at 95).

14.    Whether *Rule 54* finality exists without addressing all claims/parties (primarily briefed in *Yan-Brief* at 95-97).

15.    Whether dismissals meet *Rule 12* threshold if key facts/allegations are omitted (primarily briefed in *Yan-Brief* at 39-41).

16.    Whether *Rule 12* dismissal was proper given substitution of claims and inadequate findings (primarily briefed in *Yan-Brief* at 61-64).

17.    Whether *Nesses* reasoning applies to distinguish between federal offense injury claims and state court judgment disputes, when plaintiff does not seek to overturn state court decisions (primarily briefed in *Yan-Brief* at 47-48, 68).

18.    Whether multiple predicate acts are required for each person under RICO § *1962(d)* (primarily briefed in *Yan-Brief* at 84-86). Arguments abandoned in the district court proceeding as well.

C.    The Appellees collectively argued 5 issues.

Referring to *Yan-Brief* at 14-18, Defendants-Appellees have directly or indirectly addressed the following issues:

1.    Whether ERISA preemption supersedes Eleventh Amendment and state law immunity defenses (primarily briefed in *Yan-Brief* at 39-41, 52-54, 57-60).

- *SBTX-Brief*, *USBank-Brief* and *Barrows-Brief* waived this argument.

- *DeAngelis-Brief* at 8–12, did not directly address the issue but instead invoking judicial immunity and Eleventh Amendment immunity.

3.    Whether ERISA requires administrators to exercise fiduciary duty in determining QDRO validity (primarily briefed in *Yan-Brief at* 39-41, 87-89).

- *SBTX-Brief*, *Barrows-Brief*, *DeAngelis-Brief*) make no argument.

- *USBank-Brief* at 27-34 indirectly raised the argument.

5.    Whether state law can expand federal common-law immunity to non-Article III, state statutory judges (primarily briefed in *Yan-Brief at* 55-57, 57-60).

- *SBTX-Brief*, *Barrows-Brief*, and *USBank-Brief* waived this argument.

- *DeAngelis-Brief* (at 8–12) directly rebuts the issue by invoking *Texas Family Code § 201.017* under Issue 2.

9.  Whether temporary QDRO remedies in associate judge courts are unlawful (primarily briefed in *Yan-Brief at* 49-51, 78-80).

- *SBTX-Brief*, *Barrows-Brief*, *DeAngelis-Brief* and *USBank-Brief* waived this argument.

- *DeAngelis-Brief*, at 10-12, did not directly rebut the issue but instead invoking Judicial immunity under Issue 2.

10.  Whether blanket judicial immunity applies to state statutory judges without jurisdiction analysis (primarily briefed in *Yan-Brief at* 55-57).

- *SBTX-Brief*, *Barrows-Brief*, *DeAngelis-Brief* and *USBank-Brief* waived this argument.

- *DeAngelis-Brief* at 8–12 directly rebuts the issue by invoking *Texas Family Code § 201.017* under Issue 2.

D.  The structure of arguments in this Reply Brief.

This Court "liberally construe briefs in determining issues presented for appeal."

*Ayers v. Bd. of Regents Univ. of Tex. Sys.*, No. 12-51166, 14 (5th Cir. 2014).

The issues presented in the Opening Brief were arranged in order of priority. In Reply Brief, Yan will rebut the Defendants-Appellees' arguments as closely aligned with the order of issues presented in Opening Brief as possible, while categorizing and organizing the arguments for brevity.

## SUMMARY OF THE ARGUMENT

A counsel's brief is not entitled to liberal construction. This Court should not consider new issues raised by the Appellees that were not addressed in the final Judgement.

Appellant will be prejudiced if he has to use Reply Brief to rebut undetermined new issues due to the page limits. The district court's failure to analyze pivotal factual allegations, impairing meaningful review, and Appellees' briefs improperly expand the scope of the appeal without filing cross-appeals.

SCOTUS precedent requires the universal application of liberal construction to ensure justice, regardless of a pro se litigant's non-prisoner status.

*Middlesex* conditions are additional factors, only limited to quasi-criminal context. *Younger* doctrine is disfavored after *Sprint*. Appellees invoked *Younger* determination conclusively without applying SCOTUS required *NOPSI* identifiers analysis. ERISA preemption is facially conclusive which Appellee failed to rebut.

Appellees failed to rebut ERISA preemption regarding the Eleventh Amendment and state law immunity. USBank argued that they released the ERISA fund to comply with the "alternate payee" provision under *29 U.S.C. § 1056(d)(3)(B)(ii)*, but they overlooked the "and" provision, which mandates that they also determine whether the QDRO is made pursuant to state law. USBank further overlooked the language alleged *29 U.S.C. § 1056(d)(3)(G)(i)(II)* violation that Yan incorporated into the ninth claim.

No Appellee contested the *Taylor* precedent. However, DeAngelis invoked *Tex. Fam. Code* to assert associate judge's blanket judicial immunity as an affirmative defense, and SBTX relied on TRDP to claim absolute immunity for its personnel. Yan argued that *Taylor*

is controlling and that the Texas legislature explicitly denied immunity for SBTX personnel in clear terms. The SCOTTX limited TRDP to SBTX's internal governance, rendering it without external authority. TRDP itself states that it is neither law, common law, nor precedent in Texas. Judicial immunity protects a judge's acts, not the judge personally. *Tex. Fam. Code § 9.101* restricts QDRO jurisdiction in the district court.

Several Appellees raised *12(b)(6)* issues premised on RICO *§ 664* ERISA fund embezzlement and antitrust *§ 2* claims. This Court cannot speculate on the district court's view upon these arguments, as it erred by ruling premised on RICO *§ 1956* money-laundering and antitrust *§ 1* claims without findings of fact or conclusions of law. These omissions and substitutions prejudiced appellate review.

Appellees cited no countervailing authority and failed to directly rebut 15 issues raised in Opening Brief.

No Appellee cited any state law permitting an associate judge's court to render a temporary QDRO abstracting ERISA funds to pay attorney fees during a statewide, decade-long practice in a monopoly of family law. This act is unlawful and performed in the clear absence of all jurisdiction, pursuant to *Tex. Fam. Code §§ 9.101-102, 201.005,007*.

No Appellee contested the allegation that Yan's QDRO was altered by attorneys. No Appellee disputed the allegation that the existence of a second QDRO and five additional

QDROs established a RICO pattern over a statewide, decade-long period. No Appellee contend that the unlawfully abstracted ERISA should return to restore the status quo ante.

No Appellee contended that the Fourteenth Amendment (ROA.1057[¶106]) was purposed to ensure Texas statutory family court judges/lawyers cannot deprive any Texas person of ERISA funds without due process of law, including statutory authority, a hearing, and a petition. Nor did any Appellee address the misuse of monopolized legal power among legal professionals to distort the law and oppress justice for laypersons.

# ARGUMENTS AND AUTHORITIES

## I. Standard of Review Concerning Appellee's Brief.

### A. Not every issue is reviewable by this Court.

Appellees' Briefs raised new issues never argued in the district court. This Court "have consistently held [that] 'arguments not raised before the district court are waived and cannot be raised for the first time on appeal.'" *Newman v. Plains All Am. Pipeline, L.P.*, 23 F.4th 393, 402 n.47 (5th Cir. 2022).

The Supreme Court also stated appellate court is not the pioneer court to decide any issue that the trial court did not take a stance. "Nor, to our knowledge, did the trial court ever take a stance on that issue. Because "we are a court of review, not of first view," we will not be the pioneer court to decide the matter." *Smith v. Arizona*, No. 22-899, 23 (U.S. Jun. 21, 2024).

The Supreme Court concluded that if lower courts fail to perform "the facial analysis in the way just described" then "[t]he problem for this Court is that it cannot undertake the needed inquiries." "And even were we to ignore the value of other courts going first, we could not proceed very far [if] the parties have not briefed the critical issues here, and the record is underdeveloped." See *Moody, Attorney Gen.*, No. 22-277, 18 (U.S. Jul. 1, 2024).

This Court ""generally prefer to adhere to our policy of being 'a court of review, not first view.'" … "So rather than decide these heady questions ourselves without the benefit of any considered judgment below,"" This Court asks "the district court to address the ratification theory that it identified "in the first instance," so that "[this Court] will be better positioned to weigh in" on this issue and consider the other issues raised." *Arnesen v. Raimondo*, 115 F.4th 410, 414 (5th Cir. 2024).

This Court held, "a court may not dismiss on the pleadings if the allegations support relief on any possible theory …[if] the district court did not reach this issue, we do not address it." *Coghlan v. Wellcraft Marine Corporation*, 240 F.3d 449, 452-452 n.2 (5th Cir. 2001). In *Coghlan*, this Court pointed out that, "[t]he district court did not consider whether Texas … law, … governs[.]" In Yan's case, the district court failed to consider whether the ERISA exemption supersedes all state law/rule based affirmative defenses, whether the *Taylor* precedent bars a state actor from asserting state statute/common-law/rule to block federal claims, or whether the *Nesses* reasoning permits pleading a distinguishable federal claim and overrule frivolous state proceeding preclusion argument.

B.   A counseled brief is not entitled to liberal construction. Yan-Brief fixes the scope of the issues to be reviewed.

Appellees did not raise contentions on several controlling issues raised in *Yan-Brief*.

"Arguments must be briefed adequately. … Conclusory arguments are deemed inadequately briefed and abandoned. … A counseled brief is **not** entitled to liberal

construction." *United States v. Pryor*, No. 13-60529, 2 (5th Cir. 2014).

"This Court will not address issues not raised in the initial appellate brief." *Donalson v. McLeaish*, No. 22-40758, 12 n.25 (5th Cir. Dec. 18, 2023). "It is axiomatic that an appellant's brief on appeal fixes the scope of the issues to be reviewed on appeal … ("As a general rule, an appellate court may review only the issues specifically raised and argued in an appellant's brief.")" *United States Fidelity & Guaranty Co. v. Concrete Holding Co.*, 168 F.3d 340, 342 (8th Cir. 1999).

C.   The district court failed to address two pivotal factual allegations fundamentally impaired appellate review.

This failure deprived this Court of the "considered judgment below" necessary for meaningful appellate review:

1) Alteration of the QDRO (*Yan-Brief* at 42, 51, 71): A factual issue requiring evidentiary analysis, not a legal conclusion, essential to proving the "unlawful" element under *18 U.S.C. § 664*.

2) Multiple statewide QDROs (*Yan-Brief* at 45): A factual predicate necessary to establish the RICO pattern and the "close-ended continuity" element under *18 U.S.C. § 1962*.

These omissions violate the principle that "[w]ithout sufficient findings of fact, an appellate court cannot engage in meaningful review." *E.E.O.C. v. Bailey Ford, Inc.*, 26 F.3d 570, 572 (5th Cir. 1994).

As the Fifth Circuit recently stated:

"[W]e are disinclined to decide questions without sufficient briefing, particularly ones of high stakes and of constitutional import… we think it

prudent for the district court to consider these arguments in the first instance." (emphasis added) *Braidwood Mgmt. v. Becerra*, 104 F.4th 930, 957 (5th Cir. 2024).

D.    In the absence of a cross-appeal, FRAP prohibits Appellees briefs from reversing, or modifying the Judgment or raising new issues not previously determined by Judgment.

Multiple Appellees have raised new issues; some are attempting to seek <u>reversal</u> or <u>modification</u>. Others are either <u>not</u> determination part of the judgment or were not adequately briefed in the district court. However, without filing a notice of cross-appeal pursuant to *Fed. R. App. P. 4*, the Appellee's brief is limited to responding to the arguments raised by the Appellant and cannot expand the scope of the issues. Therefore, the Appellees can only support the existing judgment but <u>cannot</u> seek <u>reversal</u> or <u>modification</u> of any part of it.

<u>*DeAngelis-Brief*</u> at 14 introduced five new issues, labeled as "independent bases supporting affirmance." (1) The official-capacity claims are barred by Eleventh Amendment Immunity; (2) Yan did not state a civil RICO claim against Judge DeAngelis; (3) Yan was not permitted to enjoin Judge DeAngelis under *§ 1983*; (4) The individual-capacity claims are barred by qualified immunity; (5) The District Court had inherent power to dismiss. None of which were affirmed in the final Judgment. The final Judgment merely affirmed blanket judicial immunity ("Judge DeAngelis is judicially immune from Mr. Yan's lawsuit"; "Texas law is clear that Judge DeAngelis is absolutely immune…*FAM. CODE ANN. § 201.017*") and referenced the *Younger* doctrine (ROA.2081 at n3) without providing further analysis. (ROA.2081-2084)

The district court did not have the opportunity to address the five new issues raised in the *DeAngelis-Brief* in the first instance; therefore, these issues are not reviewable by this Court.

Additionally, *DeAngelis-Brief* at 15, claiming that, Yan "waived his right to challenge" "these independent grounds for affirmance," citing *Yohey v. Collins*, 985 F.2d 222 (5th Cir. 1993), and *Mark v. Spears*, 722 F. App'x 362 (5th Cir. 2018). However, neither precedent supports *DeAngelis-Brief*'s argument on that premise. This Court ruled that the appellant Yohey cannot raise "new claims not presented to the district court or in a completely different context," or "raising new claims for the first time in his reply brief" (*Yohey* at 225). In *Mark*, the court ruled that the appellant Mark waived issue by not challenging "the district court's conclusion."

"[W]e "do[ ] not entertain arguments raised for the first time in a reply brief [**unless**] a new issue is raised in the appellee's brief and the appellant responds in his reply brief."" (emphasis added) *Newman at* 402 n.47 (5th Cir. 2022). This Court's *Newman* precedent said Yan can respond.

Just as *DeAngelis-Brief* raised five new issues, *Barrows-Brief* at 22–36, raised a *Rule 12(b)(6)* issue of insufficient pleading under the RICO *§ 664* claim (emphasis added), presenting four sub-issues: racketeering pattern, commission of predicate acts, no injury, and no conspiracy. Yan cannot rebut these *§ 664* predicate acts sub-issues, as they were not

addressed by the final Judgment. Speculation about the district court's view is not part of this Court's review function.

As Issue 15 presented (*Yan-Brief* at 39-41), the FCR granted a *Rule 12(b)(1)* dismissal based on attorney immunity without applying any RICO statutory analysis, and the final Judgment, adopting the FCR's findings, dismissed the case under Rule *12(b)(6)* for insufficient pleading under RICO *money-laundering* claim. The district court failed to adequately analyze or resolve the factual allegations, omitting references to the second temporary QDRO, five others, substituting ERISA pension funds with specific funds, and excluding the *§ 664* predicate act.

Using Reply Brief as a vehicle to argue newly raised *Rule 12(b)(6)* sub-issues, would result in prejudice:

1. The Reply Brief is subject to strict page limits.

2. Yan must address his own raised issues while also rebutting all Appellees' issues in a single filing. A page limited vehicle cannot adequately fulfill the briefing function preserved in the district court.

3. If the final Judgment had properly determined these *Rule 12(b)(6) § 664* predicate act sub-issues, Yan would have had multiple opportunities to preserve the errors and brief the arguments, through objections to the FCR and a *Rule 59(e)* or raise argument in the Opening Brief. It did not happen. Substituting *§ 664* predicate act with *money-laundering* in the Judgment prejudiced Yan.

The district court's failure to properly determine these four *Rule 12(b)(6)* *§ 664* sub-issues, followed with raising undetermined *§ 664* argument in Appellee's brief, left Yan one-last-shot opportunity to articulate his arguments within a constrained format. Yan is prejudiced due to above mentioned three reasons.

*Barrows-Brief* at 41-45, raised a *Rule 12(b)(6)* issue of insufficient pleading under the antitrust <u>anti-monopoly</u> claim, but these arguments were not determined by the district court. Yan objects to using the Reply Brief to argue newly raised *Rule 12(b)(6)* sub-issues, as the district court erroneously substituted the Sherman Act's *§ 2* <u>anti-monopoly</u> claim with *§ 1* <u>anti-competition</u>, for the same three reasons stated above.

To prevent prejudice against Yan, the Reply Brief should not be used as a vehicle to address newly raised *Rule 12(b)(6)* issues that were neither included in the Opening Brief nor determined in the FCR and final Judgment. This Court is a court of review, not a court of speculation.

II. <u>Supreme Court's Controlling Standards Must Be Upheld to Prevent Manifest Injustice.</u>

A.    The liberal construction standard must be uniformly applied.

The principle of liberal construction knows no categorical bounds. The *<u>Barrows-Brief</u>* at 15 erred by challenging this greatest latitude (See *<u>Yan-Brief</u>* at 36–38). The argument not only lacks legal foundation but directly contradicts Supreme Court precedents. See

*Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Haines v. Kerner*, 404 U.S. 519 (1972); *Estelle v. Gamble* 429 U.S. 97 (1976); *Hughes v. Rowe* 449 U.S. 5 (1980) and *Neitzke v. Williams* 490 U.S. 319 (1989). "[W]here a plaintiff proceeds pro se, **the [North District] court is further guided** by the general rule that allegations in a pro se complaint are construed **more permissively**." *Chalmers v. Lane*, Civil Action No. 3:03-CV-1268-BH, 9 (N.D. Tex. Dec. 22, 2003).

The predominance of prisoners, due to their frequent court involvement and limited resources, naturally resulting in the appearance of more pro se precedents involving them, does not alter the principle that liberal construction under *Fed. R. Civ. P. 8(f)* aims to ensure substantial justice. The Supreme Court has consistently mandated liberal construction for <u>all</u> pro se litigants, crystallizing this principle:

> "Rule 8(f) provides that '[a]ll pleadings shall be so construed as to do substantial justice.' We frequently have stated that pro se pleadings are to be given a liberal construction. …. If these pronouncements have any meaning, they must protect the pro se litigant who simply does not properly denominate her motion or pleading in the terms used in the Federal Rules." *Baldwin County Welcome Center v. Brown*, 466 U.S. 147, 164-65 (1984). Notably, this foundational case involved a non-prisoner plaintiff, demonstrating the principle's universal application. The revised FRCP 8(e) adopts concise language: 'Pleadings must be construed so as to do justice.'

"[T]o do justice" provision can be difficult for Texas judges to understand because there is no such language in Texas law, instead, they imply absolute immunity to attorneys

and "hold pro se litigants to the same standards for pleading, briefing, and procedure as we do lawyers,"[1] but without the benefit of absolute immunity.

It is unimaginable that a pro se litigant could have avoided jail time if they <u>altered</u> a court order to obtain $25,000 from government funds. Yet, Texas attorneys enjoy "wideranging and robust" immunity (ROA.2087)—an outcome indeed "can be difficult for laypersons to understand" (ROA.2083).

The Federal courts are required to maintain a lenient attitude, Post-Twombly jurisprudence reaffirms this inclusive approach. "Even **after Twombly**, though, we **remain obligated** to construe a pro se complaint liberally. See Erickson v. Pardus." *Harris v. Mills,* *572 F.3d 66, 72 (2d Cir. 2009).* This obligation extends to considering supplemental filings and later-submitted materials, as recognized in *Smith v. Dart,* 803 F.3d 304 (7th Cir. 2015), where the court considered "facts alleged by the pro se plaintiff in letters filed after defendant filed a motion to dismiss." See also other federal district courts in Texas[2].

Federal courts uniformly reject artificial distinctions in liberal construction. Recent precedent reinforces the broad scope of this principle. The Southern District of

---

[1] *Canady v. City of Dallas*, No. 05-21-00250-CV, 2 (Tex. App. Jul. 26, 2022).

[2] "[C]ourts remain **obligated** to construe a pro se complaint liberally. *See Erickson v. Pardus*, 551 U.S. 89 (2007) (reiterating long-standing rule that **documents** filed pro se are to be construed liberally)." *Sellers v. Adams*, W-16-CV-064 -RP, 3 (W.D. Tex. Apr. 10, 2017).

Mississippi's 2024 decision in exemplifies the continued vitality of this principle involving a <u>non-prisoner</u> plaintiff:

> "In the context of pro se complaints, courts 'are required to look beyond the [plaintiff's] formal complaint and to consider as amendments to the complaint those materials subsequently filed.'" *Culumber v. Morris Network of Miss.*, CIVIL 1:23cv219-HSO-BWR (S.D. Miss. Jul. 23, 2024).

This directly aligns with this Court's holding in *Miguel v. McLane*, No. 22-10517 (5th Cir. Feb. 23, 2024), where another <u>non-prisoner</u>'s supplemental filings received liberal construction.

Yan requests for stare decisis[3], urging consideration of "factual averments contained in filings or letters outside the four corners of the complaint prior to dismissing for failure to state a claim." The rebuttal argument in the <u>*Barrows-Brief*</u> at 15, should be overruled.

### III. <u>*Younger* doctrine (Issues 1, 17)</u>

<u>*Yan-Brief*</u> at 59 rebutted *Younger* doctrine as part of issue 1, citing 2 arguments: *Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69 (2013) (ROA.1427[¶12],ROA.1486[¶84], ROA.1600[¶22],ROA.1616[¶87]) and facially conclusive ERISA preemption (ROA.2124[¶86]). Only <u>*Barrows-Brief*</u> and <u>*DeAngelis-Brief*</u> responded to *Younger*

---

[3] "Stare decisis has its pedigree in the unwritten common law of England. ... In the common-law system, stare decisis played an important role because "judicial decisions [were] the principal and most authoritative evidence, that [could] be given, of the existence of such a custom as shall form a part of the common law." ... Accordingly, "precedents and rules must be followed, unless flatly absurd or unjust," because a judge must issue judgments "according to the known laws and customs of the land" and not "according to his private sentiments" or "own private judgment." ...In other words, judges were expected to adhere to precedents because they embodied the very law the judges were bound to apply." *Gamble v. United States*, 139 S. Ct. 1960, 1982-83 (2019).

abstention. This Reply Brief addresses *Younger* separately, as it represents a judicial barrier. This barrier must be overcome before addressing other issues.

A. The Supreme Court clarified that *Younger* only applies to certain "exceptional" classes of cases after *Sprint*.

*Barrows-Brief* erred in citing outdated precedents[4] from this Court, but waived to rebut Supreme Court's **2013** controlling precedent *Sprint*. Notably, the most recent precedent cited in the *Barrows-Brief* is from **2009**. Both disregarded the *NOPSI* identifiers emphasized by *Sprint* for determining *Younger* abstention.

Both *Barrows-Brief* at 45-47 and *DeAngelis-Brief* at 13 misapplied the *Middlesex*[5] conditions, which is limited to the quasi-criminal context.

"Sprint … (characterizing Middlesex conditions as **only "additional factors" not** to be "[d]ivorced from their **quasi-criminal** context")" (emphasis added) *Borowski v. Kean Univ.*, 68 F.4th 844, 849 (3d Cir. 2023). "*Middlesex* conditions are additional factors that "**do not control** the application of *Younger*." (emphasis added) *Travelers Cas. Ins. Co. of Am. v. A-Quality Auto Sales, Inc.*, 98 F.4th 1307, 1317 (10th Cir. 2024).

"It is true that Sprint sought to halt the expansion of Younger's reach. See Sprint … (stating that **misapplying** the "three Middlesex conditions would extend *Younger* to virtually all parallel state and federal proceedings")" *Daves v. Dall. Cnty.*, 64 F.4th 616,

---

[4] *La. Debating & Literary Ass'n v. City of New Orleans*, 42 F.3d 1483 (5th Cir. 1995); *Tex. Ass'n of Bus. v. Earle*, 388 F.3d 515 (5th Cir. 2004); *Gibson v. Berryhill*, 411 U.S. 564 (1973). (Barrows-Brief at 46).
[5] *Middlesex County Ethics Committee v. Garden State Bar Association*, 457 U.S. 423 (1982).

647 (5th Cir. 2023). The Supreme Court held that, "only exceptional circumstances justify a federal court's refusal to decide a case in deference to the States, … the Eighth Circuit misinterpreted … *Middlesex* …., however…*Middlesex* was plainly "akin to a criminal proceeding." *Sprint at* 70-71.

"Federal courts, it was early and famously said, have "no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given." …. Jurisdiction existing, this Court has cautioned, a federal court's "obligation" to hear and decide a case is "virtually unflagging." … Parallel state-court proceedings do not detract from that obligation." *Sprint* at 77.

After *Sprint*, the Circuit Courts shifted its tone, stating that "[Younger] [a]bstention, however, has become disfavored in recent Supreme Court decisions." *Walker v. City of Calhoun*, 901 F.3d 1245, 1254 (11th Cir. 2018).

*Sprint* mandated *NOPSI* identifiers as required for *Younger* determination. The Supreme Court "has not applied *Younger* outside these three "exceptional" categories, and rules, in accord with *NOPSI*, that they define *Younger*'s scope." *Sprint at* 70. Neither *Barrows-Brief* nor *Deangeli-Brief* addressed any *NOPSI* identifier.

Both *Barrows-Brief* and *Deangeli-Brief* effectively abandoned to contend the *Sprint* argument. Vigilantibus non dormientibus jura subvenit—the law aids the vigilant, not those

who sleep on their rights. Neither this Court nor Yan has a duty to apply the *NOPSI* analysis for the Appellees.

Alternatively and additionally, as argued in *Yan-Brief* at 47-48, 55, 68-69, under Issue 17, invoking the *Nesses* reasoning, this case is not even a parallel state proceeding. Also see this Reply Brief at Section X.A. Yan's spouse is not a party to this case, Barrows, Ybarra, and Pigg are not counsels in any ongoing state proceeding, other Appellees are not parties to any ongoing state proceeding, and Deangelis does not preside over any Yan's state proceeding. Framing this case as a parallel state civil proceeding for the *Younger* abstention application is a highly speculative and unfounded legal theory.

B.   Appellee failed to rebut the legal theory that ERISA preemption is facially conclusive and that *Younger* does not apply.

All Appellees completely abandoned to contend whether federal court possess exclusive jurisdiction under ERISA preemption (*Yan-Brief* at 39-41).

It is well established that,

> "A number of courts have held that Younger abstention is inappropriate where a claim of preemption is "facially conclusive" or "readily apparent", because no significant state interests are served when it is clear that the state tribunal is acting beyond the lawful limits of its authority." *Chaulk Serv., Inc. v. Massachusetts Comm'n*, 70 F.3d 1361, 1370 (1st Cir. 1995) (citing numbers Supreme Court precedents including NOPSI).

Other Appellees abandoned to contend the legal theory that "Younger abstention does not apply when the issue of ERISA preemption is facially conclusive." However, *Deangelis-Brief* at 13, attempted to indirectly rebut the facially conclusive ERISA

preemption without directly contending whether *Younger* abstention is inappropriate (*Yan-Brief* at 59) in such cases.

*Deangelis-Brief* contended that *Colonial Life Accident Insurance Company v. Medley*, 584 F. Supp. 2d 368 (D. Mass. 2008) was reversed, citing *Colonial Life & Acc. Ins. Co. v. Medley*, 572 F.3d 22 (1st Cir. 2009). After thoroughly analyzing this 2009 *Colonial* precedent, Yan contends that the *Deangelis-Brief* made misleading arguments, as this precedent was not reversed premised on a misapplication of the *Younger* abstention.

The First Circuit recognized the "ERISA preemption", stating:

> "As the district court **correctly** noted, ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title." 29 U.S.C. § 1144(a);" *Id*. at 27.

However, the First Circuit found that "a **question** of first impression existed ... under the **ADA**," along with "a factual **dispute** as to whether the STD plan ... was governed by **ERISA**," and noted "the district court's **need** to conduct a "detailed analysis,"" because "we see several problems with the district court's determination that preemption was "facially conclusive."" The First Circuit further stated, "At this juncture, we have substantial doubts as to whether such was the case in this instance." *Id.* at 27–29. Consequently, the *Colonial* case was reversed. In this *Colonial* appeal, the First Circuit did not invalidate the legal theory that *Younger* abstention does not apply under ERISA

preemption; they held that ERISA preemption was not facially conclusive based on the specific facts.

If this Court persuasively applies the logic of *Colonial* appeal to Yan's case, his case must be reversed as well. The *Colonial* logic admitted that *Younger* abstention is inappropriate under ERISA preemption when there is a facially conclusive ERISA plan. In *Colonial* appeal, the district court's decision was reversed because preemption was applied to a factually disputable plan—one that was not a facially conclusive ERISA plan. In Yan's case, his injury stems from a 401(k) fund—an evident ERISA fund—but the district court mischaracterized it as "certain funds under his control" to circumvent the application of ERISA preemption. Notably, the word "ERISA" does not appear in the dismissal analysis of the first through eighth claims (ROA.2079-2091).

The key question in Yan's case is not whether there was a facially conclusive ERISA plan. It is whether *Younger* abstention is inappropriate under ERISA preemption. No Appellee rebutted this issue, it is effectively abandoned. This Court should also see "several problems with the district court's determination," and there is a "need to conduct a "detailed analysis"" as well, warranting a reversal.

IV.    Core ERISA (Issues 1-3)

    A.    ERISA preemption vs. immunity defenses (Issue 1)

All Appellees failed to rebut ERISA preemption—Issue 1. Indirectly, _USBank-Brief_ at 34 n.9, asserted its irrelevance to ERISA preemption by claiming that there were no state law claims involving USBank.

_Yan-Brief_ at 39-41, adequately argued that ERISA preemption supersedes the Eleventh Amendment and all state laws. _E-Systems, Inc. v. Pogue_, 929 F.2d 1100 (5th Cir. 1991) and other precedents are the controlling precedent concerning this issue. In _E-Systems, Inc._, this Court affirmed ERISA preemption, disregarded Eleventh Amendment argument, proceeded to rule on the merits, subsequently mandated the state parties to return the improperly received money to the status quo ante. The Eleventh Amendment did not prevent this Court from exercising its authority to render a monetary remedy in _E-Systems, Inc._, nor should it in Yan's case. Appellees makes no argument convincing this Court to disregard these controlling authorities, this Court must rule that ERISA preemption supersedes the Eleventh Amendment.

Instead of rebutting ERISA preemption, _SBTX-Brief_ at 16-21, reasserted the Eleventh Amendment. However, the final Judgment did not grant SBTX and CDC counsels a _12(b)(1)_ dismissal under the Eleventh Amendment for the RICO and antitrust claims (ROA.2088); instead, it proceeded under _12(b)(6)_. Therefore, _Yan-Brief_ at 61-64, asserted _12(b)(6)_ objection. _Yan-Brief_ fixes the scope of the issues to be reviewed on appeal.

Without filing a cross-appeal, the *SBTX-Brief* can only support affirming the *12(b)(6)* judgment and cannot seek to reverse a *12(b)(1)* denial determination.

"The Supreme Court's recent *Ex parte Young* jurisprudence explains that the inquiry into whether a suit is subject to the *Young* exception **does not require an analysis of the merits** of the claim. … Rather, "a court need **only** conduct a 'straightforward inquiry into whether [the] complaint…seeks relief properly **characterized as prospective**.'""[6] (emphasis added).

Eleventh Amendment does not apply to *§ 1983* claim under individual capacity. *Yan-Brief* at 69, asserted *Ex parte Young*, 209 U.S. 123 (1908) permits prospective relief that the Eleventh Amendment does not shield *§ 1983* claim under official capacity. *SBTX-Brief* completely abandoned to contend the prospective relief and *Ex parte Young* doctrine portion. *Vigilantibus non dormientibus jura subvenit*. This Court has no duty to contend *§ 1983* claim on behalf of MarinMartinezCraig.

Alternatively and additionally, "the Interstate Commerce Clause, Art. I, § 8, cl. 3, granted Congress the power to abrogate state sovereign immunity" *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 59 (1996). Both RICO and Sherman Acts contain Interstate Commerce Clause. All Appellees makes no argument on Interstate Commerce Clause (*Yan-Brief* at 62, 67).

This Court should not overlook state law when reviewing state question, Texas

---

[6] *City of Austin v. Paxton*, 943 F.3d 993, 998 (5th Cir. 2019). (citation omitted) (citing *Verizon Maryland Inc. v. Public Service Commission*, 535 U.S. 635 (2002)).

precedent is clear:

> "under what is termed the "ultra-vires exception" to sovereign immunity, such immunity is not considered to be implicated by a suit against a state officer in his official capacity (thereby binding the State through its agent) for **prospective injunctive or declaratory relief** to compel compliance with statutory or constitutional provisions. … **Sovereign immunity is held not to bar such claims** because, in concept, acts of state officials that are not lawfully authorized are not considered to be acts of the State, and the remedy of compelling such officials to comply with the law, while binding on the State, "do[es] not attempt to exert control over the state [but] attempt[s] to reassert the control of the state." …"Stated another way, **these suits do not seek to alter government policy but rather to enforce existing policy**." Id. But to come within the ultra-vires exception, the plaintiff "must not complain of a government officer's exercise of discretion, but rather must allege, and ultimately prove, that the officer acted without legal authority or failed to perform a purely ministerial act."" (emphasis added) *Bacon v. Tex. Historical Comm'n*, 411 S.W.3d 161, 173 (Tex. App. 2013).

