# Case No. 24-10543

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

---

Conghua Yan,

*Plaintiff - Appellant*

v.

State Bar of Texas, et al.,

*Defendants - Appellees*

---

On Appeal from the United States District Court for the

Northern District of Texas, Fort Worth Division

Civil Action No. 4:23-CV-00758-P, The Hon. Mark T Pittman, Presiding

---

# APPELLANT'S UNOPPOSED/NON-RESPONSIVE
# MOTION TO SUBMIT SECOND JUDICIAL NOTICE

---

Coming now, Appellant Conghua Yan ("Yan" or "Appellant") hereby requests the Court take the unopposed/non-responsive submission of second judicial notice of the documents listed below in connection with Opening Brief, pursuant to Federal Rule of Evidence 201.

## I.    ARGUMENTS AND AUTHORITIES

A. Federal Rule of Evidence allows judicial notice of newly available public documents.

"[I]t is appropriate in ruling on a motion to dismiss to take "judicial notice of publicly available documents and transcripts."[1]" *La. Highway St. Gabriel, LLC v. LVS II Spe I, LLC (In re La. Highway St. Gabriel, LLC)*, CASE NO. 20-10824, 5-6 (Bankr. M.D. La. Jun. 21, 2021).

"The Court takes judicial notice of the facts … as they are "not subject to reasonable dispute because [they] . . . can be accurately and readily determined from [a source] whose accuracy cannot reasonably be questioned." See FED. R. EVID. 201(b)" *George v. SI Grp.*, No. 20-40427, 4 n.[2] (5th Cir. Nov. 2, 2021).

B. This notice contains facts that became newly available after around February 26, 2025, subsequent to Yan submitting the opening brief.

---

[1] *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (citing *Norris v. Hearst Trust*, 500 F.3d 454, 461 n. 9 (5th Cir. 2007)). *See also Basic Capital Management, Inc. v. Dynex Capital, Inc.*, 976 F.3d 585, 589 (5th Cir. 2020) (holding that Fed. R. Evid. 201(d) expressly provides that a court 'may take judicial notice at any state of the proceeding,' and Fifth Circuit precedents confirm judicially noticed facts may be considered in ruling on a 12(b)(6) motion)." *La. Highway St. Gabriel* at 7 n.18.

The following document was available on the docket of the Court of Criminal Appeals("CCA"), Texas, the website after February 26, 2025.

See https://search.txcourts.gov/Case.aspx?cn=WR-96,456-01&coa=coscca

- **Appendix A: Original criminal proceeding of petition for the writ of mandamus.**
- **Appendix B: Notice of assigned case number WR-96,456-01 for original application for writ of mandamus.**

Any overt act performed by co-conspirators—any associates of the State Bar of Texas or the Texas Courts—to deny judicial access to Yan's criminal complaint constitute a serious <u>new matter</u> involving concealment and damage control, in furtherance of the ongoing RICO scheme.

The ongoing First Amendment petition right denial of judicial access in the state's lower court demonstrates that judges are prioritizing the will of their favored political party—the 'judge comrades'—over the rule of law.

"The judiciary, … has no influence over either the **sword** or the **purse**; no direction either of the strength or of the **wealth of the society**; and can take no **active resolution** whatever. It may truly be said to have neither **force** nor **will**, but merely **judgment**" *Evans v. Gore*, 253 U.S. 245, 249 (1920). "The complete independence of the courts of justice is peculiarly essential in a limited Constitution. …Without

this, all the reservations of particular rights or privileges would amount to nothing."

*Id.*

However, evidently in this case, when state court has the **will** of purse(abstract money from ERISA fund **wealth of the society**) and the **force** of sword (**active resolution** in form of unappealable temporary order), and co-conspirator are in the same judiciary party, **judgment** for justice might never be done within the judiciary.

> "The Federalist No. 78, p. 464 (C. Rossiter ed. 1961) (A. Hamilton); see Williams-Yulee, 135 S.Ct. at 1666 ("The judiciary's authority ... depends in large measure of the public's willingness to respect and follow its decisions."). That respect will erode if the public believes that judges merely channel political will—let alone the will of their favored political party. See The Federalist, supra, at 465 ("[L]iberty can have nothing to fear from the judiciary alone, but would **have everything to fear** from its union with either of the other departments.")." *Guffey v. Duff*, 330 F. Supp. 3d 66, 75 (D.D.C. 2018).

<u>CONCLUSION</u>

Yan respectfully requests that this Court grant his motion to submit this judicial notice and accept the Appendix A: <u>Original criminal proceeding of petition for the writ of mandamus</u> and Appendix B: <u>Notice of assigned case number WR-96,456-01 for original application for writ of mandamus</u> as part of the record.

Respectfully submitted,

/s/ Conghua Yan
Conghua Yan, Pro Se Plaintiff

[Conghua Yan] [2140 E Southlake Blvd, Suite L-439] [Southlake, Texas 76092] [214-228-1886] [arnold200@gmail.com]

## UNSWORN DECLARATION UNDER PENALTY OF PERJURY

*28 U.S.C. § 1746*

My name is Conghua Yan. I am over the age of 18, and I am fully competent to execute this unsworn declaration. I am the movant in this Motion. I am the pro se litigant filing the Motion.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on March 4, 2025.

/s/ Conghua Yan
Conghua Yan, Pro Se Plaintiff

# CERTIFICATE OF CONFERENCE

On February 27, 2025, Yan conferred with all Appellees.

William Albert Pigg; Lori L. DeAngelis; U.S. Bank; Barrows Firm; Leslie Starr Barrows; Samantha Ybarra graciously unopposed this request.

Appellees the State Bar of Texas; Luis Jesus Marin; Daniel Eulalio Martinez; Rachel Ann Craig has been non-responsive, exercising their Miranda rights.

_____
/s/ Conghua Yan
Conghua Yan, Pro Se Plaintiff
[Conghua Yan] [2140 E Southlake Blvd, Suite L-439] [Southlake, Texas 76092]
[214-228-1886] [arnold200@gmail.com]

## CERTIFICATE OF SERVICE

This is to certify that the foregoing document has been served in a manner in compliance with Rule 25(b) and (c) of the Fed. R. App. P., on Mar 4, 2025, on all registered counsel of record, and has been transmitted to the Clerk of the Court.

/s/ Conghua Yan

Conghua Yan, Pro Se Plaintiff

[Conghua Yan] [2140 E Southlake Blvd, Suite L-439] [Southlake, Texas 76092]

[214-228-1886] [arnold200@gmail.com]

Mar 4, 2025

# Appendix A

WR-96,456-01
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 2/26/2025 3:40 AM
Accepted 2/26/2025 9:06 AM
DEANA WILLIAMSON
CLERK

No. _____

**IN THE COURT OF CRIMINAL APPEALS
OF TEXAS**

RECEIVED
COURT OF CRIMINAL APPEALS
2/26/2025
DEANA WILLIAMSON, CLERK

In re Conghua Yan, individually

Relator

---

# ORIGINAL CRIMINAL PROCEEDING OF PETITION FOR WRIT OF MANDAMUS

---

*From 360th Judicial District Court*
*Tarrant County, Texas*
*Hon. Patricia Baca Bennett, Presiding Judge*
*From 324th Judicial District Court*
*Tarrant County, Texas*
*Hon. Beth A. Poulos, Presiding Judge*
*From 325th Judicial District Court*
*Tarrant County, Texas*
*Hon. Cynthia Terry, Presiding Judge*

---

Respectfully Submitted:

Conghua "Arnold" Yan
arnold200@gmail.com
2140 E Southlake Blvd. Suite L-439
Southlake, Texas 76092
(214) 228-1886
Pro Se litigant

---

## STATEMENT CONCERNING ORAL ARGUMENT

---

Relator respectfully requests that oral argument be heard on this mandamus. As demonstrated by the arguments below, this case involves issues that are complex.

---

## IDENTITY OF PARTIES AND COUNSEL

---


Relators certify that the following is a complete list of the parties, their attorneys, and any other person who has any interest in the outcome of this case:

**RELATOR:**

Conghua "Arnold" Yan

*Counsel for the Relator:*
Conghua Yan
arnold200@gmail.com
2140 E Southlake Blvd. Suite L-439
Southlake, Texas 76092
(214) 228-1886
Pro Se litigant


**RESPONDENT:**

Hon. Patricia Baca Bennett, Presiding Judge
360th Judicial District Court
Tarrant County, Texas
Hon. Beth A. Poulos, Presiding Judge
324th Judicial District Court
Tarrant County, Texas
Hon. Cynthia Terry, Presiding Judge
325th Judicial District Court
Tarrant County, Texas


**REAL PARTY IN INTERESTS:**

Not applicable in this case.

# TABLE OF CONTENTS

STATEMENT CONCERNING ORAL ARGUMENT ................................................................................ 2

IDENTITY OF PARTIES AND COUNSEL.................................................................................... 3

TABLE OF CONTENTS................................................................................................. 4

TABLE OF AUTHORITIES ............................................................................................. 5

RECORD REFERENCES ................................................................................................ 6

STATEMENT OF THE CASE ............................................................................................ 6

STATEMENT OF JURISDICTION ....................................................................................... 8

ISSUE PRESENTED .................................................................................................. 9

STATEMENT OF FACTS .............................................................................................. 9

    I.   PROCEDURAL HISTORY ....................................................................................... 9

AUTHORITIES ..................................................................................................... 11

    I.   FEDERAL AUTHORITIES ..................................................................................... 11
    II.  STATE AUTHORITIES ....................................................................................... 12

ARGUMENT......................................................................................................... 14

    I.   SUMMARY OF THE ARGUMENTS............................................................................... 14
    II.  ARGUMENTS................................................................................................. 16

       1)   *A criminal complaint is a criminal accusation, and the magistrate is obligated to provide citizen access to a court of inquiry to do justice*........................................................................ 16
       2)   *The District Court has a mandatory ministerial duty to function pursuant to the due course of law* ..... 19
       3)   *Relator does not have other adequate legal remedy* ............................................................ 19
       4)   *The right to file a criminal complaint is a First Amendment-guaranteed right protected under the Fourteenth Amendment.* ............................................................................................ 20
       5)   *The Supreme Court precedents required the courts to address constitutional issue.* ............................ 21
       6)   *The judicial branch can be a RICO enterprise, and an overt act can constitute a conspiracy act in furtherance of a RICO scheme.* .................................................................................... 23
       7)   *The district courts become the most dangerous branch when they access purse using their own sword.* 25
       8)   *The judge of the Court of Criminal Appeals is a magistrate who has the power and authority to issue any writ necessary.* .............................................................................................. 27

CONCLUSION........................................................................................................ 29

PRAYER ........................................................................................................... 30

CERTIFICATION OF TRAP 52.3(J), 52.3(K)(1)(A), AND 52.7(A) ............................................... 32

CERTIFICATE OF COMPLIANCE ...................................................................................... 33

CERTIFICATE OF SERVICE ......................................................................................... 33

RELATOR'S MANDAMUS RECORD...................................................................................... 34

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Al-Kidd*, 563 U.S. 731 (2011) ........................................................................ 22

*Averbach v. Rival Mfg. Co.*, 809 F.2d 1016 (3d Cir. 1987) ........................................ 23

*Childers v. State*, 30 Tex. Ct. App. 160 (Tex. Civ. App. 1891)................................ 16

*Comsys, Inc. v. Pacetti*, 893 F.3d 468 (7th Cir. 2018) ................................................ 20

*De Falco v. Bernas*, 244 F.3d 286 (2d Cir. 2001)........................................................ 23

*Doe v. McKesson*, 922 F.3d 604 (5th Cir. 2019)........................................................... 25

*Edwards v. South Carolina*, 372 U.S. 229 (1963) ...................................................... 21

*Entler v. Gregoire*, 872 F.3d 1031 (9th Cir. 2017)..................................................... 20

*Ex Parte Clear*, 573 S.W.2d 224 (Tex. Crim. App. 1978)......................................... 17

*FS Trucking, Inc. v. Harrison*, No. 11-23-00201-CV (Tex. App. Aug. 8, 2024)............... 17

*Guffey v. Duff*, 330 F. Supp. 3d 66 (D.D.C. 2018)...................................................... 26

*Hearts Bluff Game Ranch, Inc. v. State*, 381 S.W.3d 468 (Tex. 2012)............................ 22

*Heitman v. State*, 815 S.W.2d 681 (Tex. Crim. App. 1991) ....................................... 22

*Herbert v. Herbert*, 754 S.W.2d 141 (Tex. 1988) ....................................................... 22

*Hunt Cnty. Cmty. Supervision & Corr. Dep't v. Gaston*, 451 S.W.3d 410 (Tex. App. 2014) .................................................................................................................................. 18

*In re TXU Electric Co.*, 67 S.W.3d 130 (Tex. 2001) ................................................... 19

*Kisela v. Hughes*, 138 S.Ct. 1148 (2018)..................................................................... 20

*Meyer v. Bd. of Cty. Comm'rs* , 482 F.3d 1232 (10th Cir. 2007) ............................... 20

*Ramos v. Louisiana*, 140 S. Ct. 1390 (2020) .............................................................. 22

*Sparkman v. Nat. Bank of Tyler*, 501 S.W.2d 739 (Tex. Civ. App. 1973)......................... 16

*State ex rel. Hill v. Court of Appeals,* 34 S.W.3d 924 (Tex.Crim.App. 2001)................. 29

*Stone v. Powell*, 428 U.S. 465 (1976)........................................................................... 21

*U.S. v. Broussard*, 80 F.3d 1025 (5th Cir. 1996)........................................................ 24

*U.S. v. Vallone*, No. 04 CR 0372 (N.D. Ill. Feb. 19, 2008) ...................................... 24

*U.S. v. Walker*, 348 F. App'x 910 (5th Cir. 2009)...................................................... 24

*United States v. Doerr*, 886 F.2d 944 (7th Cir. 1989) ................................................ 24

*United States v. Fairley*, 880 F.3d 198 (5th Cir. 2018).............................................. 25

*United States v. Hylton*, 558 F. Supp. 872 (S.D. Tex. 1982) .................................... 21

*United States v. Hylton*, 710 F.2d 1106 (5th Cir. 1983)................................... 20, 21

*United States v. Rahimi*, 144 S. Ct. 1889 (2024) ....................................................... 23

*Williams-Yulee v. Fla. Bar*, 575 U.S. 433 (2015) ...................................................... 26

**Statutes**

*Tex. Code Crim. Proc. art. 2.11* ........................................................................... 13, 30

*Tex. Code Crim. Proc. art. 2A.151* ............................................................... 14, 27, 30

*Tex. Code Crim. Proc. art. 4.01* .................................................................................. 13

*Tex. Code Crim. Proc. art. 4.04* ................................................................... 14, 28, 30

*Tex. Const. art. 1, § 13* .................................................................................................. 12

*Tex. Const. art. 1, § 19* ................................................................................. 12
*Tex. Const. art. 1, § 29* ................................................................................. 12
*Tex. Const. art. V, § 5* ......................................................................... 12, 28, 30
*Tex. Const. art. V, § 8* ............................................................................... 13, 19
*Tex. Gov't Code § 21.001* ................................................................... 13, 28, 30
*Tex. Gov't Code § 24.007* ............................................................................ 13
*Tex. Gov't Code § 24.601* ............................................................................ 13
*U.S. Const. amend. I, § 1* ............................................................................. 11
*U.S. Const. amend. XIV, § 1* ....................................................................... 11

## RECORD REFERENCES

"App." refers to the appendix to this petition. "MR" refers to the mandamus record.

## STATEMENT OF THE CASE

1. **Nature of Proceeding:** The underlying criminal proceeding is a RICO criminal complaint filed on February 10. 2025.

2. **Present Judge, Court, and County:** Hon. Patricia Baca Bennett, 360th Judicial District Court, Tarrant County, Texas. Hon. Beth A. Poulos, 324th Judicial District Court, Tarrant County, Texas. Hon. Cynthia Terry, 325th Judicial District Court, Tarrant County, Texas.

3. **Challenged action:** The Relator individually filed RICO criminal complaints with the 360th District Court Magistrate Patricia Baca Bennett of the 360th Judicial District Court, Tarrant County, Texas; Hon. Beth A. Poulos of the 324th Judicial District Court, Tarrant County, Texas; and Hon. Cynthia Terry of the 325th Judicial District Court, Tarrant County, Texas. All three state court magistrates separately mailed back the complaint on February 14, leaving no criminal proceeding record

in the Texas examining court and effectively depriving Relator of their First Amendment right to petition, as well as their procedural and substantive due process rights under the Fourteenth Amendment and their rights under the Texas Constitution, Article I, §§ 13, 19, 27, 29, and 30.

## STATEMENT OF JURISDICTION

This Court has jurisdiction of this mandamus governs criminal proceeding, pursuant to *Texas Constitution, art. V, § 5(c)* and *Tex. Code Crim. Proc. art. 4.04*.

**ISSUE PRESENTED**

- Whether the Relator is entitled to petition for a redress of RICO criminal law matter to an examining court under the U.S. Constitutions First and Fourteenth Amendment?

- Whether Texas court, including the Court of Criminal Appeals, is still accessible under the "**All court**s **shall be open**" and "every person … **shall** have **remedy** by due course of law" clauses of *Tex. Const. art. I, § 13* for a RICO criminal law matter alleging that Texas district courts are a RICO enterprise and that district judges are RICO persons?

- Whether judicial actors' collective denial of judicial access in the Texas district court and appellate court constitutes a RICO conspiracy act of concealment and damage control in furtherance of a RICO scheme.

**STATEMENT OF FACTS**

**I.    Procedural History**

1.    On February 10, 2025, Relator individually filed RICO criminal complaints (MR-A) with the 360th District Court Magistrate Patricia Baca Bennett of the 360th Judicial District Court, Tarrant County, Texas; Hon. Beth A. Poulos of the 324th Judicial District Court, Tarrant County, Texas; and Hon. Cynthia Terry of the 325th Judicial District Court, Tarrant County, Texas.

2.	On February 14, all three state court magistrates (Patricia Baca Bennett, Beth A. Poulos and Cynthia Terry) separately and collectively mailed back the complaint on February 14, leaving no trial record in the Texas examining court and effectively depriving Relator of their First Amendment right to petition, as well as their procedural and substantive due process rights under the Fourteenth Amendment and their rights under the Texas Constitution, Article I, §§ 13, 19, 27, 29, and 30.

3.	On February 24, Relator filed an original criminal proceeding petition of mandamus (MR-B) to the Second Court of Appeals. Relator sought the appellate court to compel the district courts to perform their court of inquiry function, refer his criminal complaint to the Office of the Attorney General Criminal Division to be contacted to head this investigation, and proceed with their magistrate powers under *Tex. Code Crim. Proc. art. 52*.

4.	The Second Court of Appeals did not charge civil case filing fees, treated the petition as a criminal case, and sealed all filing records pursuant to Texas criminal procedure, but inconsistently assigned a civil case number (02-25-00074-CV).

5.	Additional and alternately, Relator seeks the justice of the Second Court of Appeals to act as magistrate pursuant to *Tex. Code Crim. Proc. art. 2A.151*, perform their court of inquiry function, refer his criminal complaint to the

Office of the Attorney General Criminal Division to be contacted to head this investigation.

6.      On February 25, the Second Court of Appeal denied Relator's mandamus without addressing the constitutional issue of law presented (MR-C).

7.      Since 2024 to present, in parallel, Relator has filed two petitions for certiorari with the U.S. Supreme Court—one docketed (MR-D) and the other awaiting a docket number (MR-E).

## AUTHORITIES

## I.   Federal authorities

8.      *U.S. Const. amend. I, § 1.*

> Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

9.      *U.S. Const. amend. XIV, § 1.*

> All persons born or naturalized in the United States and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

## II. State authorities

10. *Tex. Const. art. I, § 13* EXCESSIVE BAIL OR FINES; CRUEL OR UNUSUAL PUNISHMENT; OPEN COURTS; REMEDY BY DUE COURSE OF LAW.

    Excessive bail shall not be required, nor excessive fines imposed, nor cruel or unusual punishment inflicted. **All courts shall be open**, and every person for an injury done him, in his lands, goods, person or reputation, **shall have remedy by due course of law**.

11. *Tex. Const. art. I, § 19* DEPRIVATION OF LIFE, LIBERTY, PROPERTY, ETC. BY DUE COURSE OF LAW.

    No citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by **the due course of the law** of the land.

12. *Tex. Const. art. I, § 29* BILL OF RIGHTS EXCEPTED FROM POWERS OF GOVERNMENT AND INVIOLATE.

    To guard against transgressions of the high powers herein delegated, we declare that every thing in this "Bill of Rights" is excepted out of the general powers of government, and **shall forever remain inviolate**, and all laws contrary thereto, or to the following provisions, **shall be void**.

13. *Tex. Const. art. V, § 5* JURISDICTION OF CRIMINAL APPEALS.