Yan sought to enforce existing policy and state law through prospective relief to compel compliance with ERISA statutory or constitutional provisions. Specifically, he sought to ensure that SBTX must be prohibited from continuing to accepting § 664 racketeering income for its operations from RICO person and all prior ERISA funds must be returned as part of the prospective relief.

By failing to review the prospective relief sought by Yan, the Judgment erred in granting blanket sovereign and absolute/unqualified immunity to SBTX and its counsel's official capacity. Additionally, the SBTX brief erred in reasserting this immunity.

B.  ERISA fund recovery and restoration (Issue 2)

*Yan-Brief* at 52-54, adequately briefed Issue 2. All Appellees makes no argument.

Following the controlling precedent *E-Systems, Inc.*, keeping the unlawfully abstracted ERISA funds status quo as "enforcement of the judgment is "manifestly unconscionable[.]"" *Hazel-Atlas Co. v. Hartford Co.*, 322 U.S. 238, 244-45 (1944).

C.  Administrator fiduciary duties for QDROs (Issue 3)

The Circuit Courts "are required to construe pro se litigants' filings liberally and therefore interpret **ambiguous statements** in favor of those litigants. *See Erickson v. Pardus*" *Woody v. Nance, Warden*, 108 F.4th 232, 239 (4th Cir. 2024). Also See (*Yan-Brief* at 36)**.**

*USBank-Brief* failed to cite "directly contrary" authority concerning Issue 3.

*Yan-Brief* at 88, argued:

> "*29 U.S.C. § 1056(d)(3)(G)(i)* "**requires** administrators to consider divorce decrees to **determine** whether they are Qualified Domestic Relations Orders, which are enforceable. *Estate of Altobelli v. Int'l Business Machines*, 77 F.3d 78, 81 (4th Cir. 1996)). "Should the plan administrator **determine** that an order does not qualify as a QDRO, the beneficiary or alternate payee may **appeal** the plan administrator's decision to a "c**ourt** of competent jurisdiction" **under** *29 U.S.C. § 1056(d)(3)(H)(i)*." (emphasis added)

Yan emphasized:

> "he alleged USBank breaching *29 U.S.C. § 1056(d)(3)(G)(i)(II)* fiduciary duty of "shall **determine** *whether* such an order *is* a qualified domestic relations order and notify the participant" (ROA.1044[¶58]), not the "alternate payee" clause as USBank erroneously defended (ROA.2018-2019[¶¶73-82])." *Yan-Brief* at 88

Frist, *USBank-Brief* failed to distinguish between the fiduciary duties of determining

and ministerial duty of paying. Their argument focused on fulfilling the duty to <u>pay</u> the alternate payee, disregarding Yan's allegation that they failed to <u>determine</u> and safeguard the account from fraud. Yan alleged a violation of the <u>determination</u> provision, not the <u>alternate payee</u> provision.

*USBank-Brief* at 27 argued that "[n]or does Yan offers any factual or legal basis for contending a violation of <u>29 U.S.C. § 1056(d)(3)(H)(i)</u>," disregarding the fact that Yan alleged that he had affirmatively submitted multiple formal objection letters and provided the truthful April 13 temporary QDRO. USBank even replied and admitted that the fraudulent QDRO they received was "in direct conflict" with Yan's submission, yet they disbursed the funds anyway. (*Yan-Brief* at 25)

*Second, USBank-Brief* at 28 argued that Yan raised a new issue which is "A Fiduciary Breach Claim Under <u>29 U.S.C. § 1056(d)(3)(G)(i)(II)</u>." *USBank-Brief* <u>admitted</u> that there <u>was</u> "mention of <u>29 U.S.C. § 1056(d)(3)(G)(i)(II)</u> is in Paragraph 58," and "U.S. Bank is not mentioned anywhere at all in Paragraph 58 of the Complaint." Therefore, *USBank-Brief* argued that Yan never "*reference* <u>29 U.S.C. § 1056(d)(3)(G)(i)(II)</u> in the *body of the Ninth Claim for Relief*." However, in the body of the Ninth Claim for Relief, the very first paragraph of complaint (ROA.1105[¶394]) says "Plaintiff incorporates by reference the sections "**FACTUAL BACKGROUND OF THIS SUIT**", "**STANDARD OF REVIEW**" and ""**First Claim for Relief**" as if fully set forth herein." (ROA.1044[¶58]) Paragraph 58

sits right in the section "IV. STANDARD OF REVIEW (ROA1037-1048).

Additionally, (ROA.1105[¶397]) says "Plaintiff refers to **every sentence herein where the U.S. Code is mentioned** as an allegation to its related party." Therefore, liberally construed, Yan has clearly referred the *29 U.S.C. § 1056(d)(3)(G)(i)(II)* in the nineth claim. *USBank-Brief*'s argument is flawed because they should not benefit from overlooking Yan's verbiage. Yan is a first-generation immigrant with no U.S. educational background. These factors combined remind this Court of the necessity of adopting a more lenient attitude during review to ensure justice.

The issue of *29 U.S.C. § 1056(d)(3)(G)(i)(II)* has been repeated brought up by Yan (ROA2016,ROA2124), but the final Judgment disregarded.

After all, Yan's entire objection to USBank in 2022, as factually alleged in the emails, was a request for USBank to refrain from determining the QDRO as legitimate because it violated the Fourteenth Amendment and there was no hearing for spousal support. USBank's email response to Yan was not that "the QDRO is determined lawful"; instead, their response was that it was Yan's duty, not USBank's, to object this lawfulness determination.

Yan never objected to USBank concerning "alternate payee" provision in 2022, nor should USBank raise this argument to mislead this Court in 2024.

*USBank-Brief* at 31 admitted that "Plan's QDRO procedures call for U.S. Bank to notify …, provide the Plan Participant an opportunity to ... object, and then issue a determination as to whether the order constitutes a QDRO." The required objection provided must be <u>meaningful in nature</u>, not merely an <u>objection in name</u>. USBank failed to provide Yan a meaningful opportunity to object in 2022, constituting a breach of fiduciary duty.

*USBank-Brief* at 32 stated that, despite of Yan submitted an objection letter to the USBank, their determination was correct. The "correct" used here is USBank's own subjective conclusion, not a legal conclusion.

*29 U.S.C. § 1056(d)(3)(G)(i)(II)* states: "The plan administrator shall determine whether such order is a qualified domestic relations order." Additionally, *29 U.S.C. § 1056(d)(3)(B)(ii)* defines the term "domestic relations order" as any judgment, decree, or order (including approval of a property settlement agreement) that relates to the provision of child support, alimony payments, or marital property rights to a spouse, former spouse, child, or other dependent of a participant, **and** is made pursuant to a State or Tribal domestic relations law (including community property law)." (emphasis added)

USBank received neither a <u>judgment</u> nor a <u>decree</u>, but merely an <u>order</u>. To fulfill their fiduciary duty of determination, they must verify two facts: whether the order relates to child support, alimony payments, or marital property rights to a spouse, <u>and</u> whether it is

made pursuant to Texas domestic relations law. The statutory "and" provision cannot be disregarded.

This temporary QDRO was not made pursuant to Texas family code, because Supreme Court for Texas said, "any power the trial court had to enter the **post-divorce order** must come from state law . .. If **no state law authorizes the order**, **ERISA does not apply**, and the trial court still lacked authority to enter the order at issue." *Dalton v. Dalton*, 551 S.W.3d 126, 138 (Tex. 2018). Yan repeatedly asserted the *Dalton* precedent in the district court, but the court disregarded his arguments.

*USBank-Brief* at 32 stated that, "[t]here are simply no allegations in the Complaint from which to infer that U.S. Bank's QDRO determination was in any way incorrect." But the complaint itself says otherwise ((ROA.1106-1107[¶¶406-408]))

Disbursing/Paying the funds is a ministerial act and does not require discretion. It is the determination process that demands discretion, as the fiduciary duty lies in the discretionary act of making that determination, not in the routine ministerial act of payment. *USBank-Brief* at 32-33 merely argued that their ministerial act of "disbursing benefits in conformity with the plan documents" is equivalent to the fiduciary duty inherent in the discretionary determination process. These two acts are distinct.

All precedents cited in *USBank-Brief* are premised on the notion that an ERISA administrator is not liable for performing ministerial acts—disbursing the funds. Not one

precedent is based on the premise that an ERISA administrator should not be held accountable for breaching fiduciary duty.

The legal question in this case is not whether the act of <u>disbursing</u> funds breached fiduciary duty. The true legal question is whether <u>determining</u> an <u>altered</u> order—lacking an actual hearing for the civil cause and without state law authorization—constitutes a breach of fiduciary duty, especially being <u>informed of the fraud</u>.

"ERISA requires a "fiduciary" to "discharge his duties with respect to a plan **solely** in the interest of the participants and beneficiaries." ERISA § 404(a). … [l]ying is inconsistent with the duty of loyalty owed by all fiduciaries and codified in section 404(a)(1) of ERISA… ERISA fiduciary duty includes common-law duty of loyalty)" *Varity Corp. v. Howe*, 516 U.S. 489, 506 (1996).

"A fundamental common-law duty of a trustee is to preserve and maintain trust assets. … quoting Bogert Bogert, *Law of Trusts and Trustees*… The trustee is expected to "use reasonable diligence to discover the location of the trust property and to take control of it without unnecessary delay."" *Diduck v. Kaszycki Sons Contractors*, 774 F. Supp. 802, 811 (S.D.N.Y. 1991).

Anyone can do a ministerial act, just to follow the plan defined procedure, however, the discretional act is the act which needs a trustee need to truly fulfil duty of good faith, care, loyalty, safeguard. Under common-law duty of good faith, care, loyalty, safeguard

and a trustee, USBank was expected to use reasonable diligence to discover truth of alleged fraud and USBank was expected to suspend the act of disbursing funds, upon receiving Yan's objection, to engage the court to find out the truth. The U.S. Department of Labor("DOL")'s opinion letter stated same requirement. (*Yan-Brief* at 89).

This DOL letter neither supersedes nor conflicts with Supreme Court precedent. The letter addresses the fiduciary actions an ERISA administrator should take if suspicion arises during the determination process. Supreme Court precedent clarified that disbursing funds post-determination is a ministerial act and that the administrator's duty is ministerial—to adhere to the plan-defined procedures.

Altering a court order is undoubtedly morally wrong. Diverting ERISA funds without a final divorce decree, a hearing for the cause, or a petition for the cause is clearly not authorized by Texas law. USBank knew that Yan was not divorced, Yan alleged USBank conspired and "altered Yan's marriage status to covered up," (_Yan-Brief_ at 30) in addition to other mail fraud and wire fraud allegation.

If someone presents a forged or altered check to USBank and requests to withdraw money from bank account, would USBank knowingly disburse the funds and claim no violation despite being informed of its inauthenticity? As the fifth-largest retail bank, USBank has a fiduciary duty to safeguard consumers' accounts, and its duty to protect employees' ERISA funds should meet the same standard.

_USBank-Brief_ never mentions a key factual allegation that distinguishes the nature of USBank's role as an ERISA administrator in this case. Yan explicitly told USBank, "Abort the transaction; this QDRO is altered and fraudulent." Yan, now in his thirtieth year in the banking industry, knows that when fraud is alleged, the standard procedural response is to hold the transaction, not to proceed. USBank failed to hold as it should.

Additionally, Yan has alleged that USBank deceptively changed his "marriage status to cover up." (_Yan-Brief_ at 30). The late-obtained email from Barrows (_Yan-Brief_ at 26) clearly evidences this as part of a fraudulent scheme.

In USBank's participation, it is either a co-victim or a co-conspirator. USBank has

waived the alternative argument of claiming of being a co-victim and voluntarily chose the defense position of a co-conspirator, knowing the actions it took.

V.    State vs. Federal Immunity (Issues 4-5, 10)

A.    Texas statutory/common-law immunity post-*Taylor* (Issue 4)

*SBTX-Brief* at 16-21, reasserted state agency role under *Tex. Gov't Code Ann. § 81.011(a)* and its sovereign immunity entitlement for the SBTX, and MarinMartinezCraig (collective named as "SBOT Appellees" in *SBTX-Brief*) under *official capacity*.

As *Barrows-Brief* at 20-21, correctly conceded, the final Judgment acknowledged Yan's "pyrrhic victory", citing *N.C. State Bd. of Dental Examiners v. F.T.C.*, 574 U.S. 494, 505 (2015) and *Goldfarb v. Va. State Bar*, 421 U.S. 773, 791 (1975)/8 (ROA.2088,ROA.1614). Premised upon Yan's allegation that SBTX engages in market participation by obtaining racketeering income from clients in exchange for maintaining annual-paid attorney licenses—thereby granting "officer of the court" status to continue altering court orders, a privilege not afforded to self-represented individuals—SBTX and MarinMartinezCraig were not granted sovereign immunity under the RICO and antitrust claims.

Reasserting absolute immunity under the RICO and antitrust claims effectively objects to the final Judgment. Without a cross-appeal, *SBTX-Brief* cannot expand the issues or ask the appellate court for relief that goes beyond defending the trial court's decision.

Alternatively and additionally, this Court must look at state law to determine state question. Texas courts must "defer to the Legislature as the gatekeeper controlling when and how citizens can sue their state government or its officers for their official acts." *Bacon v. Tex. Historical Comm'n*, 411 S.W.3d 161, 173 (Tex. App 2013).

*§ 81.011(a)* merely defines the character of SBTX, stating, "The state bar is a public corporation and an administrative agency of the judicial department of government." It is *§ 81.011(b)* that clearly and unambiguously defines and controls "when and how citizens can sue…" by stating, "[t]his chapter is in aid of the judicial department's <u>powers</u> under the constitution to regulate the practice of law, and <u>not</u> to the <u>exclusion</u> of those [judicial] <u>powers</u>." (emphasis added). The keyword here is "<u>exclusion</u>" and "<u>powers</u>."

Sovereign immunity is absolute and is an affirmative defense. The Texas Legislature has waived sovereign immunity, by expressly not exclude SBTX or any creature of this chapter from <u>judicial department's powers</u> with "clear and unambiguous language." Tex. Gov't Code § 311.034; *Univ. of Tex. Med. Branch at Galveston v. York*, 871 S.W.2d 175, 177 (Tex. 1994). The Texas courts have "**judicial department's powers.**" The Chapter 81 - STATE BAR cannot be used to invoke the exclusion of those [judicial] <u>powers</u> means everything within this chapter can be sued in <u>any court possessing judicial power</u>. Texas legislature said so, loud and clear.

Because Issue 4 merely addresses the *Taylor* precedent, and the state common-law *Taylor* issue does not govern *sovereign immunity* under *official capacity*. This section does overly brief the *sovereign immunity* argument; the rest of it will be covered in section III and IV.A.

*Yan-Brief* at 65 and 69, adequately briefed Issue 4 against MarinMartinezCraig under underline individual capacity, arguing that "MarinMartinezCraig are not immune from conspiring to aid in ERISA offenses under the guise of Tex. Gov't Code ANN. § 81.072(g)." *SBTX-Brief* made no argument convincing this Court to disregard that controlling authority, *Taylor*. Yan does not deny that other than absolute immunity, MarinMartinezCraig might still have qualified immunity ground to argue, but this issue was not determined by the district court.

1) Texas common-law attorney immunity does not bar *§ 1983* claim against private attorneys.

*Yan-Brief* at 70-74, adequately addresses Issue 4 against Barrows, BarrowsFirm, and Ybarra, arguing that Texas common-law immunity does not extend to federal offenses and that there is no absolute immunity for attorneys under all three federal claims (RICO, antitrust and *§ 1983* claim).

*Barrows-Brief* at 20-21, acknowledged that "Yan relies on *Taylor v. Tolbert*," "[n]oting that Yan achieved a 'pyrrhic victory' to the extent his claims survived the Rule 12(b)(1) analysis, the court proceeded to dismiss the balance of the claims for failure to state a claim" (ROA.2088) and affirmed that Yan's RICO/antitrust claims proceeded to *Rule 12(b)(6)* after Yan prevailed under *Rule 12(b)(1).*

Therefore, Barrows, BarrowsFirm and Ybarra have abandoned any immunity contention against *Taylor* under RICO/antitrust claims. Indeed, *Barrows-Brief* at 22-44 shifted defense strategy to reassert insufficient claims defense under *Rule 12(b)(6)*.

However, _Barrows-Brief_ at 19-22 argued that Texas common-law attorney immunity still applies to _§ 1983_ claims without rebut Yan's relying on _Taylor_. _Yan-Brief_ at 71-74 presented three reasons why Texas common-law attorney immunity does not apply:

1.  This is an interstate case involving ERISA funds, with damages incurred from a Minnesota account. Under Minnesota common law, attorney immunity does not extend to fraudulent acts.

2.  Supreme Court controlling precedents (_Ferri_ and _Tower_) suggest that the scope of absolute immunity for a private lawyer can be no broader than what is necessary for their function.

3.  _Taylor_ prohibits state law from shielding federal offenses, and _§ 1983_ claims are no different from RICO and antitrust claims in this respect. _Barrows-Brief_ neither presents arguments nor cites any controlling or persuasive precedent to convince this Court to disregard _Taylor_ regarding the _§ 1983_ claim. However, it affirms the district court's acknowledgment of the RICO and antitrust claims, reflecting an inconsistent position.

Based on the above arguments, and with _Ferri_, _Tower_, and _Taylor_ as controlling precedents on this issue, Texas common-law attorney immunity does not apply to _§ 1983_, _Barrows-Brief_ failed to provide a rebuttal.

2)  Texas Rule of Disciplinary Procedure's lacks legal standing to preclude federal cause of action.

Against MarinMartinezCraig, the Issue 4 addressing "absolute and unqualified immunity" for the *§ 1983* claim under individual capacity, <u>not</u> including RICO or antitrust claim, because the final Judgment only erred by granting absolute immunity under *§ 1983* claim by saying "DISMISSES Yan's non-**racketeering/antitrust** claims against the State Bar Defendants **without prejudice**."[7] (ROA.2088).

*SBTX-Brief* at 21, reasserted absolute and unqualified immunity for MarinMartinezCraig's action under individual capacity pursuant to *Tex. R. Disciplinary P. 17.09*. The legal standing of the Texas Rules of Disciplinary Procedure is clear, as it states:

> "Preamble: **The Supreme Court of Texas** has the constitutional and statutory responsibility **within the State for the lawyer discipline and disability system**, and has inherent power to maintain appropriate standards of professional conduct and to dispose of individual cases of lawyer discipline and disability in a manner that does not discriminate by race, creed, color, sex, or national origin. To carry out this responsibility, the Court **promulgates the following rules** for **lawyer discipline and disability proceedings**. Subject to the inherent power of the Supreme Court of Texas, the responsibility for administering and supervising lawyer discipline and disability is delegated to the Board of Directors of the State Bar of Texas. Authority to adopt rules of procedure and administration not inconsistent with these rules is vested in the Board. This delegation is **specifically limited** to the rights, powers, and authority herein expressly delegated."

> "1.02. Objective of the Rules: These rules establish the procedures **to be used in the professional disciplinary and disability system** for attorneys **in the State of Texas**."

> "1.03. Construction of the Rules: These rules are to be broadly construed to ensure the operation, effectiveness, integrity, and continuation of the professional disciplinary and disability system. The following rules apply in the construction of these rules: A. If **any portion of these rules is held unconstitutional by any court**, that determination does not affect the validity of the **remaining rules**."

---

[7] "In most cases, the State Bar Defendants enjoy absolute immunity.. But .. this immunity does not automatically extend to allegations … in Yan's pleadings…. Yan's … victory." (citing Goldfarb v. Va. State Bar, 421 U.S. 773 (1975)).

The Texas Rules of Disciplinary Procedure ("TRDP") is an internal operational rule not enacted by the legislature but rather signed into effect by the Supreme Court of Texas (**judicial branch**). TRDP is limited to SBTX and pertain solely to the procedures of self-governed in-house grievance for Texas attorneys **within** Texas.

It is unconstitutional to recognize TRDP as a governing statutory authority, because under the separation of powers principle, state judicial branch or any sub-entity cannot self-delegate themselves legislative function. Furthermore, when the Supreme Court of Texas promulgated these rules, TRDP Rule 1.03 explicitly acknowledged that any portion of these rules could be deemed unconstitutional or unlawful by any court. "[A]ny court" is a controlling keyword here. That means TRDP cannot be treated as part of Texas Supreme Court controlling precedents.

The Supreme Court of Texas clearly stated that TRDP version of "absolute and unqualified immunity" could be revoked by any court. When the highest court of the State states that any portion of its signed rule can be revoked by any court—not exclusively by "the Supreme Court of the United States"—it implies that the Supreme Court of Texas does not delegate its highest common-law authority to the TRDP. A decision made by State's highest court, such as *Taylor*, can only be overruled by the Supreme Court, not by "any court." It is evident that the signing TRDP was a ministerial act by the Supreme Court of Texas, not a judicial discretionary decision.

Meanwhile, Texas law is clear that a legislatively authorized entity is entitled to immunity **only if** "the **governing statutory authority** demonstrates **legislative intent to grant an entity** the nature, purposes, and powers of an arm of the State government." *CPS Energy v. Elec. Reliability Council of Tex.*, 671 S.W.3d 605, 621 (Tex. 2023) (emphasis added) (discussing sovereign immunity). Furthermore, Texas courts must "**defer to the Legislature** as the gatekeeper controlling when and how citizens can sue their state government or its officers for their official acts." *Bacon v. Tex. Historical Comm'n*, 411 S.W.3d 161, 173 (Tex. App.2013).

The Legislature is fully capable of bestowing absolute and unqualified immunity, as demonstrated in *Texas Government Code § 81.072* - General Disciplinary and Disability Procedures. In *§ 81.072(g)*, the Legislature explicitly grants "absolute and unqualified immunity" to "a complainant or witness": "A person may not maintain an action **against a complainant or witness** in a disciplinary proceeding based on a communication made by the complainant or witness to the commission, a grievance committee, or the chief disciplinary counsel. The immunity granted by this subsection is absolute and unqualified."

Immunity was granted to the **complainant** or **witness** for their communications made to the chief disciplinary counsel. "[T]he chief disciplinary counsel" appeared in this provision, but not for the immunity purpose. Therefore, Texas Legislature has precluded SBTX counsel from receiving such immunity in "clear and unambiguous language." *Univ. of Tex. Med. Branch at Galveston v. York*, 871 S.W.2d 175, 177 (Tex. 1994).

In other words, the Texas legislature's train has departed, but it did not issue SBTX counsel a ticket for "absolute and unqualified immunity." SBTX exploited a loophole by drafting a TRDP for a self-governed grievance system, incorporating "immunity" language into the TRDP and falsely claiming it carries the same authority as legislature statutory authority, thereby usurping the constitutional power of the legislative branch and self-issued a personal ticket for "absolute and unqualified immunity."

Other than RICO and antitrust claims, which is directly controlled by the Supreme Court precedents, in Texas, *CPS Energy v. Elec. Reliability Council of Tex.*, 671 S.W.3d 605 (Tex. 2023) is a perfect precedent to address sovereign immunity against a *§ 1983* claim under official capacity. The Supreme Court of Texas explained why the state statutory language in the Development Corporation Act barring municipalities from delegating to the corporation any "attributes of sovereignty" contrasts with the language in the Education Code, which grants such immunity to schools. No Texas precedent ever allowed a state entity to issue internal rule expanding attributes of sovereignty to personnel sued in their individual capacity. Even though schools in Texas are state arms enjoying sovereign immunity, it would be unimaginable that Texas law would permit any school to refer to their internal operational guide as supplemental authority to grant school personnel "absolute and unqualified immunity." SBTX is a practice of law monopoly, so they make people believe that they can rely on TRDP and anyone tries to challenge their personnel's usurpation of "attributes of sovereignty" are alleged "being frivolous."

SBTX Defendants cannot point to any Texas governing statutory authority granting the chief disciplinary counsel "absolute and unqualified immunity," except from citing an in-house rule. Nor can they cite any federal or state authority that states a legislatively incorporated state entity's in-house rule can avail themselves of "absolute and unqualified immunity" to control when and how citizens can sue their state government or its officers for *ultra vires* acts against the people.

Therefore, the self-governing TRDP are not above the law, carries toothless authority in the legal framework, cannot grant certain state individuals absolute and unqualified immunity from federal offenses, and cannot effectively place them beyond the reach of federal law. *SBTX-Brief*'s TRDP argument is unsound.

The TRDP do not constitute a governing statutory authority. *SBTX-Brief* failed to cite any authority recognizing that a state entity's rule can preempt federal law, particularly in light of the *Taylor* precedent—a state supreme court decision that only the Supreme Court can overrule. Yan contends that, regardless of this Court's interpretation, a legislatively incorporated state entity's internal rule cannot dictate federal actions or override a federal claim.

3) Texas Family Code lacks legal standing to preclude federal cause of action.

*Tex. Fam. Code § 201.017* does not have sufficient governing statutory authority to preclude a federal cause of action. An associate judge is a state statutory judge position; while it carries the title of judge, it is merely treated as a master. In Section V.C, Yan will argue why a non-Article III statutory judge is not equivalent to a constitutional judge with general jurisdiction. In *Yan-Brief*, Yan has addressed that, as a matter of law, state law cannot expand the scope of federal common law to conclusively and broadly define a state statutory judge as equivalent to a federal general judicial judge for the purposes of immunity application. *DeAngelis-Brief* waived the Issue 4 argument. Additional argument can be found in Section V.B.

Regarding Issue 4, both *DeAngelis-Brief* and *SBTX-Brief* erred by failing to distinguish matters of fact from matters of law. Yan does not dispute the factual existence of *Tex. R. Disciplinary P. 17.09* and *Tex. Fam. Code § 201.017*, which appear to contain immunity provisions as matters of fact. However, Issue 4 contends a matter of law that presents a question of first impression: whether Texas or any state statutory, common-law, or procedural immunity can rule *12(b)(1)* judicially bar a federal civil cause of action after *Taylor*. By not responding to the Issue 4, both *DeAngelis-Brief* and *SBTX-Brief* effectively abandoned the issue. *Barrows-Brief* conceded the validity of the Issue 4.

4) MarinMartinezCraig does not have any statutory/common-law immunity.

MarinMartinezCraig were sued in their individual capacities under RICO, antitrust, and *§ 1983* claims. If *SBTX-Brief* asserted that they are attorneys, they do not have Texas common-law attorney immunity, as admitted by *Barrows-Brief*. If they assert that they are state actors, they are entitled only to qualified immunity under *§ 1983* claims, like every other state actor in this country. The *SBTX-Brief* ambiguously failed to expressly distinguish MarinMartinezCraig's being sued capacity (*SBTX-Brief* did not cite the word "capacity" at all), merely asserting absolute and unqualified immunity under *Tex. R. Disciplinary P. 17.09* in a hybrid manner. This leaves this Court to speculate: are they positioning themselves as Texas attorneys or state actors under the federal common-law definition? It is quite clear that either approach fails.

B.    Federal common-law immunity limits (Issue 4-5)

*Yan-Brief* at 57-60, adequately briefed Issue 4 and 5 against Deangelis, arguing that *Tex. Fam. Code § 201.017* lacks statutory authority to expand a non-Article III statutory judge's state-actor immunity to the scope of federal common-law judicial immunity.

*Deangelis-Brief* at 11, reasserted the state law *§ 201.017* and cited outdated [8] precedents rooted in this state law in an attempt to defeat federal jurisdiction using state statutory immunity. The brief disregarded the controlling precedents *Erie*, *Geier*, *Akin*, and *Taylor*, as cited in *Yan-Brief* at 57-58, which establish that federal common law does not applies in states, state statutes are without effect if they conflict with federal statutes, federal jurisdiction cannot be defeated, and federal causes of action cannot be barred by any state law or policy. While this Court is free to reinterpret its own *Akin* precedent, the remaining three controlling precedents are beyond this Court's authority to modify.

The *Taylor* precedent was published on **May 6, 2022**, saying a federal cause of action that cannot be barred by any state law, policy or common law, *Id*. 656. The recent precedent *Deangelis-Brief* cited is *Daves* precedent, published on **Jan 7, 2022**. It is evident that *Taylor* is the controlling precedent, and only the Supreme Court can overrule it (*Yan-Brief* at 59). Under controlling precedent *Taylor*, the state law *§ 201.017* does not have the governing authority to grant Texas statutory judge with Federal common-law judicial immunity to defeat federal jurisdiction under federal cause of action. Federal common-law itself never permits state law re-definition.

By not responding to the *Taylor*, *Deangelis-Brief* effectively abandoned any direct contention against Issue 4 and 5. Vigilantibus non dormientibus jura subvenit. Yan should prevail.

C.   Scope of non-Article III state statutory judge (Issue 5, 10)

_Deangelis-Brief_ at 8-11, attempted to reassert broad federal common-law judicial immunity while misleadingly referring to DeAngelis as "Judge Deangelis."

_Yan-Brief_, at 55-60, adequately briefed Issue 5 and 10. Deangelis is an associate judge, an interchangeable term as "family law master" in Texas[9]. The Texas Constitution does not vest masters, referees, or associate judges with the authority to act as judges[10]. See (ROA.1187[¶¶11-12],ROA.2015[¶¶56-57]),ROA.2127[¶107]). Pursuant to TEX. CONST. art. V, § 1, only an elected judge was granted constitutional judiciary powers to adjudicate judicial proceedings. Failure to distinguish between state constitutional district court judges and state statutory "masters/referees/associate judges" results in a miscarriage of justice when applying blanket judicial immunity.

_Yan-Brief at_ 57-58, argued that _Tex. Fam. Code § 201.007_ does not have the sufficient statutory authority to modify the scope of federal common-law judicial immunity application. Even if state law could expand its scope, DeAngelis is still not entitled to federal common-law judicial immunity because a family law master does not have the authority to act as a state constitutional Article III judge.

Federal common-law judicial immunity applies only to judges of _general jurisdiction_,

---

[8] All precedents were prior to May, 2022.

[9] _Stein v. Stein_, 868 S.W.2d 902, 904 (Tex. App. 1994).

[10] _In re D.L.M._, 982 S.W.2d 146 (Tex. App. 1998).

not to individuals who are judges in name only.

Federal common-law judicial immunity is established under three controlling Supreme Court precedents: *Bradley v. Fisher*, 80 U.S. 335 (1871); *Stump v. Sparkman*, 435 U.S. 349 (1978); and *Mireles v. Waco*, 502 U.S. 9 (1991). Yan has brought these precedents, along with *Taylor v. Tolbert*, 644 S.W.3d 637 (Tex. 2022), under judicial notice submitted to the district court (ROA.1918-1972).

The Supreme Court held:

> "Judges of courts of record of **superior or general jurisdiction** are not liable to civil actions for their judicial acts, even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly." *Bradley v. Fisher*, 80 U.S. 335, 336 (1871).

> "For that reason the Court held that "judges of courts of **superior or general jurisdiction** are not liable to civil actions for their judicial acts, even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly."" *Stump v. Sparkman*, 435 U.S. 349, 355-56 (1978).

> "A long line of this Court's precedents acknowledges that, generally, **a judge is immune** from a suit for money damages. *See, e.g.*, … ***Stump v. Sparkman*** … ***Bradley v. Fisher*** …" (citations omitted) *Mireles v. Waco*, 502 U.S. 9, (1991).

An appellate court judge possesses superior jurisdiction, and an Article III district court judge has general jurisdiction, also known as constitutional jurisdiction. *Bradley* and *Stump* established the doctrine of absolute immunity for judges possessing these jurisdictions. *Mireles* extended this immunity to state constitutional judges, ruling that "Mireles", a California constitutional judge, had the same federal common-law judicial immunity. However, aside from these three controlling procedures, *Deangelis-Brief* cited

NO Supreme Court precedent that extends federal common-law judicial immunity to state statutory judges who lack general jurisdiction. Texas family law masters "are creatures of statute" (ROA.2127[¶107]) with limited functions as outlined in *§ 201.007* (ROA.2125). They are not judges of general jurisdiction as defined by controlling Supreme Court precedents.

*§ 201.017* lacks federal governing statutory authority, and *Taylor* held that state law cannot bar federal offenses. This Court faces a question of first impression, but with no choice, because only Supreme Court can overrule *Taylor*.

The most important legal principle is state law cannot be cited as federal governing authority to narrow or broad an application of federal law. Yan has raised a novel issue in this unprecedented case by arguing that an associate judge is not a judge (ROA.2126-2129) and has sufficiently briefed this as Issue 5. *Deangelis-Brief* has failed to identify any controlling or persuasive authority suggesting that it is unsound.

D.   Applying blanket judicial immunity without conducting a through judicial act and jurisdiction analysis, contrary to rulings by other Circuit Courts.