    (a) The Court of Criminal Appeals **shall have** final appellate jurisdiction coextensive with the limits of the state, and its determinations shall be final, **in all criminal cases of whatever grade**, with such exceptions and under such regulations as may be provided in this Constitution or as prescribed by law.
    (b) The appeal of all cases in which the death penalty has been assessed shall be to the Court of Criminal Appeals. The appeal of all other criminal cases shall be to the Courts of Appeal as prescribed by law. In addition, the Court of Criminal Appeals may, on its own motion, **review a decision of a Court of Appeals in a criminal case** as provided by law. Discretionary review by the Court of Criminal Appeals is not a matter of right, but of sound judicial discretion.
    (c) Subject to such regulations as may be prescribed by law, the Court of Criminal Appeals and the Judges thereof **shall have the power** to issue the writ of habeas corpus, and, **in criminal law matters**, the writs of

mandamus, procedendo, prohibition, and certiorari. The Court and the Judges thereof **shall have the power** to issue such other writs as may be necessary to **protect its jurisdiction** or enforce its judgments. The court shall have the power upon affidavit or otherwise to ascertain such matters of fact as may be necessary to the exercise of its jurisdiction.

14. *Tex. Const. art. V, § 8* JURISDICTION OF DISTRICT COURTS.

**District Court jurisdiction** consists of exclusive, appellate, and original jurisdiction of **all actions**, **proceedings**, and **remedies**, except in cases where exclusive, appellate, or original jurisdiction may be conferred by this Constitution or other law on some other court, tribunal, or administrative body. District Court judges shall have the power to issue writs necessary to enforce their jurisdiction.

15. *Tex. Gov't Code § 21.001* - Inherent Power and Duty of Courts

**(a)** A court has all powers necessary for the exercise of its jurisdiction and the enforcement of its lawful orders, including authority to issue the writs and orders necessary or proper in aid of its jurisdiction.

**(b)** A court shall require that **proceedings be conducted with dignity** and in an orderly and expeditious manner and **control the proceedings** so that **justice is done**.

16. *Tex. Gov't Code § 24.007* - Jurisdiction

**(a)** The district court has the jurisdiction provided by Article V, Section 8, of the Texas Constitution.

17. *Tex. Gov't Code § 24.601* - Jurisdiction

**(a)** A family district court has the jurisdiction and power provided for district courts by the constitution and laws of this state. Its jurisdiction is concurrent with that of other district courts in the county in which it is located.

18. *Tex. Code Crim. Proc. art. 2.11* - Examining Court

When the **magistrate** sits for the purpose of inquiring into a **criminal accusation** against any person, this is called an **examining court**.

19. *Tex. Code Crim. Proc. art. 4.01* - What Courts Have Criminal Jurisdiction

The following courts have jurisdiction in criminal actions:

1. **The Court of Criminal Appeals**;

2. **Courts of appeals**, other than the Court of Appeals for the Fifteenth

Court of Appeals District;

3. **The district courts**;

…

20.   *Tex. Code Crim. Proc. art. 4.04* - Court of Criminal Appeals

Sec. 1. The Court of Criminal Appeals and each judge thereof shall have, and is hereby given, **the power and authority** to grant and issue and cause the issuance of writs of habeas corpus, and, **in criminal law matters**, the **writs of mandamus**, procedendo, prohibition, and certiorari. **The court and each judge thereof shall have**, and is hereby given, **the power and authority** to grant and issue and cause the issuance of such other writs as may be necessary to **protect its jurisdiction** or enforce its judgments.

Sec. 2**.** The Court of Criminal Appeals shall have, and is hereby given, final appellate and review jurisdiction in criminal cases coextensive with the limits of the state, and its determinations shall be final. The appeal of all cases in which the death penalty has been assessed shall be to the Court of Criminal Appeals. In addition, **the Court of Criminal Appeals** may, on its own motion, with or without a petition for such discretionary review being filed by one of the parties, **review any decision** of a court of appeals in a criminal case. Discretionary review by the Court of Criminal Appeals is not a matter of right, but of sound judicial discretion.

21.   Tex. Code Crim. Proc. art. 2A.151 - Types Of Magistrates

The following officers are magistrates for purposes of this code:

(1) a justice of the supreme court;

(2) **a judge of the court of criminal appeals;**

(3) **a justice of the courts of appeals**;

(4) **a judge of a district court;**

…

## ARGUMENT

## I.    Summary of the arguments

- A criminal complaint constitutes a formal accusation, and magistrates are legally obligated to provide citizens access to a court of inquiry to ensure justice is served. Under Texas law, district court judges are classified as

magistrates and hold criminal jurisdiction. Courts are required to conduct proceedings to uphold justice, and the law encourages citizens to file criminal complaints with magistrates.

- When a district judge investigates a criminal accusation, they function as a magistrate in an examining court. Texas law explicitly grants district court judges investigative powers, allowing them to initiate inquiries, summon witnesses, and issue arrest warrants. These powers make district court judges functional equivalents of law enforcement authorities when acting in their magistrate capacity.

- The three presiding judges of the 360th, 324th, and 325th district courts failed to fulfill their mandatory duty by refusing to process the Relator's criminal complaints and blocking access to a court of inquiry. This systematic abandonment of their magistrate responsibilities constitutes a forfeiture of their function as examining courts.

- Furthermore, the Texas Constitution mandates district courts to exercise their adjudicatory and investigative powers to ensure due process. The judges' refusal to act deprived the Relator of access to the court, violating the Open Courts and Remedy Guarantee Clause.

- The Relator lacks an adequate legal remedy because the judges collectively abandoned their magistrate role, permanently denying access to

the court of inquiry. Under established Texas precedent, an absence of adequate legal remedies arises when a party faces the permanent loss of substantial rights. Here, the Relator's right to access the court for a criminal inquiry has been irreparably lost.

## II.   Arguments

### 1) A criminal complaint is a criminal accusation, and the magistrate is obligated to provide citizen access to a court of inquiry to do justice

22.   A judge of a district court is a magistrate under *Tex. Code Crim. Proc. art. 2A.151(4)*. 360th, 324th and 325th district court has criminal jurisdiction under *Tex. Code Crim. Proc. art. 4.01*, *Tex. Gov't Code §§ 24.007*, *24.601* and *Tex. Const. art. V, § 8*.

23.   A court is obligated to conduct proceeding to do justice under *Tex. Gov't Code § 21.001*. "A criminal accusation is defined by articles 25 and 26 of the Penal Code to be *the whole or any part* of the *procedure* which the law provides for bringing offenders to justice." *Childers v. State*, 30 Tex. Ct. App. 160, 199 (Tex. Civ. App. 1891).

24.   A criminal complaint is a criminal accusation against some person. "A citizen has a legal right to file a criminal complaint with the [magistrate]. In fact, the law encourages this." *Sparkman v. Nat. Bank of Tyler*, 501 S.W.2d 739, 743 (Tex. Civ. App. 1973). "Accordingly, as a matter of policy, Texas courts encourage the

reporting of criminal conduct" *FS Trucking, Inc. v. Harrison*, No. 11-23-00201-CV, 10 (Tex. App. Aug. 8, 2024).

25.   When a district judge sits for the purpose of inquiring into a criminal accusation against any person, he sits as a magistrate, and the court which he then holds is an examining court. See *Ex Parte Clear*, 573 S.W.2d 224, 228 (Tex. Crim. App. 1978).

26.   "[S]tate district court judges **are not** limited to acting in [adjudication] capacities. By virtue of the **court-of-inquiry powers** conferred by Chapter 52 of the Code of Criminal Procedure, district court judges are unambiguously permitted to **step out of their adjudicatory roles** and are **expressly authorized to investigate**—and **to a limited degree prosecute**—alleged violations of criminal law. *See Tex.Code Crim. Proc. arts. 52.01–.09*.

> Chapter 52 empowers district court judges to:
>
>> (1) initiate **investigative proceedings** into unlawful conduct by requesting that the presiding judge of the administrative district appoint a district court judge to commence a court of inquiry and by executing a sworn affidavit establishing probable cause to believe that a specific violation of the law has occurred;
>> (2) **preside over a court of inquiry and conduct a fact-finding investigation into allegations of criminal misconduct**, including summoning witnesses and hearing testimony; and
>> (3) issue an arrest warrant to facilitate further prosecution if there is sufficient evidence that an offense has been committed. *See id.* arts. 52.01, .08.

These activities are **substantially similar** to the basic investigative powers characteristic of law-enforcement authorities in non-judicial branches of the government, such as **police officers** and **district attorneys**. They are also virtually **indistinguishable** from the attributes the Texas Supreme Court has recognized as being characteristic of an "**appropriate law enforcement authority**." *See Gentilello,* 398 S.W.3d at 682, 686–87. Thus, under Chapter 52, **district court judges possess authority beyond adjudication and internal disciplinary authority**: **acting in the capacity of "magistrate**," they have the **power** to **investigate criminal breaches of the law** by the citizenry at large. *Cf. In re Thompson,* 330 S.W.3d 411, 415 (Tex.App.-Austin 2010, orig. proceeding) (holding that district judge had **distinct powers** when acting in capacity as "**district judge**" as compared to acting in capacity as "**magistrate**"). … the power to "investigate" while acting in the capacity as a magistrate makes district court judges functional **equivalents** of typical **law-enforcement** entities in terms of their fundamental investigative authority as to allegations of criminal conduct."

*Hunt Cnty. Cmty. Supervision & Corr. Dep't v. Gaston*, 451 S.W.3d 410, 434-35 (Tex. App. 2014).

27.     Relator's criminal complaints were returned without being entered into the district court's proceeding record. The three presiding judges of the 360th, 324th, and 325th district courts systematically abandoned their magistrate capacity by collectively blocking Relator's access to the court of inquiry. The

360th, 324th, and 325th district courts have forfeited their function as examining courts.

### 2) The District Court has a mandatory ministerial duty to function pursuant to the due course of law

28.  Tex. Const. art. V, § 8 requires the district court to exercise **all** actions, proceedings, and remedies, including its adjudicatory power as a district judge and its investigative power as a magistrate.

29.  The Relator has a constitutional right to access the court under the Open Courts and Remedy Guarantee Clause of the Texas Constitution. The three judges violated the due course of law by depriving him of access to the court of inquiry.

### 3) Relator does not have other adequate legal remedy

30.  *In re TXU Electric Co.*, 67 S.W.3d 130 (Tex. 2001), the Supreme Court of Texas has held that, "A party establishes that no adequate remedy at law exists by showing that the party is in real danger of permanently losing its substantial rights. Canadian Helicopters, Ltd. v. Wittig, 876 S.W.2d 304, 306 (Tex. 1994)."

31.  The Relator has no adequate remedy at law when the three district court judges collectively abandoned their magistrate role. The Relator has permanently lost access to the court of inquiry.

**4) The right to file a criminal complaint is a First Amendment-guaranteed right protected under the Fourteenth Amendment.**

32.     "[A]s a matter of first impression", "the filing of a criminal complaint is protected by the First Amendment." *Entler v. Gregoire*, 872 F.3d 1031, 1043 (9th Cir. 2017). "[T]o opine on the foundational constitutional principle, we join our two sister circuits that have held that the filing of criminal complaints falls within the embrace of the First Amendment." *Id*. (citing *Meyer v. Bd. of Cty. Comm'rs* , 482 F.3d 1232, 1243 (10th Cir. 2007) and *United States v. Hylton*, 710 F.2d 1106, 1111 (5th Cir. 1983)).

33.     "Although there is no Supreme Court case directly on point, there is clear Ninth Circuit precedent," *Id* at 1041, the violations of filing grievances as ""constitutional right" to do that" are "constitutionally impermissible."

34.     "It should be clear that the First Amendment protects your ability to report to the [authority] that you are the victim of a crime. And although the Supreme Court "**does not require a case directly on point** for a **right to be clearly established**," *Kisela v. Hughes*, ⸺ U.S. ⸺, 138 S.Ct. 1148, 1152 (2018)" (citation omitted) *Comsys, Inc. v. Pacetti*, 893 F.3d 468, 475 (7th Cir. 2018).

35.     "The first amendment right to petition for redress of grievances is "among the most precious of the liberties safeguarded by the Bill of Rights." … There can be no doubt that the filing of a legitimate criminal complaint … constitutes an exercise of the

first amendment right." *United States v. Hylton*, 558 F. Supp. 872, 874 (S.D. Tex. 1982).

36.    The Fifth Circuit "affirms the district court's holding that Hylton''s conduct constitutes a legitimate exercise of her constitutional right to petition for redress of grievances." *United States v. Hylton*, 710 F.2d 1106, 1112 (5th Cir. 1983).

37.    "[C]onstitutionally protected rights of **free speech, free assembly, and freedom to petition for redress of their grievances**. … It has long been established that **these First Amendment freedoms** are **protected by the Fourteenth Amendment** from invasion by the States. … The circumstances in this case reflect an exercise of these basic constitutional rights in their most pristine and classic form." (citation omitted) *Edwards v. South Carolina*, 372 U.S. 229, 235 (1963).

38.    "State courts, like federal courts, have a **constitutional obligation** to safeguard personal liberties and to uphold federal law." *Stone v. Powell*, 428 U.S. 465, 494 n.35 (1976).

### 5) The Supreme Court precedents required the courts to address constitutional issue.

39.    Relator was denied access to file a criminal complaint in the court of inquiry, as well as in the district and appellate courts. Tex. Const. art. I, § 13, 19 and 29 provides open courts and remedy guarantee. "Indeed, state Bill of Rights

guarantees, on their face, are generally more expansive and solicitous of people's liberties than the federal Bill of Rights." *Heitman v. State*, 815 S.W.2d 681, 689 (Tex. Crim. App. 1991). This Court is the last resort.

40. "The judiciary has a historic duty to uphold constitutional protections of individual liberties." *Hearts Bluff Game Ranch, Inc. v. State*, 381 S.W.3d 468, 472 (Tex. 2012). "Now, however, the court[s] merely **pays lip service** to this sacred right. **Talk is cheap**. It is time for the court to show courage and restore the right of [accessing the court of inquiry] to its proper constitutionally established role in the Texas legal system." *Herbert v. Herbert*, 754 S.W.2d 141, 147 (Tex. 1988).

41. "[E]xisting precedent **must** have placed the statutory or constitutional question **beyond debate**" *Ashcroft v. Al-Kidd*, 563 U.S. 731, 741 (2011).

42. "[S]tare decisis "promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived **integrity of the judicial process**." … The doctrine "**permits society to presume that bedrock principles are founded in the law rather than in the proclivities of individuals**, and thereby contributes to **the integrity of our constitutional system of government, both in appearance and in fact**."" (emphasis added and citation omitted for brevity) *Ramos v. Louisiana*, 140 S. Ct. 1390, 1411 (2020).

43. "Precedent is fundamental to day-to-day constitutional decisionmaking in this Court and every American court. The "judicial Power" established in Article III incorporates the principle of *stare decisis*, both vertical and horizontal." *United States v. Rahimi*, 144 S. Ct. 1889, 1920 (2024).

### 6) The judicial branch can be a RICO enterprise, and an overt act can constitute a conspiracy act in furtherance of a RICO scheme.

44. The Third Circuit and the Supreme Court "agree that **a court may be an enterprise within the meaning of RICO**. See United States v. Bacheler,611 F.2d 443, 450 (3d Cir. 1979) (Philadelphia Traffic Court); United States v. Herman,589 F.2d 1191 (3d Cir. 1978), cert. denied, 441 U.S. 913, 99 S.Ct. 2014, 60 L.Ed.2d 386 (1979) (Pittsburgh Magistrates); United States v. Vignola,464 F. Supp. 1091, 1095 (E.D.Pa.), aff'd mem., 605 F.2d 1199 (3d Cir. 1979), cert. denied, 444 U.S. 1072, 100 S.Ct. 1015, 62 L.Ed.2d 753 (1980), (Philadelphia Traffic Court)." *Averbach v. Rival Mfg. Co.*, 809 F.2d 1016, 1018 (3d Cir. 1987).

45. The Second Circuit and the Supreme Court "has previously held that **a governmental unit can be a RICO enterprise**. *See United States v. Angelilli,* 660 F.2d 23, 30-35 (2d Cir. 1981), *cert. denied,* 455 U.S. 910, 945, 102 S.Ct. 1258, 1442, 71 L.Ed.2d 449, 657 (1982)." *De Falco v. Bernas*, 244 F.3d 286, 307-8 (2d Cir. 2001).

46. The Fifth Circuit said, "[i]t is well established that **a government unit with multiple sub-departments can be a RICO enterprise**. *United States v. Stratton*, 649 F.2d 1066, 1074 (5th Cir. 1981). **A state's judicial branch qualifies as an enterprise under RICO**" *U.S. v. Walker*, 348 F. App'x 910, 912 (5th Cir. 2009).

47. Conspiracy is serious business, control damage or attempt to conceal a conspiracy are statements made "in furtherance of" conspiracies. Pursuant to the precedents, the Seventh Circuit's pronouncement stated: "the court recognizes that "conspiracy is serious business, … Statements designed to conceal a conspiracy also are deemed to be "in furtherance" where ongoing concealment is a purpose of the conspiracy. … to control damage to the conspiracy are in furtherance of the conspiracy." *U.S. v. Vallone*, No. 04 CR 0372, 5 (N.D. Ill. Feb. 19, 2008).

48. "We **agree with the Seventh Circuit**'s pronouncement that statements "in furtherance" of a conspiracy can take many forms, including statements seeking to control damage to an ongoing conspiracy and statements made in an attempt to conceal the criminal objectives of the conspiracy. See *United States v. Doerr*, 886 F.2d 944, 951 (7th Cir. 1989);" *U.S. v. Broussard*, 80 F.3d 1025, 1039 (5th Cir. 1996).

49. The Fifth Circuit ruled that, a statement is made in furtherance of the conspiracy if it advances the ultimate goal of the conspiracy. See *United States*

*v. Phillips*, 219 F.3d 404, 419 (5th Cir. 2000). The Fifth Circuit "have repeatedly cautioned "that the 'in furtherance' requirement <u>is not to be construed too strictly lest the purpose of the [conspiracy statement non-hearsay] exception be defeated.</u>"" *United States v. Fairley*, 880 F.3d 198, 214 (5th Cir. 2018).

50.     "Evidence of ... a conspiracy can be actual knowledge, overt actions with another, such as arming oneself in anticipation of apprehension, or **inferred from the knowledge of the alleged co-conspirator of the impropriety of the actions taken by the other co-conspirator.**" *Doe v. McKesson*, 922 F.3d 604, 610 (5th Cir. 2019).

51.     After obtaining actual knowledge of the alleged co-conspirator's impropriety in the *18 U.S.C. § 664* predicate acts committed by the other co-conspirator, the district and appellate courts have taken actions to deliberately control the damage of this RICO criminal complaint by denying judicial access.

## 7) The district courts become the most dangerous branch when they access purse using their own sword.

52.     The Supreme Court recognized that:

> **"[p]rotecting the appearance of judicial integrity and impartiality is without doubt a government interest "of the highest order**." …Williams-Yulee (**upholding state ban on solicitation of funds by judicial candidates**); see also Hodge v. Talkin … (noting "the government's long-recognized interest[ ] ... in assuring the appearance (and actuality) of a judiciary uninfluenced by public opinion and pressure"). Because judges have "**no influence over either the sword or the purse**; no direction either of the strength or of the **wealth of the society**; and can take no active resolution whatever," the efficacy of their decisions depends on public respect. … ("The judiciary's authority ... depends in large measure of the public's willingness to

respect and follow its decisions."). **That respect will erode if the public believes that judges merely channel political will—let alone the will of their favored political party**. … **("[L]iberty can have nothing to fear from the judiciary alone, but would have everything to fear from its union with either of the other departments."**). The Constitution's grants of life tenure and fixed salaries are perhaps the main sources of insulation between judging and politics…"(citation omitted) *Guffey v. Duff*, 330 F. Supp. 3d 66, 75 (D.D.C. 2018) (citing *Williams-Yulee v. Fla. Bar*, 575 U.S. 433 (2015)).

53. Under Founders' philosophy, **the judiciary was meant to be a neutral reviewer, separate from the sword (executer) or the purse (treasurer).** However, when a member of SBTX in state family courts arbitrarily influences the distribution of **ERISA purse** and redirects the life-saving wealth of society to other members while wielding its own **sword (temporary orders)**, it **becomes the most dangerous form of tyranny**. See The Federalist No. 78 (Alexander Hamilton). Also see Brutus No. 15 (Mar. 20, 1788). **The Framers foresaw the danger of judicial authority being influenced by financial interests**. To counter this threat, only judicial actors—no other government officials—were granted life tenure and protected compensation under Article III, Section 1, a safeguard that does not exist in state courts.

54. Under the Texas judicial framework, both the presiding judge and counsel are practicing lawyers, and local lawyers are the primary source of campaign funds for elected judges. Meanwhile, Texas family law has removed the safety

valve (appellate mechanism) for reviewing predatory temporary orders, which extract money from family court litigants' funds to enrich counsel or other parties. The original constitutional insulation between judging and personal interest is breached, yet the absolute authority remains. This anti-Founders philosophical framework creation—a three-headed power tyranny labeled as the "state family court"—has resulted in this decades-long, statewide RICO scheme scandal, eroding Americans' liberty on a daily basis. It is all because the successor legislators forgot the Founders' original concern- to keep the judicial power away from financial temptation at all cost. The Founders knew that tyranny would arise if the judiciary gains access to the treasury, as it is driven by human greed. Two hundred years later, this ERISA embezzlement scandal has emerged, just as the Founders foresaw, resulting from family court tied with every actor's financial interest except those of the litigants.

### 8) The judge of the Court of Criminal Appeals is a magistrate who has the power and authority to issue any writ necessary.

55. The judge of the Court of Criminal Appeals is a magistrate, pursuant to *Tex. Code Crim. Proc. art. 2A.151(2)*.

56. When the **magistrate** sits for the purpose of inquiring into a **criminal accusation** against any person, **this Court** is an **examining court**, pursuant to *Tex. Code Crim. Proc. art. 2.11*.