*Deangelis-Brief* merely asserted that Deangelis' personal character is that of a "judge" and that her acts occurred during a proceeding. However, the *Deangelis-Brief* failed to analyze the nature of Deangelis' acts and the jurisdiction of the associate judge's court, resulting in an error by pleading blanket judicial immunity. Other Federal Circuits didn't rule like that.

In two recent precedents from Federal Circuits concerning judicial immunity—*Rockett v. Eighmy*, 71 F.4th 665 (8th Cir. 2023), and *Gibson v. Goldston*, No. 22-1757 (4th Cir. Oct. 30, 2023)— both the judicial act and jurisdiction are analyzed. Yan has not found any Fifth Circuit's judicial immunity precedent that expressed the similar analysis. Historically, in this Court and its district courts, a family court [associate] judge has been afforded blanket immunity as long as they hold the title.

The district court disregarded *Rockett*(ROA.1306[¶47]), failed to distinguish judicial function and person. Analyzing the character of judicial act plays a critical role, as *Rockett* expressed.

> *Rockett* at 668-669, stated,
>> "Judicial immunity has been around a long time"; "two exceptions narrowed its scope …when judges "exceeded their authority" by considering a matter "not within their jurisdiction," their actions were "coram non judice," … Acting without "power and authority" eliminated the shield of judicial immunity. … As judicial rivalries began to wane, including in the American colonies, the power-and-authority rationale for judicial immunity did too." (citations omitted).

> Most importantly, *Rockett* at 770, stated,
>> "Judicial immunity can be "overcome in only two sets of circumstances": (1) when a judge takes "nonjudicial actions"; and (2) when the action is judicial, but is done "in the complete absence of all jurisdiction." Mireles v. Waco, … ; see Bradley… (explaining that if the "**character**" of a judge's **act** is "judicial" **and** within "the jurisdiction of **the court**," **then** the judge "cannot be subjected to responsibility for it in a civil action"). These exceptions play a **critical** role in deciding today's case." (citations omitted)(emphasis added).

1)  The analysis of judicial act.

*Rockett* at 670-671, stated,

> "Even within the case-related realm, the judicial-immunity analysis accounts for the fact that not all proceedings look the same. A state-court … proceeding may look very different from a … action lawsuit in federal court." "**Judicial acts can take on different forms**: what may look non-case related in one context may be standard operating procedure in another." "Judicial immunity provides a wide berth for these differences. *Cf. Forrester* … (explaining that judicial immunity "is **justified and defined by the *functions* it protects and serves, not by the person to whom it attaches**"). The array of tasks, courts, and cases has led to the adoption of a functional test: the availability of judicial immunity depends on "**the function performed, not the identity of the actor who performed it**."…On one end of the spectrum, the classic example of a judicial act is "**resolving disputes between parties** who have **invoked the jurisdiction** of a court."" (citations omitted) (emphasis added).

*Rockett* at 671-672, concluded,

> "But those acts also have their limits…. Judge Eighmy crossed the line… the children were never parties…The point is that judicial immunity is unavailable because what Judge Eighmy did is *not* "a function normally performed by a judge.""

Similarly, Deangelis erred: Pigg was not a party to this case (lacking personal jurisdiction) and never filed a petition seeking relief for the award of his attorney's fees (lacking subject-matter jurisdiction). Deangelis awarded prepayment rather than fees incurred, exceeding the amount Barrows claimed. Additionally, Deangelis awarded Barrows fees incurred in the criminal case, and without a petition, issued a QDRO—a remedy that does not fall within the jurisdiction of the associate judge's court. See (ROA.1091[¶¶282-284)],ROA.1041-1045[¶¶40-44,¶49,¶¶61-64]).

2) The analysis of jurisdiction.

*Rockett* at 672, correctly reviewed the scope of jurisdiction in Judge "Eighmy'" court, concluded,

> "[O]rders … The dispute now is whether Judge Eighmy had jurisdiction … [o]r did he… act in the "complete absence of all jurisdiction"? *Mireles …*
>
> As courts of general jurisdiction, Missouri's circuit courts can hear all kinds of cases, including child-custody disputes. See Mo. Const. art. V, § 14; … (explaining that the Missouri Constitution grants circuit courts original jurisdiction over all cases "civil and criminal," including child-custody cases (citation omitted)). …See *Stump* … ("[T]he necessary inquiry in determining whether a defendant judge is immune from suit is **whether at the time he took the challenged action he had jurisdiction over the subject matter before him.**"). So far, so good."

"Eighmy" was so far so good per Circuit Court's view because his circuit court has original jurisdiction under *Mo. Const. art. V, § 14*, contradictorily, *TEX. CONST. art. V, § 1* does not grant family court associate judge's court such jurisdiction for trial remedy— QDRO. Furthermore, *Tex. Fam. Code § 9.101* expressly restricts QDRO jurisdiction to the trial court, safeguarding ERISA anti-alienation provision.

The Eighth Circuit did not stop over there by granting the judicial immunity. *Rockett* at 672-673, applied deep-look analysis.

> "Under one of [UCCJEA] provisions, courts may not exercise jurisdiction when "a proceeding concerning the custody of the child ha[s] been previously commenced in a court of another state." … From there, the argument is that, by ignoring the fact that there was already a child-custody proceeding ongoing in California, Judge Eighmy acted "in the complete absence of all jurisdiction."…
>
> At first glance, this statute looks like one that limits the subject-matter

jurisdiction of Missouri's circuit courts. … (**treating the statute as jurisdictional**) … After all, it speaks in jurisdictional terms. See Mo. Rev. Stat. § 452.765.1 (providing that "a court of this state shall not exercise its jurisdiction . . .").

**A deeper look**, however, reveals that Missouri does not treat it that way. … (**looking to state law to determine a state court's subject-matter jurisdiction**); Schottel v. Young, …(8th Cir. 2012) (same). As the Missouri Supreme Court has put it, **"[s]ubject[-]matter jurisdiction is governed by article V of the Missouri Constitution**," not "[t]he circuit court's statutory or common law authority to grant relief in a particular case." …

…Since at least 2015, the Missouri Supreme Court has been clear that it restricts only "the statutory authority to grant relief …, not whether a Missouri court has subject[-]matter jurisdiction."…

**Subject-matter jurisdiction is what counts in these types of cases**."

The district court failed to deep-look Texas law to determine whether Deangelis' acts were taken in the complete absence of subject-matter jurisdiction. The QDRO—a trial remedy—falls outside the subject-matter jurisdiction governed by Article V of the Texas Constitution. The attorney fees incurred in criminal proceeding falls outside the subject-matter jurisdiction governed by *Tex. Fam. Code § 201.007*. It is well-established that an associate judge's family court does not possess such jurisdiction.

3)  The *Gibson* analysis aligns with *Rockett*.

*Gibson* at 14, reviewed whether the judge has proper authority:

"the separation of powers was intentional. And while a greater merger of judicial and executive functions might be more efficient, that very efficiency would facilitate abuses of power. **The Framers made a tradeoff: they gummed up the gears just a bit in return for protection against tyranny**. We now respect that tradeoff by holding that judges should not take … into their own hands, no matter the efficiencies such usurpation might provide."

Texas law does not grant associate judges' courts the statutory authority to issue a

QDRO. An associate judge cannot do double duty as a district judge. While a greater merger of constitutional and statutory judicial functions might seem more efficient, such efficiency would enable abuses of power. A QDRO jurisdiction is restrained under *Tex. Fam. Code § 9.101*. Issuing a QDRO without a petition, awarding attorney fees, and rendering a final judgment remedy in an unappealable legal form constitutes a de facto judicial overreach, enriching family lawyers at the expense of litigants.

In a 2024 ruling, one federal court aligned with State Supreme Court, citing *Rockett* and stated:

> "Judges typically enjoy immunity from suit for judicial acts. *Rockett as next friend of K.R. v. Eighmy* … Judicial immunity does not bar suit against Defendants in this case, because the **Missouri Supreme Court** found the **contempt proceedings** Judge Privette **initiated** against Grooms **did not constitute judicial acts that impacted the court's ability to "try and determine cases in controversy**." *Grooms* at 98 (cleaned up). Because Judge Privette exceeded the bounds of his judicial authority in initiating the contempt proceedings against Grooms, judicial immunity proves unavailable." *Grooms v. Privette*, 6:23-cv-03287-MDH, 8 (W.D. Mo. May 2, 2024).

Applying the same logic, Deangelis initiated a QDRO without the statutorily required QDRO petition against Yan's ERISA fund and awarded Barrows and Pigg fees, including those incurred in the criminal proceeding and bonus prepayments. Collecting criminal proceeding fees and advocating for bonus prepayments are not the types of acts that impact the court's ability to adjudicate the dissolution of marriage and child custody matters in controversy. "Absolute immunity, however, is "strong medicine, justified **only when** the

danger of [officials' being] deflect[ed from the effective performance of their duties] is very great."" *Forrester v. White*, 484 U.S. 219, 230 (1988). Therefore, judicial immunity should not apply.

4) Conclusion.

How each party fulfill their own attorney fees payment is a private commercial matter, not the routine business of Texas family courts, which are tasked with dissolving marriages and safeguarding the best interests of children. However, instead of merely resolving disputes between parties who have invoked the jurisdiction of the Texas family court, judges have strayed from their role as neutral arbitrators, often acting as attorney fee collection agencies—a function beyond the expectations of the parties. Regardless of how unlawful or unconstitutional these fee-compelling orders may be, laypeople are often unable to advocate effectively against such predatory conduct conspired by law-knowledgeable lawyers and judges.

Family court judges, with a "swipe of my pen" attitude, facilitate the daily transfer of litigants' assets into the pockets of family lawyers. In such an "possible temptation"[11] legal

---

[11] "A fair trial in a fair tribunal is a basic requirement of due process. Fairness of course requires an absence of actual bias in the trial of cases. But our system of law has always endeavored to prevent even the probability of unfairness. To this end no man can be a judge in his own case and no man is permitted to try cases where he has an interest in the outcome. **That interest cannot be defined with precision. Circumstances and relationships must be considered**. This Court has said, however, that "every procedure which would offer a possible temptation to the average man as a judge . . . not to hold the balance nice, clear and true between the State and the accused, denies the latter due process of law." *Tumey* v. *Ohio*, 273 U.S. 510, 532. Such a stringent rule may sometimes bar trial by judges who have no actual bias and who would do their very best to weigh the scales of justice equally between contending parties. But to perform its high function in the best way "justice must satisfy the appearance of justice." *Offutt* v. *United States*, 348 U.S. 11, 14." *In re Murchison*, 349 U.S. 133, 136 (1955).

framework, no counsel can truly zealously advocate for their client when the relief directly benefits themselves. As *Murchison* stated, "[t]hat interest cannot be defined with precision. Circumstances and relationships must be considered." In Yan's state proceeding, the circumstances and relationships were, "Leslie Barrows, who is a hostess for [Deangelis] political campaign fundraising events" in the Barrows firm (ROA.1046[¶68],ROA.1049[¶80],ROA.1315[¶90],ROA.1974[¶4],ROA.1976[¶12],ROA. 1994-1995). The alleged RICO enterprise—Barrows Firm indirectly aided Deangelis' judicial role possession.

By possessing unappealable authority to award attorney's fees in state family court, Deangelis tipped the scales of justice by introducing Barrows, Ybarra and Pigg's interest into the outcome. This subsequently leads to alterations of the QDRO commitments by the Officer of the Court—the real parties in interest. To prevent future damage through these practice (ROA.1087-1089), is one of the core forms of prospective relief Yan sought under antitrust claim in this case.

The *Deangelis-Brief* disregarded all these factual allegations, thus failing to apply any judicial act and jurisdiction analysis and erroneously concluding that Yan never pleaded any allegations.

VI.  Jurisdictional Authority (Issues 8-10)

A.  Non-Article III court jurisdiction limits (Issue 10)

*Yan-Brief* at 55-60, adequately briefed Issue 10. Just as in federal legal framework, where the magistrate court and the district judge's court are distinct, with the magistrate court being a creation of the Federal Magistrates Act, a similar distinction exists between the Texas associate judge's court and the district judge's court under the Texas Family Code. These two courts do not share equal jurisdiction. In fact, the scope of a Texas family court associate judge's authority is even narrower. While federal magistrate courts can oversee both civil and criminal suits, Texas associate judges under the Family Code can only oversee <u>limited suits and actions</u> pursuant to *Tex. Fam. Code § 201.005(a)*. The statutory language is "the [associate judge] court has jurisdiction" expressly defined under *§ 201.005(a)(1)-(6)*. On the contrary, the family district court's jurisdiction is defined under *Tex. Gov't Code § 24.601*, stating "[a] family district court has the jurisdiction and power provided for district courts **by the constitution** and laws of this state." This means Texas associate judges cannot be granted blanket judicial immunity without analyzing whether their actions are *ultra vires* and void. *Deangelis-Brief* merely reasserted blanket judicial immunity without applying any analysis to the distinguishable acts; therefore, they have abandoned to rebut Issue 10.

Additionally, the latest appellate court ruling well clarified federal common-law judicial immunity:

"Judicial immunity is strong medicine. …But the medicine's potency cautions against its indiscriminate prescription. And so there are limitations. Judicial immunity does not protect *judges* so much as it protects the judicial acts they undertake as part of their public service; it is "defined by the *functions* it protects and serves, not by the person to whom it attaches." *Id.* (emphasis in original). As such, judges are not protected if they act in the "clear absence of all jurisdiction over the subject-matter" or when they engage in nonjudicial acts. *Bradley*, 80 U.S. (13 Wall.) at 351;" *Gibson v. Goldston*, No. 22-1757, 8-9 (4th Cir. Oct. 30, 2023).

*Gibson* clarification is clear, Judicial immunity **does not protect** the **individual** holding the associate judge title created by the *Tex. Fam. Code §§ 201.001–201.017*; it **protects** only the **judicial acts** they perform as part of their limited duties under the *Tex. Fam. Code § 201.007*.

B.    Texas constitutional trial authority (Issue 8)

The Texas Criminal Supreme Court held:

"In Texas, **courts have jurisdiction**—the power over the subject matter and person, while **judges have authority**—the power to preside over a case. See Davis v. State …. ("While our case law has called the authority of the judge to preside a jurisdictional issue, we now disavow that characterization, because as we have explained, jurisdiction or judicial power is vested in courts, not individuals."" *In re State ex rel. Wice*, 668 S.W.3d 662, 672 n.43 (Tex. Crim. App. 2023). See (ROA.1073[¶7];ROA.2016[¶64]).

*Yan-Brief* at 49-50, 56, adequately briefed Issue 8, stating:

"ERISA's anti-alienation and preemption clauses **do not**, however, **grant a** state court **authority** to **issue an order** that the state's law **does not authorize**. *See Boggs [v. Boggs]*, 520 U.S. at 851, (**looking to state law** to **determine whether** assignment of retirements benefits was **proper in a QDRO**)." *Dalton v. Dalton*, 551 S.W.3d 126, 138 (Tex. 2018).

In other words, ERISA's anti-alienation and preemption clauses do not grant a Texas family law associate judge's court any authority to render a QDRO that is not authorized by the Texas Family Code.

Tex. Fam. Code § 9.101 expressly defines the QDRO jurisdiction, stating:

> "Section 9.101-**Jurisdiction for Qualified Domestic Relations Order**
>
> **(a)** Notwithstanding any other provision of this chapter, **the court that rendered a final decree** of **divorce** or **annulment or** another **final order** dividing property under this title **retains** continuing, exclusive **jurisdiction** to **render** an **enforceable qualified domestic relations order** or similar order permitting payment of pension, retirement plan, or other employee benefits divisible under the law of this state or of the United States **to an alternate payee or other lawful payee**."

Tex. Fam. Code § 9.102 stating: "Section 9.102 – Procedure **(a)** A party to a **decree of divorce** or annulment **may petition** the court for a **qualified domestic relations order** or similar order." "[T]he court" means "the court that rendered a final decree of divorce."

While 29 U.S.C. § 1056(d)(3)(B)(ii) broadly allows nation-wide "domestic relations order" as any judgment, decree, or order that relates to the provision of child support, alimony payments, or marital property rights to a spouse," Texas law is expressly restricted to three vehicles: **a final decree of divorce**, **an annulment**, or **a final order dividing property**. A temporary QDRO for spousal support is a manufactured vehicle resulting from a state wide, decade long RICO conspiracy amongst family court judges and lawyers, in order to obtain attorney fees.

A QDRO is a final, appealable order and an exclusive trial remedy available either under a rendered post-divorce decree or through a post-trial petition. See *Gainous v. Gainous*, 219 S.W.3d 97, 104-05 (Tex. App. 2006). *Deangelis-Brief* merely reasserted that she acted in a proceeding but failed to rebut whether her acts fall within the associate judge court's limited jurisdiction.

C.  QDRO appealability requirements (Issue 9)

*Yan-Brief* at 49, 56, 78-79, adequately briefed Issue 9.

"[N]on-Article III personnel may not usurp functions of Article III judges" See *Northern Pipeline v. Marathon Pipeline,* 458 U.S. 50 (1982).

""[T]tials are complex affairs, requiring close oversight of delicate constitutional rights. [I]rreparable harm would be done to the authority of the [state] judiciary were such fundamental proceedings delegated to non-Article III tribunals. By giving away their critical [constitutional] jurisdiction, [Article III tribunal] judges would risk devitalizing their own coordinate branch of government, thereby upsetting our constitutional balance of power[12]. Thus, our constitutional concerns about [statutory] authority will grow as [statutory] judges move closer to presiding over trials." *United States v. Dees*, 125 F.3d 261, 267 (5th Cir. 1997). The constitutional concerns lie at both the federal and state judiciary levels when core rights are involved. trial. When Texas family court associate judges like

---

[12] "The "slippery slope" scenario here is easy to envision... Meeting with some initial success, the pressure of their crushing caseloads would weaken their resolve and cause district courts to delegate even more [trial remedy] to [associate] judges. Eventually, Congress would notice the trend." *United States v. Dees*, 125 F.3d 261, 267 n.6 (5th Cir. 1997).

Deangelis, usurping the critical constitutional jurisdiction through non-Article III tribunals, for decades and state wide, they collectively causing irreparable harm to the authority of the Texas judiciary. Yan sought prospective relief to stop this usurpation.

None of the Appellees identified a Texas statute permitting a sua sponte temporary QDRO issued from a non-trial court, as the Supreme Court of Texas precedent ruled otherwise. The only argument was raised by *Barrows-Brief* at 33, which merely asserted that appellate review is available through mandamus.

First, this mandamus argument was not raised in the district court; any argument not raised or adequately briefed in the district court is considered abandoned.

Second, "Mandamus is an extraordinary and discretionary remedy." *In re Arteaga*, No. 13-24-00578-CV, 2 (Tex. App. Nov. 27, 2024). "Meanwhile, it is well established that a remedy is not available "as of right" if it is discretionary. "As of right" is a familiar phrase in the law, meaning "[b]y virtue of a legal entitlement." Black's Law Dictionary 141 (11th ed. 2019)." *Santos-Zacaria v. Garland*, 143 S. Ct. 1103, 1116-17 (2023).

Therefore, Mandamus is not an "adequate substitute" or "reasonable alternative" to obtain redress to civil causes of action under RICO, antitrust, and *§ 1983* claims. *Tex. Const. art. I, § 19* bars similar arguments:

> "The [statue or common law] has the power to *abolish* or *abridge* common law actions, but it *must* also provide an "*adequate substitute*" or "*reasonable*

*alternative*."[13] This substitute is an *individualized equivalent* rather than a general or societal quid pro quo. … "When individual rights guaranteed by the state constitution are involved, an individual rights perspective is used."[14] … [*Tex. Const. art. I, § 19*] grants affirmative rights directly to the people. Second, it expands due process protection beyond "life, liberty, or property" to protect privileges, immunities, and any other manner in which citizens may be disenfranchised. Every Texas bill of rights has had a due course of law provision … [SCOTTX] has recognized that [*§ 19*] may afford significantly broader protection than the federal constitution"[15]

Yan had pleaded *Tex. Const. art. I, §§ 13, 19* in all his *§ 1983* claims. (ROA.1090[¶280],ROA.1091[¶¶283-284],ROA.1093[¶¶301-302],ROA.1095[¶¶318-319],ROA.1097[¶337],ROA.1098[¶343],ROA.1100[¶358],ROA.1101[¶363],ROA.1102[¶378],ROA.1103[¶383]).

Yan plead *Tex. Const. art. I, §§ 13, 19* not because Yan believed he had a federal civil cause of action under *§ 1983* for the violation of the state constitution. Rather, he pleaded the "open court" and "remedy guarantee" provision within Texas constitution to supersede any state common-law or statutory immunity, or alternative procedural remedy (mandamus) arguments that could deter him from asserting affirmed right to seek a remedy for his injury.

---

[13] (Citing *Sax v. Votteler*, 648 S.W.2d 667 (Tex. 1983). *Moreno v. Sterling Drug Inc.*, 787 S.W.2d 348, 355 (Tex. 1990); *Lucas v. United States*, 757 S.W.2d 687, 690 (Tex. 1988))
[14] (Citing *Lucas*, 757 S.W.2d at 690).
[15] *Texas Workers' Compensation Commission v. Garcia*, 862 S.W.2d 61, 74 (Tex. App. 1993) (quoting *Lucas v. United States*, 757 S.W.2d 687, 690 (Tex. 1988)).

D.    Yan has standing to sue DeAngelis because she adjudicated without statutory authority and the statutorily required petition.

*DeAngelis-Brief* at 10 asserted that DeAngelis is not responsible for enacting or enforcing the statute because Yan challenges the constitutionality of the statute under which DeAngelis adjudicated the claim. However, by failing to specify the exact statute under which her actions were taken, her argument becomes a legal conclusion unsupported by facts. *Tex. Fam. Code § 9.101* and *Tex. Fam. Code § 9.102* state that associate judge's court cannot enact or enforce a QDRO. Yan alleged that Deangelis' acts are "ultra-vires". See (ROA.1036,ROA.1090-1092,ROA.1310-1311).

VII.    Due Process Violations (Issues 6-7, 13)

A.    Attorney alteration of court orders (Issue 6)

*Yan-Brief* at 50-51, 66, 74, 75-79, adequately briefed the "altering" Issue 6.

The original rendered April 13 order (ROA.1174), orally pronounced in open court, although statutory unlawful, at least reflected a 50/50 proportionate following just division principle, with each party receiving $25,000 to pay attorney's fees. However, the altered QDRO, underwritten and signed by Barrows, Ybarra, and Pigg on April 26 and May 26 (ROA.1176-1178), became a 100/0 grossly disproportionate and unjust property division, where the spouse received $25,000, and Yan received nothing. It is well established principle that the officer of the court does not possess judicial discretional power to determine the proportion of property division.

This alteration fundamentally changed the intention of the earlier order. It was an intentional *§ 664* predicate act to solely circumvent ERISA's anti-alienation provision, as ERISA does not permit the disbursement of funds for attorney's fees. Therefore, it had to be framed in a 100/0 disproportionation that appeared as spousal support to circumvent the restriction, admitted by Barrows in her email (ROA.1115).

Below is a sample check, illustrated for educational purposes:



It is widely understood that once a payor issues a check, any alteration to the *amount*, *payee*, or *memo* by someone other than the payor is legally considered forgery of a bank instrument. "Webster's defines "alter" as "to cause to become different in some particular characteristic…" … American Heritage similarly defines alter as "[t]o change or make different; modify." … these definitions to comport with the ordinary meaning of the word "altered."" *U.S. v. Carter*, 421 F.3d 909, 912 (9th Cir. 2005). "Forgery has been defined as

"the false making or materially altering, with intent to defraud, of any writing, which, if genuine, might apparently be of legal efficacy, or the foundation of legal liability.""[16]

That original April 13 associate judge's report explicitly defined three elements: Payee - Conghua Yan (Plaintiff-Appellant), Amount - $50,000, Civil Cause of Action - with $25,000 allocated for attorney fees to Barrows and $25,000 allocated for attorney fees to Pigg (ROA.1174). However, the QDRO dated May 26 (ROA.1176-1178), was altered to list Payee - Fuyan Wang (Yan's wife), Amount - $25,000, Civil Cause of Action - Spousal Support (ROA.1176-1178). Just as one might commit forgery by altering any key element of a check, _all three_ elements of the court instrument were altered different than what the associate judge orally pronounced. The altered orders were conspiratorially hand-submitted in person to the court, bypassing the e-filing and service procedures mandated by the TRCP.

Whether a QDRO or a bank check is altered is a matter of fact, not law. All Appellees make no argument on Issue 6, knowing they had no ground to stand on acts of altering court order.

---

[16] _United States v. Jones_, 648 F.2d 215, 217 (5th Cir. 1981) (quoting _Hubsch v. United States,_ 256 F.2d 820, 823 (5th Cir. 1958)).

B.   Garnishment without proper cause (Issue 7)

All Appellees make no argument on Issue 7, knowing they had no ground to stand on a garnishment order without a petition filed.

C.   Prefiling injunction procedural requirements (Issue 13)

All Appellees make no argument contend Issue 13.

VIII.   <u>Federal Civil Procedure (Issues 11-12, 14)</u>

A.   Rule 11 safe harbor provisions (Issue 11)

All Appellees make no argument on Issue 11.

B.   Magistrate FCR appeal rights (Issue 12)

All Appellees make no argument on Issue 12.

C.   Rule 54 final judgment requirements (Issue 14)

All Appellees make no argument on Issue 14.

Yan noted that <u>*USBank-Brief*</u>, at 10, n. 4, erred in arguing that Yan had waived arguing "the order denying the Motion to Alter or Amend a Judgment branch of his appeal" by referring to a "Notice of Appeal" without specify source reference. First, this argument is not adequately briefed in compliance with *Fed. R. App. P. 28(a)(8)* and *28(e)*, as it fails to provide appropriate references to which record of notice of appeal (Yan filed <u>two</u>). A counseled brief is not entitled to liberal construction, as established in *Pryor*. Therefore, this argument is considered abandoned.

Secondly and alternatively, Yan had multiple appeals, in one of the notices of appeal (ROA.2153), Yan stated:

"Notice is hereby given that Appellant Conghua Yan appeals to the United States Court of Appeals for the Fifth Circuit from **the Order [ECF No. 153] denial of motion to alter Judgment signed** and entered in this action on May 21, 2024, and from **all adverse Judgments**, **orders**, rulings, **decisions**, conclusions, or findings preceding, **leading to or included within the Order** and **the final Judgment** [ECF No. 149]." (emphasis added)

Yan has properly preserved the issues to address all matters leading to or included within the order of denial, encompassing the entire branch. All the omissions and reframed issues raised by Yan in the Opening Brief and preserved in the Rule 59(e) motion sufficiently demonstrate the "need to correct a clear legal error or to prevent manifest injustice."

IX.    Motion to Dismiss Standards (Issues 15-16)

A.    Factual omission implications (Issue 15)

None of the Appellees make no argument contend Issue 15. "[A]rriving at the truth is a fundamental goal of our legal system" *United States v. Havens*, 446 U.S. 620, 626 (1980) The evidence of record demonstrates the factual omissions or substitutions in the allegations.

B.    Proper 12(b)(1) vs 12(b)(6) analysis and claim substitution effects (Issues 16)

None of the Appellees make no argument contend Issue 16. Truth is a basic premise of an appeal. The evidence of record demonstrates the substituting the antitrust *§ 2* claim with a *§ 1* claim, replacing the RICO *§ 664* claim with *§ 1956*, or imposing a *12(b)(6)* conclusion based on a *12(b)(1)* analysis.

C.   *SBTX-Brief* raised new 12(b)(1) and 12(b)(6) issues, which are either abandoned in the district court or seeking to reverse/modify the judgment without a cross-appeal.

Instead of rebutting Yan's factual alleged RICO, antitrust claims or the *Nesses* reasoning, *SBTX-Brief* at 22 fabricated allegations by putting words in Yan's mouth.

*SBTX-Brief* alleged that Yan sought to acquire a cognizable interest in the state grievance proceeding and claimed that Yan failed to plead sufficient facts to "state a claim to relief that is plausible on its face" under Rule 12(b)(6). In fact, Yan <u>never</u> sought any relief to modify or reverse the state grievance proceeding in his claims. *SBTX-Brief* at 22-23, cited no references to the parts of the record from Yan's complaint, despite the requirement under *Fed. R. App. P. 28(a)(8)* and *28(e)* to do so.

To support this allegation, *SBTX-Brief* cited ROA.2090 as reference, which is merely a judge's conclusory statement, not from Yan's own words. It also cited ROA.108-109 and ROA.114-115, two evidentiary SBTX letters which does not present Yan's statement. The incompetent SBTX counsel left both Yan and this Court guessing the basis for their imagination.

*SBTX-Brief* constructed its own version of allegations and then rebutted it. The entire Section II of *SBTX-Brief* should be disregarded.

It is worth to note that SBTX has not briefed *12(b)(6)* relief under antitrust claim in their original *Rule 12* Motion. *Fed. R. Civ. P. 8(b)* is clear, "Defenses; Admissions and

Denials. (1) In General. In responding to a pleading, <u>a party must</u>: (A) state in short and plain terms its defenses to <u>each claim</u> asserted against it." SBTX voluntarily overlooked antitrust claim (ROA.1470[¶25],ROA.1487[¶87]), only argued "Failure to State a Plausible Claim – 12(b)(6)" (ROA.1468) with 3 reasons:

1. [A]ssertions do not constitute a cognizable … claim under *§ 1983*.
2. Fails to state claims under Texas Constitution.
3. Fails to state a claim under the **RICO** Act.

After prevailing on an antitrust claim under *Rule 12(b)(1)* against SBTX, the district court's decision to sanction Yan by dismissing the antitrust claim with prejudice under *Rule 12(b)(6)* is inconsistent with the established federal adversarial legal framework. In this Court, SBTX and its counsel are not entitled to special privileges and should not repeatedly benefit from antitrust claim dismissals, especially in the absence of *Rule 12(b)(6)* defense (*Yan-Brief* at 64; ROA.1325-1348).

Alternatively and additionally, the final Judgment never determined this newly raised "cognizable interest in the state grievance proceeding" issue. The Court cannot first review a new issue that district court have not determined. There were 5 claims against SBTX and counsels, RICO, antitrust and 3 *§ 1983* claims. *SBTX-Brief* at 22 appeared using a hybrid form, calling it "**racketeering/antitrust claims**," failed to state which individual claim this "lacking cognizable interest" argument aimed for? SBTX also forgot that in their Motion to Dismiss, they asserted "cognizable" under *§ 1983* and district court never ruled.

D.   USBank consistently frames Yan's allegations in a manner contradictory to the principle of liberal construction.

*USBank-Brief* at 16 consistently frames Yan's allegations in the most unfavorable light, despite *Yan-Brief* at 82 clearly stating that:

> "Yan alleged *§§ 1341*, *1343* and *664* as RICO predicate acts (ROA.1105-1108[¶¶399,406,408,411]). The RICO Act *§ 1964* is one of the few federal statutes that authorize civil remedies for criminal conduct, including *§ 1961* defined predicate act. Yan pleaded for a civil remedy based on conspiracy to commit racketeering predicate acts. Yan **did not seek separate civil cause of action for Title 18 criminal offense** as USBank argued (ROA.1760)." (emphasis added)

"[A]mbiguity must be viewed in the pro se plaintiff's favor" **(**Yan-Brief at 36**).**

However, *USBank-Brief* lies in repeatedly framing and denying the Plaintiff's true allegations, a tactic they rely on to prevail by restating:

> "18 U.S.C. §§ 664, 1027,1341, 1343, and 1349 are criminal statutes that do not provide a private cause of action. Indeed, it is settled law that "[p]rivate citizens do not have the right to bring a private action under a federal criminal statute," The District Court agreed and dismissed these claims with prejudice."

The district court erred in dismissing separate civil cause of action for Title 18 criminal offense which Yan never pleaded.

X.   Complex Federal Claims (Issues 17-18)

A.   State proceeding exemption applicability with *Nesses* reasoning (Issue 17)

*Yan-Brief* at 47-48, 55, 68-69, adequately briefed Issue 17 against the Appellees. This *Nesses* reasoning should be applied when reviewing all three federal claims (RICO, antitrust and *§ 1983* claim). All Appellees make no argument contend the application of *Nesses* reasoning. The word "*Nesses*" never appeared in any Appellee's brief.

B.    Multiple predicate acts requirements (Issue 18)

*USBank-Brief* at 18-22 attempted to argue that Yan failed to plead sufficient facts to establish a RICO claim. Like the other Appellees, *USBank-Brief* disregarded well-pleaded factual allegations by reframing them. USBank-Brief also failed to acknowledge that, as outlined in *Yan-Brief* at 45, the RICO pattern was established through:

> "a clear pattern of racketeering, not mere impropriety. Yan presented concrete facts, including *two* QDROs that were pleaded as specific examples, not just narrative. Additionally, Yan cited *five* unappealable temporary QDROs (ROA.1490-1519) rendered in the last ten years."