57. *Tex. Const. art. V, § 5(a)* gives this Court final appellate jurisdiction in all criminal cases of **whatever grade** and *Tex. Const. art. V, § 5(c)* gives this Court the power to issue any writ as may be necessary to protect its jurisdiction.

58. *Tex. Gov't Code § 21.001* give this Court all powers necessary for the exercise of its jurisdiction and the authority to issue the writs and orders necessary or **proper in aid of its jurisdiction** and to control the proceedings so that **justice is done**.

59. *Tex. Code Crim. Proc. art. 4.04* give this Court the power, on its own motion **to review any decision** of a court of appeals in a criminal case.

60. Relator filed a RICO criminal complaint involving a decade long, state wide racketing scheme, alleging Texas Courts and the State Bar of Texas as RICO enterprise and members of State Bar of Texas as RICO person to unlawfully abstract money from people's pension purse using the sword of court temporary orders under conspiracy.

61. This Court holds final appellate jurisdiction over this unprecedented criminal complaint. The district and appellate courts have denied entry of the criminal complaint into criminal proceedings, deprived of this Court's possible final appellate jurisdiction in this *criminal cases at pre-trial grade*. To uphold

justice and preserve the integrity of the Texas judiciary, whether on Relator's petition or the Court's own motion, this Court must issue a writ to protect criminal jurisdiction. This ensures Texans that the judicial branch as a whole has not become the most dangerous branch and that public confidence in the judiciary remains intact, rather than eroded by lower court' judges prioritizing the will of their favored political party —the "judge comrades"—over the rule of law.

62.     Whether the public has an adequate remedy at law when certain judicial branches operate as a RICO enterprise is a test of the Texas legal framework. It appears no remedy when there is no judicial access. The country remains a republic—if you [some judges] can keep it. This petition is the ultimate test. The judges in the district and second court of appeals have failed their test.

## CONCLUSION

To obtain mandamus relief, settled law requires the Relator to establish: "(1) he has no other adequate legal remedy; and (2) under the relevant facts and law, the act sought to be compelled is purely ministerial." *State ex rel. Hill v. Court of Appeals,* 34 S.W.3d 924, 927 (Tex.Crim.App. 2001).

From the foregoing arguments, Relator has established that the alleged 360th, 324th and 325th district courts have closed his constitutional access to the government of court of

inquiry, that he has no other adequate legal remedy, and that compelling the district court to function under the due course of law to provide access to the court of inquiry is purely ministerial.

Therefore, this Court should grant his mandamus relief.

## PRAYER

1.      Relator seeks declaratory relief to compel the alleged **district courts** to perform their court of inquiry function, refer his criminal complaint to the Office of the Attorney General Criminal Division to be contacted to head this investigation, and proceed with their magistrate powers under *Tex. Code Crim. Proc. art. 52*.

2.      Additional and alternately, Relator seeks **the judges of this Court** to act as magistrate pursuant to *Tex. Code Crim. Proc. art. 2A.151(2)* and *Tex. Code Crim. Proc. art. 4.04*, perform their court of inquiry function pursuant to *Tex. Code Crim. Proc. art. 2.11*, refer his criminal complaint to the Office of the Attorney General Criminal Division to be contacted to head this investigation pursuant to *Tex. Gov't Code § 21.001*.

3.      Additional and alternately, Relator seeks **the judges of this Court** to issue any writ necessary pursuant to *Tex. Const. art. V, § 5(c)*, *Tex. Gov't Code § 21.001* and *Tex. Code Crim. Proc. art. 4.04*, to do justice and protect its jurisdiction.

4.      Additionally, and alternatively, upon denial, Relator seeks this petition to serve as a procedural step toward filing a subsequent petition for certiorari with U.S. Supreme Court.

5.      Relator also pray for such other and further relief as is just.

Respectfully submitted,

*/s/ Conghua Yan*
Conghua "Arnold" Yan
arnold200@gmail.com
2140 E Southlake Blvd, Suite L-439
Southlake, Texas 76092
Telephone: (214) 228-1886

## CERTIFICATION OF TRAP 52.3(j), 52.3(k)(1)(A), and 52.7(a)

My name is Conghua Yan. I am over the age of 18, and I am fully competent to execute this Certification. I am the Relator in this case. I am the pro se litigant filing the Petition.

I have reviewed the foregoing Petition and concluded that every factual statement in the Petition is supported by competent evidence included in the Appendix and/or Record.

The **Appendix and/or Record** contain a true and correct copy of every document that is material to the relator's claim for relief and that was filed in the underlying proceeding.

I certify that the February 26, 2025 motion filed within the Mandamus **Appendix and/or Record** is a true and correct copy of the district court's filling showing the matters complained of.

Filed herewith as part of the Record is a properly authenticated transcript of the relevant testimony from the underlying proceeding, including any exhibits offered in evidence, as provided by the court reporter.

I have added page numbers to the bottom right corner of each page of the Record for ease of reference and navigation.

*/s/ Conghua Yan*
Conghua "Arnold" Yan

## CERTIFICATE OF COMPLIANCE

I hereby certify that Microsoft Word reports that this brief contains 6546 words, excluding the portions of the brief exempted by TRAP Rule 9.4(i)(1). It is in Times New Roman 14-point font, converted to Adobe Acrobat portable document format (PDF), and is word-searchable.

*/s/ Conghua Yan*
Conghua "Arnold" Yan

## CERTIFICATE OF SERVICE

I certify that on Feb 26, 2025, a true and correct copy of Relator's Petition for Writ of Mandamus, Appendix, and Record has been delivered by electronic filing manager and/or email and/or by U.S. mail, postage pre-paid, pursuant to TRAP 9.5(b)(2) to the follows:

a. **Respondent:** Hon. Patricia Baca Bennett, Judge
360th Judicial District Court,
200 E. Weatherford St. 4th Floor,
Fort Worth, TX 76196
817-884-2899 Phone
BrittanyTerry bpterry@tarrantcounty.com (court coordinator)

b. **Respondent:** Hon. Beth A. Poulos, Judge,
324th Judicial District Court,
200 E. Weatherford St. 4th Floor,
Fort Worth, TX 76196
817-884-1571 Phone
Joy Pierce jlpierce@tarrantcountytx.gov (court coordinator)

c. **Respondent:** Hon. Cynthia Terry, Judge,

325th Judicial District Court,
200 E. Weatherford St. 5th Floor,
Fort Worth, TX 76196
(817) 884-1587 Phone
Lisa Grimald LKGrimaldi@tarrantcountytx.gov (court coordinator)


*/s/ Conghua Yan*
Conghua "Arnold" Yan

## RELATOR'S MANDAMUS RECORD

Tab Document

A. Criminal Complaint (MR-A).

B. Petition of Mandamus to the Second Court of Appeals. (MR-B)

C. Memorandum Opinion of the Second Court of Appeals. (MR-C)

D. Pending U.S. Supreme Court petition for certiorari 24-554. (MR-D)

E. Pending U.S. Supreme Court petition for certiorari docket number to be assigned. (MR-E)

# Appendix A

# Criminal Complaint

**Conghua "Arnold" Yan**

2140 E Southlake Blvd, Suite L-439 Southlake, Texas 76092

Phone: 214-228-1886

arnold200@gmail.com

February 1st 2025

To: The Honorable Magistrates defined under the Texas Code of Criminal Procedure, Article 2.09.

Re: Criminal Complaint Pursuant to Texas Code of Criminal Procedure Arts. 15.03-15.05

I, Conghua "Arnold" Yan("Yan"), a credible person and affiant, do hereby swear under oath and state the following:

## 1. Accused's Identity

Under 18 U.S. Code § 1961(3), the **Person** whom I accuse include, but are not limited to, Leslie Starr Barrows, Lori L. DeAngelis, William Albert Pigg, Samantha Ybarra, Judith G. Wells and other Texas lawyers and judges who engaged this ERISA funds embezzlement racketeering scheme.

Under 18 U.S. Code § 1961(4), the **Enterprise** which I accuse include, but are not limited to, **the 325th associate judge's court** and **all associate judge courts defined under Texas Family Code § 101.008; the 325th district court** and **all district courts defined under Texas Family Code § 101.008;** and **the State Bar of Texas.**

## 2. Offense Charged

I have good reason to believe and do believe that the accused committed the following racketeering predicate acts: 18 U.S. Code § 664. 18 U.S. Code § 1341. 18 U.S. Code § 1343. 18 U.S. Code § 1963 (racketeering organized crime). Texas Penal

Code Sec. 32.21. Texas Penal Code Sec. 37.03. Texas Penal Code Sec. 37.10. Texas Penal Code Sec. 37.13. Texas Penal Code Sec. 72.03. Texas Penal Code Sec. 72.04.

# 3. RICO elements

RICO Predicate Acts: 18 U.S. Code § 664. 18 U.S. Code § 1341. 18 U.S. Code § 1343.

Other Predicate or Overt acts under conspiracy:
- Concealment
- Damage control
- Troll the cause of action statute time
- Acquiescence
- Status update
- Ensure other members the situation is under control.
- Half-truth statement
- Intentionally or knowingly by words or physical extrajudicial action prevents the execution of any process in a RICO civil cause (Texas Penal Code - PENAL § 38.16)
- 18 U.S. Code § 1512

    (b) **knowingly uses intimidation, threatens, or corruptly persuades another person, or attempts to do so, or engages in misleading conduct toward another person**, **with intent to**

    (1)**influence, delay, or prevent** the testimony of any person in an official proceeding;

    (2) **cause or induce any person to—**

    (A) **withhold testimony, or withhold a record, document, or other object**, from an official proceeding;

    (B) **alter, destroy, mutilate, or conceal an object with intent to impair the object's integrity or availability for use in an official proceeding**;

    (C) **evade legal process summoning** that person to appear as a witness, or to produce a record, document, or other object, in an official proceeding; or

    (D) **be absent from an official proceeding to which such person has been summoned by legal process**;

    (c) Whoever **corruptly**—

    (1) **alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do so, with the**

**intent to impair the object's integrity or availability for use in an official proceeding**; or
(2) otherwise **obstructs, influences, or impedes any official proceeding, or attempts to do so**.

Pattern: At early as at least <u>2013 to present</u>.

Person: Include but are not limited to, <u>Leslie Starr Barrows, Lori L. DeAngelis, William Albert Pigg, Samantha Ybarra, Judith G. Wells and other members of the State Bar of Texas, including prosecutors, lawyers and judges who engaged the conspiracy of furtherance of this Federal ERISA funds embezzlement racketeering scheme</u>.

Enterprise: Include but are not limited to, <u>the 325th associate judge's court and all associate judge courts defined under Texas Family Code § 101.008; the 325th district court and all district courts defined under Texas Family Code § 101.008; and the State Bar of Texas</u>.

Offense: 1962 (a) **any member of the State Bar of Texas or any alleged Texas courts actor** who has **received any income (legal fees or political contributions)** derived, **directly or indirectly, from a pattern of 18 U.S. Code § 664 predicates acts**, to use or invest, **directly or indirectly**, any part of such fees, or the proceeds of such fees, in acquisition of any interest in, or the establishment or operation of the State Bar of Texas and alleged Texas courts which is engaged in, or the activities of which affect, interstate or foreign commerce.

(b) **Any member of the State Bar of Texas or any alleged Texas courts actor** through a pattern of **18 U.S. Code § 664 predicates acts** to acquire or maintain, **directly or indirectly, any interest in** or control of **the State Bar of Texas and alleged Texas courts** which is engaged in, or the activities of which affect, interstate or foreign commerce.

(c) **Any person employed by or associated with the State Bar of Texas or alleged Texas courts** engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, **directly or indirectly**, in the conduct of such **the State Bar of Texas**

or any alleged **Texas courts** affairs through **a pattern of 18 U.S. Code § 664 predicates acts**.

(d) **Any member of the State Bar of Texas or any alleged Texas courts actor** to **conspire to** violate any of the provisions of subsection (a), (b), or (c) of this section.

# 4. Time and Place of Offense

At least since 2013 to present, state wide and decades long. The racketeering predicate acts are still ongoing.

# 5. Statute limitation

5-year statute of limitations for non-capital federal offenses, as set forth in 18 U.S.C. § 3282(a). For RICO, the clock starts from the last predicate act, which is still ongoing.

# 6. Venue

The venue is proper under Texas Code of Criminal Procedure, Article 13.21.

The offense of engaging in organized criminal activity may be prosecuted in any county in which any act is committed to effect an objective of the combination…

# 7. Authority

*18 U.S. Code § 664 –Theft or embezzlement from employee benefit plan*

**Any person** who embezzles, steals, or **unlawfully and willfully** abstracts or converts to his **own use or to the use of another**, **any of the moneys**, funds, securities, premiums, credits, property, or other assets of any employee welfare benefit plan or **employee pension benefit plan**, or of any fund connected therewith, shall be fined under this title, or imprisoned not more than five years, or both.

*18 U.S. Code § 1961 – Definitions (1)*

"racketeering activity" means (A) any act or threat involving … section **664** (relating to embezzlement from pension and welfare funds), … section 1341 (relating to mail fraud), section 1343 (relating to wire fraud) …

*Tex. Fam. Code § 9.101 - Jurisdiction for Qualified Domestic Relations Order*

**(a)** Notwithstanding any other provision of this chapter, the court that rendered a final decree of divorce or annulment or another final order dividing property under this title retains continuing, exclusive jurisdiction to render an enforceable qualified domestic relations order or similar order permitting payment of pension, retirement plan, or other employee benefits divisible under the law of this state or of the United States to an alternate payee or other lawful payee.

*29 U.S. Code § 1056 - Form and payment of benefits*

(d) Assignment or alienation of plan benefits

(1) Each pension plan shall provide that benefits provided under the plan **may not be** assigned or **alienated**.

*29 U.S. Code § 1144 - Other laws*

(a) Supersedure; effective date
Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III **shall supersede any and all State laws** insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title. This section shall take effect on January 1, 1975.

## 8. Legal Theory

A. Unlawful QDRO

The Third Circuit and the Supreme Court "agree that **a court may be an enterprise within the meaning of RICO**. See United States v. Bacheler,611 F.2d 443, 450 (3d Cir. 1979) (Philadelphia Traffic Court); United States v. Herman,589 F.2d 1191 (3d Cir. 1978), cert. denied, 441 U.S. 913, 99 S.Ct. 2014, 60 L.Ed.2d 386 (1979) (Pittsburgh Magistrates); United States v. Vignola,464 F. Supp. 1091, 1095 (E.D.Pa.), aff'd mem., 605 F.2d 1199 (3d Cir. 1979), cert. denied, 444 U.S. 1072, 100 S.Ct. 1015, 62 L.Ed.2d 753 (1980), (Philadelphia Traffic Court)." *Averbach v. Rival Mfg. Co.*, 809 F.2d 1016, 1018 (3d Cir. 1987).

The Second Circuit and the Supreme Court "has previously held that **a governmental unit can be a RICO enterprise**. *See United States v. Angelilli,* 660

F.2d 23, 30-35 (2d Cir. 1981), *cert. denied,* 455 U.S. 910, 945, 102 S.Ct. 1258, 1442, 71 L.Ed.2d 449, 657 (1982)." *De Falco v. Bernas*, 244 F.3d 286, 307-8 (2d Cir. 2001).

The Fifth Circuit said, "[i]t is well established that **a government unit with multiple sub-departments can be a RICO enterprise**. *United States v. Stratton*, 649 F.2d 1066, 1074 (5th Cir. 1981). **A state's judicial branch qualifies as an enterprise under RICO**" *U.S. v. Walker*, 348 F. App'x 910, 912 (5th Cir. 2009).

Texas associate judges are not entitled to judicial immunity because their courts do not possess jurisdiction to render a Qualified Domestic Relations Order (QDRO) for abstracting any funds from an employee pension benefit plan. Under 29 U.S.C. §§ 1056 and 1144, any action to divert money from an employee pension benefit plan is barred unless expressly authorized by state law. Furthermore, Tex. Fam. Code § 9.101 **limits** the **jurisdiction** to render a QDRO to the trial court—namely, the **district court**—and **only** after a divorce decree has been issued.

Therefore, **before the divorce finalized**, neither ERISA law nor state law permits a Texas associate judge or judge (the State Bar of Texas member dressed in robe) to render a temporary Qualified Domestic Relations Order in the associate judge's court or district court to divert money out of the employee pension benefit plan to award fees to attorney (the State Bar of Texas member dressed in suit).

"Webster defines the word **'unlawful'** as follows: 'Not lawful; contrary to law; illegal; **not permitted by law**.' * * * The word 'unlawful' as defined by Bouvier in his Law Dictionary is 'That which is contrary to law.' Another definition is: **'Unlawful** implies that an act is done or **not done as the law allows or requires**.'" *Punchard v. State*, 122 Tex. Crim. 134, 138 (Tex. Crim. App. 1932).

The Supreme Court of Texas ruled that, a Qualified Domestic Relations Order is a **final**, **appealable** order and an **exclusive** trial remedy available either under a

rendered **post-divorce** decree or through a **post-trial petition**. See *Gainous v. Gainous*, 219 S.W.3d 97, 104-05 (Tex. App. 2006) and *Dalton v. Dalton*, 551 S.W.3d 126, 138 (Tex. 2018).

Any temporary Qualified Domestic Relations Order rendered in the associate judge's court or district court is unlawful, as it willfully diverts money from an employee pension benefit plan to award Texas family court lawyers. This constitutes federal offense under 18 U.S.C. § 664, a predicate act defined in 18 U.S.C. § 1961.

I allege above mentioned RICO person and enterprise commit **a decade-long, statewide, ongoing racketeering scheme** to siphon both in-state and out-of-state ERISA funds into the pockets of State Bar of Texas members.

### B. Alter and Forgery

"Webster's defines "alter" as "to cause to become different in some particular characteristic…" … American Heritage similarly defines alter as "[t]o change or make different; modify." … these definitions to comport with the ordinary meaning of the word "altered."" *U.S. v. Carter*, 421 F.3d 909, 912 (9th Cir. 2005). "Forgery has been defined as "the false making or materially altering, with intent to defraud, of any writing, which, if genuine, might apparently be of legal efficacy, or the foundation of legal liability."" *United States v. Jones*, 648 F.2d 215, 217 (5th Cir. 1981) (quoting *Hubsch v. United States*, 256 F.2d 820, 823 (5th Cir. 1958)).

I allege Leslie Starr Barrows("Barrows"), William Albert Pigg("Pigg"), Samantha Ybarra("Ybarra") **altered court order**.

## 9. Statement of Facts

1. On March 13, 2022, Barrows filed a motion (**evidence obtained**) for *interim attorney's fee* as a civil cause of action, attached sworn in affidavit (**evidence**

**obtained**) with bills and invoices (**evidence obtained**), stating *$19,300* fees all incurred in a divorce suit, but fraudulently claimed fees from a *separate* <u>criminal case</u>. (**Texas Penal Code Sec. 37.03**)

2.    On April 13, DeAngelis rendered a temporary QDRO (**evidence obtained**), ordering that Yan is the payee or recipient of a *pre-divorce* QDRO distribution, Yan was ordered to withdraw *$50,000* from 401(k), with *$25,000* paying Barrows' attorney fees and another *$25,000* paying Pigg's attorney fees. (***18 U.S. Code § 664***)

3.    On April 26 and May 26, Barrows, Ybarra, Pigg signed two temporary QDROs (**evidence obtained**), submitted for the and Judith G. Wells' signature. The orders were ***altered*** (**Texas Penal Code Sec. 37.03. Texas Penal Code Sec. 37.10. Texas Penal Code Sec. 37.13**) to state that Yan had an April 13 hearing for the *civil cause of action* of *spousal support*, designating $25,000 for spousal support to Fuyan Wang, Yan's wife, with the disbursement supervised by Barrows. Barrows and Ybarra conducted multiple mails fraud with USBank and the court afterwards (***18 U.S. Code §§ 1341, 1343***).

4.    Two months after signing the May 26, 2022 order, learned that USBank contacted Yan for that fraudulent QDRO, Pigg emailed (***18 U.S. Code § 1343***) Yan on July 21, misleading Yan that he was ordered to withdraw $50,000 from the April hearing, with $25,000 to be paid to Barrows and $25,000 to Pigg. Pigg told Yan that he never signed Barrows and Ybarra's altered QDRO.

5.    On July 21, Yan signed an objection letter to USBank, asserting he did *not* have a spousal support hearing and that his funds are protected under *procedural due process*. Knowing that attorneys *mailed* USBank with the fraudulent May 26 order (***18 U.S. Code § 1341***), Yan attached a copy of the actual April 13 order as proof.

6.     After learning that Yan objected to the altered QDRO, on August 5, Barrows and Ybarra emailed Pigg (**evidence obtained**) (***18 U.S. Code § 1343***), asking him to coordinate, stating, "*In order for us to obtain our attorney's fees*, the order *must* say the fees are for *spousal support*. There is *no way around* it."

7.     On August 7, Piggs emailed (**evidence obtained**) (***18 U.S. Code § 1343***) Yan, "at the hearing in April, you were ordered to get 50K from your 401(k)…Leslie tried to get her $25k via a QDRO, claiming it was for *spousal support – not attorney's fees as ordered*. I *did not sign off* on that [May 26] QDRO because it *would not be true* and I *am not going to sign* a [May 26] court document that *is not true*." (Pigg lied; he still wanted his $25,000, so he told Yan that he did not sign the May 26 order, even though he actually signed it twice).