SBTX, as an enterprise and its associates, not USBank, is alleged to have engaged in a pattern of racketeering activity "connected to the acquisition, establishment, conduct, or control of an enterprise." Yan alleged that USBank participated in a conspiracy to unlawfully divert ERISA funds, requiring only one predicate act as a co-conspirator. *Yan-Brief* at 84-86 adequately addressed Issue 18, while USBank-Brief failed to cite any controlling precedent to the contrary.

Regarding the *18 U.S.C.* *§ 664* predicate act, Yan alleged that USBank unlawfully diverted ERISA funds, which USBank-Brief (18) acknowledged as a "release of funds." However, *USBank-Brief*'s reliance on the district court's ruling that this "is not a RICO violation" lacks merit, as it failed to identify the state law underlying this determination.

Yan objected that no spousal support hearing occurred and that the order USBank relied on conflicted with the original order (*Yan-Brief* at 25).

*18 U.S.C.* *§ 664* clearly states that unlawful abstracting fund is a RICO violation. This Court has "observed that "[d]ictionaries are a principal source for ascertaining the ordinary meaning of statutory language[.]" Black's Law Dictionary … defines "unlawful" as "[n]ot authorized by law; illegal." Webster's Collegiate Dictionary defines … and "unlawful" as "not lawful; not morally right or conventional."" *U.S. v. Orellana*, 405 F.3d 360, 365 (5th Cir. 2005). *Tex. Fam. Code §§ 9.101-102* is the controlling Texas statute that defines the lawful boundary. It is evident that issuing a temporary QDRO from an associate judge's court before the final divorce is not authorized by Texas law, in violation of ERISA anti-alienation provision. Yan's ERISA case highlights an evidentiary antitrust crisis, showcasing how federal and state laws deviate from legislative intent, instead reflecting the desire of Texas legal personnel to obtain fees.

If the predicate acts were misidentified and concluded, then none of subsequent application of RICO law analysis could be right. The district court deviated from the central issue, focusing on *money laundering* in its final Judgment rather than addressing the *ERISA funds*. This error derailed the entire suit.

Additionally, the arguments in Section III of *USBank-Brief* concerning "Pattern of Racketeering Activity" and "Connected to the Acquisition, Establishment, Conduct, or Control" failed to cite any source from Yan's complaint, in violation of *Fed. R. App. P. 28(a)(8)* and *28(e)*. *USBank-Brief* misrepresented Yan's RICO claim, departing from his premise, and then rebutted its own framing.

XI.     State Actor/Action issue under *§1983* claim

Yan alleged the violation of Fourteenth Amendment (ROA.1057[¶106], ROA.1090[¶280],ROA.1093[¶301],ROA.1095[¶318],ROA.1097[¶337],ROA.1100[¶358], ROA.1102[¶378],ROA.1107[¶409],ROA.1305[¶44],ROA.1045[¶64]).

Yan did not explicitly raise the state actor/action issue as an isolated matter. However, *Yan-Brief* at 87 adequately addressed the state actor issue under the *§ 1983* claim against USBank, because that issue is what the final Judgment determined. Both *Barrows-Brief* and *USBank-Brief*, however, reargued this state actor/action issue.

A.     Barrows has abandoned this state actor issue.

*Barrows-Brief* at 37-41 erred in arguing that Yan failed the *§ 1983* claim because Barrows is a private actor, did not plead a direct constitutional claim under the color of law, and alleged no constitutional violation. However, Issue 7—altering the QDRO to a civil spousal support order—is a direct procedural due process violation, which *Barrows-Brief* made no argument. Neither the FCR nor the final Judgment determined Barrows' status as

a state actor under *§ 1983*. Instead, the FCR initially granted Barrows Texas common-law attorney immunity without addressing the state actor issue (ROA.1696), to which Yan objected, citing the *Taylor* precedent against absolute immunity.

Subsequently, the final Judgment (ROA.2087) ruled that:

"While not comprehensive, the attorney-immunity doctrine is wideranging and robust. … Because the FCR correctly applied the doctrine to Yan's claims, Yan's objections to the immunity analysis as a whole are **OVERRULED**. To the extent Yan objects to the immunity analysis vis-à-vis his RICO claim, *see* ECF No. 122 at 18–20, those objections are **SUSTAINED**. For the above reasons, the Court **GRANTS** the Attorney Defendants' Motions to Dismiss (ECF Nos. 75, 90) and **DISMISSES** Yan's non-RICO claims against them **without prejudice**."

It is evident that the final Judgment adopted the FCR's 12(b)(1) dismissal and barred Yan's *§ 1983* claims under the Texas attorney-immunity doctrine. The district court disregarded Yan's *Taylor* precedent argument and omitted to address Barrows' state actor issue under the *§ 1983* claim. This Court is a court of review, not of first view. Without a court determination, neither Yan nor Barrows should guess. *Yan-Brief* did not raise Barrows' state actor issue because it was not determined.

B.  USBank is a responsible co-conspirator.

*Yan-Brief* at 87, adequately briefed state actor issue under *§ 1983* claim against the USBank. Yan argued that the final Judgment erred by dismissing *§ 1983* claim through concluding "[Yan] does not make this required showing" (ROA.2092) that the Bank acted under color of law as a state actor. However, Yan asserted that a non-state actor does not have to act under the color of law in person, they can be sued under *§ 1983* claim if he/she

is alleged to conspire to another state actor's unconstitutional act under the color of law (ROA.1107[¶409]). *Yan-Brief* at 87, concluded that the district court either overlooked Yan's argument (ROA.2013[¶51]) or disregarded precedent.

*USBank-Brief* at 23, n.7., *admitted* that the final Judgment routinely dismissed *§ 1983* claim upon the view that "Plaintiff makes no allegations that Defendants are state actors." It was an erred view because USBank was alleged as a co-conspirator, not as a state actor.

*USBank-Brief* at 24-26, argued that Yan failed to plead sufficient claims to establish a state action conspiracy under *§ 1983*. However, the district court never addressed the co-conspirator issue. Yan preserved this issue by filing a Response/Objection to U.S. Bancorp's Motion to Dismiss and Brief in Support (ROA.1997-2026), explicitly stating it at (ROA.2013[¶51]), rebutting USBank's state actor argument erroneously adopted in the FCR and final Judgment.

USBank was given adequate opportunity to file a Reply, but they waived. In the *USBank-Brief* at 24-26, USBank asserted a series of new co-conspirator issues that were never raised in the district court. These arguments should be treated as abandoned in a court of review.

Additionally, the officers of the court—Barrows, Ybarra, and Pigg, "is the state actor responsible for this violation." *Coggin v. Longview Independent School Dist.*, 337 F.3d 459, 463 (5th Cir. 2003).* In the absence of a petition and hearing for the civil cause of spousal

support, USBank conspired with others to deprive Yan of ERISA funds, thereby violating procedural due process and property rights. This occurred despite repeated notifications and multiple emails from Yan to USBank explicitly citing the Fourteenth Amendment (ROA.1107[¶409]). USBank acted in concert with state actors by releasing the ERISA funds.

XII.     This Appeal Is Not Frivolous

A.     *SBTX-Brief* erred by making false allegation against Yan.

*SBTX-Brief* at 23 erred in alleging that Yan's appeal is frivolous through conclusory statements. Yan appealed and briefed the prefiling injunction under related Issues 11-13, where SBTX is the sole relevant party-in-interest. Yet, SBTX has abandoned arguments on these issues, which alone demonstrate the legitimate ground of including SBTX in appellate review. Additionally, Yan rebutted the sovereign immunity argument against SBTX under RICO and antitrust claim, which provides another legitimate cause.

*SBTX-Brief* at 25 claims this appeal "amounts to an unjustified burden on Appellees to expend appellate resources," but this is contradicted by evidence. Among all the Appellees, *SBTX-Brief* is the <u>only</u> brief prepared by counsel that <u>lacks</u> *bookmarks*—an oversight forgivable for a pro se litigant but not for a licensed attorney. A licensed attorney should not claim burden while delivering <u>subpar</u> work.

"This court has no desire to deter any litigant from advancing any claim or defense which is arguably supported by existing law, or any reasonably based suggestion for its extension, modification, or reversal. Positions thus taken cannot be considered as frivolous, although they may be unsuccessful and indeed may be given short shrift." *Farguson v. Mbank Houston, N.A.*, 808 F.2d 358, 359 (5th Cir. 1986).

XIII.  <u>Reassignment</u>

The abstracted ERISA funds clearly qualify as income under <u>*§ 1961*</u>. A portion was diverted to attorney fees, while embezzled funds flowed through the Texas judiciary for decades via financial activities, including judicial campaign contributions and SBTX operational income. Under the well-established "possible temptation" doctrine articulated in *Tumey v. Ohio*, 273 U.S. 510, 532 (1927) ("Every procedure which would offer a possible temptation to the average man as a judge … which might lead him not to hold the balance nice, clear and true ... denies the latter due process of law." ), this case should be reassigned to a federal court outside of Texas.

"Direct evidence of a conspiracy is unnecessary; each element may be inferred from circumstantial evidence. … An agreement may be inferred from a "concert of action." … Once the government has produced evidence of a conspiracy, only "slight" evidence is needed to connect an individual to that conspiracy. … Knowledge of a conspiracy and voluntary participation in a conspiracy may be inferred from a "collection of circumstances." … Evasive and erratic behavior may be evidence of guilty knowledge. … Presence and association with other members of a conspiracy, along with other evidence, may be relied upon to find a conspiracy." (citation omitted) *U.S. v. Casilla*, 20 F.3d 600, 603 (5th Cir. 1994). The evasive concealment is evident, as "certain funds" were used to substitute alleged "ERISA funds," and the word "ERISA" does not appear in the dismissal analysis of the first through eighth claims (ROA.2079-2091).

"Evidence of ... a conspiracy can be actual knowledge, overt actions with another, such as arming oneself in anticipation of apprehension, or inferred from the knowledge of the alleged co-conspirator of the impropriety of the actions taken by the other co-conspirator." *Doe v. McKesson*, 922 F.3d 604, 610 (5th Cir. 2019).

After obtaining actual knowledge of the impropriety of the alleged *§ 664* actions, every Texas governmental actor's overt dismissal constitutes further evasive concealment under conspiracy. *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868 (2009) held that, "there

is a federal due process right to recusal "when the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable'"[17]. This Court must reassign the case to ensure due process.

XIV.    The Founders established a republic—if the judicial community can keep it.

Despite numerous filings and over two thousand pages of original court records, the most glaring issue remains: nobody from the well-resourced opposing counsel's team has identified single line out of any Texas statute explicitly authorizing an associate judge's court to issue a temporary QDRO in the absence of a petition. Contradictorily, *Tex. Fam. Code §§ 9.101-102* states, the [trial] court that render**ed** a final decree retains jurisdiction to *render* an enforceable QDRO and a party to a decree may petition the court. (emphasis added)

Colluding to alter court orders is the most egregious misconduct. "The Supreme Court, however, noting that the attorneys had urged the **falsified** article upon the court and had **prevailed**, held that they "are **in no position** now to dispute its effectiveness."" *Browning v. Navarro, 826 F.2d 335, 344 (5th Cir. 1987)* (citing *Hazel-Atlas Co. v. Hartford Co., 322 U.S. 238 (1944)*).

Yan's ERISA fund injury arises from a falsified article in the absence of jurisdiction. Allowing state actors to evade accountability under claims of immunity while imposing

---

[17] *Hensley v. State Comm'n on Judicial Conduct, 692 S.W.3d 184, 189 n.6 (Tex. 2024)*.

extreme sanctions on Yan—such as dismissal with prejudice—renders the Constitution meaningless. A dismissal with prejudice is "an extreme sanction that deprives the litigant of the opportunity to pursue his claim" (*Berry v. CIGNA/RSI-CIGNA*, 975 F.2d 1188, 1191 (5th Cir. 1992)). Federal laws lose their force if federal claims can be precluded by any act disguised as "state court proceedings."

For decades, Texas family courts have abstracted ERISA funds through unappealable temporary QDROs, violating the "clear and unambiguous language" of §§ *9.101*-*102* and ERISA. State actors, including judges and prosecutors, have remained evasive in taking action, as these incomes benefit their SBTX comrades, assuming that layperson victims would never have the knowledge or means to challenge them in their monopolized playground.

The Supreme Court recognized that:

> "[p]rotecting the appearance of judicial integrity and impartiality is without doubt a government interest "of the highest order." …Williams-Yulee (upholding state ban on **solicitation of funds by judicial candidates**); see also Hodge v. Talkin … (noting "the government's long-recognized interest[ ] ... in assuring the appearance (and actuality) of a judiciary uninfluenced by public opinion and pressure"). Because **judges** have "**no influence over either the sword or the purse**; **no direction either of the strength or of the wealth of the society**; and **can take no active resolution whatever**," the efficacy of their decisions depends on public respect. … ("The judiciary's authority ... depends in large measure of the public's willingness to respect and follow its decisions."). That respect will erode if the public believes that judges merely channel political will—let alone the will of their favored political party. … ("[L]iberty can have nothing to fear from the judiciary alone, but would have everything to fear from its union with either of the other departments."). The Constitution's grants of life tenure and fixed

salaries are perhaps the **main sources** of **insulation** between judging and politics…"(citation omitted) *Guffey v. Duff*, 330 F. Supp. 3d 66, 75 (D.D.C. 2018) (citing *Williams-Yulee v. Fla. Bar*, 575 U.S. 433 (2015)).

Under Founders' philosophy, the judiciary was meant to be a neutral **reviewer,** separate from the sword (**executer**) or the purse (**treasurer**). However, when a member of SBTX in state family courts arbitrarily influences the distribution of ERISA funds and redirects the life-saving wealth of society to other members while wielding its own sword (temporary orders), it becomes the most dangerous form of tyranny. See *The Federalist No. 78* (Alexander Hamilton) . Also see *Brutus No. 15* (Mar. 20, 1788). The Framers foresaw the danger of judicial authority being influenced by financial interests. To counter this threat, only judicial actors—no other government officials—were granted <u>life tenure</u> and protected <u>compensation</u> under Article III, Section 1, a safeguard that does not exist in state courts.

Under the Texas judicial framework, both the presiding judge and counsel are practicing lawyers, and local lawyers are the primary source of campaign funds for elected judges. Meanwhile, Texas family law has removed the safety valve (appellate mechanism) for reviewing predatory temporary orders, which extract money from family court litigants' funds to enrich counsel or other parties. The original constitutional insulation between judging and personal interest is breached, yet the absolute authority remains. This anti-Founders philosophical framework creation—a three-headed power tyranny labeled as the "state family court"—has resulted in this decades-long, statewide RICO scheme scandal,

eroding Americans' liberty on a daily basis. It is all because the successor legislators forgot the Founders' original concern- to keep the judicial power away from financial temptation at all cost. The Founders knew that tyranny would arise if the judiciary gains access to the treasury, as it is driven by human greed. Two hundred years later, this ERISA embezzlement scandal has emerged, just as the Founders foresaw, resulting from family court tied with every actor's financial interest except those of the litigants.

Judicial adjudication power is rooted in statutory authority as established by law, not in ideas collectively brainstormed by judges and counsels. When this principle is breached, the judiciary's integrity is at stake. The Supreme Court emphasized, "errors affecting the fairness, integrity, or public reputation of judicial proceedings" warrant relief (*Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1905 (2018)).

This case exposes a decades-long pattern of malpractice and predatory conduct in Texas family courts. Attorneys colluded to draft unlawful, unappealable and altered temporary QDROs, falsely labeling them as spousal support to circumvent ERISA's anti-alienation provision and to secure commercial fees. Protecting ERISA funds is a matter of national interest. Congress enacted federal preemption and anti-alienation provisions to safeguard these funds and guarantee vulnerable individuals' financial security. If SBTX members can undermine Congress's intent while shielding themselves with immunity, then

federal protections are rendered meaningless. Upholding these protections is vital to maintaining the rule of law.

Our Founders never trusted the lawyers:

> "In the American Colonies the insistence upon a right of self-representation was, if anything, more fervent than in England.
> The colonists brought with them an **appreciation of the virtues of self-reliance** and a **traditional distrust of lawyers**. When the Colonies were first settled, "the **lawyer** was **synonymous** with the cringing Attorneys-General and Solicitors-General of the Crown and the **arbitrary Justices** of the King's Court, all bent on the conviction of those who opposed the King's prerogatives, and twisting the law to secure convictions." This prejudice gained strength in the Colonies where "**distrust of lawyers became an institution**." Several Colonies prohibited pleading for hire in the 17th century. The prejudice persisted into the 18th century as "**the lower classes came to identify lawyers with the upper class**." The years of Revolution and Confederation saw **an upsurge of antilawyer sentiment**, a "sudden revival, after the War of the Revolution, of the old **dislike and distrust of lawyers as a class**." **In the heat of these sentiments the Constitution was forged**."
> *Faretta v. California*, 422 U.S. 806, 826-27 (1975).

Two hundred years later, the legal service industry became the only profession in this country, family law lawyers dress in suit or robe, blatantly ridicule their clients, calling them "whiny ass clients" (https://www.youtube.com/watch?v=HK2aDDwCckk). With the Texas authorities repeatedly twisting Yan's claim to conceal this RICO scheme, it is evident that while the King of England is gone, but the same type of person which our Founders distrusted have returned.

No one, including the state judicial branch, is above the law. Yan prays that his case does not set a precedent demonstrating how the judiciary can successfully twist the law to

bar laypersons from recovering RICO injury from judicial actors, thereby turning the Founding Fathers' concerns into reality.

"It is well established that a government unit with multiple sub-departments can be a RICO enterprise. ... A state's judicial branch qualifies as an enterprise under RICO" *U.S. v. Walker*, 348 F. App'x 910, 912 (5th Cir. 2009). "[S]even other circuit courts have found that a government entity may constitute an "enterprise" within the meaning of RICO." *U.S. v. Freeman*, 6 F.3d 586, 597 (9th Cir. 1993). SBTX has become a professional legal enterprise too monopolized to face legal accountability. If this Court allows SBTX counsel to cloak themselves in state action authority, and evade consequences under the guise of disciplinary proceedings, the rule of law will be replaced by the rule of individuals.

The judiciary has a duty to uphold the integrity of its processes. As noted in *Guy v. Travenol Labs., Inc.*, 812 F.2d 911, 914 (4th Cir. 1987), "[t]he courts obviously have a special obligation to promote the integrity and truthfulness of the judicial process." Similarly, "there is nothing more sacred than the integrity of the judicial process." (*United States v. Bethea*, No. 17-2788-cr, 4 (2d Cir. Sep. 6, 2018)).

The remedy in this case is clear: hold accountable those who abuse judicial monopolies for unlawful financial gain. If the Fourteenth Amendment and ERISA still protect against white-collar crimes committed by judges/attorneys in state court proceedings, this case should proceed. ERISA funds embezzlement by judges/lawyers is

white-collar crime, irrespective of its ties to court proceedings, and deserves to be heard on its merits.

## CONCLUSION

Texas attorneys colluded to alter Yan's QDRO **deceptively**, perpetuating injustice for more than two years now. A layperson was forced to navigate the procedural maze, facing continuous **delays**. Every conspirator **denied** to be held accountable. As of today, all grievances, criminal complaints, federal claims, and disciplinary complaints have been **disposed** of without remedy.

What happens when the judiciary forges its own sword to reach into people's purses? This unprecedent case will be remembered either in the Hall of Fame or the Hall of Shame. Yan urges this Court to consider the potential loss of public trust in the judiciary if the outcome is unfavorable to the public interest.

For the reasons set forth above, this Court should reverse the interim injunctive order, the final order, judgment and remand this case to the district court outside of Texas so that Yan can seek redress for his damages.

Respectfully submitted,

/s/ Conghua Yan
Conghua Yan, Pro Se Plaintiff

[Conghua Yan] [2140 E Southlake Blvd, Suite L-439] [Southlake, Texas 76092] [214-228-1886] [arnold200@gmail.com]

## CERTIFICATE OF SERVICE

This is to certify that the foregoing document has been served in a manner in compliance with Rule 25(b) and (c) of the Fed. R. App. P., on February 15, 2025, on all registered counsel of record, and has been transmitted to the Clerk of the Court.

/s/ Conghua Yan
Conghua Yan, Pro Se Plaintiff
[Conghua Yan] [2140 E Southlake Blvd, Suite L-439] [Southlake, Texas 76092] [214-228-1886] [arnold200@gmail.com]

# CERTIFICATE OF COMPLIANCE

I certify that the foregoing Brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

- this brief contains 19,694 words and 1703 lines, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type requirements of Fed. R. App. P. 32(a)(6) because:

- this brief has been prepared in a proportionally spaced typeface using Microsoft Office 2016 Word with a 14-point font named Times New Roman.

/s/ Conghua Yan
Conghua Yan, Pro Se Plaintiff
[Conghua Yan] [2140 E Southlake Blvd, Suite L-439] [Southlake, Texas 76092] [214-228-1886] [arnold200@gmail.com]
February 15, 2025

# APPELLANT'S APPENDIX

<u>Tab Document</u>

A. Opening Brief bookmarked with links.

# Case No. 24-10543

## *IN THE UNITED STATES COURT OF APPEALS*
## *FOR THE FIFTH CIRCUIT*

Conghua Yan,

*Plaintiff - Appellant*

v.

The State Bar of Texas, a private company; The Barrows Firm, a private company; Leslie Starr Barrows, in Individual Capacity, as Member of the State Bar of Texas; William Albert Pigg, in Individual Capacity, as Member of the State of Texas; Samantha Ybarra, in Individual Capacity, as Member of the State Bar of Texas; Luis Jesus Marin, in Individual Capacity, as Member of the State Bar of Texas, and Official Capacity as Assistant Disciplinary Counsel for the Office of the CDC; Daniel Eulalio Martinez, in Individual Capacity, as Member of the State Bar of Texas, and Official Capacity as Assistant Disciplinary Counsel for the Office of the CDC; Rachel Ann Craig, in Individual Capacity, as Member of the State Bar of Texas, and Official Capacity as Assistant Disciplinary Counsel for the Office of the CDC; Lori L. Deangelis, in Individual Capacity, as member of the State Bar of Texas, and Official Capacity as Associated Judge; U.S. Bank,

*Defendants - Appellees*

On Appeal from the United States District Court for the
Northern District of Texas, Fort Worth Division
Civil Action No. 4:23-CV-00758-P, The Hon. Mark T Pittman, Presiding

# OPENING BRIEF OF APPELLANT

Respectfully submitted:

Conghua Yan

2140 E Southlake Blvd, Suite L-439

Southlake, Texas 76092

214-228-1886

arnold200@gmail.com

Pro Se Litigant

# CERTIFICATE OF INTERESTED PERSONS

Appellant certifies that the following listed persons and entities as described in the fourth sentence of *Rule 28.2.1* have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal:

1) **Plaintiff-Appellant:** Conghua Yan

2) **Defendants-Appellees:** State Bar of Texas; Barrows Firm; Leslie Starr Barrows; William Albert Pigg; Samantha Ybarra; Luis Jesus Marin; Daniel Eulalio Martinez; Rachel Ann Craig; Lori L. Deangelis; U.S. Bank.

3) **Counsel for Defendants-Appellees:** Amanda Marie Kates; Michael G. Graham; Royce A. Lemoine; Melvin Keith Ogle; Caroline Cyrier; Jon-William Nathaniel James; Roland K. Johnson; Melissa Hill; Tyler James Hill.

/s/ Conghua Yan

Conghua Yan, Pro Se Plaintiff

## STATEMENT REGARDING ORAL ARGUMENT

Plaintiff-Appellant Conghua Yan respectfully requests that oral argument be heard on this appeal. As demonstrated by the arguments below, this case involves several matters of federal law that are of first impression, and some of those issues are complex.

# Table of Contents

CERTIFICATE OF INTERESTED PERSONS ................................................................ 3

STATEMENT REGARDING ORAL ARGUMENT ...................................................... 4

JURISDICTIONAL STATEMENT ............................................................................ 12

INTRODUCTION ...................................................................................................... 13

ISSUES PRESENTED ................................................................................................ 14

STATEMENT OF THE CASE .................................................................................... 19

    I.   Main Proceedings: ......................................................................................... 19

    II.   Ancillary Proceedings: .................................................................................. 23

STATEMENT OF THE FACTS .................................................................................. 23

    I.   Tangible facts (ROA.1046-1061[¶¶28-126]) alleged and presented with evidence: ...................... 23

    II.   Alleged facts must assumed to be true, including but not limited to (ROA.1037-1180): .............. 28

    III.   Enough facts to state a claim to relief that is *plausible* on its face: ........................... 30

SUMMARY OF THE ARGUMENT .......................................................................... 31

ARGUMENT AND AUTHORITIES ......................................................................... 34

    I.   Standard of Review ....................................................................................... 34

    II.   Motion to Dismiss Standard .......................................................................... 34

    III.   Requiring Liberal Construction for Pro Se's pleadings ............................... 36

        A.   Liberal construction standard applies to all pro se filings as to do substantial justice. ............... 36

        B.   All materials subsequently filed are required to be considered as amendments to original complaint in pro se's favor .............................................. 37

        C.   The FRCP does not require pro se "to plead the legal theory, facts, or elements underlying his claim ........................................................................ 37

        D.   This Court has discretion to consider any noncompliant brief ................... 38

    IV.   Authorities: ................................................................................................... 38

        A.   Federal statutes ........................................................................................... 38

        B.   SCOTUS precedent ..................................................................................... 38

        C.   State statutes ............................................................................................... 39

    V.   Rule *12* dismissal does not pass the threshold unless all sets of facts and all possible legal theories are considered. ....................................................... 39

A.     The Decisions circumvented ERISA preemption, which supersedes the Eleventh Amendment and all state laws, resulting in a manifest miscarriage of justice. ...................................................... 39

B.     The Decisions erred in ignoring alleged ERISA prospective relief. ............................................ 41

C.     The Decisions failed to identify and conclude other key alleged provisions. ............................ 42

D.     The FCR failed to find the fact of the *multiple* alleged unlawful temporary QDROs. ............... 45

E.     The Decisions ignored the breadth of ERISA, *§ 1962* and *§ 664* provisions. ........................... 46

F.     The Decisions failed to apply the *Nesses* reasoning and to distinguish alleged capacity. ........... 47

VI.     Issuing temporary QDRO to award attorney fees or altering QDRO under the guise of spousal support to circumvent ERISA anti-alienation provision, with the true intention of obtaining attorney fees, is unlawful and constitutes a *§ 664* predicate act. All money must be returned. ........................... 49

A.     Associate judge's court has no jurisdiction to render a trial remedy QDRO. ........................... 49

B.     Altering order act is usurpation of judicial authority, displacing the court as decision maker. .. 50

C.     The altered QDRO was under a forged cause of action that was never pleaded into the case. ... 51

D.     All the fees that Texas attorney unlawfully obtained from ERISA funds must be returned to restore the status quo ante. ........................................................................................................... 52

VII.     The court erred in granting Deangelis' *12(b)(1)* motion regarding RICO, antitrust and *§ 1983* claims. 55

A.     A state statutory judge should not be granted blanket federal common-law judicial immunity without examining federal and state statutes. ................................................................................. 55

B.     Federal judicial immunity applies only to Article III judges, state law cannot modify federal common law. ............................................................................................................................... 57

C.     Article III does not permit non-Article III court to try cases involving deprivations or transfers of a citizen's liberty or property. ............................................................................................................ 60

VIII.     Core civil cause of action is substituted with another claim that neither party briefed, this guarantees a reversal. ............................................................................................................... 61

A.     The Decisions failed to identify and conclude factual cause of action. ..................................... 61

B.     The Decisions correctly acknowledged Antitrust Defendants are active participants and not immune from antitrust claim, but failed to distinguish relevant precedents. ..................................... 62

C.     The Order erred in granting a Rule 12(b)(6) dismissal over *§ 1* claim after Antitrust Defendants waived any defense over *§ 1* claim during briefing stage. ................................................................. 64

IX.     The court erred in granting MarinMartinezCraig *12(b)(1)* dismissal without prejudice regarding *§ 1983* claims. ............................................................................................................... 65

A.     The strongest federal defense available to any state actor, other than a public prosecutor, against *§ 1983* claim under *individual capacity* is qualified immunity. The Decisions ruled beyond the boundaries of this federal defense. ........................................................................................ 65

B.     The FCR failed to identify and conclude key facts under *§ 1983* claims. ................................. 66

C.     The Decisions erred in failing to apply *Nesses* reasoning to distinguish the premise of Yan's suit. 68

D. *Young* permits prospective relief, ERISA supersede sovereign immunity. ...................................69

X. The court erred in granting BarrowsYbarra, and BarrowsFirm 12(b)(1) motion with prejudice regarding antitrust and *§ 1983* claims. ...................................................................................70

    A. The courts cannot omit Minnesota common-law attorney immunity factor in an interstate case. 71

    B. Federal common-law immunity is not absolute for private attorneys...........................................71

    C. "[Texas court] is without the authority to divest that power or delegate it to others" to alter a rendition. *See Meshell v. State*, 739 S.W.2d 246 (Tex. Crim. App. 1987),...........................................74

XI. The court erred in granting RICO Defendants' *12(b)(6)* motion with prejudice. ......................77

    A. Allegations are premised on the legal theory that the victim suffers ERISA fund injury, a predicate act under *§ 1961(1)*, incorporating *§ 664.* ...........................................................................78

    B. The facts are well-pleaded with evidence attached.......................................................................80

    C. Defendants waived arguments concerning Yan's legal theory. ....................................................81

XII. The court erred in granting USBank's *12(b)(6)* motion.................................................................82

    A. The Order erred in relying on USBank's responsive motion to determine Yan's factual allegations instead of reviewing Yan's complaint. ............................................................................82

    B. Proving pattern is not required under *§ 1962(d).* ......................................................................84

    D. USBank is alleged breaching fiduciary duty by blatantly determining a Due Process-violating unlawful order as a legitimate QDRO and failing to object to the court as the Department of Labor's opinion instructed...................................................................................................................................87

    E. The final report concluded factual allegations from inexplicable paragraphs. ...........................89

XIII. 21-Day Safe Harbor, the *28 U.S.C. § 636* right to appeal to preserve issue, and Pre-filing Injunction: .....................................................................................................................................90

    A. Initial Rule *11* motion complied with waiver doctrine...............................................................90

    B. Re-filing Rule *11* motion after 21 days is not frivolous. ...........................................................91

    C. Zealous advocacy requires objection to preserve the issue.........................................................92

    D. Filing objection under *28 U.S.C. § 636(b)(1)(C)* is a constitutional right. ...............................94

    E. The district court sua sponte imposed pre-filing injunctions, in violation of due process..........95

XIV. Finality: .......................................................................................................................................95

    A. The final judgment neither adjudicates all claims of all parties nor cites Rule *54(b).*...............95

    B. Pigg filed the answer, not a Rule 12 motion. .............................................................................96

    C. The Order expressly did not rule on three claims against Pigg; therefore, the final judgment erred in disposing of all claims. ......................................................................................................97

I. Ending Statement: ...........................................................................................................................97

CONCLUSION....................................................................................................................................98

CERTIFICATE OF SERVICE ................................................................ 101

CERTIFICATE OF COMPLIANCE ....................................................... 102

RELATOR'S APPENDIX..................................................................... 103

## Cases

*ACS Recovery Services, Inc. v. Griffin*, 723 F.3d 518 (5th Cir. 2013) ..........................40

*Aetna Health Inc. v. Davila*, 542 U.S. 200 (2004) ........................................................40

*Agostini v. Felton*, 521 U.S. 203 (1997)........................................................................38

*Akin v. Louisiana National Bank of Baton Rouge*, 322 F.2d 749 (5th Cir. 1963) ........58

*Alwazzan v. Alwazzan*, NO. 01-16-00589-CV (Tex. App. Dec. 6, 2018).......................79

*Americans United, Inc. v. Walters*, 155 U.S.App.D.C. 284, 477 F.2d 1169 (1973) .......67

*Anders v. California*, 386 U.S. 738 (1967) .....................................................................92

*Aoude v. Mobil Oil Corp.*, 892 F.2d 1115 (1st Cir. 1989) ..............................................51

*Arana v. Ochsner Health Plan*, 338 F.3d 433 (5th Cir. 2003) .......................................40

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)...........................................................................67

*Axon Enter. v. Fed. Trade Comm'n*, 143 S. Ct. 890 (2023) .......................................33, 60

*Bader v. Atlantic International, Ltd.*, 986 F.2d 912 (5th Cir. 1993) ..............................96

*Baisch v. Gallina*, 346 F.3d 366 (2d Cir. 2003)..............................................................86

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ..........................................................35

*Black v. North Panola School Dist*, 461 F.3d 584 (5th Cir. 2006) ................................36

*Blankenship v. Buenger*, No. 15-50974 (5th Cir. Jun. 28, 2016)...................................34