8.     On August 8, Piggs emailed (**evidence obtained**) (***18 U.S. Code § 1343***) Yan, "the legal issue is that we either *have to lie* and *accept* the QDRO…" (Pigg indeed lied on August 29 and accepted the QDRO).

9.     On August 29, despite the fact that the Texas law do not authorize an associate court to re-clarify its temporary order 135 days after rendition, Barrows colluded DeAngelis to put pressure on Pigg in an email (**evidence obtained**) (***18 U.S. Code § 1343***), stating, "we need to clarify... *a ruling for attorney's fees* in her AJ's report." Pigg coordinated with Barrows to approve releasing the ERISA funds.

10.   The Texas family courts have a decade-long pattern of ordering temporary QDROs (**evidence obtained**) (citing 360-549246-13, 360th Dist. Ct., Tarrant Cnty, Tex. (2014); 360-479099-10, 360th Dist. Ct., Tarrant Cnty, Tex. (2012); 322-547540-13, 322nd Dist. Ct., Tarrant Cnty, Tex. (2014);360-479099-10, 360th Dist. Ct., Tarrant Cnty, Tex. (2011); D1-FM-08-005770, 53rd Dist. Ct., Travis Cnty, Tex. (2009)) to unlawfully abstract ERISA fund, for the purpose of awarding attorney's

fees, a breach of law and racketeering pattern unknown to the public due to their inadequate legal knowledge.

11. Part of the racketing income abstracted from ERISA fund by the members, have been used, directly and indirectly to operate the enterprise, the State Bar of Texas. (***18 U.S. Code § 1962(a)(c)***). The other members of the State Bar of Texas (prosecutors working in the executive branch) have been conspired to use their authority power to conceal the RICO crime by refusing to prosecute.

## 9. RICO conspiracy is broad liberally construed to effectuate its remedial purposes

"If conspirators have a plan which calls for some conspirators to perpetrate the crime and ***others to provide support***, ***the supporters are as guilty as the perpetrators.*** … "[P]lainly a person may conspire for the commission of a crime by a third person."…A person, moreover, may **be liable for conspiracy even though** he ***was incapable* of committing the *substantive offense.***"" *Salinas v. United States*, 522 U.S. 52, 64 (1997).

"RICO is to be **read broadly**. … RICO is to "be **liberally construed** to **effectuate its remedial purposes**," … The statute's "**remedial purposes**" are **nowhere more evident** than in the provision of a private action for those injured by racketeering activity. … Far from effectuating these purposes, the **narrow readings** offered by the dissenters and the court below **would in effect eliminate § 1964(c)** from the statute." *Sedima* at 497-98.

Conspiracy is serious business, control damage or attempt to conceal a conspiracy are statements made "in furtherance of" conspiracies. Pursuant to the precedents, the Seventh Circuit's pronouncement stated:

"Under the reasonable basis standard, <u>a statement may be susceptible to alternative interpretations and still be "in furtherance of the conspiracy</u>." Shoffner, 826 F.2d at 628. Yet, <u>the statement need not have been made exclusively, or even primarily, to further the conspiracy in order to be admissible under the coconspirator exception</u>. United States v. Johnson, 200 F.3d 529, 533 (7th Cir. 2000); United States v. Powers, 75 F.3d 335, 340 (7th Cir. 1996). Rather, <u>the record need only contain some reasonable basis for concluding that the statement in question furthered the conspiracy in some respect</u>. Stephenson, 53 F.3d at 845." U.S. v. Vallone, No. 04 CR 0372, 4 (N.D. Ill. Feb. 19, 2008).

"The Government has a relatively low burden of proof on the issue of whether a statement is made "in furtherance" of a conspiracy. Shoffner, 826 F.2d at 628. Such statements can <u>take on a variety of forms</u>, and the Seventh Circuit has upheld the admission of a wide assortment of coconspirators statements. For instance, <u>statements used to recruit potential coconspirators</u>, id., <u>update others on a conspiracy's progress</u>, United States v. Potts, 840 F.2d 368, 371 (7th Cir. 1987), <u>control damage to an ongoing conspiracy</u>, United States v. Van Daal Wyk, 840 F.2d 494, 499 (7th Cir. 1988), <u>plan or review co-conspirators' exploits</u>, United States v. Molt, 772 F.2d 366, 369 (7th Cir. 1985), and <u>attempt to conceal the conspiracy</u>, United States v. Kaden, 819 F.2d 813, 820 (7th Cir. 1987), have been approved as statements made "in furtherance of" conspiracies. In turn, the court recognizes that "<u>conspiracy is serious business</u>, and <u>talk about it among or by the conspirators should not be presumed to be unrelated to the accomplishment of the conspiracy's goals</u>." United States v. Pallais, 921 F.2d 684, 688 (7th Cir. 1990)." U.S. v. Vallone, No. 04 CR 0372, 4-5 (N.D. Ill. Feb. 19, 2008).

"<u>Statements that are "part of the information flow between conspirators intended to help each perform his role" are statements "in furtherance</u>." United States v. Gajo, 290 F.3d 922, 929 (7th Cir. 2002); United States v. Hunt, 272 F.3d 488, 495 (7th Cir. 2001). … <u>Statements designed to conceal a conspiracy also are deemed to be "in furtherance" where ongoing concealment is a purpose of the conspiracy</u>. Gajo, 290 F.3d at 928-29. Therefore, "statements made to keep coconspirators informed about the progress of the conspiracy, to recruit others or to control damage to the conspiracy are in furtherance of the conspiracy. Stephenson, 53 F.3d at 845." *U.S. v. Vallone*, No. 04 CR 0372, 5 (N.D. Ill. Feb. 19, 2008).

"We **agree with the Seventh Circuit**'s pronouncement that statements "in furtherance" of a conspiracy can take many forms, including statements seeking to control damage to an ongoing conspiracy and statements made in an attempt to conceal the criminal objectives of the conspiracy. See *United States v. Doerr*, 886 F.2d 944, 951 (7th Cir. 1989);" *U.S. v. Broussard*, 80 F.3d 1025, 1039 (5th Cir. 1996).

The Fifth Circuit ruled that, a statement is made in furtherance of the conspiracy if it advances the ultimate goal of the conspiracy. See *United States v. Phillips*, 219 F.3d 404, 419 (5th Cir. 2000). The Fifth Circuit "have repeatedly cautioned "that the 'in furtherance' requirement is not to be construed too strictly lest the purpose of the [conspiracy statement non-hearsay] exception be defeated."" *United States v. Fairley*, 880 F.3d 198, 214 (5th Cir. 2018).

## 10. Concealing this Complaint constitutes statement of conspiracy

"The same act cannot be both lawful and unlawful." *Corbitt v. New Jersey*, 439 U.S. 212, 233 (1978). "Acts generally lawful may become unlawful when done to accomplish an unlawful end, and a constitutional power cannot be used by way of condition to attain an unconstitutional result." *Gomillion v. Lightfoot*, 364 U.S. 339, 347 (1960).

"Because conspiracy is a **continuing** offense, "a defendant who has joined a conspiracy **continues to violate the law through every moment of the conspiracy's existence**, and he becomes responsible for the acts of his co-conspirators in pursuit of their common plot." … A defendant's **membership in the ongoing unlawful scheme continues** until he withdraws…. we presume that Congress intended to preserve the common-law rule that **affirmative defenses** are

matters for **the defendant to prove**." *United States v. Romans*, 823 F.3d 299, 320 (5th Cir. 2016).

"Direct evidence of a conspiracy is unnecessary; each element may be inferred from circumstantial evidence." *United States v. Casilla*, 20 F.3d 600, 603 (5th Cir. 1994). "The agreement may be inferred from a "concert of action." …only `slight' evidence is needed to connect an individual to that conspiracy." ""Knowledge of a conspiracy and voluntary participation in a conspiracy may be inferred from a `collection of circumstances.''" *U.S. v. Jensen*, 41 F.3d 946, 955 (5th Cir. 1995).

"Evidence of ... a conspiracy can be actual knowledge, overt actions with another, such as arming oneself in anticipation of apprehension, or **inferred from the knowledge of the alleged co-conspirator of the impropriety of the actions taken by the other co-conspirator.**" *Doe v. McKesson*, 922 F.3d 604, 610 (5th Cir. 2019).

## REQUEST

I, REQUEST Magistrate to take Tex. Code Crim. Proc. Ann. art. 15.03(a) act of issuing warrant, pursuant to Tex. Code Crim. Proc. Ann. art. 15.03(a)(2)-(3).

I DEMAND a full investigation into every unlawful QDRO issued by the Tarrant County Family Courts, and specifically from the corrupt 325th and its actors.

I DEMAND that the Office of the Attorney General Criminal Division to be contacted to head this investigation.

**Please take notice** that failure to respond shall constitute tacit acquiescence to this Texas statewide, decade long, ERISA funds embezzlement racketeering scheme, whereby you, as a member of the alleged RICO enterprise, voluntarily engage in

damage control regarding all claims herein. This affidavit shall stand as evidence against you in all courts of record, demonstrating that you, with full **knowledge of the alleged impropriety of the actions taken by the other co-conspirator.**

Further, **please take notice** that any response not **verified** and submitted **under penalty of perjury** within **30 days** shall be deemed a **non-response** and constitute an act of concealment regarding all claims herein.

## SWORN DECLARATION

My name is Conghua Yan. I am over the age of 18 and am a resident of Texas. I am of sound mind and capable of making this sworn statement. I have personal knowledge of the facts written in this statement. I understand that if I lie in this statement, I may be held criminally responsible. All the above statements are true.

I declare under penalty of perjury that the foregoing is true and correct.

Executed in Southlake, Texas, on February ___, 2025.

*[signature]* CONGHUA YAN

State of Texas, County of Tarrant

Before me, THE UNDERSIGNED, A Notary Public, in and for the said County and State, on this day personally appeared ___Conghua Yan___, known to me (or proved to me through identity card) to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office this __1st__ day of __Feb.__, 2025

*[signature]*

Notary Public                    State of Texas

                                 My Commission Expires: ___10/31/2028___

GEORGE MAXWELL MITCHELL
Notary Public, State of Texas
Comm. Expires 10-31-2028
Notary ID 130323256

# UNSWORN DECLARATION

My name is Conghua Yan. I am over the age of 18 and am a resident of Texas. I am of sound mind and capable of making this sworn statement. I have personal knowledge of the facts written in this statement. I understand that if I lie in this statement, I may be held criminally responsible. All the above statements are true.

I declare under penalty of perjury that the attached document is a true and correct copy of the original criminal complaint.

Executed in Southlake, Texas, on February 1, 2025.

Conghua Yan    *Conghua Yan*

# Appendix B

ACCEPTED
02-25-00074-CV
SECOND COURT OF APPEALS
FORT WORTH, TEXAS
2/24/2025 2:32 PM
CLARISSA HODGES
CLERK

No. _____

**IN THE COURT OF APPEALS**
**SECOND APPELLATE DISTRICT OF TEXAS**
**AT FORT WORTH**
In re Conghua Yan, individually

Relator

---

# ORIGINAL CRIMINAL PROCEEDING OF PETITION FOR WRIT OF MANDAMUS

---

*From 360th Judicial District Court*
*Tarrant County, Texas*
*Hon. Patricia Baca Bennett, Presiding Judge*
*From 324th Judicial District Court*
*Tarrant County, Texas*
*Hon. Beth A. Poulos, Presiding Judge*
*From 325th Judicial District Court*
*Tarrant County, Texas*
*Hon. Cynthia Terry, Presiding Judge*

---

Respectfully Submitted:

Conghua Yan
arnold200@gmail.com
2140 E Southlake Blvd. Suite L-439
Southlake, Texas 76092
(214) 228-1886
Pro Se litigant

## STATEMENT CONCERNING ORAL ARGUMENT

Relator respectfully requests that oral argument be heard on this mandamus. As demonstrated by the arguments below, this case involves issues that are complex.

---

## IDENTITY OF PARTIES AND COUNSEL

---


Relators certify that the following is a complete list of the parties, their attorneys, and any other person who has any interest in the outcome of this case:

**RELATOR:**

Conghua Yan

*Counsel for the Relator:*
Conghua Yan
arnold200@gmail.com
2140 E Southlake Blvd. Suite L-439
Southlake, Texas 76092
(214) 228-1886
Pro Se litigant

**RESPONDENT:**

Hon. Patricia Baca Bennett, Presiding Judge
360th Judicial District Court
Tarrant County, Texas
Hon. Beth A. Poulos, Presiding Judge
324th Judicial District Court
Tarrant County, Texas
Hon. Cynthia Terry, Presiding Judge
325th Judicial District Court
Tarrant County, Texas

**REAL PARTY IN INTERESTS:**

Not applicable in this case.

# TABLE OF CONTENTS

STATEMENT CONCERNING ORAL ARGUMENT                                    2

IDENTITY OF PARTIES AND COUNSEL                                       3

TABLE OF CONTENTS                                                     4

TABLE OF AUTHORITIES                                                  5

RECORD REFERENCES                                                     5

STATEMENT OF THE CASE                                                 5

STATEMENT OF JURISDICTION                                             7

ISSUE PRESENTED                                                       8

STATEMENT OF FACTS                                                    8

**Procedural History**                                               8

AUTHORITIES                                                           9

**Federal authorities**                                              9

**State authorities**                                                9

ARGUMENT                                                             11

**Summary of the arguments**                                        11

**Arguments**                                                       12

Conclusion                                                          16

PRAYER                                                              17

CERTIFICATIONS                                                      18

RELATOR'S MANDAMUS RECORD                                           21

# TABLE OF AUTHORITIES

Cases

*Childers v. State*, 30 Tex. Ct. App. 160, 199 (Tex. Civ. App. 1891)................................. 14

*Ex Parte Clear*, 573 S.W.2d 224, 228 (Tex. Crim. App. 1978)....................................... 14

*FS Trucking, Inc. v. Harrison*, No. 11-23-00201-CV, 10 (Tex. App. Aug. 8, 2024) ........ 14

*Hunt Cnty. Cmty. Supervision & Corr. Dep't v. Gaston*, 451 S.W.3d 410, 434-35 (Tex. App. 2014)......................................................................................................................... 16

*In re TXU Electric Co.*, 67 S.W.3d 130 (Tex. 2001) ...................................................... 17

*State ex rel. Hill v. Court of Appeals,* 34 S.W.3d 924, 927 (Tex.Crim.App. 2001).......... 17

Statutes

Tex. Code Crim. Proc. art. 2.11 ..................................................................................... 11

Tex. Code Crim. Proc. art. 2A.151 ................................................................................. 11

Tex. Code Crim. Proc. art. 4.01 ..................................................................................... 11

Tex. Const. art. V, § 8 ................................................................................................... 11

Tex. Gov't Code § 21.001 .............................................................................................. 11

Tex. Gov't Code § 24.007 .............................................................................................. 11

Tex. Gov't Code § 24.601 .............................................................................................. 11

Texas Constitution, art. V, §6........................................................................................... 8

Texas Government Code §22.221 ..................................................................................... 8

TX. Const. art. 1, § 13 ................................................................................................... 10

TX. Const. art. 1, § 19 ................................................................................................... 10

TX. Const. art. 1, § 29 ................................................................................................... 10

U.S. Const. amend. I, § 1 ............................................................................................... 10

U.S. Const. amend. XIV, § 1 .......................................................................................... 10

# RECORD REFERENCES

"App." refers to the appendix to this petition. "MR" refers to the mandamus record.

# STATEMENT OF THE CASE

1.  **Nature of Proceeding:**  The underlying criminal proceeding is a RICO criminal complaint filed on February 10. 2025.

2.     **Present Judge, Court, and County:** Hon. Patricia Baca Bennett, 360th Judicial District Court, Tarrant County, Texas. Hon. Beth A. Poulos, 324th Judicial District Court, Tarrant County, Texas. Hon. Cynthia Terry, 325th Judicial District Court, Tarrant County, Texas.

3.     **Challenged action:** Relator individually filed RICO criminal complaints with the 360th District Court Magistrate Patricia Baca Bennett of the 360th Judicial District Court, Tarrant County, Texas; Hon. Beth A. Poulos of the 324th Judicial District Court, Tarrant County, Texas; and Hon. Cynthia Terry of the 325th Judicial District Court, Tarrant County, Texas. All three state court magistrates separately mailed back the complaint on February 14, leaving no trial record in the Texas examining court and effectively depriving Relator of their First Amendment right to petition, as well as their procedural and substantive due process rights under the Fourteenth Amendment and their rights under the Texas Constitution, Article I, §§ 13, 19, 27, 29, and 30.

## STATEMENT OF JURISDICTION

This Court has jurisdiction of this mandamus governs criminal proceeding, pursuant to Texas Constitution, art. V, § 6; Texas Government Code §22.221.

## ISSUE PRESENTED

- Is Relator entitled to petition the Government for a redress of criminal complaint to an examining court under the U.S. and Texas Constitutions and laws?

## STATEMENT OF FACTS

### Procedural History

1. On February 10, 2025, Relator individually filed RICO criminal complaints with the 360th District Court Magistrate Patricia Baca Bennett of the 360th Judicial District Court, Tarrant County, Texas; Hon. Beth A. Poulos of the 324th Judicial District Court, Tarrant County, Texas; and Hon. Cynthia Terry of the 325th Judicial District Court, Tarrant County, Texas.

2. On February 14, all three state court magistrates (Patricia Baca Bennett, Beth A. Poulos and Cynthia Terry) separately and collectively mailed back the complaint on February 14, leaving no trial record in the Texas examining court and effectively depriving Relator of their First Amendment right to petition, as well as their procedural and substantive due process rights under the Fourteenth Amendment and their rights under the Texas Constitution, Article I, §§ 13, 19, 27, 29, and 30.

# AUTHORITIES

## Federal authorities

3.  U.S. Const. amend. I, § 1.

    Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

4.  U.S. Const. amend. XIV, § 1.

    All persons born or naturalized in the United States and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

## State authorities

5.  TX. Const. art. I, § 13 EXCESSIVE BAIL OR FINES; CRUEL OR UNUSUAL PUNISHMENT; OPEN COURTS; REMEDY BY DUE COURSE OF LAW.

    Excessive bail shall not be required, nor excessive fines imposed, nor cruel or unusual punishment inflicted. **All courts shall be open**, and every person for an injury done him, in his lands, goods, person or reputation, **shall have remedy by due course of law**.

6.  TX. Const. art. I, § 19 DEPRIVATION OF LIFE, LIBERTY, PROPERTY, ETC. BY DUE COURSE OF LAW.

    No citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by **the due course of the law** of the land.

7.  TX. Const. art. I, § 29 BILL OF RIGHTS EXCEPTED FROM POWERS OF GOVERNMENT AND INVIOLATE.

    To guard against transgressions of the high powers herein delegated, we declare that every thing in this "Bill of Rights" is excepted out of the general powers of government, and **shall forever remain inviolate**, and all laws contrary thereto, or to the following provisions, **shall be void**.

8.     Tex. Const. art. V, § 8 JURISDICTION OF DISTRICT COURTS.

District Court jurisdiction consists of exclusive, appellate, and original jurisdiction of **all actions**, **proceedings**, and **remedies**, except in cases where exclusive, appellate, or original jurisdiction may be conferred by this Constitution or other law on some other court, tribunal, or administrative body. District Court judges shall have the power to issue writs necessary to enforce their jurisdiction.

9.     Tex. Gov't Code § 21.001 - Inherent Power and Duty of Courts

**(a)** A court has all powers necessary for the exercise of its jurisdiction and the enforcement of its lawful orders, including authority to issue the writs and orders necessary or proper in aid of its jurisdiction.

**(b)** A court shall require that **proceedings be conducted with dignity** and in an orderly and expeditious manner and **control the proceedings** so that **justice is done**.

10.     Tex. Gov't Code § 24.007 - Jurisdiction

**(a)** The district court has the jurisdiction provided by Article V, Section 8, of the Texas Constitution.

11.     Tex. Gov't Code § 24.601 - Jurisdiction

**(a)** A family district court has the jurisdiction and power provided for district courts by the constitution and laws of this state. Its jurisdiction is concurrent with that of other district courts in the county in which it is located.

12.     Tex. Code Crim. Proc. art. 2.11 - Examining Court

When the **magistrate** sits for the purpose of inquiring into a **criminal accusation** against any person, this is called an **examining court**.

13.     Tex. Code Crim. Proc. art. 4.01 - What Courts Have Criminal Jurisdiction

The following courts have jurisdiction in criminal actions:

1. The Court of Criminal Appeals;

2. **Courts of appeals**, other than the Court of Appeals for the Fifteenth Court of Appeals District;

3. **The district courts**;

…

14.     Tex. Code Crim. Proc. art. 2A.151 - Types Of Magistrates

The following officers are magistrates for purposes of this code:

(1) a justice of the supreme court;

(2) a judge of the court of criminal appeals;

(3) **a justice of the courts of appeals**;

(4) **a judge of a district court;**

…

Section 2A.151 - Types Of Magistrates
The following officers are magistrates for purposes of this code:

**(1)** a justice of the supreme court;**(2)** a judge of the court of criminal appeals;**(3)** a justice of the courts of appeals;**(4)** a judge of a district court;**(5)** an associate judge appointed by:**(A)** a judge of a district court or a statutory county court that gives preference to criminal cases in Jefferson County

## ARGUMENT

### Summary of the arguments

- A criminal complaint constitutes a formal accusation, and magistrates are legally obligated to provide citizens access to a court of inquiry to ensure justice is served. Under Texas law, district court judges are classified as magistrates and hold criminal jurisdiction. Courts are required to conduct proceedings to uphold justice, and the law encourages citizens to file criminal complaints with magistrates.