*Boggs v. Boggs*, 520 U.S. 833 (1997) .......................................................................52, 89

*Brewer v. Lennox Hearth Prods.*, LLC, 601 S.W.3d 704 (Tex. 2020) ...........................76

*Brooke Group Ltd. v. Brown Williamson Tobacco Corp.*, 509 U.S. 209 (1993) ...........63

*Burrell v. Staff*, 60 F.4th 25 (3d Cir. 2023) ...................................................................99

*Bye v. MGM Resorts Int'l*, 49 F.4th 918 (5th Cir. 2022)................................................37

*Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477 (Tex. 2015)............................................74

*Cf. Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206 (1998)....................................................46

*Christopher v. Mobil Oil Corp.*, 950 F.2d 1209 (5th Cir. 1992).....................................41

*City of N.Y. v. Bello*, No. 13-2931-cv (2d Cir. 2014)......................................................86

*Cledera v. United States*, No. 20-10914 (5th Cir. Feb. 5, 2021).....................................61

*Colonial Life Accident Insurance Company v. Medley*, 584 F. Supp. 2d 368 (D. Mass. 2008) .................59

*Dalton v. Dalton*, 551 S.W.3d 126 (Tex. 2018)...............................................50, 56, 88

*Doe v. McKesson*, 935 F.3d 253 (5th Cir. 2019) ...........................................................90

*Dye v. Cowan*, 472 F.2d 1206 (6th Cir. 1972) ...............................................................56

*Egelhoff v. Egelhoff*, 532 U.S. 141 (2001) .....................................................................53

*Erickson v. Pardus*, 551 U.S. 89 (2007) ........................................................................36

*Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938) .................................................................57

*Estate of Altobelli v. Int'l Business Machines*, 77 F.3d 78 (4th Cir. 1996) ...................88

*E-Systems, Inc. v. Pogue*, 929 F.2d 1100 (5th Cir. 1991) ........................40, 41, 53, 69

*Ettinger v. Miller (In re Miller)*, 730 F.3d 198 (3d Cir. 2013)......................................92

*Evans v. Safeco Life Ins. Co.*, 916 F.2d 1437 (9th Cir. 1990)................................................................39

*Ex parte Young*, 209 U.S. 123 (1908)...........................................................................................................69

*Farguson v. Mbank Houston, N.A.*, 808 F.2d 358 (5th Cir. 1986)........................................................93

*Ferri v. Ackerman*, 444 U.S. 193 (1979)..........................................................................................33, 71

*Finley Res. v. Headington Royalty, Inc.*, 672 S.W.3d 332 (Tex. 2023)..............................................46

*FMC Corp. v. Holliday*, 498 U.S. 52 (1990)..............................................................................................39

*Ford v. British Petroleum*, CIVIL ACTION NO. 12-965 (E.D. La. Mar. 17, 2014).........................36

*Franchise Tax Bd. v Laborers Vacation Trust*, 463 U.S. 1 (1983).......................................................39

*Geier v. Am. Honda Motor Co.*, 529 U.S. 861 (2000).............................................................................58

*Goff v. Taylor*, 706 F.2d 574 (5th Cir. 1983)...........................................................................................40

*Goins v. City of Sansom Park*, Civil Action No. 4:14-cv-365-O (N.D. Tex. Jun. 29, 2015).............36

*Gonzalez v. Blue Cross Blue Shield Ass'n*, 62 F.4th 891 (5th Cir. 2023)............................................40

*Grant v. Cuellar*, 59 F.3d 523 (5th Cir. 1995)..........................................................................................38

*Great Plains Tr. v. Morgan Stanley Dean Witter*, 313 F.3d 305 (5th Cir. 2002)..............................39

*Green v. Mansour*, 474 U.S. 64 (1985).......................................................................................................42

*Greenlaw v. United States*, 554 U.S. 237 (2008).....................................................................................61

*Heckert v. Heckert*, No. 02-19-00298-CV (Tex. App. May. 21, 2020)................................................52

*Housing v. Queen*, No. 14-30512 (5th Cir. Mar. 12, 2015)...................................................................47

*Howard v. King*, 707 F.2d 215 (5th Cir. 1983).........................................................................................37

*In Interest of J.V.G.*, No. 09-06-015 CV (Tex. App. Jul. 12, 2007)...............................................50, 75

*In re Coastal Land Development Corporation*, Case No. 07-51267-NPO (Bankr. S.D. Miss. May. 29, 2009)..........................................................................................................................................................91

*In re D.L.M.*, 982 S.W.2d 146 (Tex. App. 1998).....................................................................................56

*In re Ginsberg*, 630 S.W.3d 1 (Tex. 2018)................................................................................................79

*In re Insurance Brokerage Antitrust Litigation*, 618 F.3d 300 (3d Cir. 2010).................................86

*In re K.A.R*, 171 S.W.3d 705 (Tex. App. 2005)...............................................................................50, 75

*In re Lausch*, 177 S.W.3d 144 (Tex. App. 2005)....................................................................................79

*Ins. Corp. of Ir. v. Compagnie Des Bauxites De Guinee*, 456 U.S. 694 (1982)................................52

*Janssen v. Lommen*, No. A14-0452 (Minn. Ct. App. Dec. 22, 2014)..................................................71

*Jones v. Johnson*, 134 F.3d 309 (5th Cir. 1998)......................................................................................56

*Lance v. Dennis*, 546 U.S. 459, 463 (2006)...............................................................................................59

*Larson v. Domestic Foreign Corporation*, 337 U.S. 682 (1949)..........................................................67

*Linn v. Saitin*, No. 14-30094 (5th Cir. 2014)...........................................................................................73

*Mclaughlin v. Mississippi Power Co.*, 376 F.3d 344 (5th Cir. 2004)..................................................97

*McQueen v. City of Cincinnati*, Case No. 1:20-cv-00864 (S.D. Ohio May. 12, 2021).....................36

*Mendoza v. Strickler*, 51 F.4th 346 (9th Cir. 2022)...............................................................................52

*Meshell v. State*, 739 S.W.2d 246 (Tex. Crim. App. 1987)...................................................................74

*Moran v. Simpson (In re Life Partners Holdings, Inc.)*, No. 21-11231 (5th Cir. Jul. 6, 2022)........36

*Muhammad v. State of Louisiana*, Civil Action No: 99-3742, C/W 99-2694 SECTION: 'J'(5) (E.D. La. Dec. 21, 2000)*........................................................................................................................................92

*Neitzke v. Williams*, 490 U.S. 319 (1989).................................................................................................91

*Nesses v. Shepard*, 68 F.3d 1003 (7th Cir. 1995)...........................................................................passim

*Newby v. Enron Corp.*, 302 F.3d 295 (5th Cir. 2002)............................................................................34

*Newpark Shipbuilding Repair, v. Roundtree*, 723 F.2d 399 (5th Cir. 1984).....................................95

*Priester v. Lowndes County*, 354 F.3d 414 (5th Cir. 2004) ..................................................... 35

*Quern v. Jordan*, 440 U.S. 332 (1979) .............................................................................. 42

*Qureshi v. U.S.*, 600 F.3d 523 (5th Cir. 2010) .................................................................. 95

*R.W.T. v. Dalton*, 712 F.2d 1225 (8th Cir. 1983) .............................................................. 58

*Rankin v. Bateman*, 686 S.W.2d 707 (Tex. App. 1985).......................................................... 51

*Rey v. State*, 897 S.W.2d 333 (Tex. Crim. App. 1995) .......................................................... 77

*Robinson v. Volkswagenwerk AG*, 940 F.2d 1369 (10th Cir. 1991) ........................................ 71

*Salinas v. United States*, 522 U.S. 52 (1997) .............................................................. 85, 86

*Saltz v. Tennessee Department of Employment Security*, 976 F.2d 966 (5th Cir. 1992)............................ 69

*Salve Regina College v. Russell*, 499 U.S. 225 (1991) ........................................................ 58

*Seago v. O'Malley*, 91 F.4th 386 (5th Cir. 2024) .............................................................. 12

*Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479 (1985) ....................................................... 46, 78

*Seminole Tribe of Fla. v. Florida*, 517 U.S. 44 (1996) ..................................................... 62, 67

*Shaikh v. Tex. A&M Univ. Coll. of Med.*, No. 16-20793 (5th Cir. Jun. 20, 2018) ........................... 35

*Sparks v. Duval County Ranch Co., Inc.*, 604 F.2d 976 (5th Cir. 1979).................................... 72, 87

*Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69 (2013) ........................................................ 59

*Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998)................................................ 52

*Stein v. Stein*, 868 S.W.2d 902 (Tex.App.-Houston [14th Dist.] 1994, no pet.) ......................... 79

*Stewart v. Thorpe Holding Co. Profit Sharing*, 207 F.3d 1143 (9th Cir. 2000) .......................... 88

*Tax Analysts and Advocates v. Shultz*, 376 F. Supp. 889 (D.D.C. 1974).................................. 66

*Taylor v. Tolbert*, 644 S.W.3d 637 (Tex. 2022) ......................................................... passim

*Tex. Dep't of Pub. Safety v. Sunuc*, No. 13-19-00443-CV (Tex. App. Feb. 3, 2022).................... 52

*Thomas v. Arn*, 474 U.S. 140 (1985)...................................................................... 93, 94

*Thomas v. Thompson*, CAUSE NO.: 1:10CV10-SA-JAD (N.D. Miss. Jun. 8, 2011) ........................... 84

*Tower v. Glover*, 467 U.S. 914 (1984) .................................................................. 33, 71

*Troice v. Proskauer Rose, LLP*, 816 F.3d 341 (5th Cir. 2016) ............................................ 74

*Truong v. Bank of Am., N.A.*, 717 F.3d 377 (5th Cir. 2013) .............................................. 47

*Tyler v. Hennepin County*, 598 U.S. 631 (2023) ............................................................ 98

*U.S. v. Dean*, 100 F.3d 19 (5th Cir. 1996)................................................................ 34

*United States v. Applins*, 637 F.3d 59 (2d Cir. 2011) ..................................................... 86

*United States v. Beechum*, 582 F.2d 898 (5th Cir. 1978).................................................. 98

United States v. Dees, 125 F.3d 261 (5th Cir. 1997)........................................................ 94

*United States v. Gurry*, Criminal Action No. 16-cr-10343-ADB (D. Mass. Jan. 17, 2019) ............... 85

*United States v. Monsanto*, 491 U.S. 600 (1989)........................................................... 46

*United States v. Sineneng-Smith*, 140 S. Ct. 1575 (2020) ................................................. 64

*United States v. Sweet*, No. 8:01-CV-331-T-23TGW, 2001 U.S. Dist. LEXIS 17131 (M.D. Fla. Sept. 17, 2001) .................................................................................................. 92

*Walker v. City of Birmingham*, 388 U.S. 307 (1967)....................................................... 98

*Westchester Fire Ins. v. Nuckols*, 666 S.W.2d 372 (Tex. App. 1984)..................................... 52

*WIWA v. ROYAL DUTCH PETROLEUM COMPANY*, 96 Civ. 8386 (KMW) (S.D.N.Y. Feb. 22, 2002). 84

*Wright v. El Paso County Jail*, 642 F.2d 134 (5th Cir. 1981).............................................. 37

*Ying Jing Gan v. City of New York*, 996 F.2d 522 (2d Cir. 1993).......................................... 48

*Younger v. Harris*, 401 U.S. 37 (1971).................................................................... 59

*Youngkin v. Hines*, 546 S.W.3d 675 (Tex. 2018) ........................................................ 74, 75

## Statutes

*15 U.S.C. § 1* ...................................................................................................................passim

*15 U.S.C. § 2* ...................................................................................................................passim

*18 U.S.C. § 1341* ..................................................................................................... 13, 81, 82

*18 U.S.C. § 1343* ..................................................................................................... 13, 81, 82

*18 U.S.C. § 1956* ............................................................................................................ 17, 43

*18 U.S.C. § 1962* .............................................................................................................passim

*18 U.S.C. § 664* ...............................................................................................................passim

*28 U. S. C. § 1257* .................................................................................................................. 59

*28 U.S.C. § 636* ...............................................................................................................passim

*29 U.S.C. § 1056* .................................................................................................................. 14

*29 U.S.C. § 1056(d)(3)(B)(i)* ................................................................................................ 49

*29 U.S.C. § 1056(d)(3)(G)(i)* ............................................................................................... 88

*29 U.S.C. § 1056(d)(3)(H)(i)* ................................................................................ 82, 88, 89, 90

*29 U.S.C. § 1144(a)* .............................................................................................................. 40

*42 U.S.C. § 1983* .............................................................................................................passim

ERISA § 502(a) ....................................................................................................................... 40

ERISA § 502(a)(1)(B) ............................................................................................................. 40

ERISA § 514(b)(2)(A) ............................................................................................................. 40

Tex. Const. Art. V, § 1 ........................................................................................................... 56

*Tex. Fam. Code § 109.001(c)* ............................................................................................... 50

*Tex. Fam. Code § 201.007* .................................................................................................... 56

*Tex. Fam. Code § 201.017* ........................................................................................ 57, 58, 59, 60

*Tex. Fam. Code § 9.102* ........................................................................................................ 56

*Tex. Gov't Code § 81.054* ..................................................................................................... 47

*Tex. Gov't Code § 81.072* ..................................................................................................... 46

*Tex. Gov't Code § 81.072(g)* ........................................................................................... 65, 69

*Tex. Gov't Code § 81.106* ..................................................................................................... 46

*U.S. Const. Art. I, § 8, cl. 3* ............................................................................................. 62, 67

## Rules

*Fed. R. Bankr. P. 9011* .......................................................................................................... 92

*Fed. R. Civ. P. 11* ................................................................................................ 34, 90, 91, 92

*Fed. R. Civ. P. 12 (b)* ............................................................................................ 17, 34, 39, 64

*Fed. R. Civ. P. 12 (b)(1)* ...................................................................................................passim

*Fed. R. Civ. P. 12 (b)(6)* ...................................................................................................passim

*Fed. R. Civ. P. 12(g)* ............................................................................................................. 64

*Fed. R. Civ. P. 12(h)* ............................................................................................................. 64

*Fed. R. Civ. P. 54* ............................................................................................... 17, 34, 95, 96

# JURISDICTIONAL STATEMENT

This Court has jurisdiction over the district court's final judgment pursuant to *28 U.S.C. § 1291*.[1]

---

[1] *Seago v. O'Malley*, 91 F.4th 386, 389 (5th Cir. 2024).

## INTRODUCTION

Yan brings this action under the Racketeer Influenced and Corrupt Organizations (RICO) Act, specifically *18 U.S.C. § 1962* (hereinafter "*§ 1962*"), concerning violations of *18 U.S.C. §§ 1341*, *1343*, and *664* ("*§ 1341*," "*§ 1343*," and "*§ 664*"), as well as antitrust violations under *15 U.S.C. § 2* ("*§ 2*") and claims under *42 U.S.C. § 1983* ("*§ 1983*"). The case involves injuries to ERISA-protected funds. Yan asserts these claims against the State Bar of Texas ("SBTX") and other parties, accusing them of conspiracy and shielding attorneys from accountability.

Family courts, once trusted as neutral arbiters, have transformed into fee-collection agencies, with attorneys exploiting vulnerable clients. Texas attorneys, fully aware of their clients' defenselessness, manipulate legal mechanisms to unlawfully siphon retirement savings under the guise of temporary order, non-appealable per state statue. ERISA was designed to protect retirement savings, recognizing their importance to national financial security. Yet, attorneys routinely evade ERISA's anti-alienation protections, draining ERISA-protected funds for illegal revenues.

Yan's case exemplifies this abuse. His attorneys embezzled his Minnesota 401(k) through an *altered* Qualified Domestic Relations Order (hereinafter "QDRO"), blatantly circumventing ERISA anti-alienation provision. Despite his

efforts to seek justice, Yan has been blocked at every turn by the Texas judiciary, where bar members engage in damage control to protect each other. His grievances have consistently been dismissed, leaving him without remedy.

The central question before this Court is whether it will uphold ERISA's anti-alienation protection or allow attorneys to continue exploiting defenseless clients. Yan's case reveals a statewide pattern of attorneys exploiting their legal expertise for personal gain at their clients' expense. He urges this Court to end this *§ 664* racketeering scheme and to safeguard public retirement savings.

## ISSUES PRESENTED

This appeal involves five motions to dismiss, one answer, from ten parties under nine claims, and one injunction, creating the following legal issues:

1. Whether *ERISA preemption* supersedes *Eleventh Amendment* and *all* state law immunity defenses?

2. Whether, under *ERISA preemption and anti-alienation*, all *attorney's fees unlawfully obtained* from ERISA plans *must* be *returned* to restore the *status quo ante*?

3. Under *29 U.S.C. § 1056*, whether ERISA requires administrators to exercise fiduciary duty in *determining* whether court documents *qualify* as Qualified Domestic Relations Orders, which are enforceable?

4.    After _Taylor v. Tolbert, 644 S.W.3d 637 (Tex. 2022)_ (hereinafter "_Taylor_"), whether federal courts should continue applying _blanket_ Texas statutory or common-law _immunity_, or reaffirm federal common-law immunity and analyze specific federal statutes for Texas _attorney_ accused of <u>federal offense</u>?

5.    <u>Federal judicial immunity</u> applies to <u>Article III judges</u> who possess <u>constitutional jurisdiction</u>. State statutory judges operate under state law and possess statutory jurisdiction. Can state law <u>expand</u> federal common-law <u>immunity</u> to grant judicial immunity to these non-Article III <u>statutory</u> judges?

6.    Neither the U.S. nor Texas Constitutions _delegate judicial discretion_ to _attorneys_. Does <u>lawyers'</u> collusion to <u>alter</u> a court order after open court rendition, by <u>exploiting</u> ministerial <u>underwriting</u> loopholes, <u>usurp judicial authority</u> and render the order <u>unconstitutional</u>?

7.    No petition for spousal support was filed, and no corresponding hearing was held. The QDRO was altered by attorneys and substituted with a distinct _civil cause of action_ that was _neither filed nor heard_, resulting in a deprivation of out-of-state ERISA funds. Does this garnishment action with no _cause of action_ pleaded constitute a _due process_ violation?

8.    The Texas Constitution only grants <u>trial authority</u> to <u>Article III judges</u>. When a <u>non-Article III</u> statutory <u>court</u>, acting <u>beyond</u> its statutory jurisdiction, renders a trial remedy involving the deprivation of liberty or property—powers <u>reserved for trial</u>

courts—does this <u>usurp constitutional jurisdiction</u>, rendering the acts unconstitutional?

9.    Texas statute explicitly states that a QDRO is an appealable, post-divorce remedy after trial, and final judgment, upon petition, and the Texas Constitution _prohibits_ an _associate judge's court_ from exercising constitutional jurisdiction or presiding over trials. Is an _unappealable temporary QDRO_ remedy rendered in the _associate judge's court unlawful_?

10.   Whether a state _non-Article III_ statutory judge, facing federal claims can be granted _blanket_ federal common-law _judicial immunity without determining_ whether the alleged conduct falls within the court's limited _statutory jurisdiction_?

11.   Under the _21-day safe harbor provision_ and waiver doctrine in Rule _11_, whether _refiling_ after 21 days is considered _frivolous_?

12.   The _right to appeal_ a magistrate's FCR under _28 U.S.C. § 636_ ensures the First Amendment right to petition and reinforces the constitutional Article III right to have a case heard by an Article III judge. Whether Plaintiff is _prejudiced_ by a chilling effect when filing _an objection_ to preserve legitimate issues, _resulting in a sua sponte injunction_?

13.   Whether the imposition of a _sua sponte prefiling injunction without notice or a hearing_ violates constitutional _due process rights_?

14.  In a *multi-claims* and *multi-parties* lawsuit, whether a *Rule 54 final judgmen*t truly exist if one party's responsive answer, containing *separate claims*, was *never addressed* in any pre-trial order?

15.  Under the *Rule 12*, whether dismissals meet the threshold if crucial *factual elements* or the allegations are *materially omitted* or *substituted*?

16.  The FCR erred in recommending a *12(b)(1)* motion based on immunity *without* conducting a *12(b)(6)* analysis, the Order *accepted the findings* but revoked the immunity recommendation, subsequently dismissing the case under *12(b)(6)* without accomplishing sufficient findings. Furthermore, the Order erroneously substituted the antitrust *§ 2* claim with a *§ 1* claim and replaced the RICO *§ 664* claim with *§ 1956*, which was not briefed. Should this dismissal be reversed?

17.  Whether the plaintiff's ERISA fund injuries, caused by the defendants' *§ 664* predicate act under a RICO conspiracy, through a fraudulent, altered court order based on a fabricated civil cause of action that was never filed in state court, should apply the *Nesses v. Shepard*, 68 F.3d 1003 (7th Cir. 1995) (hereinafter "Nesses reasoning") to prevent the RICO, antitrust, and *§ 1983* defendants from shielding their federal offenses under the *state-proceeding-exemption* theory, given that the plaintiff has not sought to overturn any state court or disciplinary proceeding.

18.   Under a *§ 1962(d)* claim, whether multiple involved in *§§ 1962(a), (c), (d)* offenses, whether _each_ "person" must to have _individually_ conspired to commit at least _two predicate acts_?

# STATEMENT OF THE CASE

## I.  Main Proceedings:

On July 21, 2023, Plaintiff-Appellant Conghua Yan ("Yan") filed an original complaint (ROA.18) in person, asserting RICO *§ 1962* claims based on a pattern of violations under *§§ 664*, *1341*, and *1343*, along with antitrust *§ 2* and *§ 1983* claims against Defendants-Appellees: the State Bar of Texas("SBTX"); the Barrows Firm("BarrowsFirm"); Leslie Starr Barrows("Barrows"); William Albert Pigg ("Pigg"); Samantha Ybarra("Ybarra"); Luis Jesus Marin( "Marin"); Daniel Eulalio Martinez("Martinez"); Rachel Ann Craig("Craig"); Lori L. DeAngelis("Deangelis"); U.S. Bank( "USBank"); and Defendant Tarrant County("TarrantCounty"), seeking *prospective relief* to prevent future violations and *monetary relief*.

In this brief, as needed, Yan will collectively refer to all parties sued under the first RICO claim as "RICO Defendants" (SBTX, BarrowsFirm, Barrows, Pigg, Ybarra, Marin, Martinez, Craig, Deangelis) and all parties sued under the second antitrust claim as "Antitrust Defendants." (SBTX, Barrows, Pigg, Ybarra, Marin, Martinez, Craig, Deangelis)

On August 25, Yan discovered that district court clerk erroneously accepted paper-form original complaint (ROA.18) and the civil cover sheet (ROA.165) using the name of "Barrow Firm" in the caption of cover letter but issued a summons under

the name of "Barrows Firm" (ROA.176). Neither the clerk nor Yan detected the discrepancy at filing, resulting in one party being mistakenly recorded as "Barrow Firm" instead of "Barrows Firm." Yan filed a motion to amend (ROA.277-278[¶¶1-8]), explained the cause, and informed that Defendant "Barrows Firm" had not yet been served.

On August 28, upon the grant (ROA.6), First time ECF user Yan filed the first amended complaint (ROA.358) but filed attached exhibits (ROA.7) through ECF four days later. The Magistrate struck his whole filing (ROA.536) and ordered Yan to seek leave to file an amended complaint with the complaint and exhibits attached together in the ECF. Therefore, Yan had to file a motion to amend (ROA.540-541[¶¶8-10]), upon the grant (ROA.7-8), he filed the second amended complaint (ROA.692).

On September 14, Yan filed a motion to amend (ROA.868[¶¶8-10]), seeking to join USBank as a party under Rule 21. Yan informed that he sought to "add a new claim for USBank only, without changing any word in prior claims[.]" On September 18, upon the grant (ROA.9), Yan filed the third amended complaint (ROA.1029) on the same day.

On September 19, Deangelis filed a motion to dismiss (ROA.1197). Yan responded (ROA.1291) on September 26. Deangelis replied (ROA.1383) on October 6.

On September 19, TarrantCounty filed a motion to dismiss (ROA.1217). Yan responded (ROA.1375) on October 6. TarrantCounty replied (ROA.1450) on October 17.

On September 21, Pigg filed an answer to complaint (ROA.1230).

On September 21, Ybarra filed a motion to dismiss (ROA.1249). Yan responded (ROA.1386) on October 7. Ybarra replied (ROA.1554) on October 23.

On October 2, SBTX, Marin, Martinez and Craig (hereafter, collectively Craig with Marin, Martinez, the "MarinMartinezCraig") filed a motion to dismiss (ROA.1325). Yan responded (ROA.1460) on October 17. they replied (ROA.1565) on October 23.

On October 9, Barrows and BarrowsFirm filed a motion to dismiss (ROA.1414). Yan responded (ROA.1590) on November 13. They replied (ROA.1623) on November 27.

On December 28, the Magistrate issued FCR (ROA.1680)[2] granting five motions to dismiss filed by DeAngelis; TarrantCounty; Ybarra; SBTX and MarinMartinezCraig; Barrows and BarrowsFirm. Yan objected (ROA.1698) on January 2, 2024. Ybarra, Barrows and BarrowsFirm responded (ROA.1721). DeAngelis and Tarrant County responded (ROA.1729) as well. Yan supplementally objected (ROA.1731) on January 10.

On January 11, USBank filed a motion to dismiss (ROA.1744). Yan responded (ROA.1997) on February 11. USBank replied (ROA.2061) on April 15.

On April 23, the district court's final order("Order") accepted FCR and independently ruled on specific USBank's motion to dismiss (ROA.2076), rendered the final judgment on the same day (ROA.2094).

The Order "*adopts* the FCR's *findings* as the *findings* of the Court, *endorses* the FCR's *conclusions*, and *accepts* the FCR's *recommendation* in *part*." (ROA.2076).

On May 20, Yan filed a *59(e)* motion (ROA.2095), expressly mentioned the final judgement ignored Pigg, it was denied.

On June 12, Yan filed notice of appeal (ROA.2153).

---

[2] Note: USBank had not respond yet and the FCR's order explicitly did not include Pigg.

Yan will collectively refer to the FCR and the Order as the "Decisions".

## II.  Ancillary Proceedings:

Yan filed two Rule *11* motions, against TarrantCounty's counsel (ROA.464) and SBTX's counsels (ROA.261). TarrantCounty's counsel responded, asserting the 21-day safe harbor provision (ROA.483), but SBTX's counsel did not raise this argument (ROA.476). The magistrate issued one FCR to strike both Rule *11* motions without specifying reasons (ROA.534).

After 21 days, Yan made re-filing against SBTX's counsels (ROA.1184) and TarrantCounty's counsel (ROA.1238). This time, the magistrate issued two FCR (ROA.1284,ROA.1641). Yan objected to both (ROA.1286,ROA.1643). The district court denied first objection (ROA.1520) and imposed a sua sponte pre-filing injunction on Yan in the latter ruling (ROA.1665). Yan's request for reconsideration (ROA.1673) was denied.

## STATEMENT OF THE FACTS

### I.  Tangible facts (ROA.1046-1061[¶¶28-126]) alleged and presented with evidence:

1.  On March 13, 2022, Barrows filed a motion (ROA.1133) for *interim attorney's fee* as a civil cause of action, attached sworn in affidavit (ROA.1139-1140) with bills and invoices (ROA.1143-1166), stating *$19,300* fees (ROA.1046) all

incurred in a divorce suit, but fraudulently claimed fees from a *separate* criminal case (ROA.1168-1169). Her actual unpaid fees were less than *$19,300* (ROA.1046).

2. Pigg was Yan's counsel in the hearing, but he did not file pleading claiming his fees (ROA.1234[¶28]), neither did he testified with evidence (ROA.1046).

3. On April 13, Deangelis rendered a temporary QDRO (ROA.1174), ordering that Yan is the payee or recipient of a *pre-divorce* QDRO distribution, Yan was ordered to withdraw *$50,000* from 401(k), with *$25,000* paying Barrows' attorney fees and another *$25,000* paying Pigg's attorney fees. The *$25,000* that Yan was ordered by DeAngelis to pay Barrows includes *excessive $15,000* of *prepayment* that Barrows has not yet earned, as well as fees incurred from the *criminal case* in which Yan was not a party. Pigg never pleaded fees but he got a Buy-One-Get-One free reward. Neither counsel had filed statutory required QDRD *petition* as of that day (ROA.1046,ROA.1050).

4. On April 26 and May 26, Barrows, Ybarra (hereafter, collectively with Barrows, the "BarrowsYbarra"), and Pigg signed two temporary QDROs (ROA.1176-1178), submitted for the district judge's signature. The orders were **altered** (ROA.1047) to state that Yan had an April 13 hearing for the *civil cause of action* of *spousal support*, designating $25,000 for spousal support to Fuyan Wang, Yan's wife, with the disbursement supervised by Barrows (ROA.1069).

BarrowsYbarra conducted multiple mails fraud with USBank and the court afterwards (ROA.1047, ROA.1052-1053).

5. Two months after signing the May 26, 2022 order, learned that USBank contacted Yan for that fraudulent QDRO, Pigg emailed (ROA.1114) Yan on July 21, misleading Yan that he was ordered to withdraw $50,000 from the April hearing, with $25,000 to be paid to Barrows and $25,000 to Pigg. Pigg told Yan that he never signed BarrowsYbarra's altered QDRO (ROA.1054-1055).

6. On July 21, Yan signed an objection letter (ROA.2028) to USBank, asserting he did *not* have a spousal support hearing and that his funds are protected under *procedural due process*. Knowing that attorneys *mailed* USBank with the fraudulent May 26 order, Yan attached a copy of the actual April 13 order as proof.

7. On August 1, in response to Yan's objection, USBank admitted the *issue of fact* that the May 26 order was "*in direct conflict*" (ROA.2032) with the April 13 order. However, they determined an *issue of law* based on a manufactured legal theory that the May 26 order (*spousal support*) was "in *addition* to, and *separate* from" the April 13 order (ROA.2018, ROA.2032), despite Yan's objection that no spousal support hearing occurred on April 13, rendering the additional order a violation of Due Process. USBank disregarded Yan's objection and diverted the funds without questioning the court in September 2022.

8. After learning that Yan objected to the altered QDRO, on August 5, BarrowsYbarra emailed (ROA.1115) Pigg, asking him to coordinate, stating, "*In order for us to obtain our attorney's fees*, the order *must* say the fees are for *spousal support*. There is *no way around* it."

9. On August 7, Piggs emailed (ROA.1115) Yan, "at the hearing in April, you were ordered to get 50K from your 401(k)…Leslie tried to get her $25k via a QDRO, claiming it was for *spousal support – not attorney's fees as ordered*. I *did not sign off* on that [May 26] QDRO because it *would not be true* and I *am not going to sign a* [May 26] court document that *is not true*." (Pigg lied; he still wanted his $25,000, so he told Yan that he did not sign the May 26 order, even though he actually signed it twice).

10. On August 8, Piggs emailed (ROA.1117) Yan, "the legal issue is that we either *have to lie* and *accept* the QDRO…" (Pigg indeed lied on August 29 and accepted the QDRO).

11. On August 29, despite the fact that the Texas law do not authorize an associate court to re-clarify its temporary order 135 days after rendition, Barrows colluded DeAngelis to put pressure on Pigg in an email (ROA.1118), stating, "we need to clarify... *a ruling for attorney's fees* in her AJ's report." Pigg coordinated with Barrows to approve releasing the ERISA funds.

12. Marin and Martinez (ROA.1126-1129) dismissed Yan's grievances against Barrows and Pigg. Yan appealed both decisions to the Board of Disciplinary Appeals (hereinafter "BODA")—the highest tribunal for lawyer discipline.

13. BODA reversed only 6.1% of classification appeals in 2022-2023[3], with Yan succeeding both (ROA.1122-1123). However, Craig dismissed both cases (ROA.1124-1125), playing a key role in sealing the cover-up. Despite the BODA reversals, Craig and SBTX (ROA.1061[¶¶123-124]) conspired to conceal the RICO scheme.

14. The Tarrant DA office and Sheriff's office refused (ROA.1060[¶121]) to prosecute (ROA.1137).

15. The Texas associate judge courts have a decade-long pattern (ROA.1067[¶155]) of ordering temporary QDROs (ROA.1180,ROA.1490-1519) (citing 360-549246-13, 360th Dist. Ct., Tarrant Cnty, Tex. (2014); 360-479099-10, 360th Dist. Ct., Tarrant Cnty, Tex. (2012); 322-547540-13, 322nd Dist. Ct., Tarrant Cnty, Tex. (2014);360-479099-10, 360th Dist. Ct., Tarrant Cnty, Tex. (2011); D1-FM-08-005770, 53rd Dist. Ct., Travis Cnty, Tex. (2009)) to pay attorney's fees to both counsels, a breach of law (ROA.1061[¶¶125-126]) unknown to the public due to their inadequate legal knowledge.