- When a district judge investigates a criminal accusation, they function as a magistrate in an examining court. Texas law explicitly grants district court judges investigative powers, allowing them to initiate inquiries, summon witnesses, and issue arrest warrants. These powers make district court judges functional equivalents of law enforcement authorities when acting in their magistrate capacity.

- The three presiding judges of the 360th, 324th, and 325th district courts failed to fulfill their mandatory duty by refusing to process the Relator's criminal complaints and blocking access to a court of inquiry. This systematic abandonment of their magistrate responsibilities constitutes a forfeiture of their function as examining courts.

- Furthermore, the Texas Constitution mandates district courts to exercise their adjudicatory and investigative powers to ensure due process. The judges' refusal to act deprived the Relator of access to the court, violating the Open Courts and Remedy Guarantee Clause.

- The Relator lacks an adequate legal remedy because the judges collectively abandoned their magistrate role, permanently denying access to the court of inquiry. Under established Texas precedent, an absence of adequate legal remedies arises when a party faces the permanent loss of substantial rights. Here, the Relator's right to access the court for a criminal inquiry has been irreparably lost.

## Arguments

### A criminal complaint is a criminal accusation, and the magistrate is obligated to provide citizen access to a court of inquiry to do justice

15. A judge of a district court is a magistrate under Tex. Code Crim. Proc. art. 2A.151(4). 360th, 324th and 325th district court has criminal jurisdiction under Tex.

Code Crim. Proc. art. 4.01, Tex. Gov't Code §§ 24.007, 24.601 and Tex. Const. art. V, § 8.

16. A court is obligated to conduct proceeding to do justice under Tex. Gov't Code § 21.001. "A criminal accusation is defined by articles 25 and 26 of the Penal Code to be *the whole or any part* of the *procedure* which the law provides for bringing offenders to justice." *Childers v. State*, 30 Tex. Ct. App. 160, 199 (Tex. Civ. App. 1891).

17. A criminal complaint is a criminal accusation against some person. "A citizen has a legal right to file a criminal complaint with the [magistrate]. In fact, the law encourages this." Sparkman v. Nat. Bank of Tyler, 501 S.W.2d 739, 743 (Tex. Civ. App. 1973). "Accordingly, as a matter of policy, Texas courts encourage the reporting of criminal conduct" *FS Trucking, Inc. v. Harrison*, No. 11-23-00201-CV, 10 (Tex. App. Aug. 8, 2024).

18. When a district judge sits for the purpose of inquiring into a criminal accusation against any person, he sits as a magistrate, and the court which he then holds is an examining court. See *Ex Parte Clear*, 573 S.W.2d 224, 228 (Tex. Crim. App. 1978).

19. "[S]tate district court judges **are not** limited to acting in [adjudication] capacities. By virtue of the **court-of-inquiry powers** conferred by Chapter 52

of the Code of Criminal Procedure, district court judges are unambiguously permitted to **step out of their adjudicatory roles** and are **expressly authorized to investigate**—and **to a limited degree prosecute**—alleged violations of criminal law. *See* Tex.Code Crim. Proc. arts. 52.01–.09.

Chapter 52 empowers district court judges to:

> (1) initiate **investigative proceedings** into unlawful conduct by requesting that the presiding judge of the administrative district appoint a district court judge to commence a court of inquiry and by executing a sworn affidavit establishing probable cause to believe that a specific violation of the law has occurred;
> (2) **preside over a court of inquiry and conduct a fact-finding investigation into allegations of criminal misconduct**, including summoning witnesses and hearing testimony; and
> (3) issue an arrest warrant to facilitate further prosecution if there is sufficient evidence that an offense has been committed. *See id.* arts. 52.01, .08.

These activities are **substantially similar** to the basic investigative powers characteristic of law-enforcement authorities in non-judicial branches of the government, such as **police officers** and **district attorneys**. They are also virtually **indistinguishable** from the attributes the Texas Supreme Court has recognized as being characteristic of an "**appropriate law enforcement authority**." *See Gentilello,* 398 S.W.3d at 682, 686–87. Thus, under Chapter 52, **district court judges possess authority beyond adjudication and internal disciplinary authority**: **acting in the capacity of "magistrate**," they have the **power** to **investigate criminal breaches of the law** by the citizenry at large. *Cf. In re Thompson,* 330 S.W.3d 411, 415 (Tex.App.-Austin 2010, orig. proceeding) (holding that district judge had **distinct powers** when

acting in capacity as "**district judge**" as compared to acting in capacity as "**magistrate**"). … the power to "investigate" while acting in the capacity as a magistrate makes district court judges functional **equivalents** of typical **law-enforcement** entities in terms of their fundamental investigative authority as to allegations of criminal conduct."

*Hunt Cnty. Cmty. Supervision & Corr. Dep't v. Gaston*, 451 S.W.3d 410, 434-35 (Tex. App. 2014).

20. Relator's criminal complaints were returned without being entered into the district court record. The three presiding judges of the 360th, 324th, and 325th district courts systematically abandoned their magistrate capacity by collectively blocking Relator's access to the court of inquiry. The 360th, 324th, and 325th district courts have forfeited their function as examining courts.

## The District Court has a mandatory ministerial duty to function pursuant to the due course of law

21. Tex. Const. art. V, § 8 requires the district court to exercise all actions, proceedings, and remedies, including its adjudicatory power as a district judge and its investigative power as a magistrate.

22. The Relator has a constitutional right to access the court under the Open Courts and Remedy Guarantee Clause of the Texas Constitution. The three judges violated the due course of law by depriving him of access to the court of inquiry.

**Relator does not have other adequate legal remedy**

23. *In re TXU Electric Co.*, 67 S.W.3d 130 (Tex. 2001), the Supreme Court of Texas has held that, "A party establishes that no adequate remedy at law exists by showing that the party is in real danger of permanently losing its substantial rights. Canadian Helicopters, Ltd. v. Wittig, 876 S.W.2d 304, 306 (Tex. 1994)."

24. The Relator has no adequate remedy at law when the three district court judges collectively abandoned their magistrate role. The Relator has permanently lost access to the court of inquiry.

## Conclusion

To obtain mandamus relief, settled law requires the Relator to establish: "(1) he has no other adequate legal remedy; and (2) under the relevant facts and law, the act sought to be compelled is purely ministerial." *State ex rel. Hill v. Court of Appeals,* 34 S.W.3d 924, 927 (Tex.Crim.App. 2001).

From the foregoing arguments, Relator has established that the alleged 360th, 324th and 325th district courts have closed his constitutional access to the government of court of inquiry, that he has no other adequate legal remedy, and that compelling the district court to function under the due course of law is purely ministerial.

Therefore, this Court should grant his mandamus relief.

## PRAYER

Relator seeks declaratory relief to compel the alleged **district courts** to perform their court of inquiry function, refer his criminal complaint to the Office of the Attorney General Criminal Division to be contacted to head this investigation, and proceed with their magistrate powers under Tex. Code Crim. Proc. art. 52.

Additional and alternately, Relator seeks **the justice of this Court** to act as magistrate pursuant to Tex. Code Crim. Proc. art. 2A.151, perform their court of inquiry function, refer his criminal complaint to the Office of the Attorney General Criminal Division to be contacted to head this investigation.

Relator also pray for such other and further relief as is just.

Respectfully submitted,

*/s/ Conghua Yan*
Conghua Yan
arnold200@gmail.com
2140 E Southlake Blvd, Suite L-439
Southlake, Texas 76092
Telephone: (214) 228-1886

# CERTIFICATIONS

## TRAP 52.3(j), 52.3(k)(1)(A), and 52.7(a)

My name is Conghua Yan.  I am over the age of 18, and I am fully competent to execute this Certification. I am the Relator in this case. I am the pro se litigant filing the Petition.

I have reviewed the foregoing Petition and concluded that every factual statement in the Petition is supported by competent evidence included in the Appendix and/or Record.

The **Appendix and/or Record** contain a true and correct copy of every document that is material to the relator's claim for relief and that was filed in the underlying proceeding.

I certify that the February 23, 2025 motion filed within the Mandamus **Appendix and/or Record** is a true and correct copy of the district court's filling showing the matters complained of.

Filed herewith as part of the Record is a properly authenticated transcript of the relevant testimony from the underlying proceeding, including any exhibits offered in evidence, as provided by the court reporter.

I have added page numbers to the bottom right corner of each page of the Record for ease of reference and navigation.

/s/ Conghua Yan
Conghua Yan

## Certificate of Compliance

I hereby certify that Microsoft Word reports that this brief contains 2996 words, excluding the portions of the brief exempted by TRAP Rule 9.4(i)(1). It is in Times New Roman 14-point font, converted to Adobe Acrobat portable document format (PDF), and is word-searchable.

/s/ Conghua Yan
Conghua Yan

## CERTIFICATE OF SERVICE

I certify that on Feb 23, 2025, a true and correct copy of Relator's Petition for Writ of Mandamus, Appendix, and Record has been delivered by electronic filing manager and/or email and/or by U.S. mail, postage pre-paid, pursuant to TRAP 9.5(b)(2) to the follows:

a. **Respondent:** Hon. Patricia Baca Bennett, Judge
360th Judicial District Court,
200 E. Weatherford St. 4th Floor,
Fort Worth, TX 76196
817-884-2899 Phone
BrittanyTerry bpterry@tarrantcounty.com (court coordinator)

b. **Respondent:** Hon. Beth A. Poulos, Judge,
324th Judicial District Court,

200 E. Weatherford St. 4th Floor,
Fort Worth, TX 76196
817-884-1571 Phone
Joy Pierce jlpierce@tarrantcountytx.gov (court coordinator)

c. **Respondent:** Hon. Cynthia Terry, Judge,
325th Judicial District Court,
200 E. Weatherford St. 5th Floor,
Fort Worth, TX 76196
(817) 884-1587 Phone
Lisa Grimald LKGrimaldi@tarrantcountytx.gov (court coordinator)

*/s/ Conghua Yan*
Conghua Yan

# RELATOR'S MANDAMUS RECORD

Tab Document

A. Criminal Complaint (MR-1).

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Envelope ID: 97723881
Filing Code Description: Original Proceeding Petition
Filing Description: ORIGINAL CRIMINAL PROCEEDING OF PETITION FOR WRIT OF MANDAMUS
Status as of 2/24/2025 3:43 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Cynthia Terry | | LKGrimaldi@tarrantcountytx.gov | 2/24/2025 2:32:24 PM | SENT |
| Beth APoulos | | jlpierce@tarrantcountytx.gov | 2/24/2025 2:32:24 PM | SENT |
| Conghua Yan | | arnold200@gmail.com | 2/24/2025 2:32:24 PM | SENT |
| Patricia BacaBennett | | bpterry@tarrantcounty.com | 2/24/2025 2:32:24 PM | SENT |

# Appendix C



# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-25-00074-CV

———————————————

IN RE CONGHUA YAN, Relator

———————————————————————————————

Original Proceeding
324th District Court of Tarrant County, Texas
Trial Court No. 000-000000-00

———————————————————————————————

Before Kerr, J.; Sudderth, C.J.; and Wallach, J.
Per Curiam Memorandum Opinion

## MEMORANDUM OPINION

The court has considered relator's petition for writ of mandamus and is of the opinion that relief should be denied. Accordingly, relator's petition for writ of mandamus is denied.

Per Curiam

Delivered:  February 25, 2025

# Appendix D

# QUESTIONS PRESENTED

This petition addresses the "privilege" and "suspension" provision under Article I: the Privilege of the Writ of Habeas Corpus shall not be suspended.

Habeas corpus requires a separate proceeding with its own cause number. Petitioner filed a writ of habeas corpus in the Texas district court to challenge a fraudulent restraining order—signed by a judge's master without any pleadings, where no case was pending before her. However, the court neither assigned a case number nor granted a hearing, effectively denying Petitioner's access to the judicial proceeding. The questions presented are:

1. Whether Petitioner's constitutional privilege of habeas corpus is effectively suspended in Texas.

2. Whether one party's access to the Article I privilege of the writ of habeas corpus—a fundamental constitution guarantee—is subject to the discretion of the other party.

3. Whether it constitutes a Due Process violation if a citizen has no mechanism to challenge an order when their core rights are deprived.

## PARTIES TO THE PROCEEDING

Petitioner is Conghua Yan.

Respondent is Hon. Judge Cynthia Favila Terry, the presiding judge of trial court 325th Judicial District, Tarrant County, Texas (Respondent in the Petition for Writ of Mandamus filed in the Second Court of Appeals and the Supreme Court of Texas).

Party-in-Interest is Fuyan Wang (Defendant in the 325th Judicial District Court and Real Parties-in-Interest in the Second Court of Appeals and the Supreme Court of Texas).

## LIST OF RELATED CASES

These proceedings are directly related to the above-captioned case under Rule 14.1(b)(iii):

- IN RE CONGHUA YAN, No. 24-0410, Supreme Court of Texas. Petition for Writ of Mandamus, requesting the Supreme Court to compel the district court to act.

- In re Conghua Yan, No. 02-24-00219-CV, Second Court of Appeals. Petition for Writ of Mandamus, requesting the appellate court to compel the district court to act.

- On April 29, 2024, an application for writ of habeas corpus was filed in the 325th Judicial District, Tarrant County, Texas. No hearing was held, and no cause number was assigned. The district court remained intact.

**TABLE OF CONTENTS**

Contents

QUESTIONS PRESENTED...................................i

PARTIES TO THE PROCEEDING ....................... ii

LIST OF RELATED CASES ................................ iii

TABLE OF CONTENTS.......................................iv

TABLE OF APPENDICES .....................................v

TABLE OF AUTHORITIES ..................................vi

OPINIONS AND ORDERS BELOW ...........................i

JURISDICTION ........................................................ ii

**CONSTITUTIONAL PROVISIONS** ...................... ii

STATEMENT OF THE CASE ................................. iii

A.    The original proceedings in the Texas district court that led to a fraudulent order entered by the court.iii

B.    The writ of habeas corpus proceedings and subsequent writ of mandamus tried to challenge the fraud ended with no judicial access.................vi

C.    The relevant Texas statutes and precedents. vii

REASONS FOR GRANTING THE PETITION .......xii

A.    This case is of national importance concerning the Article I Suspension Clause where access to the habeas writ is barred by state's ministerial act.........................................................xii

B.    This case is of national importance, requiring an originalist interpretation of the Article I Privileges Clause, where the states consented upon

joining the Union but now abuses judicial discretion to disregard it..................................... xiv

C.      This case is of national importance because justice cannot be achieved if the lower state court disallows judicial access. .................................... xvi

D.      This case is an excellent vehicle for this Court to address the need for judicial review to stop unconstitutional judicial conduct, where the lower state court is depriving people of the core rights. ...................................................................xx

CONCLUSION .......................................................xxiv

APPENDIX A: Deny En Banc Reconsideration ...... 1a

APPENDIX B: Deny Writ of Mandamus................. 2a

APPENDIX C: Deny rehearing............................... 3a

APPENDIX D: Deny Writ of Mandamus................ 4a

## TABLE OF APPENDICES

APPENDIX A : Deny En Banc Reconsideration…..1a

APPENDIX B : Deny Writ of Mandamus……..……2a

APPENDIX C : Deny rehearing……..……………..3a

APPENDIX D : Deny Writ of Mandamus……..……4a

# TABLE OF AUTHORITIES

**Cases**

*Allgeyer v. Louisiana*, 165 U.S. 578 (1897) ...........xviii
*Boumediene v. Bush*, 553 U.S. 723 (2008)..............xvii
*Cohens v. Virginia*, 19 U.S. 264 (1821)...................xxii
*Craig v. Harney*, 331 U.S. 367, (1947)....................xxii
*Deters v. Collins*, 985 F.2d 789 (5th Cir. 1993) ...... xiii
*Ex Parte Banks*, 769 S.W.2d 539 (Tex. Crim. App. 1989).......................................................................x
*Ex parte Letizia*, NO. 01-16-00808-CR (Tex. App. Feb. 14, 2019)...........................................................xi
*Ex Parte Ramzy*, 424 S.W.2d 220 (Tex. 1968).........xiv
*Fay v. Noia*, 372 U.S. 391 (1963) .............................xvi
*Gray v. Skelton*, No. 18-0386 (Tex. Feb. 21, 2020)....xi
*Harris v. Nelson*, 394 U.S. 286 (1969) .....................xiv
*Marbury v. Madison*, 5 U.S. 137 (1803) ..................xix
*Preiser v. Rodriguez*, 411 U.S. 475 (1973) ...............xv
*Rasul v. Bush*, 542 U.S. 466 (2004) .........................xix
*Torres v. Tex. Dep't of Pub. Safety*, 142 S. Ct. 2455, 213 L. Ed. 2d 808 (2022)......................................xvi

**Statutes**

28 U.S.C. § 1257(a)......................................................i
Tex. Code Crim. Proc. § 11.01...................................vii
Tex. Code Crim. Proc. § 11.05.................................. viii
Tex. Fam. Code § 6.507.............................................vii
Tex. R. Civ. P. 24.......................................................ix
TX. Const. art. 1, § 12 ............................................. viii
US Constitution, Article I, Section 9, Clause 2......... ii

## OPINIONS AND ORDERS BELOW

The Second Court of Appeals, Texas, refused to hear the Motion for En Banc Reconsideration on June 13, 2024 (Appendix A, p. 1a). On May 16, 2024, it issued a memorandum opinion denying the relief to compel the district court to act without providing reasoning (Appendix B, p. 2a).

On October 4, 2024, the Supreme Court of Texas denied the Motion for Rehearing of the Order denying the Petition for Writ of Mandamus (Appendix C, p. 3a). The original Order, a denial to review without opinion, was entered on August 30, 2024 (Appendix D, p. 4a).

Petitioner filed Writ of Habeas Corpus on April 29, 2024 in the 325th district court. The district court remained intact.

## JURISDICTION

The final judgment was entered by the Supreme Court of Texas on October 4, 2024. This Court has jurisdiction pursuant to 28 U.S.C. § 1257(a).

## CONSTITUTIONAL PROVISIONS

US Constitution, Article I, Section 9, Clause 2:

The Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it.

## STATEMENT OF THE CASE

A. The original proceedings in the Texas district court that led to a fraudulent order entered by the court.

1.　　　On October 15, 2021, Petitioner filed petition for divorce and a temporary restraining order (hereinafter "TRO") against his wife in the 325th district court.

2.　　　On November 8 and 9, 2021, a hearing for Petitioner's petition for a TRO was held in the associate judge's court.

3.　　　Here is an important Texas statutory definition: a Texas family court associate judge's court is a statutory court, a creature of state statute with limited jurisdiction that does not have the general constitutional jurisdiction of the 325th District Court. An associate judge is a statutory judge, not an Article III judge under the Texas Constitution.

4.　　　On November 10, 2021, an associate judge's report was entered; Petitioner's timely filed request for de novo hearing on the same day. Therefore, Petitioner's petition for a TRO was perfectly appealed and moved to the 325th District Court.

5.      On December 7, 2021, a de novo hearing was held in the 325th District Court. It was not completed due to time running out. A continuance de novo hearing was scheduled for March 9, 2022

6.      On February 14, 2022, an unopposed motion for continuance was filed. The next day, February 15, 2022, the presiding judge of the 325th District Court signed an order to reset the de novo hearing originally scheduled for July 11, 2022.

7.      On June 21, 2022, the associate judge and both lawyers committed fraud upon the court by forging Petitioner's signature on a fabricated TRO. This falsified TRO falsely stated that the associate judge's court had heard Petitioner's wife's motion for a TRO on November 7 and 8, 2021, thereby issuing a TRO against Petitioner. Since that date, the scheduled de novo hearing on July 11, 2022, in the 325th District Court disappeared from the court docket and was never held.

8.      The associate judge and both lawyers knowingly submitted the fraudulent TRO in person to the court docket, bypassing the Texas e-filing system. While e-filed documents include a process service timestamp on the PDF, in-person

submissions to the district court clerk's office are entered without process service and remain unnoticed. Additionally, in Texas family court, filing records are inaccessible to litigants represented by counsels; only judges and lawyers can view.

9. The fraudulent TRO signed on June 21, 2022, severely violated the due process framework because Petitioner's wife never filed a motion for a TRO in the case. This TRO was issued without any pleading, and as of June 21, 2022, the associate judge's court had no ongoing controversy or pending case. Meanwhile, an incomplete de novo hearing was still pending in the 325th district court. However, the associate judge and both lawyers usurped the district court's jurisdiction by issuing a TRO to substitute the de novo hearing and canceled the hearing without notifying Petitioner.

10. As a result, Petitioner was subjected to a secretly entered TRO filed without pleadings and lacking essential elements of due process, including notice, opportunity to be heard, and an impartial tribunal. Petitioner did not know its existence. His own lawyer never sent him this signed copy.

B. The writ of habeas corpus proceedings and subsequent writ of mandamus tried to challenge the fraud ended with no judicial access.