---

[3] Bd. of Disciplinary Appeals, 2023 Annual Report 1 (2023), https://www.txboda.org/sites/default/files/PDFs/2023%20Annual%20Report%20Final.pdf

16. The Fort Worth federal judges dismissed Yan's civil suit with prejudice (ROA.2094), blocking him from pursuing further civil remedies, while other victims remain unaware.

17. While Missouri prosecutes *§ 664* crimes (ROA.1534, ROA.1980), Texas, particularly Tarrant County, does not. In Tarrant County, family court attorneys engaged in pension embezzlement, benefiting an associate judge through political contributions (ROA.1548-1549, ROA.1994-1995) (Barrows far right, DeAngelis second from the right).

18. SBTX disciplines some Texas attorneys for moral turpitude (ROA.1537, ROA.1543, ROA.1983, ROA.1989), but not others who obtain racketeering income for the corporation (ROA.1072). For them, a family's tragedy becomes a predatory opportunity, with Fort Worth judges and attorneys even personally boasting these misconduct[4].

II. <u>Alleged facts must assumed to be true, including but not limited to (ROA.1037-1180):</u>

1. Part of the funds for Deangelis' judicial election campaign came from attorneys' *§ 664* racketeering income (ROA.1049[¶80], ROA.1050[¶85],

---

[4] TEXAS JUDGE & KOONS AND FULLER ATTORNEYS: Shocking Performance Exposed!, *YouTube* ( O'Keefe Media Group, August 15, 2023), https://www.youtube.com/watch?v=HK2aDDwCckk

ROA.1052[¶91], ROA.1053[¶97], ROA.1067[¶154], ROA.1296[¶6], ROA.1314[¶83], ROA.1315[¶90], ROA.1974[¶3], ROA.1976[¶12]).

2. SBTX collects fees from attorneys, using funds that came from part of the racketeering and monopolization income to operate, including its disciplinary counsel, which functioned to provide ongoing RICO and monopoly scheme cover-ups as a benefit to well-connected attorneys. (ROA.1066-1068[¶¶149-152,155-157], ROA.1062-1063[¶¶127-133]).

3. BarrowsYbarra, Pigg and USBank engaged RICO fraud acts through emails and mailsl (ROA.1046-1047[¶¶69-74], ROA.1051-1057[¶¶87-108]).

4. BarrowsFirm operates using part of the racketeering income under the control of Barrows. (ROA.1068[¶¶157-159], ROA.1072-1073[¶¶168-170]).

5. BarrowsYbarra and Pigg colluded forcing Yan to sign a divorce settlement, tried to seal the conspiracy. Yan refused. (ROA.1057[¶108]).

6. Within 48 hours, Pigg withdrew (ROA.1047[¶74], ROA.1057[¶108], ROA.1095[¶323]) and abandoned Yan's case in attempt to cover up the RICO scheme, and sabotaged Yan's attempt to expose. (ROA.1075[¶179], ROA.1095[¶323]).

7. MarinMartinzeCraig "read" Barrows' email and accepted the solicitation, decided to cover up. (ROA.1060[¶120], ROA.1072[¶166], ROA.1073[¶171]).

8. USBank conspired with state actors, deprived Yan of his 401(k) without procedural due process, and altered Yan's marriage status to covered up. (ROA.1106-1107[¶¶407-411])

9. SBTX holds a monopoly over the legal services market, particularly in family courts, where both lawyers and judges are bar associates. SBTX associates committed predatory acts to obtain unjustified excessive fees, exploiting their advantage over legally inexperienced clients. (ROA.1080-1086[¶¶217-243])

10. SBTX associates acting as judges unjustly awarded attorney's fees to their peers serving as counsel, using court proceedings as a tool to exploit the legal service monopoly. (ROA.1063[¶¶127-128])

11. Yan, with limited legal knowledge, couldn't advocate for his rights because his counsel betrayed him by waiving arguments on attorney fees, thereby awarding those fees to themselves. (ROA.1399[¶41], ROA.1603[¶34], ROA.2113[¶37])

12. SBTX associates' conspiracy actions in obtaining excessive legal service fees from Yan through prepayment, sometimes without jurisdictions, constitute unjustified predatory acts in a monopoly. (ROA.1046[¶¶68,70], ROA.1062-1063[¶¶129-133])

III. <u>Enough facts to state a claim to relief that is *plausible* on its face:</u>

1. Fact: As a matter of fact, this QDRO was altered on the face; All attorney Defendants are SBTX associates; Pigg stated, we "*have to lie* and *accept* the QDRO,"

and Barrows stated, "*In order for us to obtain our attorney's fees*, the order *must* say the fees are for *spousal support*. There is *no way around* it." Pigg later colluded with Barrows to consent to the unlawful disbursement of QDRO funds.

2. Plausible fact: Premised on the allegation that Pigg lied and accepted the QDRO to allow BarrowsYbarra to obtain "*our attorney's fees*", MarinMartinzeCraig and any former/current SBTX associates may have also lied and accepted the <u>altered</u> QDRO to cover up, conspiring to conceal ongoing RICO scheme. Since 2022, every Texas judiciary actor lied, accepted this non-truthful QDRO, and circumvented remedying this ERISA funds injury (ROA.1057-1061). In the light most favorable, the provision "our attorney's fees" shall be liberally construed as "SBTX associates' racketeering income," as alleged by Yan.

## SUMMARY OF THE ARGUMENT

Yan claimed Minnesota ERISA fund injuries in all 9 claims, the issue of ERISA preemption is facially conclusive. ERISA preemption supersedes the Eleventh Amendment and all state laws. Yan pleaded supplemental prospective relief to prevent future ERISA violations, as the Supremacy Clause outweighs the Eleventh Amendment. The Decisions ignored the preemptive breadth of ERISA, RICO, *§ 664*, and the alleged racketeering income flow connecting the defendants.

Attorney fees obtained through *§ 664* racketeering activity must be returned to restore the status quo ante. This illegal embezzlement of ERISA funds cannot be justified under any interpretation of state or federal law. The decisions failed to apply *Nesses* reasoning, which distinguishes between claiming injuries caused by federal offense and disputes over state judgments. The guise of state proceedings does not exempt a federal offense claim. The Eleventh Amendment does not apply to federal suits against state actors in their individual capacities. The Texas constitution prohibits associate judges from exercising trial powers sua sponte. QDROs are statutory post-trial, final, and appealable remedies, associate judge lacks jurisdiction to issue QDRO. The altered QDRO was issued without notice, hearing, or rendition, violating due process, and it forged a cause of action was unsupported by pleadings.

Associate judges are not Article III judges and cannot receive blanket judicial immunity. The Decisions erred in citing state statutes to expand judicial immunity for state statutory judges. State law cannot expand federal common-law immunity. A magistrate's order may be ultra vires and void if it exceeds the scope of the Federal Magistrates Act, as could a state statutory judge's action.

Federal law declared by state courts is supreme over state law declared by federal courts. SCOTTX's 2022 *Taylor* ruled that federal causes of action cannot be barred by state law or policy. SCOTUS's 2023 *Axon Enter.* precedent emphasized

that only Article III courts can adjudicate cases involving property deprivation; state statutory courts cannot circumvent this barrier through unappealable temporary orders. *Ultra vires* is not exempt from sovereign or judicial immunity.

There is no federal absolute immunity for SBTX counsels in individual capacity, and state statutes granting such absolute immunity do not apply. The Interstate Commerce Clause bars sovereign immunity in RICO and antitrust matters. *Nesses* reasoning applies to SBTX counsels, who saw and accepted Barrows' conspiracy solicitation. SCOTUS's precedent *Ferri* and *Tower* ruled that private attorneys do not have federal immunity. *Taylor* held same. Both counsels colluded to alter/forge the court orders to obtain fees for themselves. This conduct is extrinsic fraud, structural error, infiltrating the legal framework.

The Decisions substituted Plaintiff's civil claims and underlying issues, ensuring reversal. The RICO dismissal was incorrect because it assumed Yan's claim involved money laundering, ignoring the embezzlement of pension funds and the second QDRO. The antitrust dismissal was incorrect because it focused on market competition, disregarding the unjustified predatory conduct in monopoly. The USBank RICO *12(b)(6)* ruling was flawed as the district court based its decision on USBank's motion, without citing Yan's complaint.

Yan's Rule *11* refiling was not frivolous; Imposing a sua sponte prefiling injunction without notice or hearing violated due process, prejudicing his constitutional right to object magistrate's FCR under *28 U.S.C. § 636* and to preserve issues and arguments.

The Order failed to dismiss Pigg's claims pursuant to Rule *54*, and the final judgment does not meet the finality.

## ARGUMENT AND AUTHORITIES

### I.  Standard of Review

This Court "review the district court's grant of an injunction for an abuse of discretion, and underlying questions of law de novo,"[5] "review a district court's interpretation of Rule [11 or 54 or 58] de novo,"[6] and "review de novo a district court's dismissal under"[7] Rule *12*.

### II.  Motion to Dismiss Standard

""Rule 12(b)(6) does **not** countenance ... dismissals based on a judge's **disbelief** of a complaint's factual allegations,") … (a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely.") … "[A] plaintiff

---

[5] *Newby v. Enron Corp.*, 302 F.3d 295, 301 (5th Cir. 2002).

[6] *U.S. v. Dean*, 100 F.3d 19, 20 (5th Cir. 1996).

[7] *Blankenship v. Buenger*, No. 15-50974, 5 (5th Cir. Jun. 28, 2016).

"receives the **benefit** of **imagination**, so long as the hypotheses are consistent with the complaint."" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 563 (2007).

"A motion to dismiss under Rule 12(b)(6) is "viewed with **disfavor** and is **rarely granted**." ... The complaint is liberally construed in the plaintiff's favor, and **all** well-pleaded facts in the complaint are taken as **true**. … The determining issue is not whether the plaintiff will ultimately prevail on the merits, but whether he is entitled to offer evidence to support his claim. … Therefore, this court will not dismiss **a** plaintiff's claim, "**unless** the plaintiff will not be entitled to relief **under any set of facts** or **any possible theory** that he could prove consistent with the allegations in his complaint."" *Priester v. Lowndes County*, 354 F.3d 414, 418-19 (5th Cir. 2004).

"[A] court "must examine the complaint to determine if the allegations provide for relief on *any* possible theory." ... "So long as a pleading alleges facts upon which relief can be granted, it states a claim even if it fails to categorize correctly the legal theory giving rise to the claim."" *Shaikh v. Tex. A&M Univ. Coll. of Med.*, No. 16-20793, 13 n.7 (5th Cir. Jun. 20, 2018).

This Court will "consider an issue that a party fails to raise in the district court," if "extraordinary circumstances exist when the issue involved is **purely a legal one**

and failure to address it would result in a **manifest miscarriage of justice**." [*Black v. North Panola School Dist*, 461 F.3d 584, 593 (5th Cir. 2006)](.).

## III.  Requiring Liberal Construction for Pro Se's pleadings

Stare decisis requires this Court to adhere to all precedents most favorable manner to pro se.

A.  Liberal construction standard applies to all pro se filings as to do substantial justice.

All filings of pro se should be liberal construed, per [*Erickson v. Pardus*, 551 U.S. 89, 94 (2007)](.).

"*Erickson* ... see also Fed. Rule Civ. P. 8(f) ("**All** pleadings **shall** be so construed as to **do substantial justice**.")" [8]

"[A]**mbiguity must be viewed in the pro se plaintiff's favor**. *Erickson…*"[9]

"*Rutila v. Dep't of Transp*., … (quoting *Erickson* ... ("**A document** filed **pro se** is to be **liberally construed**."))."[10]

"*Erickson* ... (holding that the **objections** of a petitioner **appearing pro se** will be **construed liberally**)."[11]

---

[8] [*Ford v. British Petroleum*, CIVIL ACTION NO. 12-965, 10 n.62 (E.D. La. Mar. 17, 2014)](.).
[9] [*Goins v. City of Sansom Park*, Civil Action No. 4:14-cv-365-O, 3 (N.D. Tex. Jun. 29, 2015)](.).
[10] [*Moran v. Simpson (In re Life Partners Holdings, Inc.)*, No. 21-11231, 5 n.11 (5th Cir. Jul. 6, 2022)](.).
[11] [*McQueen v. City of Cincinnati*, Case No. 1:20-cv-00864, 2 (S.D. Ohio May. 12, 2021)](.).

B.   <u>All materials subsequently filed are required to be considered as amendments to original complaint in pro se's favor</u>

"Due to the liberal consideration accorded pro se pleadings, … we consider this "**Motion**" an **amendment** to … original complaint."[12] And "under the less stringent standards applicable to **pro se litigants**. … Most importantly, however, the court was **required** to look **beyond** the … **formal complaint** and to **consider as amendments** to the complaint **those materials subsequently filed**. … to consider the … **motion**, **memorandum** in support, and **affidavit**, as **amendments** to the complaint. These documents embellished the original complaint's averments, and **each should** have been considered."[13]

C.   <u>The FRCP does not require pro se "to plead the legal theory, facts, or elements underlying his claim</u>

"[P]laintiffs need only plead facts—not legal theories,"[14] and ""it is **unnecessary** to set out a legal theory for the plaintiff's claim for relief."[15] ""[C]omplaints plead **grievances**, not legal theories." … So it didn't matter that a complaint "**initially** relied **only** on [**some** cause of action]"—the plaintiff could still invoke [**other** cause of action] "at **later** stages of the suit." … What's more, the plaintiff "**did not** [even] **need** to **amend** the complaint to do so.""[16]

---

[12] *Wright v. El Paso County Jail*, 642 F.2d 134, 135 n.1 (5th Cir. 1981).
[13] *Howard v. King*, 707 F.2d 215, 220 (5th Cir. 1983).
[14] *Bye v. MGM Resorts Int'l*, 49 F.4th 918, 929 (5th Cir. 2022).
[15] *Id.*
[16] *Id.*

D.  This Court has discretion to consider any noncompliant brief.

"a *pro se* appellant's brief despite its technical noncompliance with the Rules of Civil Procedure when it **at least** argued *some* **error** on the **part** of the district court. … (considering issue even after criticizing brief for failing to cite to the record for argument…); … (addressing issue even though the "only reference appellant makes to the district court's dismissal of his lawsuit is to assert that `this action is not time barred'"); … (considering brief because it "contains an assertion of trial court error"). This Court has discretion to consider a noncompliant brief, and it has allowed *pro se* plaintiffs to proceed when the plaintiff's noncompliance did not prejudice the opposing party."[17]

IV.  Authorities:

A.  Federal statutes

*U.S. Const. Art. I, § 8, cl. 3;*

*15 U.S.C. §§ 1, 2;*

*18 U.S.C. §§ 664, 1341, 1343, 1956, 1961, 1962, 1963, 1964;*

*28 U.S.C. § 636;*

*29 U.S.C. §§ 1056, 1132, 1144;*

*42 U.S.C. § 1983;*

B.  SCOTUS precedent

"[L]ower courts should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions." *Agostini v. Felton*, 521 U.S. 203, 207 (1997).

---

[17] *Grant v. Cuellar*, 59 F.3d 523, 524-25 (5th Cir. 1995).

C. State statutes

*Tex. Fam. Code* §§ 9.102, 109.001, 201.007, 201.017;

*Tex. Gov't Code* §§ 81.054, 81.072, 81.106.

V. <u>Rule *12* dismissal does not pass the threshold unless all sets of facts and all possible legal theories are considered.</u>

Federal courts must thoroughly determine whether Yan "would be entitled to relief under *any set of facts* or *legal theories* consistent with the allegations in the complaint." *Great Plains Tr. v. Morgan Stanley Dean Witter*, 313 F.3d 305, 326-327 (5th Cir. 2002). Even if Yan is not entitled to relief under certain facts or theories, it does not preclude relief under others. The Decisions erred in considering partial facts and legal theories, omitting key provisions.

A. The Decisions circumvented ERISA preemption, which supersedes the Eleventh Amendment and all state laws, resulting in a manifest miscarriage of justice.

All nine claims (ROA.1063-1110) sought relief premised on ERISA fund injuries, but the Decisions circumvented the ERISA preemption. "ERISA preemption clause is conspicuous for its breadth." *FMC Corp. v. Holliday*, 498 U.S. 52, 58 (1990). It is "virtually unique" *Franchise Tax Bd. v Laborers Vacation Trust*, 463 U.S. 1, 25 n.26 (1983), "one of the broadest pre-emption clauses ever enacted by Congress." *Evans v. Safeco Life Ins. Co.*, 916 F.2d 1437, 1439 (9th Cir. 1990).

"[I]f Congress "so completely pre-empt[s] a particular area that **any** civil **complaint raising** this select group of claims is **necessarily federal in**

**character**. … claims seeking relief within the scope of **ERISA** *§ 502(a)(1)(B)* are **completely preempted**" *Arana v. Ochsner Health Plan*, 338 F.3d 433, 437 (5th Cir. 2003).

"ERISA grants federal courts exclusive jurisdiction **separate** and **apart** from its articulation of causes of action." *ACS Recovery Services, Inc. v. Griffin*, 723 F.3d 518, 523 (5th Cir. 2013). "ERISA *§ 514(b)(2)(A)* must be interpreted in light of the congressional intent to create an **exclusive** federal remedy in ERISA *§ 502(a)*." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 217 (2004).

"ERISA preempts state law, *29 U.S.C. § 1144(a)*." *Goff v. Taylor*, 706 F.2d 574, 587 (5th Cir. 1983). Although the State of Texas pleaded Eleventh Amendment, this Court's precedent disregarded sovereign immunity defense, *E-Systems, Inc. v. Pogue*, 929 F.2d 1100 (5th Cir. 1991). "The preemptive scope of ERISA is "intended to apply in the broadest sense **in all actions** of **State** or local governments which have the force of law." …. "The pre-emption clause … establishes as an area of **exclusive** federal concern the subject of **every state law** that `**relate**[s] to' an employee benefit plan governed by ERISA."" *Id.* at 1103.

The phrase "relate to" ""express[es] a broad pre-emptive purpose." "[A] state law may 'relate to' a benefit plan, and thereby be pre-empted, even if the law is not specifically designed to affect such plans, or the effect is only indirect."" *Gonzalez*

*v. Blue Cross Blue Shield Ass'n*, 62 F.4th 891, 904 (5th Cir. 2023). The Court further explained that "[t]he [Supreme] Court has squarely rejected the notion that "laws of general applicability" escape the broad "sweep of the 'relating to' [ERISA] language." …**the high Court's interpretation compels ours**." *Id.*

This Court "noted that preempted state law includes any state law cause of action as it relates to an employee benefit plan, **even if it arises under a general law** which in and of itself has no connection to employee benefit plans" *Christopher v. Mobil Oil Corp.*, 950 F.2d 1209, 1218-1219 (5th Cir. 1992).

ERISA preemption supersedes any state law providing immunity related to an ERISA violation, and it fundamentally places this case's legal analysis on a distinct footing. The Decisions never applied ERISA preemption, failing to address ERISA result in a manifest miscarriage of justice. which is an error.

B.    The Decisions erred in ignoring alleged ERISA prospective relief.

ERISA violation, on its own, is a **separate** and **distinct** civil action. "[B]ecause of the preemption factor…. [Yan can] bring a civil action "to **enjoin any act or practice** which violates **any provision** of [ERISA] or the terms of the plan,"" *E-Systems, Inc. v. Pogue*, 929 F.2d at 1102. Yan pleaded for prospective injunctive and declaratory relief (ROA.1076-1077[¶¶186-198],ROA.1087-1089[¶¶255-269]) to enjoin ongoing ERISA and constitutional violations, prevent state conspirator-actors

from issuing unconstitutional interlocutory QDROs, and stop the prepayment of attorneys' fees. Most importantly, Yan pleaded "identify all the victims … to inform every one of them" (ROA.1077[¶¶196,198],ROA.1089[¶¶267,269]), which is a "mere explanatory notice"—a permissible prospective relief. *Quern v. Jordan*, 440 U.S. 332, 333 (1979). "If [prospective] relief is sought against continuing federal violations, … the Supremacy Clause outweighs the Eleventh Amendment." *Green v. Mansour*, 474 U.S. 64, 77 (1985).

Yan and other victims are entitled to ERISA prospective relief. Without such relief, this statewide racketeering scheme and ERISA injuries will continue in future state proceedings.

The Decisions erred by omitting Yan's claims for ERISA *prospective relief*, focusing only on monetary relief, and mistakenly applying judicial, attorney, and sovereign immunity.

C.    The Decisions failed to identify and conclude other key alleged provisions.

Yan alleged an unlawful *altered* QDRO, not "arguing certain order was wrong, even *really* wrong" (ROA.2084,ROA.2109[¶21]), alleged injury from ERISA funds, not "certain funds under his control" (ROA.1681), alleged racketeering ERISA fund embezzlement, not racketeering "launder money" (ROA.2089,ROA.2091) and alleged predatory conduct in a monopoly, not "market competition" (ROA.2080,

ROA.2090). The Decisions substituted allegations (ROA.1701-1703[¶¶1-6]). Such wordplay hides the legal theory and undermines trust in the court's integrity (ROA.2120-2123[¶¶69-83]).

The FCR concealed the nature of claims alleging pension fund embezzlement—a *§ 664* predicate act—by framing Yan's complaint as merely a disagreement over "an ongoing state court divorce proceeding," (ROA.1681) despite of the fact his wife is not even a party. Instead of plainly referring to the "***pension fund***" or "***employee pension benefit plan***," the FCR employs vague language such as "attorneys' fees and spousal support from ***certain funds under his control***" (ROA.1681). This misrepresentation (ROA.1701[¶1]) creates the false impression that this is merely a routine family court dispute, concealing Yan's critical allegations of ERISA violations. The Decisions entirely circumvented referring to any key provision, such as <u>interlocutory</u>/<u>temporary</u> QDRO, <u>pension fund</u> and relevant statutes: *"§ 664,"* *"§ 1962,"* *"§ 1343,"* and "ERISA." (ROA.1701[¶1]) The Decisions erred by substituting Yan's alleged cause of action with "<u>market competition</u>" and "<u>launder money</u>," (ROA.2080) which Yan *never* alleged in the complaint.

Below is a table demonstrating the obvious manipulation of key provisions.

| Provision | Meaningful occurrences in Yan's complaint | Meaningful occurrences in court's FCR (exclude quotation) | Meaningful occurrences in Yan's objection (exclude quotation) | Meaningful occurrences in court's final Order (exclude quotation) | Meaningful occurrences in Yan's 59(e) motion (exclude quotation) |
|---|---|---|---|---|---|
| ERISA | 22 | 0 | 14 | 0 | 23 |
| temporary QDRO or interlocutory QDRO | 13 | 0 | 0 | 0 | 13 |
| altered | 1 | 0 | 1 | 0 | 0 |
| fraud or fraudulent | 64 | 1 | 1 | 0 | 28 |
| § 664 | 19 | 0 | 5 | 0 | 10 |
| §§ 1961, 1962, 1964 and 1965 | 101 | 0 | 3 | 0 | 0 |
| §§ 1341, 1343 | 33 | 0 | 0 | 0 | 2 |
| Yan did not allege § 1956 or "launder money" | 0 | 0 | 0 | 3 | 0 |
| Yan did not allege "Market competition" | 0 | 0 | 0 | 2 | 0 |
| Yan alleged Monopoly or similar | 22 | 0 | 2 | 0 | 11 |

D.   The FCR failed to find the fact of the *multiple* alleged unlawful temporary QDROs.

The FCR erred in omitting a critical factual element of RICO pattern—the *second* temporary QDRO (ROA.1180). Yan pleaded *two* predicate acts to establish a RICO pattern: *one* temporary QDRO from his case and *another* temporary QDRO from a different case (360-549246) *nine years* ago. Yan alleged a pattern of *§ 664* racketeering scheme, premised on a ground of *two predicate acts* and a *continuity*.

Thus, this lawsuit highlights a broader issue, involving a decade-long practice of family court attorneys and judges for utilizing *unappealable temporary* QDROs to siphon ERISA-protected funds using for attorney fees. Moreover, Yan alleged a racketeering that affects victims statewide, elevating the issue to a matter of public financial security concern (ROA.1031-32[¶¶5-6]).

Yan's RICO claims alleged a clear pattern of racketeering, not mere impropriety. Yan presented concrete facts, including *two* QDROs that were pleaded as specific examples, not just narrative. Additionally, Yan cited *five* unappealable temporary QDROs (ROA.1490-1519) rendered in the last ten years.

The FCR erred in omitting the *second* temporary QDRO and other *five* QDROs in its findings.

E.    The Decisions ignored the breadth of ERISA, *§ 1962* and *§ 664* provisions.

With "any" used 14 times and "indirectly" 4 times, the express phrases "any part of income," "directly or indirectly," and "any part of such income, or the proceeds of such income" in *§ 1962* convey the breadth.

The plain language of *§ 664* ["his own use or to the use of another, any of the moneys, funds…"] shows that the *§ 1962* provision "reaches assets that could be used to pay [STBX] attorney's fees," demonstrating breadth not ambiguity. *See United States v. Monsanto, 491 U.S. 600, 609 (1989)* (citing *Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 499 (1985)*. "([A] statute's application in situations not expressly anticipated demonstrates breadth, not ambiguity)." *Finley Res. v. Headington Royalty, Inc., 672 S.W.3d 332, 340 n.25 (Tex. 2023)* (citing *Cf. Pa. Dep't of Corr. v. Yeskey, 524 U.S. 206, 212 (1998)*).

This case is fundamentally premised on the preemption and breadth of ERISA, RICO and *§ 664*. Any portion of racketeering income, unlawfully obtained from ERISA funds by upstream conspirators, and used directly or indirectly, for downstream conspirators' activities, forms the racketeering enterprise. State laws, including *Tex. Gov't Code §§ 81.072, 81.106*, cannot bar an ERISA and RICO suit. The Decisions erred in disregarding this breadth. Yan alleged that, for decades, SBTX member-conspirators has been embezzling clients' ERISA funds for personal or SBTX's use, with part of such income used to pay SBTX fees under *Tex. Gov't*

*Code § 81.054* (ROA.1066[¶149]). Yan made similar allegations against BarrowsFirm (ROA.1068[¶¶157-59]). Yan alleged that a portion of the racketeering income flows to SBTX in the form of annual license fee, which continually aids RICO and Antitrust Defendants acting as officers of the court in obtaining the privilege of underwriting court documents (ROA.1032[¶8], ROA.1056[¶103], ROA.1062[¶128], ROA.1066[¶149], ROA.1067[¶156], ROA.1073-1074[¶¶172-173], ROA.1080[¶217]). The Decisions erred in disregarding all allegations.

F.   The Decisions failed to apply the *Nesses* reasoning and to distinguish alleged capacity.

Family court proceedings are not a paradise for federal white-collar crime. This Court adopted *Nesses* reasoning from *Nesses v. Shepard*, 68 F.3d 1003 (7th Cir. 1995) in *Truong v. Bank of Am., N.A.*, 717 F.3d 377 (5th Cir. 2013). *Truong* (ROA.1702[¶5]) reaffirms a federal remedy where state proceedings are corrupted to facilitate a federal offense. It has been cited hundreds of times, reinforcing the principle that claims under federal civil causes of action and those disputing a state judgment are distinct. See also *Housing v. Queen*, No. 14-30512 (5th Cir. Mar. 12, 2015). To ensure justice, the Decisions should have applied *Nesses* reasoning to distinguish the premise of Yan's suit but failed to do so.

Yan objected to mischaracterization of his claims (ROA.1701-1703). He expressly invoking *Nesses* reasoning (ROA.1702[¶¶4,5],ROA.1705[¶12]) to

distinguish between disputing state rulings for constitutional rights violations and federal claims based on independent statutes. Yan emphasized that his case is independent of disciplinary grievance, custody, or asset division (ROA.1702[¶5]). This case's allegations are unrelated to the state proceedings and concern federal violations involving collusion among state actors. A favorable outcome in state proceeding would not impact this case.

The decisions mischaracterized Yan's claims as an attempt to relitigate state divorce and disciplinary proceedings, ignored _Nesses_ reasoning, and cited irrelevant precedents that wrongly conflated his case with efforts to modify or reverse state rulings.

Additionally, the Decisions erred in applying the Eleventh Amendment over individual capacity. "As to a claim brought against him in his individual capacity, however, the state official has no Eleventh Amendment immunity. …Eleventh Amendment does not bar award of damages to be paid not from the state treasury but from the official's personal funds)." _Ying Jing Gan v. City of New York_, 996 F.2d 522, 529 (2d Cir. 1993). Yan did not allege RICO and Antitrust Defendants' acts under official capacity, except in some _§ 1983_ claims. The Decisions improperly substituted DeAngelis's and MarinMartinezCraig's alleged individual capacity roles (ROA.1036) in the RICO and antitrust claims with their official capacities as judge

and SBTX counsel, violating the principle that ambiguity must be resolved in favor of a pro se plaintiff, with pleadings construed to ensure substantial justice.

VI. <u>Issuing temporary QDRO to award attorney fees or altering QDRO under the guise of spousal support to circumvent ERISA anti-alienation provision, with the true intention of obtaining attorney fees, is unlawful and constitutes a *§ 664* predicate act. All money must be returned.</u>

A. Associate judge's court has no jurisdiction to render a trial remedy QDRO.

A QDRO is an exclusive final, appealable order, and a post-divorce or final trial remedy (ROA.2124[¶87]) under the district court's constitutional jurisdiction over a *petition,* pursuant to Texas law and SCOTTX's precedents (ROA.1041-1042[¶¶45-49]).

In Texas, all trials are conducted before judges, associate judges are creatures of statute and are not vested with the authority to render a final order under the Texas constitution (ROA.2127[¶107]).

*29 U.S.C. § 1056(d)(3)(B)(i)* expressly excludes attorneys from the scope of diverting ERISA funds to alternate payees (ROA.1043-1045[¶¶57-64]); **"**any power the trial court had to enter the *post-divorce order* **must** come from state law. … If **no state law** authorizes the order, ERISA does not apply, and the trial court still **lacked authority** to enter the order at issue. … ERISA's **anti-alienation** and **preemption** clauses **do not**, however, **grant** a state court **authority** to issue an order that the

state's law **does not authorize**" _See Dalton v. Dalton, 551 S.W.3d 126, 139 (Tex. 2018)._

RICO Defendants knowingly exploit the temporary order's _unappealable_ nature barrier created under _Tex. Fam. Code § 109.001(c)_. They use this statutory loophole to obtain attorney's fees by issuing _unappealable_ temporary QDROs, constituting _§ 664_ crime, knowing that laypeople are impossible to uncover truth through appellate review.

B. Altering order act is usurpation of judicial authority, displacing the court as decision maker.

BarrowsYbarra and Pigg colluded _altering_ the QDRO to circumvent _29 U.S.C. § 1056(d)(3)(B)(i)_ barrier (ROA.1047[¶¶71-72]). The judiciary integrity should not tolerant this conduct. "Lawyers and litigants do not have the authority to issue orders, nor do they have the authority to vacate, rescind, or modify court orders." _In re K.A.R, 171 S.W.3d 705, 715 (Tex. App. 2005)._ "[C]ounsel "effectively usurped the court's role and displaced the court as decision maker. … [counsel] interfered with a core function of the court."" _In Interest of J.V.G., No. 09-06-015 CV (Tex. App. Jul. 12, 2007)._

"Allowing any attorney to usurp constitutional judicial power to have the authority to render court orders at their own discretion is an extrinsic fraud, a structural error that affects the infrastructure of Texas legal framework"

(ROA.2109[¶22]),ROA.2112-2113), this is "simultaneously throwing a large monkey wrench into the judicial simultaneously throwing a large monkey wrench into the judicial machinery" *Aoude v. Mobil Oil Corp.*, 892 F.2d 1115, 1118 (1st Cir. 1989) (ROA.2110). The Decisions erred by finding that alleged "wrongful actions [altering order] **occurred during** the **scope** of his ongoing divorce **proceeding**," and therefore are immune (ROA.1695).

C. The altered QDRO was under a forged cause of action that was never pleaded into the case.

Changing the civil cause of action to spousal support breached fundamental legal principle. Yan's ERISA fund was deprived in a state proceeding without any Due Process elements: no notice, hearing, or fair trial regarding the claim of spousal support. (ROA.2020[¶85],ROA.2126[¶100]).

Texas court "cannot grant relief *without pleadings to support it*, and a [order] which is not supported by pleadings is *void*. ...A party *must* recover in the right in which he sues and upon proof of the facts stated in his pleadings; he cannot recover through a right not asserted." *Rankin v. Bateman*, 686 S.W.2d 707, 711 (Tex. App. 1985). Texas court's order "*must* conform to the pleadings." *Kazmi v. Kazmi*, No. 03-22-00330-CV, 14 (Tex. App. Nov. 17, 2023). "The inclusion of a request for general relief cannot enlarge a pleading to include a *different cause of action* for

which fair notice *does not exist*." *Westchester Fire Ins. v. Nuckols*, 666 S.W.2d 372, 375 (Tex. App. 1984).