1.     On March 4, 2024, Petitioner became a pro se litigant and gained full access to his case docket. After reviewing prior filings and Texas precedents, he discovered that the June 21, 2022 TRO, which has maintained the status quo against him, is illegitimate.

2.     On April 29, 2024, Petitioner filed a writ of habeas corpus to challenge the legitimacy of TRO. A TRO is not appealable per Texas statute, regardless how unlawful, fraudulent or unconstitutional. But Texas statute defines a writ of habeas corpus as an appealable criminal proceeding and a collateral attack, which requires a separate cause number. The district court coordinator refused to act, directing Petitioner to consult the presiding judge. On May 1, 2024, Petitioner hand-delivered the application to the presiding judge of the 325th District Court, who also declined to act.

3.     On May 14, 2024, Petitioner filed a Petition for Mandamus with the Second Court of Appeals to compel the district court to grant a cause

number and hearing date. The Second Court of Appeals denied the petition on May 16, 2024.

4.     In August, Petitioner filed a Petition for Mandamus with the Supreme Court of Texas, which also refused to intervene.

5.     Currently, Petitioner's privilege of the writ of habeas corpus is suspended in Texas. The Texas judiciary has denied him access to the Writ by refusing to assign a case number and a hearing date, preventing him from entering the judicial process.

C. The relevant Texas statutes and precedents.

1.     A Texas family court temporary order is not appealable, regardless of how unlawful it is. A writ of habeas corpus is the only mechanism to seek a remedy.

Tex. Fam. Code § 6.507 - Interlocutory Appeal
     An order under this subchapter, except an order appointing a receiver, is not subject to interlocutory appeal.

2.     In Texas, the writ of habeas corpus is the remedy used when a person is restrained in their liberty, whether under someone's custody or restraint.

Tex. Code Crim. Proc. § 11.01 - What Writ Is

The writ of habeas corpus is the remedy to be used when any person is restrained in his liberty. It is an order issued by a court or judge of competent jurisdiction, directed to anyone having a person in his custody, or under his restraint, commanding him to produce such person, at a time and place named in the writ, and show why he is held in custody or under restraint.

3.　　In Texas, the district court has jurisdiction to issue the writ of habeas corpus.

Tex. Code Crim. Proc. § 11.05 - By Whom Writ May Be Issued

The court of criminal appeals, the district courts, the county courts, or any judge of those courts may issue the writ of habeas corpus, and it is their duty, on proper application, to issue the writ under the rules prescribed by law.

4.　　Article I of the Texas Constitution guarantees the writ of habeas corpus and mandates that the courts provide the remedy in a speedy and effective manner.

TX. Const. art. 1, § 12 - HABEAS CORPUS

The writ of Habeas Corpus is a writ of right, and shall never be suspended. The Legislature shall enact laws to render the remedy speedy and effectual.

5.　　Article I of the Texas Constitution guarantees that the courts are open for remedies.

TX. Const. art. 1, § 13 - … OPEN COURTS; REMEDY BY DUE COURSE OF LAW

> … All courts shall be open, and every person for an injury done him, in his lands, goods, person or reputation, shall have remedy by due course of law.

6. Article I of the Texas Constitution guarantees all laws contrary to Bill of Rights are void.

TX. Const. art. 1, § 29 - BILL OF RIGHTS EXCEPTED FROM POWERS OF GOVERNMENT AND INVIOLATE

> To guard against transgressions of the high powers herein delegated, we declare that everything in this "Bill of Rights" is excepted out of the general powers of government, and shall forever remain inviolate, and all laws contrary thereto, or to the following provisions, shall be void.

7. Texas civil rule of procedure requires the court clerk to issue a cause number as a ministerial duty.

Tex. R. Civ. P. 24-Duty of Clerk

> When a petition is filed with the clerk he shall indorse thereon the file number, the day on which it was filed and the time of filing, and sign his name officially thereto.

8. Texas courts were sanctioned for failing to provide a "speedy and effectual" remedy via habeas

corpus. The district court is repeating the same actions for which it was sanctioned in 1967.

> "In sum, in 1967 the Legislature devised and the Court sanctioned by construction a system to render the remedy via habeas corpus "speedy and effectual," consonant with the admonition and mandate of Article I, § 12, of our Bill of Rights. Thus the constitutional provisions guarantee availability of the Great Writ pursuant to legislative enactments designed to enable an applicant to make a collateral attack and to obtain relief against a final judgment of conviction rendered void not only for reasons under the common law but also for want of jurisdiction of the convicting [ruling] court to enter it where conviction [order] was had in violation of due process. Taken literally, they prohibit judicially imposed barriers at the threshold of access to the courts by a convicted felon [restrained person] seeking this "writ of right.(see footnote 12[1])"" (emphasis added) *Ex Parte Banks*, 769 S.W.2d 539, 547 (Tex. Crim. App. 1989).

---

[1] Footnote 12: The "open courts" mandate of Article I, § 13 and the "due course" requirements of § 19 seem to **forbid courts from closing their doors to persons** seeking relief from "injury" done to person and from deprivation of liberty. See Interpretive Commentary following § 13 and 19.

9.      In Texas, the habeas corpus proceeding is separate proceeding and should be given different cause number.

> "(explaining habeas corpus action is separate action from proceeding from which it arises); … (noting habeas corpus proceeding is separate proceeding and should be given different cause number than criminal case by clerk of court in which habeas corpus proceeding is filed regardless of style or cause number placed on habeas corpus petition)." *Ex parte Letizia*, NO. 01-16-00808-CR, 4 n.4 (Tex. App. Feb. 14, 2019)..

10.      In Texas, the habeas corpus action is a collateral attack.

> "a habeas corpus action as "in the nature of a collateral attack")." *Gray v. Skelton*, No. 18-0386, 3 (Tex. Feb. 21, 2020)..

## REASONS FOR GRANTING THE PETITION

This petition is straightforward. Petitioner sought habeas relief against an allegedly fraudulent TRO by filing a writ of habeas corpus. The district court refused to hold a hearing or assign a cause number, effectively shutting the door on the petitioner. Petitioner then filed for mandamus, asking the appellate and Texas Supreme Court to compel the district court to act. Both courts dismissed the plea without giving a reason. This Court should grant the writ to signal that it cares where the state courts did not, as the privilege of the writ of habeas corpus should never be denied, and Petitioner is at least entitled to judicial access, regardless of the merits.

A. This case is of national importance concerning the Article I Suspension Clause where access to the habeas writ is barred by state's ministerial act.

The Founding Fathers included this doctrine in Article I to ensure the privilege of Habeas Corpus would endure.

> "So important was the doctrine of habeas corpus that the founding fathers saw fit to ensure that the privilege of habeas corpus relief would never die: They placed the doctrine in the Constitution of the United States. Indeed, the first congressional grant of jurisdiction

provided federal courts authority to grant writs of habeas corpus, and by 1807, the United States Supreme Court recognized that such a writ was "a great constitutional privilege."" (emphasis added), *Deters v. Collins*, 985 F.2d 789, 793 (5th Cir. 1993).

Habeas Corpus safeguards individual freedom against arbitrary and capricious state action.

> "The writ of habeas corpus is the fundamental instrument for safeguarding individual freedom against arbitrary and lawless state action. Its pre-eminent role is recognized by the admonition in the Constitution that: "The Privilege of the Writ of Habeas Corpus shall not be suspended. . . ." U.S. Const., Art. I, § 9, cl. 2. The scope and flexibility of the writ — its capacity to reach all manner of illegal detention — its ability to cut through barriers of form and procedural mazes — have always been emphasized and jealously guarded by courts and lawmakers. The very nature of the writ demands that it be administered with the initiative and flexibility essential to insure that miscarriages of justice within its reach are surfaced and corrected.
>
> As Blackstone phrased it, habeas corpus is "the great and efficacious writ, in all manner of illegal confinement. (footnote omitted)" As this Court said in *Fay* v. *Noia*, 372 U.S. 391, 401-402 (1963), the office of the writ is "to provide a prompt and efficacious remedy for whatever society deems to be intolerable restraints." See *Peyton* v. *Rowe*, 391 U.S. 54, 65-67 (1968)."

(emphasis added), *Harris v. Nelson*, 394 U.S. 286, 291 (1969).

American Society cannot seek remedy against intolerable restraints when the state judiciary arbitrarily and unlawfully denies a case number.

> "A procedure by habeas corpus …is inquire why the liberty of the citizen is restrained. We hold that the authority to grant the writ is conferred upon the Court or the judge, and that a proceeding by habeas corpus is a matter for the investigation of the judge. …the purpose of the writ is to obtain a speedy adjudication of a person's right to be free from illegal restraint" *Ex Parte Ramzy*, 424 S.W.2d 220, 223 (Tex. 1968).

However, the Texas lower court has realized that, to prevent a habeas corpus proceeding from investigating its own fraud, a judge can simply terminate the privilege of the writ by refusing to assign a case number or hold a hearing.

This Court must grant this petition and intervene to restore the constitutional framework. The broken windows theory suggests that visible signs of disorder and misbehavior can lead to further disorder and misconduct within the lower courts.

B. This case is of national importance, requiring an originalist interpretation of the Article I

Privileges Clause, where the states consented upon joining the Union but now abuses judicial discretion to disregard it.

The textual reference to "privilege" appears in Article I twice: once for "Senators and Representatives" and once for the people's "Privilege of the Writ of Habeas Corpus." These two privileges more directly reflect the Founding Fathers' original intent than any other privileges in the amendments.

Habeas Corpus was designed as a "great constitutional privilege" to challenge actions by the executive branch, judicial branch, or private parties.

> "Whether the petitioner had been placed in physical confinement by executive direction alone, by order of a court, or even by private parties, habeas corpus was the proper means of challenging that confinement and seeking release... The writ was given explicit recognition in the Suspension Clause of the Constitution, Art. I, § 9, cl. 2; was incorporated in the first congressional grant of jurisdiction to the federal courts, Act of Sept. 24, 1789, c. 20, § 14, 1 Stat. 81-82; and was early recognized by this Court as a 'great constitutional privilege.'" (emphasis added), *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).

The privilege of the Writ of Habeas Corpus can test <u>any</u> restraint contrary to fundamental law.

> "At the time the privilege of the writ was written into the Federal Constitution it was settled that the writ lay to test any restraint contrary to fundamental law, which in England stemmed ultimately from Magna Charta but in this country was embodied in the written Constitution." (emphasis added), *Fay v. Noia*, 372 U.S. 391, 426 (1963).

In *Torres v. Tex. Dep't of Pub. Safety*, 142 S. Ct. 2455 (2022), this Court made it clear that Article I is part of the original Constitution, to which the states consented as part of the Convention's plan to establish unified national sovereignty at the founding. Upon entering the Union, only Congress has the explicit authority to suspend the privilege of the writ of habeas corpus, as "a similar authority in the States would be absolutely and totally contradictory and repugnant." *Id*. at 2462.

Only Congress can suspend the privilege of writ of habeas corpus, this Court must grant this petition and intervene to prevent the lower state court from usurping the suspension authority of Congress.

C. This case is of national importance because justice cannot be achieved if the lower state court disallows judicial access.

Judicial power is not exempt from the challenge of habeas writ mechanism.

> "These concerns have particular bearing upon the Suspension Clause question here, for the habeas writ is itself an indispensable mechanism for monitoring the separation of powers." (emphasis added) *Boumediene v. Bush*, 553 U.S. 723, 727 (2008).

Since 2022, Petitioner has been restrained by a 60-page TRO issued without any element of due process. "Admittedly, if you are unhappy with [a court's] treatment of your case, and if you persist through all [] processes, and if you have enough time and money, you can usually bring your complaint to [higher] court for review before an independent judge. But what are the chances of being able to endure and afford all that?" Neil Gorsuch & Janie Nitze, *Over Ruled: The Human Toll of Too Much Law* [78] (2024).

The 325th District Court is knowingly and intentionally preventing Petitioner from accessing judicial proceedings to challenge its fraudulent order through procedural barriers and formal obstacles. After exhausting the state appellate and supreme courts, Petitioner now turns to this Court.

The liberty is not only the right of free from physical restrain.

> "the 'liberty' mentioned in th[e] [Fourteenth Amendment] means not only the right of the citizen to be free from the mere physical restraint of his person, as by incarceration, but the term is deemed to embrace the right of the citizen to be free in the enjoyment of all his faculties, to be free to use them in all lawful ways, to live and work where he will, to earn his livelihood by any lawful calling, to pursue any livelihood or avocation, and for that purpose to enter into all contracts which may be proper, necessary, and essential to his carrying out to a successful conclusion the purposes above mentioned." *Allgeyer v. Louisiana*, 165 U.S. 578, 589 (1897).

It is the Congress's intention to give explicit recognition to writ of habeas corpus to <u>ALL</u> cases where any person may be restrained of his or her liberty in violation of the constitution, or of any treaty or law of the United States.

> "In 1867, Congress extended the protections of the writ to "all cases where any person may be restrained of his or her liberty in violation of the constitution, or of any treaty or law of the United States." Act of Feb. 5, 1867, ch. 28, 14 Stat. 385. See Felker v. Turpin, 518 U.S. 651, 659-660 (1996). Habeas corpus is, however, "a writ antecedent to statute, . . . throwing its root deep into the genius of our common law."

> Williams v. Kaiser, 323 U.S. 471, 484, n. 2
> (1945) (internal quotation marks omitted). The
> writ appeared in English law several centuries
> ago, became "an integral part of our common-
> law heritage" by the time the Colonies achieved
> independence, Preiser v. Rodriguez, 411 U.S.
> 475, 485 (1973), and received explicit
> recognition in the Constitution, which forbids
> suspension of "[t]he Privilege of the Writ of
> Habeas Corpus . . . unless when in Cases of
> Rebellion or Invasion the public Safety may
> require it," Art. I, § 9, cl. 2."" (emphasis
> added), *Rasul v. Bush*, 542 U.S. 466, 473-74
> (2004).

In *Marbury v. Madison*, 5 U.S. 137 (1803), Chief Justice John Marshall wrote: "The very essence of civil liberty certainly consists in the right of every individual to claim the protection of the laws, whenever he receives an injury. One of the first duties of government is to afford that protection." *Id*. at 163.

This Court notes that Blackstone, in the 3rd volume of his Commentaries, stated that "it is a general and indisputable rule, that where there is a legal right, there is also a legal remedy by suit, or action at law, whenever that right is invaded." *Id*.

This Court concluded that, "The government of the United States has been emphatically termed a

government of laws, and not of men. It will certainly cease to deserve this high appellation, if the laws furnish no remedy for the violation of a vested legal right." *Id.*

This Court must grant this petition and intervene. If refusing to grant a case number can be used as a mechanism to prevent the writ of habeas corpus, then the same mechanism can be used to prevent justice from being sought in any court, whether Article III, statutory, or administrative.

D. This case is an excellent vehicle for this Court to address the need for judicial review to stop unconstitutional judicial conduct, where the lower state court is depriving people of the core rights.

An interlocutory order in Texas family court is literally a blank check that the court can fill with anything short of the death penalty: expulsion from a residence, suspension of the parent-child relationship, confiscation of firearms, gag orders, appointment of a third-party receiver to liquidate assets—you name it. The Texas Family Code expressly bars any interlocutory appeal. Any interlocutory order rendered, no matter how fraudulent, unlawful, or

unconstitutional, cannot be reviewed through appellate judicial remedies. In some cases, the final judgment could be 5 to 10 years away. In practice, an interim, interlocutory, or temporary order is effectively permanent within this timeframe. A writ of habeas corpus is the party's only accessible option to collaterally challenge the court's decision.

Texas judiciary has created a loophole, granting unchecked power to the judicial branch by issuing court orders while denying judicial review by refusing to assign a case number. In Texas, contempt of court can be heard by a judge without a jury, resulting in up to 180 days in jail without bond. The Texas family court effectively acts as the legislative branch (issuing broad orders), the executive branch (enforcing arrests and jailing for contempt), and the judicial branch (ruling on cases). When a cause number is denied, no challenge is possible.

> "The present case is one of the types in which this Court is required to make an independent examination of the facts to determine whether a State has deprived a person of a fundamental right secured by the Constitution. … There is no special perquisite of the judiciary which enables it, as distinguished from other institutions of democratic government, to [suspend the privilege

of the writ of habeas corpus] in judicial proceedings." *Craig v. Harney*, 331 U.S. 367, (1947).

"Petitioners' application to a state court for a writ of *habeas corpus* … was denied. … This Court granted certiorari." *Id*. at 368. Craig's habeas writ was denied, prompting this Court's intervention. Yan's situation was even worse—he never had the chance to be heard. Seventy-seven years later, does the judiciary now lean toward injustice?

In 1821, Chief Justice Marshall famously proclaimed:

> "The judiciary cannot, as the legislature may, avoid a measure because it approaches the confines of the constitution. We cannot pass it by because it is doubtful. With whatever doubts, with whatever difficulties, a case may be attended, we must decide it, if it be brought before us. We have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given. The one or the other would be treason to the constitution. Questions may occur which we would gladly avoid, but we cannot avoid them. All we can do is, to exercise our best judgment, and conscientiously to perform our duty." (emphasis added), *Cohens v. Virginia*, 19 U.S. 264, 404 (1821).

> "The State judges are sworn to support the constitution, which declares them bound by the

constitution, laws, and treaties. … The State judges are bound by oath to obey the constitutional acts of Congress." *Id.* at 325.

This Court routinely reviews the constitutionality of laws passed by the legislature and actions taken by the executive branch. But what about the state judicial branch? Are they above the Constitution, exempt from constitutional challenge? Denying this petition will undermine public confidence in judicial integrity. This Court must fulfill its duty.

## CONCLUSION

The Court should grant the petition for a writ of certiorari.

Respectfully submitted,

<u>/s/ Conghua Yan</u>
Conghua Yan
Pro Se
arnold200@gmail.com
2140 E Southlake Blvd, Suite L-439
Southlake, Texas 76092
Telephone: (214) 228-1886

Oct/20/2024

## APPENDIX A: Deny En Banc Reconsideration

In the

Court of Appeals

Second Appellate District of Texas

at Fort Worth

No. 02-24-00219-CV

IN RE CONGHUA YAN

_____

On Appeal from the 325th District Court

Tarrant County, Texas

Trial Court No. 325-707596-21

_____

ORDER

We have considered the "Motion for En Banc Reconsideration."

It is the opinion of the court that the motion for En Banc Reconsideration should be and is hereby denied and that the opinion and judgment of May 16, 2024, stand unchanged.

We direct the clerk of this court to send a notice of this order to the attorneys of record.

Dated June 13, 2024.

Per Curiam

En Banc

## **APPENDIX B: Deny Writ of Mandamus**

In the

Court of Appeals

Second Appellate District of Texas

at Fort Worth

No. 02-24-00219-CV

IN RE CONGHUA YAN, Relator

_____

Original Proceeding

325th District Court of Tarrant County, Texas

Trial Court No. 325-707596-21

_____

Before Birdwell, Womack, and Walker, JJ.

Per Curiam Memorandum Opinion

MEMORANDUM OPINION

The court has considered relator's petition for writ of mandamus and is of the opinion that relief should be denied. Accordingly, relator's petition for writ of mandamus is denied.

Per Curiam

Delivered: May 16, 2024

## **APPENDIX C: Deny rehearing**

RE: Case No. 24-0410  DATE: 10/4/2024

COA #: 02-24-00219-CV TC#: 325-707596-21

STYLE: IN RE YAN

Today the Supreme Court of Texas denied the motion for rehearing, as amended, in the above-referenced petition for writ of mandamus. The Motion for Emergency Relief is dismissed as moot.

CONGHUA YAN

\* DELIVERED VIA E-MAIL \*

## **APPENDIX D: Deny Writ of Mandamus**

RE: Case No. 24-0410  DATE: 08/30/2024

COA #: 02-24-00219-CV TC#: 325-707596-21

STYLE: IN RE YAN

Today the Supreme Court of Texas denied the petition for writ of mandamus in the above-referenced case.

CONGHUA YAN

* DELIVERED VIA E-MAIL *

No.———

# In the Supreme Court of the United States

---

**Conghua Yan,**
                    Petitioner,

**v.**

**Cynthia Favila Terry,**
                    Respondent.

---

On Petition for a Writ of Certiorari to the Supreme Court of Texas

---

# PETITION FOR A WRIT OF CERTIORARI

---

Conghua Yan

*Pro Se litigant*

2140 E Southlake Blvd. Ste L-439

Phone: (214) 228-1886

Arnold200@gmail.com

Southlake, Texas 76092

# Appendix E

No.———

# In the Supreme Court of the United States

---

**Conghua Yan,**

Petitioner,

**v.**

**Mark A. Taylor, in his official capacity as Criminal District Office Investigator, Tarrant County, and in his private capacity; Richard B. Harwell, in his official capacity as Sergeant, Tarrant County, and in his private capacity; David F. Bennett, in his official capacity as Sheriff, Deputy, Tarrant County, and in his private capacity,**

Respondent.

---

On Petition for a Writ of Certiorari to the United States Court of Appeals for the Fifth Circuit

---

## PETITION FOR A WRIT OF CERTIORARI

---

Conghua Yan

Pro Se litigant

2140 E Southlake Blvd. Ste L-439

Phone: (214) 228-1886

Arnold200@gmail.com

Southlake, Texas 76092

# QUESTIONS PRESENTED

This petition addresses an *unpublished* dismissal of a constitutional challenge to a government policy barring Petitioner and everyone from filing individual criminal complaint of perjury to the law enforcement.