The court acquires subject-matter jurisdiction through a claim, which "is an Art. III as well as a statutory requirement." *Ins. Corp. of Ir. v. Compagnie Des Bauxites De Guinee*, 456 U.S. 694, 702 (1982). Texas courts "*cannot exercise* jurisdiction where *none exists*," *Tex. Dep't of Pub. Safety v. Sunuc*, No. 13-19-00443-CV, 17 (Tex. App. Feb. 3, 2022) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998)) "*Steel Co*. …holding that a court "act[s] ultra vires" when it assumes "hypothetical jurisdiction" in order to rule on the merits)." *Mendoza v. Strickler*, 51 F.4th 346, 352 (9th Cir. 2022). The decisions failed to recognize that without a valid claim, the QDRO proceeded without jurisdiction. While most *§ 1983* claims do not override immunity, the lack of subject-matter jurisdiction and deprivation of ERISA funds under color of law in this case preempts any immunity.

D. All the fees that Texas attorney unlawfully obtained from ERISA funds must be returned to restore the status quo ante.

"[T]he United States Supreme Court [had] made it **abundantly clear** that 'ERISA's pension plan anti-alienation provision is mandatory and contains only two explicit exceptions, . . . which are **not subject to judicial expansion**.'"" *Heckert v. Heckert*, No. 02-19-00298-CV, 11 (Tex. App. May. 21, 2020). (quoting *Boggs v. Boggs*, 520 U.S. 833, 851 (1997)).

"In creating the QDRO mechanism Congress was careful to provide that…[t]hese provisions are essential to … give enhanced protection to the spouse and dependent children in the event of divorce or separation." *Boggs* at 847.

"Congress has made clear its desire for pre-emption. Accordingly, we have not hesitated to find state family law pre-empted when it conflicts with ERISA or relates to ERISA plans" *Egelhoff v. Egelhoff*, 532 U.S. 141, 151 (2001).

Neither ERISA's anti-alienation provision allows Deangelis to issue a QDRO for attorney fees under a jurisdiction her court does not possess, nor does ERISA's preemption provision allow BarrowsYbarra and Pigg to alter the order to circumvent the anti-alienation provision for the purpose of obtaining "our fees" and being subsequently shielded under "our" SBTX associates' conspiracy.

The State of Texas was not granted sovereign immunity in *E-Systems, Inc.*, nor should SBTX receive sovereign immunity for being indirectly funded through racketeering income. "The State received monies from the ERISA plans to which it was not entitled. The funds must be returned. **The parties are to be restored to the status quo ante.**" *E-Systems, Inc.,* at 1104. The State of Texas returned tax income in 1991.

Texas family attorneys have unlawfully acquired legal service revenues from ERISA funds, with part of the racketeering income paid to SBTX for operations,

including the Chief Disciplinary Counsel, which functioned to control damage and continue maintaining future racketeering income inflow (ROA.1066-1068[¶¶149-159]). SBTX attorneys must return unentitled fees to restore the status quo ante as well. There is no justification for allowing SBTX to continue receiving any racketeering income derived, directly or indirectly, from *§ 664* acts, in contradiction to the ruling in *E-Systems, Inc.*. Yan sought to prevent further injuries, and prior unlawful diversions should be refunded, as should those affecting everyone else (ROA.1077[¶¶196-198]),ROA.1089[¶¶267-269]). Yan pleaded dissolving RICO enterprises (ROA.1076[¶¶192-194]). The Decisions maintained the status quo ante for the perpetrators and RICO crimes, leaving the victims' ERISA funds unrestored.

The Decisions wrongly applied state law immunity exemptions, disregarding ERISA preemption, which governs and protects retirement Funds while preempting conflicting state laws.

## VII. The court erred in granting Deangelis' *12(b)(1)* motion regarding RICO, antitrust and *§ 1983* claims.

A. A state statutory judge should not be granted blanket federal common-law judicial immunity without examining federal and state statutes.

The FCR erred in concluding that Yan lacked "standing to sue in federal court for unfavorable outcomes in a state court proceeding," citing one binding and one merely persuasive case (ROA.1686). Both cases cited in the FCR were based on the *Nesses* reasoning's type one: a constitutional claim attempting to reverse an unfavorable child custody ruling in state court. Yan alleged that Deangelis' *ultra vires* acts (ROA.1037-1045) lacked constitutional jurisdiction or statutory authority to render monetary relief arising from a criminal case in family court, or to compel a consumer to prepay legal service providers through ERISA funds (ROA.1041, ROA.1051, ROA.1052, ROA.1311-1315).

The Decisions also erred in failing to distinguish between a state-elected judge and a state statutory judge (ROA.2127[¶104]). All cited precedents (ROA.2081) apply judicial immunity to Article III judges. The Decisions are erred because "doctrines like judicial immunity can be difficult for laypersons to understand (and sometimes for legal professionals)" (ROA.2083).

A federal offense does not become automatically immutable simply because the crime occurs in a court setting. A federal magistrate's order could be *ultra vires* and *void* because a magistrate is not an Article III judge, *Jones v. Johnson*, 134 F.3d 309,

310 (5th Cir. 1998) (citing *Dye v. Cowan*, 472 F.2d 1206, 1207 n. 1 (6th Cir. 1972)). If a magistrate issues orders exceeding the scope of functions delineated by the Federal Magistrates Act, those actions are beyond their scope of authority. Judicial decisions involving duties inconsistent with the Constitution and laws of the United States are not within the prerogative of a federal magistrate, nor can they be delegated to him by a federal district judge.

Deangelis' standing is similar, DeAngelis is not a judge (ROA.2127[¶107]). The Texas Constitution does not vest associate judges with the authority to act as judges, *In re D.L.M.*, 982 S.W.2d 146, 149 (Tex. App. 1998)) (citing Tex. Const. Art. V, § 1). *Tex. Fam. Code § 201.007* explicitly limits the scope of "Powers of Associate Judge." The Decisions erred in granting blanket judicial immunity to DeAngelis, omitting an analysis of whether alleged acts are *ultra vires* (ROA.2125).

Not every remedy is outlined in *Tex. Fam. Code § 201.007*, and an appealable QDRO is not an option for an unappealable temporary order. A QDRO remedy is only available post-trial or during the final trial. Issuing a temporary/interlocutory QDRO in an associate judge's court is ultra vires, as *Dalton v. Dalton*, 551 S.W.3d 126, 138 (Tex. 2018), held that *Tex. Fam. Code § 9.102* expressly defines a QDRO as a final, appealable order and a post-divorce remedy under the trial judge's

exclusive jurisdiction over a *petition*. (ROA.1042[¶¶45-49], ROA.1044[¶58], ROA.2026[¶22], ROA.2124[¶88]).

The Decisions erred in concluding that DeAngelis' actions as being within her authority, consistently describing her judicial decision as an "interim order" while omitting the crucial "sua sponte" and "QDRO" elements.

The Decisions failed to determine the scope of jurisdiction or authority explicitly granted to an associate judge under *§ 201.007* (ROA.1042[¶49], ROA.1045[¶¶62-63]) and subsequently erred in finding that "Yan does not actually allege that Judge DeAngelis lacked jurisdiction or authority to hear the case or to issue the orders" (ROA.2082), despite Yan repeatedly alleged such claims.

B.   Federal judicial immunity applies only to Article III judges, state law cannot modify federal common law.

The Order erred in citing *Tex. Fam. Code § 201.017* as legitimate authority to apply judicial immunity. State law cannot expand federal common-law immunity. "The judicial immunity expanded to Texas family court associate judges is not the same as the original federal common law judicial immunity" (ROA.2129[¶115]).

"There is no federal general common law." *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938). Either state legislature or "Congress has no power to declare substantive rules of federal common law applicable in a state." *Id.*

"When a state statute, … or common-law cause of action conflicts with a federal statute, it is axiomatic that the state law is without effect." *Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 894 (2000); "Federal jurisdiction cannot be defeated by a state statute prescribing the court in which the action is to be brought." *Akin v. Louisiana National Bank of Baton Rouge*, 322 F.2d 749, 754 (5th Cir. 1963). SCOTTX recognized that "a federal cause of action that cannot be barred by *any state law or policy*." *Taylor v. Tolbert*, 644 S.W.3d 637, 656 (Tex. 2022).

The immunity expanded in *§ 201.017* is merely state immunity. The Decisions erred in assuming it is federal immunity. "**Federal courts (except for the Supreme Court) are not superior to state courts, or higher in any theoretical order of precedence**. Federal law is supreme and [] supersedes state law no matter what court declares it. **Federal law declared by a state court [] is *supreme* over state law declared by a federal court**. It is not the forum that counts, but the law-making authority." *R.W.T. v. Dalton*, 712 F.2d 1225, 1233 (8th Cir. 1983).

Although "[c]ourts of appeals must review *de novo* district courts' state law determinations" *Salve Regina College v. Russell*, 499 U.S. 225 (1991). However, after SCOTTX ruled that a federal claim cannot be barred by Texas law, the *Taylor* decision remains the controlling authority today. No federal district court, or even

this Court, can declare that *§ 201.017*, or any other state law, can be used to defeat a federal claim.

Only SCOTUS can overrule SCOTTX's *Taylor* decision on this matter. Under *28 U. S. C. § 1257*, lower federal courts are precluded from exercising appellate jurisdiction over final state-court judgments. "[T]his grant of jurisdiction is exclusive: review of such judgments may be had only in [SCOTUS]." *Lance v. Dennis*, 546 U.S. 459, 463 (2006).

The Decisions erred in concluding that even if judicial immunity does not apply, federal court would still abstain under the *Younger* doctrine (*Younger v. Harris*, 401 U.S. 37 (1971)) (ROA.2083[n.3]) concerning the *§ 1983* claim. The Supreme Court has made clear, abstention is appropriate only in certain enumerated circumstances. *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69 (2013) (holding that *Younger* abstention does not extend to state civil proceedings merely because they implicate "important state interests" and provide an "adequate opportunity to raise [federal] challenges").

Yan brings a 401(k)-injury claim, "the issue of ERISA preemption is "**facially conclusive**," *Younger* abstention does not apply." *Colonial Life Accident Insurance Company v. Medley*, 584 F. Supp. 2d 368, 375 (D. Mass. 2008) (ROA.2123-2124[¶86]). "The rationale behind this exception is that there is no significant state

interest at issue "when it is clear that the state tribunal is acting **beyond** the lawful limits of its authority.""

Therefore, the Order erred in citing *§ 201.017* to assert federal immunity defense, failing to distinguish between federal and state immunity, and ignoring ERISA preemption.

C.   Article III does not permit non-Article III court to try cases involving deprivations or transfers of a citizen's liberty or property.

The latest SCOTUS precedent reaffirmed that only Article III court has jurisdiction over deprivations or transfers of life, liberty, or property.  Deangelis' statutory court is not an Article III court. "Cases involving ... **deprivations** or transfers of life, **liberty**, or **property** constitute a 'core' of cases that ... *must* be resolved by Article III courts[.]" *Axon Enter. v. Fed. Trade Comm'n*, 143 S. Ct. 890, 908 (2023) (ROA.1395,ROA.1616).

An unconstitutional deprivation of property or liberty does not escape federal court review simply because it is orchestrated during the state statutory court proceedings, and ERISA supersedes all state laws and procedures.

DeAngelis is alleged to have acted *ultra vires* by ordering Yan to transfer his ERISA funds to Barrows and Pigg without constitutional jurisdiction or statutory authority. She also ordered the transfer of ERISA funds for the prepayment of

attorney's fees to Barrows and Pigg without any petition. The compelled prepayment, despite Yan's legal service contract with Pigg, is also beyond the state court's authority, depriving Yan of his liberty to contract, yet she sua sponte advocated for fellow bar members (ROA.1046,ROA.1050,ROA.1174). The decisions failed to conclude that federal relief is available against DeAngelis for usurping constitutional judicial authority and acting ultra vires. See Section: Statement of Facts.

VIII.    <u>Core civil cause of action is substituted with another claim that neither party briefed, this guarantees a reversal.</u>

The FCR initially granted the SBTX and other Antitrust Defendants blanket sovereign immunity, dismissed with prejudice, on the alleged *§ 2* claim (ROA.1078) without further examining the alleged predatory conduct (ROA.1689-1692). It stopped at the finding of facts, based on the premise that there was no need to proceed further due to a *12(b)(1)* dismissal for lack of jurisdiction. Yan objected (ROA.1709-1715).

A.    The Decisions failed to identify and conclude factual cause of action.

The party presentation principle, *Greenlaw v. United States*, 554 U.S. 237, 243 (2008) (ROA.2106[¶1]) requires the parties to frame the issues for courts' decision and the courts are *neutral arbiter*. "[Courts] are, however, not at liberty to **create a cause of action** where there is **none**." *Cledera v. United States*, No. 20-10914, 4 (5th Cir. Feb. 5, 2021). The Order created a *§ 1* cause of action, ruled upon it.

The Sherman Act *§§ 1-3* address different civil causes of action with specific legal elements. Yan never alleged *§ 1* (market competition), knowing that Antitrust Defendants form a natural monopoly in the legal services market, facing no competition. Instead, he alleged violations of *§ 2*—unjustified predatory conduct in a monopoly (ROA.1614-1615).

Yan's complaint made no mention of "competition." The Order concluded on the premise of *§ 1* issues and failed to address *§ 2*, "monopoly," or "predatory" acts. The complaint and the Order were premised on two distinguishable causes of actions, therefore, the *12(b)(6)* dismissal (ROA.2089-2091) is erred.

B.   The Decisions correctly acknowledged Antitrust Defendants are active participants and not immune from antitrust claim, but failed to distinguish relevant precedents.

"[T]he Interstate Commerce Clause, *Art. I, § 8, cl. 3*, granted Congress the power to abrogate state sovereign immunity" *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 59 (1996). Antitrust Acts include Interstate Commerce Clause. (ROA.1710-11[¶28-29],ROA.1717[¶51]).   The Decisions failed to concluded Interstate Commerce Clause.

Despite acknowledging **SCOTUS** antitrust precedents (ROA.1709[¶26]), the Order erred by reaching a particularly confusing conclusion:

"Ordinarily, Yan's claim would survive dismissal under Rule 12(b)(1)… But that's not the case here. Indeed, Yan's survival under Rule 12(b)(1) is a Pyrrhic

victory. … as explained below, Yan's racketeering/**antitrust** allegations do not survive the Rule 12(b)(6) analysis. Consequently, rather than living to fight another day, those claims must be dismissed with prejudice." (ROA.2088)

It stated that Yan's case would survive dismissal under *12(b)(1)*, but stated that Yan's *§ 1* claim would not survive a *12(b)(6)* analysis and must be dismissed *with* prejudice. However, it then inconsistently ruled a dismissal *without* prejudice.

The fundamental <u>flaw</u> in the Decision was the FCR had stopped at *12(b)(1)* due to immunity, and the Order subsequently stated that it "**adopts** the FCR's findings as the findings of the Court, **endorses** the FCR's conclusions, and accepts the FCR's recommendation in **part**," (ROA.2076). This made it impossible for the Order to inherit sufficient findings to determine a *12(b)(6)* insufficiency. Because an incomplete *§ 2* claim findings from the FCR cannot fulfill the requirements for further *12(b)(6)* evaluation over *§ 1* claim by the Order.

Alternatively, and additionally, the district court could not have accomplished a proper *12(b)(6)* analysis premised on *§ 2* claim because its conclusion had already erred in framing Yan's antitrust claim under *§ 1*, which requires distinct elements. ("The statutes do differ significantly with respect to one element of the violation, the competitive consequences of predatory conduct.") *Brooke Group Ltd. v. Brown Williamson Tobacco Corp.*, 509 U.S. 209, 251 (1993).

C.  The Order erred in granting a Rule 12(b)(6) dismissal over *§ 1* claim after Antitrust Defendants waived any defense over *§ 1* claim during briefing stage.

The Antitrust Defendants had waived *12(b)(6)* defense concerning predatory acts, practices, or conducts (ROA.2107-2108[¶¶8-12]), under the *§ 2* claim. It (ROA.1325-1348) only asserted *12(b)(6)* under *§ 1983* and RICO claim, omitted therefore preserved *§ 2* claim (ROA.1326). *See Fed. R. Civ. P. 12 (b)* (*Every* defense to *a claim* for relief in any pleading *must* be asserted; A motion asserting any of these defenses *must* be made before pleading). The party presentation principle and the "[e]very" and "must" provisions of *Fed. R. Civ. P. 12(b)* do not grant the court *sua sponte* authority to render a *12(b)(6)* dismissal when the Antitrust Defendants may preserve their defense under *Fed. R. Civ. P. 12(h)* for future motions. See *Fed. R. Civ. P. 12(g)*.

"In our adversarial system … [courts] rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present." *United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020). The Antitrust Defendants "didn't pursue a dismissal [of *§ 2 claim*] under *12(b)(6)*. [The district court] shouldn't offer a leniency." (ROA.2089)

IX.   The court erred in granting MarinMartinezCraig *12(b)(1)* dismissal without prejudice regarding *§ 1983* claims.

A.   The strongest federal defense available to any state actor, other than a public prosecutor, against *§ 1983* claim under *individual capacity* is qualified immunity. The Decisions ruled beyond the boundaries of this federal defense.

Federal common-law immunity only granted absolute immunity to public prosecutors under *§ 1983* claim during prosecution stage. The Decisions erred by granting state actors with absolute immunity against *§ 1983* claim under individual capacity.

MarinMartinezCraig should not be granted absolute immunity merely because these state actors are SBTX fellows. Prior precedents from this Court are erred in referring state statue *Tex. Gov't Code Ann. § 81.072(g)* to grant absolute immunity under *§ 1983* claim. State statute only defines state immunity defense. "[A] state's common-law defense does not apply to federal statutes" *Taylor*, at 653. A state law cannot expand scope of federal immunity application and being used to bar federal offense, *Taylor*, at 656. See also *Section VII.B* ("state law cannot modify federal common law"). Additionally, RICO and ERISA preempt any state defense. None of the precedents that the Decisions cited are premised on RICO or ERISA. Therefore, the Decisions are erred by citing non-relevant precedents to conclude.

B.  The FCR failed to identify and conclude key facts under *§ 1983* claims.

MarinMartinezCraig should have known that **altering** QDRO to embezzle ERISA funds is a usurpation of the core function of judicial authority, an unconstitutional deprivation of property, Due Process, Article III power and Separations of Power, under *§ 1983* claim. When a construction worker helps the mafia bury a body during work hours, his actions aren't part of his job but a criminal conspiracy. The same legal theory applies to MarinMartinezCraig. Yan alleges they *reviewed emails evidence* which were submitted during the grievance process, *accepted* Barrows' solicitation of "in order for us to obtain our fees…we must say", and *followed* Pigg's solicitation of "have to lie to accept QDRO." (ROA.1060[¶120],ROA.1072[¶166],ROA.1073[¶171]). They knew BarrowsYbarra usurped judicial authority by altering the QDRO. MarinMartinezCraig's actions were not state-approved professional conduct but a deliberate cover-up to assist SBTX fellows in securing illicit fees. They favored to concealment, disregarded BODA's conclusion twice. What MarinMartinezCraig did in a state agency office is *ultra vires* (ROA.1036).

Eleventh Amendment immunity does not automatically apply simply because the acts occurred during state actors' working hours. "[T]he Courts have uniformly held [*ultra vires*] to be exempt from sovereign immunity defenses." *Tax Analysts and Advocates v. Shultz*, 376 F. Supp. 889, 895-896 (D.D.C. 1974) (citing *Larson v.*

*Domestic Foreign Corporation*, 337 U.S. 682, 689 (1949) and *Americans United, Inc. v. Walters*, 155 U.S.App.D.C. 284, 477 F.2d 1169, 1180 (1973)).

SCOTUS "found that the Interstate Commerce Clause, *Art. I, § 8, cl. 3*, granted Congress the power to abrogate state sovereign immunity" *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 59 (1996). RICO enterprise's activities affect *interstate commerce*, ERISA funds injury is *interstate commerce*, and antitrust is *interstate commerce* as well. (ROA.1710-1711[¶¶28-29]).

A legitimate grievance process can operate under two permissible views: performing duties as required by state statute; or conspiring to cover up SBTX fellows' unlawful deprivation of constitutional guarantees. Yan alleged the latter, while the Decisions erred by substituting with the former.

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) held that "[a] court must take the allegations as true, no matter how skeptical the court may be." Pigg accepted Barrows' solicitation, lied, and furthered Yan's ERISA fund injury. Pigg suggested that Yan lie, but Yan refused. It is plausible premise that other SBTX fellows—MarinMartinezCraig—also chose to lie after reading the same emails. Conspiring to control damage is not a state actor's duty. The actions of MarinMartinezCraig in concealing BarrowsYbarra and Pigg's racketeering conduct perpetuate ongoing predicate acts, targeting future consumers.

A judge's skepticism does not override the plausibility of these allegations. Rule *12* prohibits judges from assuming that any SBTX counsel would not conspire to cover up a <u>white-collar crime</u> during the office hours. Therefore, the Decisions erred in denying Yan's allegations.

C.   The Decisions erred in failing to apply *Nesses* reasoning to distinguish the premise of Yan's suit.

The Decisions failed to apply *Nesses* reasoning as well.

Yan's did not seek to modify or reverse any grievance decision (ROA.1471[¶27]). The Decisions wrongly framed Yan's claim as one tied to a state grievance ruling denying constitutional rights. *Nesses* reasoning supports a federal remedy for violations of property rights.

Yan's *§ 1983* claim alleged SBTX counsels to have conspired with other members to deprive Yan of his pension fund through a RICO scheme through unconstitutional practice, benefiting bar associates and using the disciplinary process for damage control and concealment, not on the grievance decision. This case remains valid even if SBTX counsels changed their minds and restarted grievance proceedings, their acts of concealment had already been committed. Therefore, this claim stands independently regardless of whether the violators corrupted the state bar grievance process through a favorable or unfavorable ruling.

The Order disregarded *Nesses* reasoning argument and departed from the principle that ambiguity must be viewed in the pro se plaintiff's favor and all pleadings shall be so construed as to do substantial justice.

D. *Young* permits prospective relief, ERISA supersede sovereign immunity.

*Ex parte Young*, 209 U.S. 123 (1908), established that the Eleventh Amendment does not shield a state official from claims of depriving a federal right under color of state law (ROA.1307). "The essential ingredients of the Ex parte Young doctrine are that a suit must be brought against individual persons in their official capacities as agents of the state and the relief sought must be declaratory or injunctive in nature and prospective in effect." *Saltz v. Tennessee Department of Employment Security, 976 F.2d 966, 968 (5th Cir. 1992)*.

Yan pleaded (ROA.1099[¶347],ROA.1101[¶367],ROA.1104[¶387]) prospective relief, the Decisions ignored.

*E-Systems, Inc. v. Pogue, 929 F.2d 1100 (5th Cir. 1991)* ruled that ERISA supersedes sovereign immunity and any state law. Yan has pleaded that the unlawful legal service revenue obtained from *§ 664* predicate acts are directly or indirectly used to hire MarinMartinezCraig to conceal federal crime. MarinMartinezCraig are not immune from conspiring to aid in ERISA offenses under the guise of *Tex. Gov't Code ANN. § 81.072(g)*.

X. The court erred in granting BarrowsYbarra, and BarrowsFirm 12(b)(1) motion with prejudice regarding antitrust and *§ 1983* claims.

Historically, this Court has applied Texas common-law immunity to attorneys, despite conflicting rulings from SCOTUS and other Circuits. However, *Taylor v. Tolbert*, 644 S.W.3d 637, clarified that Texas common-law immunity does not extend to federal offenses. A shift in the Court's approach may now be necessary, and any pre-2022 precedents concerning attorney immunity should be revisited. Notably, this Court has not cited *Taylor* since 2022.

A.   The courts cannot omit Minnesota common-law attorney immunity factor in an interstate case.

Yan incurred injuries related to a Minnesota 401(k), BarrowsYbarra and Pigg altered the QDRO to circumvent ERISA barrier, "general principles of attorney immunity are not appropriate when an attorney is accused of fraud." *Janssen v. Lommen*, No. A14-0452, 10-11 (Minn. Ct. App. Dec. 22, 2014).

The Decisions failed to consider the Minnesota factor (ROA.1738[¶23]), and subsequently erred in applying Texas common-law immunity to Minnesota ERISA injuries under claims of antitrust and *§ 1983*. Yan reserves the right to add a Minnesota common-law fraud claim at a later stage.

B.   Federal common-law immunity is not absolute for private attorneys.

Other circuits and SCOTTX have concluded that no federal common-law immunity exists for private attorneys, citing the controlling SCOTUS precedents *Ferri v. Ackerman*, 444 U.S. 193 (1979) and *Tower v. Glover*, 467 U.S. 914 (1984). "Concerning suits by litigants other than an attorney's own client, the general rule is that: [i]f an attorney is actuated by malicious motives or shares the illegal motives of his client, he may be personally liable with the client for **damage suffered by a third person** as a result of the attorney's actions." *Robinson v. Volkswagenwerk AG*, 940 F.2d 1369, 1371 (10th Cir. 1991).

"[T]hat **only** in a narrow class of cases involving **defamation** claims has the **Supreme Court acknowledged** a common law tradition of absolute **immunity** for private lawyer." *Id.* at 1371, and "while absolute immunity **might** be afforded **government lawyers** on these claims, such immunity is **not** available for a **private law firm**." *Id.* at 1371-1372.

After seeing that "the Supreme Court **will not** extend absolute immunity without such a tradition. … private lawyer, does not enjoy absolute immunity from a malpractice action by his former client," the Ninth Circuit "**overruled** its **precedent** … and the Supreme Court **affirmed**." *Id.* at 1372-1373.

"In *Tower,* … the [Supreme] Court stated: "[T]his immunity would not have covered a conspiracy…" Although the case before us is of the "nonclient versus counsel" variety, *Ferri* and *Tower* suggest that the scope of absolute immunity accorded a private lawyer **can be no broader** than that originating from common law." *Id.* at 1373.

"No sound policy supports conferring any such immunity on private persons who persuade a judge to exercise his jurisdiction corruptly. Indeed, the thrust of wisdom is to the contrary." *Sparks v. Duval County Ranch Co., Inc.*, 604 F.2d 976, 980 (5th Cir. 1979). "[] attorneys may be liable under § 1983 "for intentional misconduct, 'under color of state law, by virtue of alleged conspiratorial action with

state officials that deprives their clients of federal rights."" *Linn v. Saitin*, No. 14-30094, 2 (5th Cir. 2014).

The Decisions erred in ignoring the controlling Texas precedent *Taylor v. Tolbert*, 644 S.W.3d 637 (Tex. 2022).

SCOTTX noticed that "we **have not found** another statutory civil action to which a federal court has applied any form of common-law attorney immunity." *Id.* at 654, "[F]ederal courts are **nearly uniform in declining** to adopt extra-statutory exceptions and refusing to apply state common-law defenses." *Id.* at 655.

*Taylor*, which defines the scope of Texas common-law immunity, concluding that Texas common-law immunity is not a defense under federal statutes (ROA.1708[¶¶20-21]). "[C]ourts have explained that state law cannot modify federal law. ... The short answer to the [state common-law] immunity defense is that [federal statute] creates a federal cause of action that cannot be barred by any state law or policy." *Id.* at 656. Additionally, "the attorney-immunity defense is **neither categorically inapplicable nor automatically available**," *Id.* at 637, without analyzing "the particular statute in question," *Id.* (ROA.1708[¶21]).

 "[A] state's common-law defense does not apply to federal statutes." "When interpreting a federal statute, including whether it has abrogated certain affirmative defenses, we endeavor to "anticipate … U.S. Supreme Court … and the precedents

of other federal courts ... to determine the appropriate answer." … we also "look to the common law, not of Texas or any particular jurisdiction, but in general."" *Id*. at 653-654.

However, the Decisions cited three outdated and irrelevant common law of particular Texas jurisdiction—*Troice*[18], *Cantey Hanger, LLP*[19], and *Youngkin*[20]— erroneously assuming the broad scope of immunity (ROA.2087) pursuant to *Youngkin*, while disregarding *Taylor*.

There is no federal common-law immunity for private lawyer under antitrust and *§ 1983* claims. The Decisions were erred.

C.    "[Texas court] is without the authority to divest that power or delegate it to others" to alter a rendition. *See Meshell v. State*, 739 S.W.2d 246 (Tex. Crim. App. 1987),

Yan alleged and characterized (ROA.1626, n.2.) that Barrows Ybarra and Pigg's misconducts are "theft of goods or services on a client's behalf" (ROA.1602[¶32]), "**altering** the context of a consented rendition" (ROA.1190[¶16],ROA.1601[¶30]), and "unlawfully abstracting money from Plaintiff's pension account to collect attorney fees and diverting it to the lawyer's own pocket' are not immune" (ROA.1399[¶41], ROA.1401[¶45], ROA.1602[¶34]). The FCR omitted these findings.

---

[18] *Troice v. Proskauer Rose, LLP*, 816 F.3d 341 (5th Cir. 2016).
[19] *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477 (Tex. 2015).
[20] *Youngkin v. Hines*, 546 S.W.3d 675 (Tex. 2018).

The FCR stated that the district court decides the "legal question of whether said conduct was within the scope of representation" (ROA.1693) (citing *Youngkin*, 546 S.W.3d at 683), but it improperly avoided addressing the legal questions regarding the three alleged conducts, none of which were covered in the FCR. As a result, the FCR failed to address all legal questions raised in the proceeding and did not meet the requirements for a Rule *12* dismissal.

Texas attorney immunity defense only applies to ""the kind of conduct" attorneys undertake while discharging their professional duties to a client." *Taylor*, 644 S.W.3d at 646. "Stated inversely, if an attorney engages in [*white-collar crime*] that is not "lawyerly work" or is "entirely foreign to the duties of a lawyer" or falls outside the scope of client representation, the attorney-immunity defense is inapplicable." *Id*.

"Lawyers and litigants do not have the authority to issue orders, nor do they have the authority to vacate, rescind, or modify court orders." *In re K.A.R, 171 S.W.3d 705, 715 (Tex. App. 2005)*. If they did, "trial counsel "effectively **usurped the court's role** and **displaced the court** as **decision maker**. … [trial counsel] interfered with a core function of the court."" *In Interest of J.V.G., No. 09-06-015 CV (Tex. App. Jul. 12, 2007)*.

"Lawyers are under a professional obligation to act with commitment and dedication to their clients' interests, but they are **neither** duty-bound **nor** permitted to press for **every possible** advantage **under the imprimatur of zealous advocacy**. The discretion to determine the trial tactics and litigation strategies … is **cabined** by **ethical standards** memorialized in sundry rules and statutes and is subject to the inherent authority of courts to **preserve the integrity of our judicial system**. …courts have inherent authority to sanction attorneys for an "abuse of the judicial process" and for conduct that "**breeds disrespect for and threatens the integrity of our judicial system**." […] And they have "not only the power but the duty to **insure** that judicial proceedings remain **truly adversary in nature**."" *Brewer v. Lennox Hearth Prods., LLC, 601 S.W.3d 704, 740 (Tex. 2020)*.

The decisions demonstrated a contrary attitude (ROA.2087), stating, '[t]his [attorney altering order] case typifies why the attorney-immunity doctrine exists, which protects the zealous advocacy of clients by legal professionals,' following an unethical logic (ROA.1695, n.5.). "[T]he Court finds that it is hard to imagine a more adversarial context than a highly contentious divorce." The decisions imply that in a highly contentious case, any action automatically falls within an adversarial context, and fraudulent actions, such as altering documents, are considered part of discharging a lawyer's duties. Therefore, the immunity doctrine exists to protect such zealousness.

However, "In an adversarial system, due process requires at least a reasonably level playing field." *Rey v. State*, 897 S.W.2d 333, 343 (Tex. Crim. App. 1995). When the judiciary allows attorneys to alter an order obtaining fees from laypeople's funds in family court, it creates a predator-versus-prey scenario—a lopsided massacre. The district court seems to have forgotten what a truly adversarial process should look like. The district judge denied the existence of any "large-scale schemes or acts of institutional impropriety" (ROA 2091), but Yan experienced otherwise.

The Texas judiciary's failure to intervene allows attorneys to exploit the most vulnerable under the guise of legal representation. The Decisions mistakenly concluded that looting families' ERISA funds during divorce is permissible within the Article III judicial framework and that Texas legal service providers are exempt from antitrust accountability, profiting from contentious divorce cases. Meanwhile, the Texas judiciary (SBTX members in robes) delegates judicial power (*§ 1983*) to lawyers (SBTX members in suits), enabling them to modify court orders for financial gain under the pretense of serving the court.

XI.   The court erred in granting RICO Defendants' *12(b)(6)* motion with prejudice.

SCOTUS never granted immunity over RICO claim. RICO act is a tool against "respected and legitimate" enterprises and no immunity "demonstrates breadth."