1. Whether a criminal District Attorney office policy that allows the sheriff's office to <u>only accept</u> criminal perjury complaints <u>only at the request</u> of presiding judges in their <u>official capacity</u> deprives individual's right in their private capacity to petition the government for redress of grievances under the First Amendment.

2. Other than <u>deprivation of individual right character</u>, whether the judicial branch can possess <u>exclusive privilege</u> to open or request criminal perjury complaint, this is a matter of first impression.

3. Whether claims seeking adjudication for *one's own treatment* (individual right to file a First Amendment petition) versus *the treatment of others* (private cause of action to prosecute others) represent <u>distinguishable</u> legal theories.

## PARTIES TO THE PROCEEDING

Petitioner is Conghua Yan.

Respondent is Mark A. Taylor, individually and officially as Criminal District Office Investigator; Richard B. Harwell, individually and officially as Sergeant; David F. Bennett, individually and officially as Sheriff, Deputy. All in Tarrant County, Texas.

## LIST OF RELATED CASES

These proceedings are directly related to the above-captioned case under Rule 14.1(b)(iii):

- United States District Court (N.D. Tex.):

  *Yan v. Mark A. Taylor et al.*, No. 4:23-cv-00288 (Mar. 19, 2024)

- United States Court of Appeals (5th Cir.):

  *Yan v. Mark A. Taylor et al.*, No. 24-10288 (Nov. 15, 2024)

These proceedings are parallel and indirectly related to the above-captioned case under Rule 14.1(b)(iii):

- United States District Court (N.D. Tex.):

  *Yan v. The State Bar of Texas et al.*, No. 4:23-cv-00758 (May. 21, 2024)

- United States Court of Appeals (5th Cir.):

  *Yan v. The State Bar of Texas et al.*, No. 24-10543 (pending)

- The Supreme Court of the United States:

  *Yan v. Terry*, No. 24-554 (cert. pending)

**TABLE OF CONTENTS**

Contents

QUESTIONS PRESENTED.....................................i

PARTIES TO THE PROCEEDING ....................... ii

LIST OF RELATED CASES ................................. iii

TABLE OF CONTENTS........................................iv

TABLE OF APPENDICES.....................................vi

TABLE OF AUTHORITIES..................................vii

OPINIONS AND ORDERS BELOW ..........................i

JURISDICTION ...........................................................i

**CONSTITUTIONAL PROVISIONS** ........................i

STATEMENT OF THE CASE ................................... ii

    A.    Texas attorney Leslie Barrows, using sworn affidavits, colluded to commit aggravated perjury against the Petitioner in state court civil divorce proceedings and awarded criminal proceeding legal fees from a nonparty's ERISA fund. ...................... ii

    B.    The Petitioner filed a criminal complaint of aggravated perjury with local law enforcement, but his complaint was barred by a policy. This policy mandates that the DA's office can only open perjury criminal complaint cases only if requested by the particular presiding judge, prohibiting individual victims from filing case to the executive branch. ................................................................. iii

    C.    The Petitioner filed a federal case to challenge the constitutionality of the policy. The case was dismissed under an unpublished opinion for lack of Article III standing....................................................v

REASONS FOR GRANTING THE PETITION....... vii

    A.   This constitutionality challenge and *§ 1983* claim is of national importance, as the Circuits have noted that there is no direct Supreme Court precedent on point and existing Circuit rulings are inadequate, vacillative and conflicted................. viii

    B.   This case is of national importance concerning the First Amendment Petition right, which is infringed by a policy affecting millions of people. Moreover, this policy itself breaches the separation of powers principle affecting every citizen............ xi

    C.   This case is of national importance because it offers this Court an opportunity to address a split amongst Circuits regarding the distinction between the right to prosecute others and the right to set in motion governmental machinery for one's own treatment....................................................... xvi

    D.    This case is of national importance because it clearly showcases how a pro se litigant against attorney-white-collar crime was treated unfairly, where well-established principles and precedents not being binding in unpublished opinion. ....... xviii

    E.   Judicial independence is sustained by justice consistency. This case is an excellent vehicle for this Court to emphasize the importance of the stare decisis principle in producing consistent results where the lower courts have been using unpublished opinions to conceal inconsistent outcomes.......................................................... xxvii

CONCLUSION .................................................... xxxii

APPENDIX A: Fifth Circuit Court of Appeals opinion ................................................................... 1

APPENDIX B: Fifth Circuit Court of Appeals opinion on petition for rehearing en banc ...............................4

## TABLE OF APPENDICES

APPENDIX A : Fifth Circuit Court of Appeals opinion (Oct 25, 2024) .…..….….….….……1a

APPENDIX B : Fifth Circuit Court of Appeals opinion on petition for rehearing en banc (Nov 15, 2024)….….…….…..….….…......4a

# TABLE OF AUTHORITIES

## Cases

*Ashcroft v. Al-Kidd*, 563 U.S. 731 (2011).................. xi

*Barilla v. City of Houston*, Tex., No. 20-20535 (5th Cir. Sep. 10, 2021)............................................. xxiii

*Book People, Inc. v. Wong*, No. 23-50668 (5th Cir. Jan. 17, 2024)................................................... xxiii

*Byrd v. Lamb*, 990 F.3d 879 (5th Cir. 2021)...........xxv

*Comsys, Inc. v. Pacetti*, 893 F.3d 468 (7th Cir. 2018) .............................................................................. ix

*Elrod v. Burns*, 427 U.S. 347 (1976) ..................... xxiii

*Entler v. Gregoire*, 872 F.3d 1031 (9th Cir. 2017) . viii, xvii

*Erickson v. Pardus*, 551 U.S. 89 (2007) ................. xix

*Ex parte Levitt*, 302 U.S. 633 (1937)...................... xxii

*Faretta v. California*, 422 U.S. 806 (1975) ............xxiv

*Free Speech Coal. v. Paxton*, No. 23-50627 (5th Cir. Mar. 7, 2024) .....................................................xxiv

*Greenlaw v. United States*, 554 U.S. 237 (2008) .. xviii

*Guy v. Travenol Labs., Inc.*, 812 F.2d 911 (4th Cir. 1987) .....................................................................xv

*Hanly v. Powell Goldstein*, 290 F. App'x 435 (2d Cir. 2008) ................................................................. xvii

*Henry v. Educ. Fin. Serv. (In re Henry)*, 944 F.3d 587 (5th Cir. 2019) .........................................................x

*Jacobellis v. Ohio*, 378 U.S. 184 (1964) ................... xi

*Kisela v. Hughes*, 138 S.Ct. 1148 (2018)................... ix

*Laird v. Tatum*, 408 U.S. 1 (1972).......................... xxii

*Meyer v. Bd. of Cty. Comm'rs* , 482 F.3d 1232 (10th Cir. 2007)..................................................... viii, xvii

*Mullenix v. Luna*, 577 U.S. 7 (2015)...........................x

*New York Times Co. v. Sullivan*, 376 U.S. 254 (1964) ......................................................................... xxvii

viii

*Ramos v. Louisiana*, 140 S. Ct. 1390 (2020) .......xxviii
*Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016) .......xxii
*Thomas v. Union Carbide Agric. Products Co.*, 473
    U.S. 568 (1985) ...................................................xxix
*United States v. Bernal*, No. 13-40201 (5th Cir. 2014)
    ............................................................................xix
*United States v. Bethea*, No. 17-2788-cr (2d Cir. Sep.
    6, 2018)...................................................................xvi
*United States v. Havens*, 446 U.S. 620 (1980).......... xv
*United States v. Hylton*, 558 F. Supp. 872 (S.D. Tex.
    1982).......................................................................ix
*United States v. Hylton*, 710 F.2d 1106 (5th Cir.
    1983)............................................................... viii, ix
*United States v. Rahimi*, 144 S. Ct. 1889 (2024) ... xxx

### Statutes

28 U.S.C. § 1257(a).......................................................i
US Constitution, Article I, Section 9, Clause 2...........i

### Publishings

Chief Justice [John G. Robert, Jr], 2024 Year-End
    Report on the Federal Judiciary, Supreme Court of
    the United States.................................................xxxi
Neil Gorsuch & Janie Nitze, *Overruled: The Human
    Toll of Too Much Law* (2024) ..............................xxvi
Richard Posner, Most Judges Regard Pro Se
    Litigants as 'Kind of Trash Not Worth the Time,'
    ABA Journal (Sept. 11, 2017)..............................xxii

## OPINIONS AND ORDERS BELOW

The Petitioner respectfully petitions for a writ of certiorari to review the judgment of the United States Court of Appeals for the Fifth Circuit in this case.

The opinion of the court of appeals (App., infra, 1a-3a) is decided on Oct 25, 2024. The order of the court of appeals denying rehearing en banc (App., infra, 4a) is decided on Nov 15, 2024.

## JURISDICTION

The judgment of the Fifth Circuit of Appeals was entered on October 25, 2024. Petitions for rehearing were denied on November, 15, 2024. This Court has jurisdiction pursuant to *28 U.S.C. § 1254(1)* and *2350*.

## CONSTITUTIONAL PROVISIONS

US Constitution, First Amendment:

Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

## STATEMENT OF THE CASE

A. Texas attorney Leslie Barrows, using sworn affidavits, colluded to commit aggravated perjury against the Petitioner in state court civil divorce proceedings and awarded criminal proceeding legal fees from a nonparty's ERISA fund.

1. In 2022, Texas attorney Leslie Barrows filed sworn affidavits in state court divorce proceedings, claiming that her client, Fuyan Wang, the Petitioner's ex, could not afford Barrows' legal service for the divorce suit and seeking the court to compel payment from the Petitioner.

2. The sworn affidavit includes detailed billing, such as other attorneys' legal fees incurred from a criminal proceeding in which Barrows' client, Wang, was charged with domestic violence. The Petitioner wasn't a party to that criminal proceeding, as it is the government pressed the charge.

3. Barrows testified on the stand that all fees listed in her sworn affidavits were incurred in the divorce suit. The associate judge Lori Deangelis awarded Barrows $25,000 from Petitioner's ERISA fund, an amount exceeding what Barrows had pleaded.

4.      Later, the Petitioner discovered that Barrows had made a <u>political contribution</u> to associate judge DeAngelis's district judge campaign and <u>hosted a fundraising event at her office</u> just months earlier. DeAngelis's campaign was still <u>ongoing</u> at the time she presided over the hearing, yet neither disclosed their affiliation.

5.      In Texas, an associate judge is a statutory Article I appointed position and does not hold constitutional jurisdiction, similar to a federal magistrate.

B.      The Petitioner filed a criminal complaint of aggravated perjury with local law enforcement, but his complaint was barred by a policy. This policy mandates that the DA's office can <u>only</u> open perjury criminal complaint cases <u>only</u> if requested by the particular presiding judge, <u>prohibiting</u> individual victims from filing case to the executive branch.

1.      In Texas, aggravated perjury is a third-degree felony if someone makes materially false statements in affidavits during court proceedings.

2.      Barrows committed aggravated perjury on the facial court record because the affidavits show that the bills were incurred from criminal

proceedings, not divorce proceedings. Three years later, Barrows still walks jail-free. <u>Texas family courts are attorney-white-collar-crime paradise.</u>

3.　　The Petitioner attempted to file a criminal complaint of perjury with the local sheriff's office but received a letter stating that the local enforcement "was not able to meet the requirements set forth by [Tarrant County Criminal District Attorney's office] … they would **only accept** or **open** an investigation into your claim of perjury **only at the request** of the **presiding judge**, since that did not occur, your case has been closed."

4.　　There are merely a dozen judges in Tarrant County, which has a population of 3 million.

5.　　Petitioner reengaged the sheriff office, a sheriff officer yelled at Petitioner, saying, "we do not have any business to do with you."

6.　　Later, the Petitioner discovered that the sheriff's office was tipping off Barrows about his communications with law enforcement.

7.　　The Petitioner tried to call 911 to open a criminal case, but law enforcement hung up on him.

At that point, the door to filing a criminal complaint was slammed shut in his face.

C. The Petitioner filed a federal case to challenge the constitutionality of the policy. The case was dismissed under an unpublished opinion for lack of Article III standing.

1. The Petitioner filed a federal suit challenging the constitutionality of the alleged policy, alleging that the policy violated the First, Fifth, Sixth, and Fourteenth Amendments, as well as the separation of powers, along with *§ 1983* claims.

2. The Petitioner's case was dismissed in the district court for lack of concrete injury. The Petitioner appealed to the Fifth Circuit, but his appeal was denied for lack of Article III standing.

3. The appellate court and district court concluded that the Petitioner pleaded to compel the government to prosecute Barrows, for which he has no standing. The Petitioner argued that none of his facially pleaded prospective relief sought prosecution; he facially sought to restore his right to file a criminal complaint and to invalidate the policy through a constitutional challenge. The courts ignored Petitioner's pleadings and arguments.

4. Both the appellate review and district court judgment were written in an appearance suggesting that the courts handled a complaint from the Petitioner seeking to prosecute others, thereby dismissing his case based on well-established precedent. However, the courts mischaracterized the Petitioner's claims for the purpose of dismissal. In the fact, the Petitioner had facially pleaded a different legal theory, specifically challenging the policy that infringed on his private right to petition.

5. The lower courts never allowed the Petitioner to present his side of claims truthfully. Instead, they recharacterized his claims and dismissed the entire case accordingly using an unpublished opinion. This type of judicial practice is scary.

# REASONS FOR GRANTING THE PETITION

This petition is straightforward. The Petitioner challenged an unconstitutional policy that prohibits his private constitutional right to file criminal complaint against a lawyer. The Petitioner sought prospective relief explicitly for himself.

However, the courts ruled that the Petitioner was seeking relief related to the treatment of others and dismissed his claim for lack of Article III standing.

In Texas all judges are active practicing lawyers and local lawyers are the main political contributors of the judge campaign. Research shows that Texas family court judges receive more contributions from lawyers than all other court judges combined. Texas family court judges can issue unappealable orders to liquidate family assets and award them to attorneys.

Local Fort Worth family lawyers cabal calling litigants, "whiny ass client"[1] of "Divorce Corp."[2]

Judges should uphold the law, not make decisions based on political affiliation. Most of the time, political affiliation refers to being left or right, Democrat or Republican, but it can also mean the distinction between a layperson and a practicing lawyer.

---

[1] https://www.youtube.com/watch?v=HK2aDDwCckk
[2] https://www.youtube.com/watch?v=th0R2nxva2w

A. This constitutionality challenge and *§ 1983* claim is of national importance, as the Circuits have noted that there is no direct Supreme Court precedent on point and existing Circuit rulings are inadequate, vacillative and conflicted.

The Ninth Circuit held that, "**as a matter of first impression**", "**the filing of a criminal complaint is protected by the First Amendment**." (emphasis added) *Entler v. Gregoire*, 872 F.3d 1031, 1043 (9th Cir. 2017).

The Ninth Circuit stated that "to opine on the **foundational constitutional principle**, we **join** our **two** sister circuits that have held that the filing of criminal complaints falls within the embrace of the First Amendment." *Id.* (citing *Meyer v. Bd. of Cty. Comm'rs* , 482 F.3d 1232, 1243 (**10th Cir. 2007**) and *United States v. Hylton*, 710 F.2d 1106, 1111 (**5th Cir. 1983**)) (emphasis added).

The Ninth Circuit concluded that "[a]lthough **there is no Supreme Court case directly on point**, there is clear Ninth Circuit precedent," (emphasis added) *Id* at 1041, the violations of filing grievances as ""'constitutional right" to do that" are "constitutionally impermissible," and "are not entitled to qualified immunity."

The Seventh Circuit concluded that "[i]t should be **clear** that the First Amendment protects your ability to report to the police that you are the victim of a crime. And although the Supreme Court "**does not require a case directly on point** for a **right to be clearly established**," *Kisela v. Hughes*, —— U.S. —— ——, 138 S.Ct. 1148, 1152 (2018)" (citation omitted) *Comsys, Inc. v. Pacetti*, 893 F.3d 468, 475 (7th Cir. 2018).

"The first amendment right to petition for redress of grievances is "among the most precious of the liberties safeguarded by the Bill of Rights." … There can be no doubt that the filing of a legitimate criminal complaint with local law enforcement officials constitutes an exercise of the first amendment right." *United States v. Hylton*, 558 F. Supp. 872, 874 (S.D. Tex. 1982).

The Fifth Circuit "affirms the district court's holding that Hylton"s conduct constitutes a legitimate exercise of her constitutional right to petition for redress of grievances." *United States v. Hylton*, 710 F.2d 1106, 1112 (5th Cir. 1983).

"Under the rule of orderliness, "one panel of this circuit may not overturn another panel absent an intervening decision to the contrary by the Supreme Court or this court en banc."" *Henry v. Educ. Fin. Serv. (In re Henry)*, 944 F.3d 587, 591 (5th Cir. 2019).

However, the Fifth Circuit panel that determined the Petitioner's case blatantly disregarded *Hylton* and the rule of orderliness, despite Yan citing the exact same argument and authority in the appellant brief. Therefor, "the constitutional rule applied by the Fifth Circuit was not " 'beyond debate,'" *Mullenix v. Luna*, 577 U.S. 7, 19 (2015).

After all, only a handful of Circuits (5th, 7th, 9th, and 10th) have tried to address this first impression of constitutionality challenge and *§ 1983* concerning filing criminal complaint. In Yan's case, the Fifth Circuit rendered a vacilative unpublished opinion that **directly contradicts** its own precedent (*Hylton*), Seventh Circuit (*Comsys, Inc.*), Ninth Circuit (*Entler*) and Tenth Circuit (*Meyer*).

Being able to report to police is a **clearly established First Amendment right**. Because the Supreme Court **does not have** a case directly on

point, as stated in *Comsys, Inc.* and *Entler*, this absence provides the Fifth Circuit with room to *vacillate*. Consequently, they rendered a decision like *Hylton*, but took different stances in unpublished opinions like Yan's.

When the Circuits stated that the Supreme Court *does not have a direct ruling on a clearly established right*, and Yan's case demonstrates that the circuit renders *vacillative* opinions through *unpublished* opinions, this Court has an **obligation**.

"[E]xisting precedent must have placed the statutory or constitutional question beyond debate" *Ashcroft v. Al-Kidd*, 563 U.S. 731, 741 (2011).

"This obligation — to reach an independent judgment in applying constitutional standards and criteria to constitutional issues … The Supreme Court is subject to that obligation…" *Jacobellis v. Ohio*, 378 U.S. 184, 189 n.3 (1964).

B. This case is of national importance concerning the First Amendment Petition right, which is infringed by a policy affecting millions of people. Moreover, this policy itself breaches the separation of powers principle affecting every citizen.

The alleged policy stating that the Tarrant County Criminal District Attorney's office "*would only accept or open an investigation into your claim of perjury only at the request of the presiding judge*" deprives the Petitioner of their First Amendment right to petition and places it solely in the hands of one judge.

Tarrant County has a population of more than 3 million. This alleged executive branch policy deprives 3 million people of their individual right to file grievances, placing it under the control of the judicial branch, presents a significant national interest warranting judicial review.

This case presents a first impression distinct from *Entler*, *Meyer*, and *Hylton*. In others three cases, individuals lost the rights but they did not lose the right to others. *Comsys, Inc.* at 476 recognized that exercising right as a citizen in a private capacity is *far different* from exercising right in an official [employee] capacity.

In this case, the alleged policy <u>delegates </u>the <u>right</u> of filing criminal complaints of perjury in <u>private</u> capacity <u>exclusively</u> to judicial actors in <u>official</u>

capacity, revealing a collective effort among Tarrant County government entities to conceal perjury activities within the confines of the family court system.

Moreover, perjury is an exclusive criminal cause of action without any civil cause of action, Tarrant County Criminal District Attorney's office should have known that the Texas constitution does not allow a judge to be the trier of fact for a criminal charge of perjury:

> "a person charged with criminal contempt is not entitled to a trial by jury. … On the other hand, under the criminal procedures of this state, **a person charged with a crime** is entitled to have the person's case **tried by a jury**. TEX. CODE CRIM. PROC. arts. 1.05, 1.12. When **a trial court possesses the ability** to **hold a person** in contempt and **confine him for perjury**, the alleged **perjurer lacks any possibility of having his case tried before a jury, as would be his right in a criminal prosecution**. …allowing contempt for perjury "**permit[s] too great inroads on the procedural safeguards of the Bill of Rights**, since contempts are summary in their nature, and leave determination of guilt to a **judge** rather than a **jury**"" (emphasis added) *In re Reece*, 341 S.W.3d 360, 369 n.12 (Tex. 2011).

As the Supreme Court of Texas explicitly ruled, the Petitioner cannot bring the alleged perjurer, attorney Leslie Barrows, before any judge. This policy said is against the constitutions. The Petitioner cited and argued *In re Reece*, the lower courts ignored.

The Tarrant County DA's office created a Catch-22 rule by stating they will <u>only</u> open a criminal case if requested by a judge, but a Judge is neither grand jury, jury, criminal investigator nor prosecutor. A judge can only determine a controversy or case over a claim <u>after</u> the parties have been properly served. The problem is that perjury is a criminal cause of action, which does not have a corresponding civil cause of action for the Plaintiff to pursue at the front of judge.

Additionally, civil proceedings are not free. Why would any victim need to bear an extra financial burden to bring up a criminal complaint? How many victims can afford an attorney to file a criminal complaint in the court? This policy burdens the victims, affecting 3 million people.