Congress wanted to reach legitimate enterprises which "enjoy neither an inherent incapacity for criminal activity nor immunity from its consequences." See *Sedima*.

A.   Allegations are premised on the legal theory that the victim suffers ERISA fund injury, a predicate act under *§ 1961(1)*, incorporating *§ 664*.

*Unlawful* embezzlement of ERISA funds constitutes a *§ 664* predicate act. Any attempt to shield such actions under state law must fail in the face of clear federal statutes.

Yan alleged fact (ROA.1056[¶103], ROA.1107[¶411], ROA.2009[¶31], ROA.2016[¶¶62-63], ROA.2124[¶¶87-88]) and the legal theory that issuing temporary QDROs in associate judge court is "unlawful" pursuant to federal and state constitutions and statutes (ROA.1042[¶45]):

1)   The Texas statutes limits QDROs as a "post-divorce" (ROA.1042[¶¶46-49]) "trial" (ROA.1044[¶58]) remedy; a temporary QDRO is pre-divorce and pretrial (Lack of authority (ROA.1044[¶58])).

2)   The Texas statute limits the court's authority to acquire subject matter jurisdiction over a QDRO claim (ROA.1042[¶45]). (Lack of authority and subject matter jurisdiction and procedural due process violation)

3)   A QDRO is an "appealable" "final order" (ROA.1042[¶¶46,48]); However, "the associate judge's oral pronouncements from the bench and his handwritten Associate Judge's Report do not constitute a final order of enforcement.

[(ROA.1187[¶11])] *See* *Stein v. Stein*, 868 S.W.2d 902, 904 (Tex.App.-Houston [14th Dist.] 1994, no pet.) (holding that under … *Texas Family Code section 201.007*, … an associate judge does not have the power to render judgment [(ROA.2128[¶109])]). The Texas Family Code contemplates only *two very limited circumstances* in which an associate judge may render and sign a final judgment: "one agreed to in writing as to both form and substance by all parties or a final default order."" *In re Lausch*, 177 S.W.3d 144, 151 (Tex. App. 2005). "*Lausch (*holding that associate judge's report was not final because it required approval of trial court and "contemplate[d] an order to follow")" *Alwazzan v. Alwazzan*, NO. 01-16-00589-CV, 28 (Tex. App. Dec. 6, 2018).

4)    The handwritten April 13 Associate Judge's Report is "interlocutory" and "non-appealable" standing order. "[A] standing order is, by definition, a "forward-looking order that applies to all cases pending before a court." *Order*, *standing order*, BLACK'S LAW DICTIONARY (9th ed. 2009)" *In re Ginsberg*, 630 S.W.3d 1, 15 (Tex. 2018). (*See* (ROA.1174) Footnote). (Lack of authority and violation of procedural due process).

5)    The associate judge's court does not have jurisdiction to render a trial remedy, which is reserved for a judge with constitutional jurisdiction to act as the trier of a trial (ROA.2128[¶112]) (Lack of jurisdiction and violation of procedural due process).

6)    ERISA prohibits diverting funds to pay attorney fees, and ERISA supersedes state statutes (Lack of authority) (ROA.1044[¶59]).

7)    BarrowsYbarra and Pigg do not have judicial authority to render a final QDRO as well.

Yan alleged that altering to render temporary QDROs by RICO Defendants is "unlawful" pursuant to federal and state constitutions and statutes. See Section: Statement of Facts.

B.    The facts are well-pleaded with evidence attached.

Yan alleged that he suffered ERISA funds injury. He further alleged an ongoing racketeering scheme, evidenced by multiple temporary QDROs issued by Texas associate judges' courts.

Yan alleged racketeering conspiracies under collusion, evidenced by Leslie and Pigg's emails. He also alleged racketeering conspiracies involving cover-up and damage control, evidenced by decisions from SBTX and the DA's office.

All these pieces of evidence—multiple QDROs, multiple emails, and multiple denials from state agencies, all acts undertaken by bar associates—also support predatory acts under *§ 2* and *§ 1983* claims. See Section: Statement of Facts.

C.  Defendants waived arguments concerning Yan's legal theory.

All defendants have omitted or circumvented the legal argument concerning the alleged RICO predicate acts (ROA.1047, ROA.1054, ROA.1055, ROA.1056, ROA.1057, ROA.1071, ROA.1072, ROA.1073, ROA.1106[¶¶73,99,102,104,107,166,167,171,406]), including the original QDRO rendition, the first altered and second altered order underwrote on April 26th and May 26th, or the subsequent collusion, covering up, damage controlling conspiracy the second constitute RICO predicate acts and conspiracy. The Decisions also ignored this issue and did not mention any application related to the *§ § 664*, *1341*, *1343*, *1962* provisions.

*18 U.S.C. § 1341* "prohibits using the mail to further "any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises." [T]hat provision as setting forth just one offense— using the mails to advance a scheme to defraud." Using internet instead of mailing for same criminal intention constituting *§ 1343*. Yan alleged multiple *§ 1341* and *§ 1343* acts in furtherance of *§ 664* offense, which The Decisions omitted.

According to this Court's *Priester* and *Shaikh* precedents, Yan's case should survive a Rule *12(b)(6)* motion unless the district court has examined his complaint under all possible legal theories. It is clear that the Defendants waived the argument concerning the legal theory of whether a temporary QDRO is unlawful.

Dogs eating poop is wrong, breaking the law is illegal, and the judiciary should know the difference between wrong actions and illegal actions. The Decisions erred by reframing Yan's complaint as "[s]imply arguing a certain order was wrong, even really wrong, won't cut it." The court should have distinguished between a "wrong order" and an "unlawful QDRO."

XII.    The court erred in granting USBank's *12(b)(6)* motion.

USBank was sued in the ninth claim (ROA.1105-1109) under *§§ 1962(c)(d)*, *1983* and *29 U.S.C. § 1056(d)(3)(H)(i)*.

A.    The Order erred in relying on USBank's responsive motion to determine Yan's factual allegations instead of reviewing Yan's complaint.

The Order erred in stating:

> Yan's claims against U.S. Bank fare no better. The Court **independently** assessed U.S. Bank's Motion to Dismiss…**Yan's claims** against U.S. Bank **vary widely** and appeal to an **astonishing** array of federal statutes. See **ECF No. 127 at 7–9**. As explained below, **none** come **close** to presenting a plausible claim that entitles Yan to relief. First, Yan **attempts to sue** U.S. Bank under 18 U.S.C. §§ 664, 1027, 1341, 1343, and 1349. See **ECF Nos. 127 at 7; 60 at 27–38**. *Those are criminal statutes and do not create civil causes of action*. Thus, those claims are *DISMISSED with prejudice*. (ROA.2091)

The Order failed to thoroughly review Yan's complaint (ROA.1029); instead, it erred in referring to USBank's Brief/Memorandum in Support (ROA.1746) as fact to determine what Yan's claims were. Yan alleged *§§ 1341*, *1343* and *664* as RICO predicate acts (ROA.1105-1108[¶¶399,406,408,411]). The RICO Act *§ 1964* is one

of the few federal statutes that authorize civil remedies for criminal conduct, including *§ 1961* defined predicate act. Yan pleaded for a civil remedy based on conspiracy to commit racketeering predicate acts. Yan did not seek separate civil cause of action for Title 18 criminal offense as USBank argued (ROA.1760).

Referring "ECF Nos. 127 at 7" is the first evident error, because entire page 7 (ROA.1758) does not contain a single word mentioning *§§ 664*, *1027*, *1341*, *1343*, or *1349*. Referred Yan's complaint **"60 at 27–38"** is the second evident error, because page 27-38 (ROA.1055-1066) does not contain a single word alleging USBank or any Title 18 offense. Yan's claims against USBank are located on pages **77-80** (ROA.1105-1108), a mere four pages, yet the Order appeared <u>unable</u> to locate them. Pages 77-80 are far from pages 27-38. Anyone who read the correctly located pages will see that Yan alleged civil cause of actions under *§ 1964* (ROA.1108-1109[¶¶417-423]). But the word *§ 1964* never appeared on the Order.

The Order's conclusion that "Yan attempts to sue … §§ 664, 1027, 1341, 1343, and 1349... Those are criminal statutes and do not create civil causes of action. Thus, those claims are DISMISSED with prejudice" leaves Yan puzzled. The only plausible explanation is that the Order *unquestioningly* copied USBank's falsified arguments (ROA.1760-1761), accepting them as true without reading Yan's actual claims.

Rule *12* dismissal requires the court to review the complaint thoroughly under any set of facts or any possible legal theory to do justice. When the Order erred in referring pages where the claims are not located, it does not meet the threshold for dismissal.

B.    Proving pattern is not required under *§ 1962(d)*.

The Order erred in dismissing the RICO claim against USBank, as it is filled with legal and factual errors:

> "Yan discusses isolated instances of nebulous alleged impropriety, but he **fails** to **show** the **required** "**pattern** of racketeering activity," let alone that his allegations are "**connected to the acquisition, establishment, conduct, or control of an enterprise**." … Accordingly, Yan's RICO claims against U.S. Bank are **DISMISSED with prejudice**." (ROA.2091-2092).

USBank was alleged as person (ROA.1105[¶398]) engaging in *§§ 1962(c)(d)* (ROA.1106[¶401]), not as an enterprise. The Order conclusively stated that alleging a person requires "a pattern of racketeering activity" (ROA.2092) without citing any authority.

*Thomas v. Thompson*, CAUSE NO.: 1:10CV10-SA-JAD, 9 (N.D. Miss. Jun. 8, 2011) ("holding conspirators liable for actions not made or taken individually but by another conspirator"). *WIWA v. ROYAL DUTCH PETROLEUM COMPANY*, 96 Civ. 8386 (KMW) (S.D.N.Y. Feb. 22, 2002) ("holding that there is no "overt act" requirement for a RICO conspiracy").

SCOTUS controlling precedent *Salinas v. United States*, 522 U.S. 52, 66 (1997) ("holding that to prove a RICO conspiracy claim, it is sufficient to prove that the defendant "knew about and agreed to facilitate the scheme")" *United States v. Gurry, Criminal Action No. 16-cr-10343-ADB, 5 (D. Mass. Jan. 17, 2019)*).

Two predicate acts requirement has met (ROA.1180) within the First Claim, alleging SBTX as an enterprise. Nineth claim is supplemental to the First.

The second error occurred when it concluded that Yan's allegations are "connected to the acquisition, establishment, conduct, or control of an enterprise," without citing any source from Yan's complaint.

""[T]he requirements for RICO's conspiracy charges under § 1962(d) are less demanding" than those for substantive violations. … "A 'conspirator must intend to further an endeavor which, if completed, would satisfy all of the elements of a substantive criminal offense, but it suffices that he adopt[s] the goal of furthering or facilitating the criminal endeavor.' In the civil context, a plaintiff must allege that the defendant 'knew about and agreed to facilitate the scheme.'" … However, a party "may be liable for [RICO] conspiracy even though he was incapable of committing the substantive offense." … Finally, the existence of a RICO enterprise is not a required element of a RICO conspiracy claim." *City of N.Y. v. Bello*, No. 13-2931-

cv, 3-4 (2d Cir. 2014) (citing *Baisch v. Gallina*, 346 F.3d 366 (2d Cir. 2003); *United States v. Applins*, 637 F.3d 59 (2d Cir. 2011); *Salinas*).

First, Yan alleged USBank for *§§ 1962(c)(d) offense*, the *acquisition*, *establishment* or *control* of are the elements of *§§ 1962(a)(b)* which Yan never alleged. *See Salinas*, "a defendant "who opts into or participates in a conspiracy" to violate § 1962(c) may be liable "even if the defendant did not personally agree to do . . . *any* particular element" of the § 1962(c) violation; … (holding that the RICO statute "does not permit us to excuse from the reach of [§ 1962(d)'s] conspiracy provision an actor who does not himself commit or agree to commit the two or more predicate acts requisite to the underlying [§ 1962(c)] offense")." *In re Insurance Brokerage Antitrust Litigation*, 618 F.3d 300, 372-73 (3d Cir. 2010).

The Order appears to have *unquestioningly* copied from USBank's responsive motion (ROA.1753), including entire sentences and citations. By adopting USBank's baseless arguments as factual findings without reviewing Yan's four-page claim, the Order erred in shifting the burden of proper fact-finding to the appellate court. This practice raises concerns about professional ethics. Yan asks this Court to determine whether this work product reflects the standards of the federal judiciary or constitutes an abusive waste of appellate judicial resources.

C.   USBank is alleged as a co-conspirator under *§ 1983*, a private party involved in such a conspiracy, even though not an official of the State, can be liable under *§ 1983*.

Yan alleged "that judgment order lacked due process and that the Plaintiff's property is protected under the Fourteenth Amendment." (ROA.1107[¶409]) under *§ 1983* claim. The Order erred in concluding that Yan was "alleging the Bank violated what he calls "the 'Liberty' clause of the Fourteenth Amendment," (ROA.2092) inexplicably citing "ECF No. 60 at 67" (ROA.2092) where the word "U.S. Bank" does not appear on that page 67.

USBank is alleged as a co-conspirator. Disregarding this Court's precedent said that, "[t]he Court declared that a private party involved in such a conspiracy, even though not an official of the State, can be liable under § 1983," *Sparks v. Duval County Ranch Co., Inc.*, 604 F.2d 976, 982-83 (5th Cir. 1979)). The Order erred in concluding that "[Yan] does not make this required showing" (ROA.2092) that the Bank acted under color of law, and therefore, the *§ 1983* claim was erroneously dismissed with prejudice. It seems the district court either overlooked Yan's argument (ROA.2013[¶51]) or disregarded precedent.

D.   USBank is alleged breaching fiduciary duty by blatantly determining a Due Process-violating unlawful order as a legitimate QDRO and failing to object to the court as the Department of Labor's opinion instructed.

The Order erred in concluding that Yan "**never** articulates any facts that would suggest U.S. Bank violated its fiduciary duty," by inexplicably citing "ECF No. 60

at 25" (ROA.2092), repeating the same pattern of referencing random pages for conclusions.

The Order erred by accepting USBank's Rule *12* motion as true (citing "as U.S. Bank's Motion notes, Yan *was not* identified as an *alternate payee* under the family court's orders") (ROA.2093) without referencing the complaint. It disregarded Yan's objection that the order should be determined as void (ROA.2014-2016[¶¶52-61]), because it is not in accordance with state law (ROA.2016-2017[¶¶62-68]), and that he alleged USBank breaching *29 U.S.C. § 1056(d)(3)(G)(i)(II)* fiduciary duty of "shall **determine** *whether* such an order *is* a qualified domestic relations order and notify the participant" (ROA.1044[¶58]), not the "alternate payee" clause as USBank erroneously defended (ROA.2018-2019[¶¶73-82]). See also *Dalton* at 138 (Tex. 2018) (ROA.2016[¶62],ROA.2124[¶88]).

*29 U.S.C. § 1056(d)(3)(G)(i)* "**requires** administrators to consider divorce decrees to **determine** whether they are Qualified Domestic Relations Orders, which are enforceable. *Estate of Altobelli v. Int'l Business Machines*, 77 F.3d 78, 81 (4th Cir. 1996))*. "Should the plan administrator **determine** that an order does not qualify as a QDRO, the beneficiary or alternate payee may **appeal** the plan administrator's decision to a "c**ourt** of competent jurisdiction" **under** *29 U.S.C. § 1056(d)(3)(H)(i)*." *Stewart v. Thorpe Holding Co. Profit Sharing*, 207 F.3d 1143, 1156 (9th Cir. 2000).

USBank received "a court document that is not true" (ROA.1116). USBank shall not divert money "in a non-truthful way" (ROA.1117). "A plan fiduciary's responsibilities run **only** to participants and beneficiaries," *Boggs* at 850 (1997), not to the state court.

Yan objected and attached truthful court document. U.S. Department of Labor("DOL")'s opinion letter stated that not every court order is enforceable and USBank is not obligated to comply with an unlawful order (ROA.2019-2020[¶¶83-86]). Therefore, ERISA's fiduciary duty required USBank to question the order per this DOL's opinion letter, but they failed to do (ROA.2020-2022[¶¶87-94]). Yan also pointed out additional errors (ROA.2017-2018[¶¶69-72], ROA.2022-2024[¶¶95-112]).

The Order erroneously concluded that US Bank did not breach its fiduciary duty by accepting USBank's statement instead of assuming Yan's allegations as true, contrary to the Rule *12* dismissal requirement, leading to the improper dismissal with prejudice of the *29 U.S.C. § 1056(d)(3)(H)(i)* claim.

E. The final report concluded factual allegations from inexplicable paragraphs.

Yan's claim against USBank is based on four key pages (ROA.1105-1108[¶¶ 394-413]). The Order ignored these pages (ROA.2092) and instead cited irrelevant sections: ECF No. 60 at 24 (ROA.1052) for the RICO claim, at 67 (ROA.1095) for

the § 1983 claim, and at 26 (ROA.1054) for the *29 U.S.C. § 1056(d)(3)(H)(i)* claim, with "*29 U.S.C. § 1056(d)(3)(H)(i)*" never appearing on page 26.

The referenced pages (24 (ROA.1052), 67 (ROA.1095), and 26 (ROA.1054)) do not address the factual allegations against USBank. There is no indication the district court fully reviewed Yan's claims, showing a lack of adversarial fairness by overlooking the layperson's filings. The Order also failed to interpret "the facts in the light most favorable to the plaintiff" (*Doe v. McKesson*, 935 F.3d 253, 259 (5th Cir. 2019)). The RICO claim was dismissed for lack of pattern, though a pattern is required for the enterprise, not the individual. The *§ 1983* claim was dismissed despite precedent that a co-conspirator need not be a state actor. Additionally, the *29 U.S.C. § 1056(d)(3)(H)(i)* claim was dismissed, disregarding the DOL opinion letter and the absence of relevant state statute provisions.

XIII.    21-Day Safe Harbor, the *28 U.S.C. § 636* right to appeal to preserve issue, and Pre-filing Injunction:

A.    Initial Rule *11* motion complied with waiver doctrine.

Yan served and filed a motion (ROA.261-265) against Ms. Kates, alleging a violation of Rule *11(b)(3)* (ROA.263[¶8]). Ms. Kates responded (ROA.476), denying a violation of Rule *11(b)(2)* and waiving the argument regarding the safe harbor provision and Rule *11(b)(3)*. "[S]ome courts have held that the failure to raise the safe harbor provision may operate as a waiver or forfeiture. … ("21 day safe

harbor provision may be waived or forfeited"); <ins>...</ins> (**N.D. Tex. 2006**) (recognizing that a party may waive the safe harbor provision)." *In re Coastal Land Development Corporation*, Case No. 07-51267-NPO, 17 (Bankr. S.D. Miss. May. 29, 2009). But this time, the same district court sua sponte defended SBTX counsel.

In a parallel Rule *11* motion against Mr. Ogle (ROA.464), he raised a 21-day safe harbor objection (ROA.483). The magistrate issued a single FCR (ROA.534) denying both motions. Yan's actions were not frivolous; he properly served the Rule *11* motion but filed it prematurely. Following the FCR, which lacked specific reasoning, Yan believed he needed to wait an additional 21 days.

B.    Re-filing Rule *11* motion after 21 days is not frivolous.

Yan refiled same two Rule 11 motions (ROA.1184,ROA.1238) after 21 days. Upset by being challenged, the magistrate issued two FCRs (ROA.1284,ROA.1641), erred in concluding that the refiling constitutes "the **repeated**, **unwarranted filing** of motions for sanctions against an attorney is a serious matter [] which the Court will not continue to tolerate," and warned that Yan would be sanctioned if he "files new Rule 11 motion" (ROA.1284,ROA.1641,ROA.1669).

Refiling is permissible practices. The district court's view is contrary to other federal courts. "[A] matter of law is frivolous where "[**none**] of the legal points [are] arguable on their merits."" *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

Upon believing that he has legal point arguable (ROA.1649[¶25]) (quoting *Anders v. California*, 386 U.S. 738 (1967)), Yan appealed (ROA.1643-1650) the latter FCR, under *28 U.S.C. § 636(b)(1)*, expressly asserting that *re-filing* should not constitute "repetitive," "unwarranted," or "frivolous," and it has been permitted (ROA.1648[¶22]) (citing *United States v. Sweet*, No. 8:01-CV-331-T-23TGW, 2001 U.S. Dist. LEXIS 17131 (M.D. Fla. Sept. 17, 2001)) by other federal courts.

The Third Circuit held,

> "We note, as did the District Court, that there is a *split of authority* regarding whether *re-filing* an initially noncompliant Rule 9011 motion after 21 days provides fair notice for such sanctions. (6th Cir.2003) (suggesting *re-filing* may cure previous safe harbor noncompliance), … (M.D.Tenn. Oct. 24, 2008) (same), and *Muhammad v. Louisiana*, Nos. … (E.D.La. Dec. 21, 2000) (same), … (rejecting reliance on premature filing to satisfy safe harbor), … (D.Kan. Mar. 1, 2007) (same)…" *Ettinger v. Miller (In re Miller),* 730 F.3d 198, 204-5(3d Cir. 2013).

Because safe harbor equally applies to both rules ("Bankruptcy Rule 9011 is the *equivalent* sanctions rule to Rule 11 of the Federal Rules of Civil Procedure, … cases decided pursuant to [Rule 11 also] apply to Rule 9011." *Id*.), *Ettinger* concluded *Fed. R. Bankr. P. 9011* motion, citing *Muhammad*), a case addressing Rule *11* safe harbor noncompliance. The FCR was erred.

C.   Zealous advocacy requires objection to preserve the issue.

Upon de novo review, the district court ignored Yan's argument ROA.1648[¶22], accepted FCR recommendation, responded with a sua sponte pre-filing injunction:

"(noting "the *repeated*, *unwarranted* filing of motions for sanctions against an attorney is a serious matter [] which the Court will not continue to tolerate"). **Accordingly**, **though** the FCR **suggested** sanctions may be **recommended** "**if** Plaintiff files **any future frivolous** motions for sanctions," see ECF No.114 at 1, the Court **finds** that **threshold** has already been **crossed**" (ROA.1669).

This injunction is contradictory to this Court's view that:

"This Court has **no desire** to deter any litigant from advancing any claim or defense which is **arguably** supported by existing law, or *any* reasonably based suggestion for its extension, modification, or reversal. Positions thus taken *cannot* be considered as frivolous, although they *may* be unsuccessful and indeed *may* be given short shrift." *Farguson v. Mbank Houston, N.A.*, 808 F.2d 358, 359 (5th Cir. 1986).

Yan had to appeal under *28 U.S.C. § 636* to preserve the re-filing issue under raise-or-waive rule. "[T]he failure to file objections to the magistrate's report waives the right to appeal the district court's judgment [in the appellate court]." *Thomas v. Arn*, 474 U.S. 140, 142 (1985). Any sanction followed *§ 636* appeal would have a chilling effect prejudicing the efforts to preserve issues.

Yan filed motion for reconsideration (ROA.1673-1678), asserting that *28 U.S.C. § 636(b)(1)(C)* grants an appeal right (ROA.1675[¶¶9-10]). He also stated that he had not crossed the threshold of "files any future frivolous motions for sanctions" after the FCR, quoting, "Plaintiff has not filed a single motion for sanctions in the past three months" (ROA.1677[¶19]). The district court ignored Yan again.

Since that day, Yan has faced a dilemma: zealously advocate all valid legal points, risking further injunctions due to the court's bias against laypeople's

arguments, or waive key issues under the chilling effect. In this unprecedented case, threatening a pro se litigant facing "a small army of" (ROA.2077) attorneys for preserving issues is not justice.

D.   Filing objection under *28 U.S.C. § 636(b)(1)(C)* is a constitutional right.

"[A] magistrate is not an Article III judge …the district court … must exercise supervision over the magistrate" *Thomas* at 141 .

The Supreme Court *"*has stressed that the reviewability of a magistrate judge's actions is a critical factor in considering the propriety of an Article III judge's delegation of authority to a magistrate judge." … [S]o long as the district court has the power to review the magistrate judge's actions, there is no "`threat to the judicial power or the independence of judicial decisionmaking that underlies Article III.'"" *United States v. Dees*, 125 F.3d 261, 268 (5th Cir. 1997).

If an objection filed under *28 U.S.C. § 636(b)(1)(C)* leads to a sua sponte injunction, it undermines the litigants' constitutional right to have their case heard by an Article III judge. Any threat to a litigant seeking judicial review under an Article III court abridges the guarantee of the First Amendment and the separation of powers. Therefore, this injunction was erred.

E.    The district court sua sponte imposed pre-filing injunctions, in violation of due process.

The Court held that "our precedent governing the imposition of pre-filing injunctions … states unequivocally that "[n]otice and a hearing are required if the district court sua sponte imposes a pre-filing injunction." … **Those prerequisites are mandatory and constitutionally derived**; failure to provide notice and conduct a hearing is an abuse of discretion." *Qureshi v. U.S.*, 600 F.3d 523, 525-526 (5th Cir. 2010).

""[A] preliminary injunction granted without adequate notice and a fair opportunity to oppose it should be vacated and remanded to the district court,"… **Regardless of the merits of the injunction** … [This Court] **must** therefore vacate the pre-filing injunction." *Id*.

XIV.    <u>Finality</u>:

A.    The final judgment neither adjudicates all claims of all parties nor cites Rule *54(b)*.

The Supreme Court stated that "the general test for finality as being a decision "that ends the litigation on the merits and leaves nothing for the court to do but execute the judgment."" *Newpark Shipbuilding Repair, v. Roundtree*, 723 F.2d 399, 401 (5th Cir. 1984). *See* also (ROA.2130).

This lawsuit "contains [nine] claims and/or [twelve] parties, a final judgment exists **only if** it meets one of two conditions: The judgment **must either** adjudicate **all** claims, rights, and liabilities of **all** parties **or** the district court **must expressly** conclude that no just reason exists for delaying the entry of final judgment **and must expressly** order the entry of that judgment pursuant to **Rule 54(b)**" *Bader v. Atlantic International, Ltd.*, 986 F.2d 912, 914-915 (5th Cir. 1993).

Neither of the exceptions is met here. There are twelve parties, nine claims and single judgment. The judgement "**neither** expressly determined that no just reason for the delay of final judgment existed **nor** directed that the judgment[] be deemed final as to any party. Absent those express statements, which are required by Rule *54(b)*, the judgment[] herein **must** adjudicate **all** of the claims and all of the rights and liabilities of **all** of the parties for this Court to have appellate jurisdiction." *Id.* at 915. The Decisions did not.

B.  Pigg filed the answer, not a Rule 12 motion.

Pigg is sued under *§ 1962(d)* (ROA.1064), *§ 2* (ROA.1078), and *§ 1983* (ROA.1094) which were not briefed at any stage. Pigg responded (ROA.1230-1237), denying most and admitting some allegations. Under party presentation principle, the district court shall not dismiss.

C. The Order expressly did not rule on three claims against Pigg; therefore, the final judgment erred in disposing of all claims.

The Order (ROA.2076-2093) expressly stated,

> "The Court *independently* assessed *U.S. Bank's Motion* to Dismiss, which was filed after the Magistrate Judge entered his FCR on the above motions" (ROA.2091), and "the Court GRANTS *all* remaining *motions to dismiss* in this case. See ECF Nos. *69, 70, 75, 83, 90, 126*. Because all other Defendants have been terminated *at this juncture*, the Court ORDERS that this civil action is DISMISSED" (ROA.2093).

This Court has "cautioned that "[t]he intention of the judge is crucial in determining finality." …First, a decision is final if the only claims not disposed of by the district court were abandoned" *Mclaughlin v. Mississippi Power Co.*, 376 F.3d 344, 350-351 (5th Cir. 2004). Yan and Pigg had not abandoned their claims, this exception does not apply.

"Second, a decision that does not specifically refer to all pending claims will be deemed final if it is **clear** that the district court <u>intended,</u> by the decision, to dispose of all claims." *Id*. The language in the Order explicitly addresses every party except Pigg. Pigg has not "been terminated *at this juncture,*" the district court erred in ordering "that this civil action is DISMISSED."

I. <u>Ending Statement:</u>

A forged QDRO led to the embezzlement of $25,000 in ERISA funds by Barrows-Ybarra and Pigg, highlighting the need for corrective action. The security of American families' ERISA funds should not be compromised for the gain of a few

greedy family court actors. Altering a banking instrument would result in professional disqualification in USBank. Yet, two years later, BarrowsYbarra and Pigg who forged court instrument remain Texas attorneys. Yan's disciplinary complaint was dismissed, the criminal complaint barred, and the federal suit dismissed with prejudice. Contradictorily, the judiciary swiftly imposed a due process-violating injunction on Yan with lighting speed, simply because he objected. In this country, does the judiciary permit forgery but prohibit disobedience?

The public's fundamental expectation of the judiciary is that "[t]ruth is the essential objective of our adversary system of justice." *United States v. Beechum, 582 F.2d 898, 908 (5th Cir. 1978)*. There is no truth in a forged QDRO. The integrity of the legal principles has yet to penetrate the Texas legal community's racketeering fellowship. Does this Court still "believe in a system of law based on justice and morality," *Walker v. City of Birmingham*, 388 U.S. 307, 324 (1967), or is it merely "smoke and mirrors?"

## CONCLUSION

"At this initial stage of the case, [Yan] need not definitively prove [his] injury or disprove the [Defendants]'s defenses. [he] has plausibly pleaded on the face of [ERISA] complaint that [he] suffered financial harm from the [Defendants]'s action, and that is enough for now." *Tyler v. Hennepin County*, 598 U.S. 631, 570 (2023).

The lower court failed to follow the law to such a degree that even a scam—an altered, forged QDRO—was allowed in the legal framework, as judges, acting as a government of men, subordinated the rule of law to their personal views. The more barriers the SBTX associates impose on Yan's pursuit of justice, the more it demonstrates its predatory monopoly. Sherman Act Section 2 prohibits predatory conduct without justification in a monopoly. After all, a legal interpretation monopoly is still a monopoly, which Supreme Court justices have also clearly noticed (Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 45 (2012)).

In *Burrell v. Staff*, 60 F.4th 25 (3d Cir. **2023**), Plaintiffs pleaded unjust enrichment, Pennsylvania Wage Payment and Collection Law, Trafficking Victims Protection Act, Fair Labor Standards Act and RICO claims against **the County**, **the Authority** and the **Corporation**—a small army of defendants—similar to what Yan did (ROA.2077).

The Third Circuit reversed the district court's dismissal. *Id*. at 31, and emphasized, "**[c]hoices usually come with consequences**. We can honor our obligations, pursue opportunity, make good on our debts. Or we can **walk the other way** and **decline to play by the rules**. Ordinarily, **law fences these two paths**,

rewarding industry and honesty, penalizing irresponsibility. The majority's decision moves that line." *Id.* at 50.

Yan fights this battle for integrity and honor. The Defendants in this case, declined to follow ERISA rules, and the Decisions failed to move that line. However, **this Court shall follow the law**, as the Third Circuit did.

For the reasons set forth above, this Court should reverse the interim injunctive order, the final order, judgement and remand this case to the district court so that Yan can seek redress for his damages.

Respectfully submitted,

/s/ Conghua Yan
Conghua Yan, Pro Se Plaintiff
[Conghua Yan] [2140 E Southlake Blvd, Suite L-439] [Southlake, Texas 76092]
[214-228-1886] [arnold200@gmail.com]

## CERTIFICATE OF SERVICE

This is to certify that the foregoing document has been served in a manner in compliance with Rule 25(b) and (c) of the Fed. R. App. P., on October 7, 2024, on all registered counsel of record, and has been transmitted to the Clerk of the Court.

/s/ Conghua Yan
Conghua Yan, Pro Se Plaintiff
[Conghua Yan] [2140 E Southlake Blvd, Suite L-439] [Southlake, Texas 76092]
[214-228-1886] [arnold200@gmail.com]

## CERTIFICATE OF COMPLIANCE

I certify that the foregoing Brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

- this brief contains 18,000 words and 1746 lines, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type requirements of Fed. R. App. P. 32(a)(6) because:

- this brief has been prepared in a proportionally spaced typeface using Microsoft Office 2016 Word with a 14-point font named Times New Roman.

/s/ Conghua Yan
Conghua Yan, Pro Se Plaintiff
[Conghua Yan] [2140 E Southlake Blvd, Suite L-439] [Southlake, Texas 76092]
[214-228-1886] [arnold200@gmail.com]
October 7, 2024

# APPELLANT'S APPENDIX

Tab Document

A. Federal Statutes (1-73)

B. State Statutes (74-89)

C. Third Amended Complaint filed by Plaintiff in district court (90-242)

D. FCR in district court (243-261)

E. Objection to FCR filed by Plaintiff in district court (262-285)

F. Order in district court (286-304)

G. Judgement in district court (305-306)

H. Rule 58 motion and memorandum filed by Plaintiff in district court (307-344)