This policy effectively served the purpose of systematically abandoning the prosecution of perjury

in family court by establishing an unattainable requirement.

This policy alone violates Articles I and III, disrupting the separation of powers as it causes interference between the executive and judicial branches. The executive branch's arbitrary refusal to prosecute certain crimes affects individual victims. However, ceasing to prosecute perjury in state courts allows judicial actors to usurp the executive branch's determinative power, blurs the lines between grand jury, jury, and two branches.

This policy throws a monkey wrench into the legal framework and significantly undermines the integrity of judicial proceedings. After all, the attorney dressed up in DA office does not want to prosecute attorney dressed in suit.

"[A]rriving at the truth is a fundamental goal of our legal system" *United States v. Havens*, 446 U.S. 620, 626 (1980). "The courts obviously have a special obligation to promote the integrity and truthfulness of the judicial process." *Guy v. Travenol Labs., Inc.*, 812 F.2d 911, 914 (4th Cir. 1987). Similarly, "there is nothing more sacred than the integrity of the judicial

process." *United States v. Bethea*, No. 17-2788-cr, 4 (2d Cir. Sep. 6, 2018). Without consequences for counsel's perjurious conduct, proceedings represented by such counsel cannot be truthful or meaningful.

The Tarrant County Criminal District Attorney's office takes away people's private rights to file criminal complaints of perjury by falsely telling people that **only** that presiding judge can do so, despite this being contrary to the Texas Constitution, legal principles, precedent and common sense. Establishing an unactionable policy like this is equivalent to systematically abandoning the criminal prosecution of attorneys' perjurious conduct incurred in the state court.

A systemic breach of judicial integrity affecting 3 million people undoubtedly constitutes a matter of national interest. This Court needs to intervene.

C.   This case is of national importance because it offers this Court an opportunity to address a split amongst Circuits regarding the distinction between the right to prosecute others and the right to set in motion governmental machinery for one's own treatment.

"While Plaintiff did not have a right to force the local prosecutor to pursue her charges, she possessed

the right to access … procedures for redress of her claimed wrongs and to set in motion the governmental machinery." *Entler* at 1043-44. See also *Meyer*.

The Ninth and Tenth Circuits recognizes that the right to compel <u>prosecution</u> and the right to access governmental to set in motion governmental machinery, are distinguishable legal theory.

However, when the Petitioner argued in the district court and Fifth Circuit that he challenged a county policy delegating his private First Amendment petition rights, and that his complaint seeks prospective relief of his own unconstitutional treatment, the Fifth Circuit reframed his complaint and treated it as an equivalent claim the right of <u>prosecution</u> of others, dismissed his case.

The alleged policy merely prohibits the Petitioner from <u>opening</u> a criminal complaint <u>case</u>—an act that **does not** itself <u>initiate</u> a criminal <u>prosecution</u>. "[M]erely "reporting a crime to law enforcement and giving testimony does not constitute the 'initiation' of a criminal prosecution." *Hanly v. Powell Goldstein*, 290 F. App'x 435, 439 (2d Cir. 2008).

Investigate first, prosecute later. Criminal investigation and criminal prosecution are two distinct stages. Similarly, seeking relief for one's own treatment and seeking relief for the treatment of others are two distinguishable legal theories. The individual right to open a grievance and the private cause of action right to prosecute others are also distinguishable legal theories.

Given the inconsistency, inadequacy, and conflict among Circuits regarding three distinguishable legal theories, this case presents an opportunity for this Court to provide clarity.

D. This case is of national importance because it clearly showcases how a pro se litigant against attorney-white-collar crime was treated unfairly, where well-established principles and precedents not being binding in unpublished opinion.

"In our adversary system, in both civil and criminal cases, in the first instance and on appeal, we follow the principle of party presentation. That is, we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present." *Greenlaw v. United States*, 554 U.S. 237, 243 (2008).

"All pleadings shall be so construed as to do substantial justice." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). "[T]the pleadings of pro se litigants should be construed liberally…."It is the substance of the relief sought by a *pro se* pleading, not the label that the [movant] has attached to it, that determines [its] true nature and operative effect …"" *United States v. Bernal*, No. 13-40201, 3-4 (5th Cir. 2014).

These party presentation and liberal construction principle became smoke and mirror when a pro se party's civil claim involving a local lawyer well-connected with judges and an unpublished opinion is used to manifest injustice.

The Petitioner was not afforded meaningful opportunity of advocacy in the proceeding because the district court and appellate court repeatedly reframed his complaint to suit purposes of dismissal, disregarded his own presentation.

The Fifth Circuit's opinion erred by putting words into Yan's mouth and ruled accordingly. The Fifth opinion said that, "Yan argues that private citizens have the right to bring failure-to-investigate and failure-to-prosecute claims." without citing any

reference or source from Yan's complaint. The root word "fail," and "prosecute" appeared more than **10 times** in the opinion.

The contradictory plain fact is, the root word "fail," and "prosecute" **never appeared** in Yan's factual allegations. Yan challenged the policy, not the decision. The lower courts manufactured Yan's claims and ruled upon it. This is manifest injustice.

The Panel wrote at pp. 1-2 that:

> "Conghua Yan filled a pro se civil complaint <u>alleging</u> that he filed a criminal complaint with the Tarrant County Sheriff's Department the Tarrant County District Attorney <u>did not prosecute the complaint</u>....

> Yan argues that private citizens have the right to <u>bring failure-to-investigate and failure-to-prosecute claims</u> based on various legal theories....

> Yan also argues ...that he <u>has standing to bring a claim in the public interest</u>" (emphasis added)

Contrarily, in the opening brief at pp. 4-5, the Petitioner had clearly objected:

V. What the judgement findings and conclusions is not what was pleaded ...................

A. Plaintiff did not sue for "Defendants for failing to investigate and prosecute injuries he"

B. Summarized de facto claims.......................

C. Plaintiff did not plead that he has a standing for "public interest" ...........................

D. Plaintiff objects the recharacterization of "claims arising out of the decisions to stop investigating and/or not prosecute his allegations of criminality", but the Order ignored his arguments......................................

E. The Order has departed from the principle of party presentation

In the petition for panel rehearing en banc at p 12, Petitioner expressly objected that

> "he did not sue the Defendants for failing to investigate or prosecute criminal complaint. He did not plead that he has standing to bring claims for public interest, and his claim should not be recharacterized or framed as departing from his true allegations."

Petitioner's objections were disregarded once again. His judicial experiment indicates that "[m]ost judges regard pro se litigants as 'kind of trash not

worth the time'." Richard Posner, Most Judges Regard Pro Se Litigants as 'Kind of Trash Not Worth the Time,' ABA Journal (Sept. 11, 2017)[3].

The Supreme Court has long recognized that injury in fact exists when a plaintiff alleges that the government has directly impacted the exercise of his First Amendment rights or where he has shown a threat of specific future harm. See *Laird v. Tatum*, 408 U.S. 1, 13–14 (1972), citing *Ex parte Levitt*, 302 U.S. 633, 634 (1937). Petitioner argued but these precedents were disregarded.

"[I]ntangible injuries can nevertheless be concrete. […] *Pleasant Grove City v. Summum*, […] (free speech); *Church of Lukumi Babalu Aye, Inc. v. Hialeah*, […] (free exercise)." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016). The deprivation of a constitutional right, standing alone, can establish an Article III injury-in-fact. The Petitioner argued by citing *Spokeo*, but was disregarded.

---

[3]

https://www.abajournal.com/news/article/posner_most_judges_regard_pro_se_litigants_as_kind_of_trash_nor_worth_the_t

"It is clear therefore that First Amendment interests were either threatened or in fact being impaired at the time relief was sought. The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). The Petitioner argued by citing *Elrod*, but was disregarded.

In *The Book People, Inc. v. Wong*, No. 23-50668 (5th Cir. Jan. 17, 2024), the Fifth Circuit allowed challenges to a policy banning freedom of speech but dismissed the Petitioner's challenge to a policy banning freedom of petition. The Petitioner argued by citing *The Book People*, but was disregarded.

In *Barilla v. City of Houston*, Tex., No. 20-20535, (5th Cir. Sep. 10, 2021), the Fifth Circuit reversed a motion to dismiss by ruling that "the Supreme Court has recognized that chilled speech or self-censorship is an injury sufficient to confer standing," but affirmed motion to dismiss in Petitioner's case. The Petitioner argued by citing *Barilla*, but was disregarded.

In *Free Speech Coal. v. Paxton*, No. 23-50627, 38 (5th Cir. Mar. 7, 2024). the Fifth Circuit ruled that:

> "[p]laintiffs respond by pointing out that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitute irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976) […] Plaintiffs' position is compelling."

The Petitioner argued by citing exact same *Elrod* in briefings to the district court and the Fifth Circuit. But his position was trashed.

"The Founders believed that self-representation was a basic right of a free people. Underlying this belief was not only the antilawyer sentiment of the populace, but also the "natural law" thinking that characterized the Revolution's spokesmen." *Faretta v. California*, 422 U.S. 806, 831 n.39 (1975).

"When the Colonies were first settled, "the lawyer was synonymous with …the arbitrary Justices of the … Court… and twisting the law to secure convictions." … "distrust of lawyers became an institution."…"the lower classes came to identify lawyers with the upper class."" *Faretta* at 826-27.

The Petitioner is probably among the 0.01% of pro se litigants who was able to single-handedly submit a

certiorari booklet complies with Supreme Court rules on the first submission. No Supreme Court clerk ever contacted him for any supplemental corrections.

How many lawyers can do it single-handedly? This speaks to the level of the Petitioner's legal skills. However, despite the Petitioner not appearing foolishly clueless, he still stands no chance of surviving a Rule 12 dismissal under the lower court's practice of reframing the claim.

Allowing lower courts to reframe complaints to suit the needs of dismissal-with-prejudice leaves nobody a chance to prevail. The Petitioner was barred from further amending complaint even before seeing Defendant's *Rule 12* motion, that tells all.

Two centuries later, Chief Justice John Marshall's 1803 warning becomes reality when *Rule 12* becomes the speedy vehicle for trashing "'"remedy for the violation of a vested legal right," the United States "cease[s] to deserve th[e] high appellation" of being called "a government of laws, and not of men."'" *Byrd v. Lamb*, 990 F.3d 879, 884 (5th Cir. 2021).

The reality is, behind the Petitioner, there were many other pro se litigants whose cases were trashed

by lower courts' arbitrary and capricious reframing. They either could not endure and afford the time and money or were tripped up by the heightened procedural maze and obstacles before reaching this highest Court.

"Admittedly, if you are unhappy with [a court's] treatment of your case, and if you persist through all [] processes, and if you have enough time and money, you can usually bring your complaint to [higher] court for review before an independent judge. But what are the chances of being able to endure and afford all that?" Neil Gorsuch & Janie Nitze, *Over Ruled: The Human Toll of Too Much Law* [78] (2024).

The Supreme Court's statistics show that pro se litigants have <u>almost no chance</u> of being granted a petition of certiorari. Why then do the Circuits bother to apply binding precedent to millions pro se litigants within <u>unpublished opinions</u>, vehicles where injustice is often unnoticed? The Circuits rarely concern themselves with abandoning Supreme Court binding precedents in <u>unpublished opinions</u> because there is virtually no chance for pro se litigants to <u>reverse injustice</u>.

If a Supreme Court precedent is applied **once** in a Circuit's published ruling but abandoned **99** times in unpublished opinions, the precedent does not truly bind; it serves merely as window dressing.

It is wrong for the judiciary to use precedent to create the appearance of fairness while relying on unpublished opinions to do the opposite. "As Mr. Justice Brandeis correctly observed, "sunlight is the most powerful of all disinfectants."" *New York Times Co. v. Sullivan*, 376 U.S. 254, 305 (1964). This petition offers this Court a rare opportunity to ensure that all Supreme Court precedents are equally binding even in unpublished opinions.

E. Judicial independence is sustained by justice consistency. This case is an excellent vehicle for this Court to emphasize the importance of the stare decisis principle in producing consistent results where the lower courts have been using unpublished opinions to conceal inconsistent outcomes.

The Supreme Court has held that:

> The legal doctrine of stare decisis derives from the Latin maxim "stare decisis et non quieta movere ," which means to stand by the thing decided and not disturb the calm. The doctrine reflects respect for the accumulated wisdom of judges who have previously tried to solve the same problem. … The **Framers** of

our Constitution understood that the doctrine of stare decisis is part of the "judicial Power" and rooted in Article III of the Constitution. … emphasized the importance of stare decisis : To "**avoid an arbitrary discretion in the courts**, it is indispensable" that federal judges "should be **bound down** by strict rules and precedents, which serve to define and point out their **duty** in every particular case that comes before them."… In the words of THE CHIEF JUSTICE, stare decisis' "greatest purpose is to serve a **constitutional ideal—the rule of law**."" (emphasis added and citation omitted for brevity) *Ramos v. Louisiana*, 140 S. Ct. 1390, 1411 (2020).

This Court has repeatedly explained that:

"stare decisis "promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived **integrity of the judicial process**." … The doctrine "**permits society to presume that bedrock principles are founded in the law rather than in the proclivities of individuals**, and thereby contributes to **the integrity of our constitutional system of government, both in appearance and in fact**."" (emphasis added and citation omitted for brevity) *Id.*

This Court added that:

"Stare decisis has been a **fundamental part of our**

**jurisprudence** since the founding, and it is an important doctrine. … There are circumstances when past decisions must be overturned, but we begin with the presumption that we will follow precedent, and therefore when the Court decides to overrule, it has an **obligation** to provide an **explanation** for its decision.") (emphasis added and citation omitted for brevity) *Id* at 1432.

In the Petitioner's case, both the district court and the Fifth Circuit disregarded controlling precedents raised by the pro se litigant, which originated from either the Supreme Court or the Fifth Circuit itself. The Fifth Circuit issued an unpublished opinion that swept judicial **integrity**, **obligation**, and the **rule of law** under the rug.

"Article III, § 1, establishes a broad policy that federal judicial power shall be vested in courts whose judges enjoy life tenure and fixed compensation. These requirements **protect the role of the independent judiciary** within the constitutional scheme of tripartite government and assure impartial adjudication in federal courts." (emphasis added) *Thomas v. Union Carbide Agric. Products Co.*, 473 U.S. 568, 582-83 (1985).

This Court must recognize that Article III, § 1 incentivizes federal judges with life tenure and fixed compensation to safeguard judicial independence. If the public perceives that the federal courts are departing from the stare decisis principle, employing fast and loose tactics under unpublished opinions, and producing inconsistent results without fearing any consequences, this perception may foster a sentiment among the public to "flip the seats of judges to vacillate unfavorable precedents." Such a perspective ultimately leads to unexpected collateral damage.

Abandoning stare decisis not only leads to judicial injustice, harming litigants, but it will jeopardize the foundation of judicial independence at some point. *Vacillative rulings incentivize public expectation for vacillative judicial seats.* This Court should be aware that the *Article III* is amendable upon public request.

"Precedent is fundamental to day-to-day constitutional decisionmaking in this Court and every American court. The "judicial Power" established in Article III incorporates the principle of *stare decisis*, both vertical and horizontal." *United States v. Rahimi*, 144 S. Ct. 1889, 1920 (2024). When the courts treat

precedents fast and loose, the public will treat the judicial power fast and loose.

Chief Justice Robert correctly noted that "[c]riticism of judges has dramatically increased in recent years…That statement is just as true, if not more so, today."[4] Maybe it is as great as "the Colonies where "distrust of lawyers became an institution."" *Faretta* at 827.

**Twisting** the law brewed anti-lawyer sentiment among the colonies. See *Faretta*. Similarly, **twisting** the claims to secure dismissal and treating litigants like trash brew anti-judge sentiment among the populace.

This Court has a choice: either rubber-stamp the lower court's decision, covering up the twisting and adding more straw to the pile of distrust, or make some effort before new distrust becomes institutionalized.

This Court has a duty to equally emphasize judicial independence and judicial integrity, because

---

[4] Chief Justice [John G. Robert, Jr], 2024 Year-End Report on the Federal Judiciary, Supreme Court of the United States, https://www.supremecourt.gov/publicinfo/year-end/2024year-endreport.pdf

judicial independence does not last long without judicial integrity.

## CONCLUSION

The Court should grant the petition for a writ of certiorari.

Respectfully submitted,

*Conghua Yan*

Conghua Yan
Pro Se
arnold200@gmail.com
2140 E Southlake Blvd, Suite L-439
Southlake, Texas 76092
Telephone: (214) 228-1886
February 1, 2025

## <u>APPENDIX A: Fifth Circuit Court of Appeals opinion</u>

United States Court of Appeals

for the Fifth Circuit

No. 24-10288

Summary Calendar

Conghua Yan,

United States
Court of Appeals
Fifth Circuit
FILED
October 25, 2024
Lyle W. Cayce
Clerk

Plaintiff—Appellant,

versus

Mark A. Taylor, in his official capacity as Criminal District Office Investigator, Tarrant County, and in his private capacity; Richard B. Harwell, in his official capacity as Sergeant, Tarrant County, and in his private capacity; David F. Bennett, in his official capacity as Sheriff, Deputy, Tarrant County, and in his private capacity,

Defendants—Appellees.

_____

Appeal from the United States District Court

for the Northern District of Texas

USDC No. 4:23-CV-28

_____

Before King, Southwick, and Engelhardt, Circuit Judges.

Per Curiam:[5]

_____

[5] This opinion is not designated for publication. See 5th Cir. R. 47.5.

Conghua Yan filled a pro se civil complaint alleging that he filed a criminal complaint with the Tarrant County Sheriff's Department and that the Tarrant County District Attorney did not prosecute the complaint. The defendants moved to dismiss Yan's complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction because Yan lacked standing to bring the complaint. The district court granted the motion to dismiss, and it dismissed the complaint for lack of jurisdiction under Rule 12(b)(1). We conduct a de novo review of dismissals under Rule 12(b)(1).

Yan argues that private citizens have the right to bring failure-to-investigate and failure-to-prosecute claims based on various legal theories. Notwithstanding these arguments, the established precedent from the Supreme Court is clear that private citizens lack a judicially cognizable interest in prosecution or non-prosecution of individuals. See Linda R.S. v. Richard D., 410 U.S. 614, 619 (1973); Lefebure v. D'Aquilla, 15 F.4th 650, 654-55 (5th Cir. 2021). Yan also argues that the district court characterized his assertion incorrectly and that he has standing to bring a claim in the public interest, but he fails to show that he has suffered a specific injury that is "concrete and particularized" rather than speculative. Lujan v. Defenders of

Wildlife, 504 U.S. 555, 560 (1992). Yan has not shown that the district court erred in concluding that he lacked standing to sue the defendants for failing to prosecute alleged crimes.

Finally, Yan argues that he should have been allowed to amend his complaint. A district court's denial of leave to amend or supplement is reviewed for an abuse of discretion, and, where amendment would be futile, no abuse of discretion can be shown. Aldridge v. Miss. Dep't of Corr., 990 F.3d 868, 878 (5th Cir. 2021). Yan has failed to suggest how any amendment to his complaint that the officials of Tarrant County failed to pursue a criminal prosecution would not be futile.

AFFIRMED.

**APPENDIX B: Fifth Circuit Court of Appeals opinion on petition for rehearing en banc**

United States Court of Appeals

for the Fifth Circuit

No. 24-10288

Summary Calendar

Conghua Yan,

| United States Court of Appeals Fifth Circuit FILED November 15, 2024 Lyle W. Cayce Clerk |

Plaintiff—Appellant,

versus

Mark A. Taylor, in his official capacity as Criminal District Office Investigator, Tarrant County, and in his private capacity; Richard B. Harwell, in his official capacity as Sergeant, Tarrant County, and in his private capacity; David F. Bennett, in his official capacity as Sheriff, Deputy, Tarrant County, and in his private capacity,

Defendants—Appellees.

_____

Appeal from the United States District Court

for the Northern District of Texas

USDC No. 4:23-CV-28

_____

Before King, Southwick, and Engelhardt, Circuit Judges.

Per Curiam:

IT IS ORDERED that the petition for rehearing is DENIED.

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Envelope ID: 97797222
Filing Code Description: Original Proceeding Petition
Filing Description: ORIGINAL CRIMINAL PROCEEDING OF PETITION FOR WRIT OF MANDAMUS
Status as of 2/26/2025 9:06 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Patricia Bennett | | bpterry@tarrantcounty.com | 2/26/2025 3:40:18 AM | SENT |
| Beth Poulos | | jlpierce@tarrantcountytx.gov | 2/26/2025 3:40:18 AM | SENT |
| Cynthia Terry | | LKGrimaldi@tarrantcountytx.gov | 2/26/2025 3:40:18 AM | SENT |
| Conghua Yan | | arnold200@gmail.com | 2/26/2025 3:40:18 AM | SENT |

# Appendix B

**2/26/2025**

**YAN, CONGHUA**          **Tr. Ct. No.**                    **WR-96,456-01**

On this day, the motion for leave to file the original application for writ of mandamus and original application for writ of mandamus has been received and presented to the Court.

Deana Williamson, Clerk

CONGHUA YAN AKA YAN, CONGHUA "ARNOLD"
2140 E. SOUTHLAKE BLVD, SUITE L-439
SOUTHLAKE, TX 76092
* DELIVERED VIA E-MAIL & POSTAL *